Exhibit C

**THIRD CHURCH CHRIST, SCIENTIST, OF NEW YORK CITY**

**LANDLORD**

**WITH**

**ROSE GROUP PARK AVENUE LLC**

**TENANT**

## FINAL AGREEMENT OF LEASE

PREMISES –  583 PARK AVENUE
NEW YORK, NEW YORK

NY1 26400900.3

# TABLE OF CONTENTS

ARTICLE 1 DEMISE..................................................................................2

ARTICLE 2 TERM....................................................................................2

ARTICLE 3 BASIC RENT — ADDITIONAL RENT ...............................................4

ARTICLE 4 UTILITIES AND SERVICES ........................................................20

ARTICLE 5 LANDLORD'S WORK, TENANT WORK, REPAIR AND
          MAINTENANCE........................................................................20

ARTICLE 6 CHANGES AND ALTERATIONS — SURRENDER OF PREMISES ...........27

ARTICLE 7 COMPLIANCE WITH ORDERS, ORDINANCES, ETC. .........................29

ARTICLE 8 MECHANIC'S LIENS ................................................................31

ARTICLE 9 USE OF PREMISES BY LANDLORD ..............................................32

ARTICLE 10 RIGHT TO PERFORM COVENANTS .............................................33

ARTICLE 11 DAMAGE OR DESTRUCTION....................................................34

ARTICLE 12 CONDEMNATION...................................................................37

ARTICLE 13 BANKRUPTCY OR OTHER DEFAULT .........................................39

ARTICLE 14 CUMULATIVE REMEDIES — NO WAIVER ...................................48

ARTICLE 15 SUBORDINATION...................................................................48

ARTICLE 16 QUIET ENJOYMENT...............................................................49

ARTICLE 17 NOTICES.............................................................................50

ARTICLE 18 DEFINITION OF CERTAIN TERMS, ETC......................................51

ARTICLE 19 INVALIDITY OF PARTICULAR PROVISIONS..................................52

ARTICLE 20 COVENANTS TO BIND AND BENEFIT RESPECTIVE PARTIES ...........52

ARTICLE 21 INSURANCE..........................................................................52

ARTICLE 22 USE, ASSIGNMENT OR SUBLETTING.........................................56

ARTICLE 23 LANDLORD'S LIABILITY .........................................................59

ARTICLE 24 ENTIRE AGREEMENT.............................................................60

ARTICLE 25 CERTIFICATES......................................................................60

ARTICLE 26 BROKER .............................................................................60

ARTICLE 27 SIGNS ................................................................................61

ARTICLE 28 HOLDING OVER....................................................................61

ARTICLE 29 LANDLORD'S RESERVATION OF RIGHTS....................................62

ARTICLE 30 OPTION TO RENEW ..............................................................63

ARTICLE 31 GENERATOR ........................................................................64

ARTICLE 32 RESTRICTIONS ON TENANT.................................................................64

ARTICLE 33 MAINTENANCE OF SIDEWALKS .......................................................65

ARTICLE 34 INDEMNIFICATION...............................................................................65

ARTICLE 35 USE OF PREMISES BY LANDLORD ..................................................66

ARTICLE 36 RIGHT OF FIRST REFUSAL.................................................................71

ARTICLE 37 STRUCTURAL REPAIRS.......................................................................75

ARTICLE 38 PREVAILING PARTY FEES ..................................................................77

ARTICLE 39 FORCE MAJEUR....................................................................................77

ARTICLE 40 COMPLETION OF TENANT WORK.....................................................77

ARTICLE 41 AFFILIATE TRANSFERS.......................................................................78

EXHIBITS:

Exhibit A SITE PLAN

Exhibit B LANDLORD'S WORK LETTER

Exhibit C TENANT IMPROVEMENTS WORK

Exhibit D LANDLORD'S ARCHITECTURAL PLANS FOR LANDLORD'S WORK

Exhibit E PRELIMINARY LAYOUT DRAWINGS

NY1 26400900.3

THIS INDENTURE OF LEASE ("Lease") made as of the 31 day of JANUARY 2006, by and between **THIRD CHURCH CHRIST, SCIENTIST, OF NEW YORK CITY** a New York Religious Corporation, with offices at 583 Park Avenue, New York, NY 10021, hereinafter referred to as the "LANDLORD" or "CHURCH" and **ROSE GROUP PARK AVENUE LLC**, a New York limited liability company, with offices at 1111 Park Avenue, New York, NY 10128, hereinafter referred to as the "TENANT".

<u>W I T N E S S E T H</u>

WHEREAS, LANDLORD is the owner in fee of the building located at 583 Park Avenue, New York, NY (the "Building") which includes the Premises, as defined below, hereinafter demised; and

WHEREAS, LANDLORD is a church organization which currently uses the Building and the Premises for church services and related activities; and

WHEREAS, LANDLORD is desirous of leasing the Premises during those times when there are no scheduled Church services or Church related activities as more particularly delineated in Paragraph 35 below in order to generate income that can be used to maintain the Building and to support the Church activities while still permitting LANDLORD to continue to use on an exclusive and non-exclusive basis the Building for Church services and related activities as it has in the past and as more particularly set forth in Article 35 below; and

WHEREAS, TENANT is in the business of high end, upscale catering and hosting of events such as weddings, bar mitzvahs, family reunions, corporate meetings, events and the like; and

WHEREAS, TENANT and LANDLORD intend that TENANT utilize the Premises for its catering business without interfering with church services and related activities

NY1 26400900.3

such as association meetings, lectures, classes, Sunday school and corporate church governance meetings as more particularly set forth in Article 35 below; and

WHEREAS, LANDLORD and TENANT desire to enter into this Lease.

NOW, THEREFORE, LANDLORD and TENANT covenant and agree as follows:

## ARTICLE 1
### DEMISE

1.1    LANDLORD, for and in consideration of the rents, covenants and agreements hereinafter reserved and contained herein, hereby leases and TENANT does hereby take and hire, subject to the reservations, covenants and conditions hereinafter expressed which TENANT agrees to keep and perform, the land and building known as 583 Park Avenue, New York, New York, also known as Section 1, Block 1398, Lot 1, hereinafter called the Building or "Premises".

## ARTICLE 2
### TERM

2.1    The term of this Lease (the "Term") shall commence (the "Commencement Date") on the second business day after LANDLORD shall have given notice of delivery of possession of the Premises to TENANT free of all tenancies and occupancies except the use and occupancy of certain portions of the Premises by LANDLORD as more particularly set forth herein and the license rights of Cingular (formerly AT&T Wireless) and Nextel relating to the operations of cellular wireless relay stations pursuant to existing or imminent license agreements, copies of which have been initialed by the parties hereto.

2.2    The Term of this Lease shall be for a period of approximately twenty years (subject to 2 five-year renewal options) from the December 31 following the Rent

Commencement Date (as herein defined). The Lease shall terminate, unless extended as provided herein, on December 31, 2026 (the "Expiration Date").

The term "Lease Year" as used herein or "year" as used herein, shall mean a twelve (12) month period. The first Lease Year, however, shall commence on the Commencement Date and end on December 31, 2007. Each succeeding Lease Year shall cover the twelve (12) full calendar months commencing the first day of January of each year.

2.3    A.    Promptly after the execution of this Lease, TENANT, at TENANT's sole cost and expense, shall apply for, and with reasonable due diligence seek, any necessary license (the **"License"**) from the New York State Liquor Authority (the **"SLA"**) and this Lease is conditioned upon the SLA issuing the License. If for any reason the License is not received prior to the end of one hundred and twenty (120) days after the execution of this Lease or if prior to such date the SLA denies the issuance of the License, TENANT may by notice to LANDLORD given within five (5) days after the earlier of the SLA denial or the end of said one hundred and twenty (120) days, cancel and terminate this Lease, in which event LANDLORD shall return to TENANT all sums paid by TENANT to LANDLORD hereunder and neither LANDLORD nor TENANT shall have any further liability or obligation hereunder.

B.    Promptly after the execution of this Lease, LANDLORD, at LANDLORD's sole cost and expense, shall apply for, and with reasonable due diligence seek, any necessary approval of this Lease (the "Approval") from the New York State Supreme Court (the "Court"). If for any reason the Approval is not received prior to the end of one hundred and fifty (150) days after the execution of this Lease or if prior to such date the Court denies the issuance of the Approval, the TENANT may by notice to the LANDLORD given after the end of said one hundred and fifty (150) days, cancel and terminate this Lease, in which event

3

LANDLORD shall return to TENANT all sums paid by TENANT to LANDLORD hereunder and neither LANDLORD nor TENANT shall have any further liability or obligation hereunder, provided that this Lease shall automatically terminate upon the date that the Court in a final unappealable order denies the issuance of the Approval, in which event LANDLORD shall return to TENANT any sums paid by TENANT to LANDLORD hereunder and neither LANDLORD nor TENANT shall have any further liability or obligation hereunder.

C.    Promptly after the execution of this Lease, LANDLORD, with TENANT's assistance and cooperation, at their joint cost and expense, shall apply for an accessory use permit (the "Permit") from the New York City Department of Buildings ("DOB") to permit catering activities in the Premises as an accessory use to the use of the Premises as a church. If for any reason the Permit is not received prior to the end of one hundred and twenty (120) days after the execution of this Lease or if prior to such date the DOB denies the issuance of such Permit, either party may, by notice to the other party, given within five (5) days after the end of said one hundred and twenty (120) days, cancel and terminate this Lease, in which event LANDLORD shall return to TENANT all sums paid by TENANT to LANDLORD hereunder and neither LANDLORD nor TENANT shall have any further liability or obligation hereunder. The parties shall share the expense of said application, including without limitation all outside legal and other professional fees, and all other related costs and expenses, equally.

## ARTICLE 3
## BASIC RENT – ADDITIONAL RENT

3.1    Commencing upon the later to occur of the Commencement Date or the date that the last of the contingencies set forth in Article 2 above shall have been satisfied (the "Rent Commencement Date") and continuing throughout the Term and any renewal terms, TENANT shall pay an Annual Basic Rent, prorated for any portion of a calendar year, in the amount of

Two Hundred and Fifty Thousand ($250,000) Dollars in equal monthly installments in advance of or on the first day of each month without notice or demand as provided in Section 3.2 hereof. The Annual Basic Rent shall be adjusted as follows:

| Lease Years | Annual Basic Rent |
|---|---|
| 6th Lease Year through 10th Lease Year | $319,070.00 |
| 11th Lease Year through 15th Lease Year | $407,224.00 |
| 16th Lease Year through 20th Lease Year | $519,732.00 |

The first monthly installment of Basic Rent ($20,833.34) shall be paid upon the execution of this Lease and shall be held in escrow by LANDLORD in a segregated, interest bearing bank account and released to LANDLORD upon the satisfaction of all of the conditions set forth in Paragraph 2.3 above, or to TENANT upon the cancellation and termination of the Lease in accordance with the provisions of Paragraph 2.3 above, as the case may be. The fractional rent, if any, from the Rent Commencement Date to the first day of the following month shall be paid by TENANT to LANDLORD on the first day of the first full calendar month following the Commencement Date.

3.2     Annual Basic Rent and Additional Rent shall be payable in lawful money of the United States to LANDLORD at 583 Park Avenue, New York, New York, or at such other place as LANDLORD may from time to time designate, in advance, without notice, demand, offset or deduction except as specifically set forth herein. In the event any payment of Annual Basic Rent or Additional Rent shall not be made to LANDLORD within ten (10) days after the due date thereof, there shall be added to the amount a sum equal to five (5%) percent of the unpaid items as a fee and not as a penalty to, inter alia, help defray LANDLORD'S additional costs for bookkeeping and other costs in connection therewith.

3.3    Any payment to LANDLORD provided for herein shall be deemed Additional Rent and if no specific time period is set forth within which it is to be paid, same must be paid within ten (10) days of TENANT's receipt of notice that same is due.

3.4    A.    The Premises is currently exempt from the payment of real estate taxes. The parties anticipate that, as a result of this Lease, the Premises may become subject to real estate taxes. As Additional Rent, TENANT shall pay to LANDLORD, within ten (10) days of LANDLORD rendering a bill therefor, all Real Estate Taxes imposed against the land and/or Building constituting the Premises as same become due and payable to the Department of Finance of the City of New York or to such other agency as may be duly authorized to collect such Taxes. Notwithstanding the foregoing, at LANDLORD's option, if monthly payments are required by LANDLORD's mortgagee or if TENANT shall have failed to pay taxes within the ten (10) day period stated above, thereafter TENANT shall deposit with LANDLORD within fifteen (15) days of LANDLORD's written demand therefore a tax escrow amount equal to the sum which, when added to the monthly payments referred to hereinafter, would be sufficient to permit LANDLORD to pay in full the next installment of real estate taxes and any assessments at least thirty (30) days prior to the due date, and thereafter one-twelfth of the annual taxes shall be paid by TENANT together with the Basic Annual Rent on a monthly basis, in advance, in such amounts so that LANDLORD shall have sufficient amounts collected to pay any tax coming due at least thirty days prior to the due date and if said amounts are insufficient to pay the taxes coming due, TENANT shall be billed by LANDLORD for the difference. Any such advance payments shall be deposited into an interest bearing account mutually agreed upon by LANDLORD and TENANT with all interest earned thereon paid by LANDLORD to TENANT

6

on January 15 and July 15 of each year.  In no event shall TENANT be liable for any taxes attributable to the Church as reflected on the New York City Tax assessor's rate card.

        B.     As further Additional Rental during the Term, TENANT shall pay or cause to be paid, within ten (10) days after LANDLORD renders a bill therefor, all other taxes, assessments, charges, rates and water and sewer charges, and other governmental charges, which shall or may, during the Term, be assessed, levied, charged, confirmed or imposed upon or become payable out of or become a lien on the land and/or Building constituting the Premises or any part thereof or the appurtenances thereto, and such franchise, license and permit fees as may be appurtenant to the use of the Premises, applicable to the period within the Term, but shall not pay any municipal, state or federal income taxes, assessed against LANDLORD or any municipal, state or federal, estate, succession, inheritance, or transfer taxes of LANDLORD, or any franchise taxes imposed upon LANDLORD or any income, profits, or revenue tax, assessment or charge imposed upon the rent received as such by LANDLORD under this Lease or any tax attributable to the Church as reflected on the New York City Tax assessor's rate card; provided, however, that if at any time during the term of this Lease, the present method of taxation or assessments shall be so changed that there shall be added to, or substituted for the whole or any part of the taxes, assessments, levies, impositions, or charges, hereafter levied, assessed, or imposed on real estate and the improvements, a capital tax or other tax imposed on the rents received by LANDLORD from the Premises or the rents reserved herein, or any part thereof, then all such capital taxes or added or substituted other taxes shall, to the extent that they are so imposed and/or substituted, be deemed to be included within items to be paid by TENANT as set forth in this Section to the extent that such tax or payment would be payable if the Premises were the only property of LANDLORD subject thereto.

C.    Where any assessment is permitted by law to be paid in installments, TENANT may pay such assessment to LANDLORD in installments, together with the interest thereon, as and when each such installment becomes due.  TENANT shall not be obligated to pay the amount or portion of any installments of any assessment or assessments which are applicable to any period prior to the Rent Commencement Date or subsequent to the expiration or termination date of this Lease.

D.    The certificate, advice, bill, receipt or statement issued or given by the appropriate officials authorized or designated by law to issue or give the same or to receive payment of any tax or any payment in lieu thereof shall be prima facie evidence for all purposes of the existence, payment, non-payment or amount of such tax or payment upon TENANT's receipt thereof.

E.    TENANT shall have the option in LANDLORD's name and with LANDLORD's full cooperation to contest the validity or amount of the assessed valuation for real estate taxes levied against the Premises, for any or all of the years during the term of this Lease.  TENANT shall pay all counsel fees and disbursements in connection with said contest. In the event TENANT is successful in reducing the taxes and obtaining a tax saving and/or tax refund, and if TENANT has paid the taxes for which the refund has been obtained, TENANT shall receive the full refund.  In the event that there is no refund of taxes paid, but the recovery is represented by a reduction in assessed valuation for future years, resulting in a tax savings during the term of this Lease, TENANT shall receive the full benefit of such savings.

F.    Notwithstanding anything to the contrary contained herein, TENANT shall not be required to pay any interest, penalties or late fees assessed by any municipality for

the late payment of Taxes except to the extent same are payable as a consequence of TENANT's failure to pay Taxes to LANDLORD within the time periods set forth herein.

3.5    TENANT represents, warrants, covenants and agrees that it shall pay to LANDLORD at the time and in the manner set forth herein Percentage Rent as follows:

A.    (i)    In addition to the Annual Basic Rent and all other rents and charges reserved hereunder and as part of the total rent to be paid in any Lease Year in which the amount of Gross Sales exceeds an amount equal to the Annual Basic Rent then payable multiplied by ten (10) (the "Gross Sales Base") (as such amount may be prorated as provided in clause (ii) below), TENANT shall pay to LANDLORD as Additional Rent for each Lease Year or fractional part thereof from and after the Rent Commencement Date and throughout the remainder of the Term, an amount (the "Percentage Rent") equal to the sum of the product of (x) the Excess Gross Sales (as hereinafter defined) for such Lease Year, multiplied by (y) ten (10%) percent.

(ii)    As used herein, the term "Excess Gross Sales" shall mean, for the period to which reference is made, the excess of (x) Gross Sales for such period over (y) the Gross Sales Base (as pro rated for any period which is a partial Lease Year).

(iii)    Percentage Rent shall be determined and paid, without prior demand being required therefor and without any offsets or deductions whatsoever, in the manner hereinafter provided in Subsection (C) below.

B.    (i)    Each Lease Year shall be considered as an independent accounting period for the purpose of computing the amount of Percentage Rent due, if any.  The amount of Gross Sales in any Lease Year shall not be carried over into any other Lease Year.

(ii)    The term "Quarter" as used in this Lease shall mean a period of three (3) consecutive full calendar months commencing on each of the first day of January, April, July and October. The first Quarter shall be a period from the Rent Commencement Date through and including the day immediately preceding the January 1, April 1, July 1, or October 1 next following, as the case may be. The second Quarter and every subsequent Quarter shall cover the next succeeding three (3) full calendar months commencing the first day of the next succeeding calendar quarter provided that last Quarter shall expire upon the Expiration Date. Each Quarter shall be considered as an independent accounting period for the purpose of computing the amount of Percentage Rent due, if any, for the Quarter in question, subject to adjustment at the end of each Lease Year, as set forth below.

C.    In the event that Gross Sales for any Quarter during the Term exceeds the Gross Sales Base divided by four (4), then TENANT shall pay to LANDLORD, at the time the applicable Monthly Report is submitted to LANDLORD as provided in Section F (i) (a) in respect of the last month of each such Quarter, an interim Percentage Rent payment based upon the amount of such excess. Any such interim payment shall be accounted for when the annual Percentage Rent is paid as hereinafter provided. At the end of each Lease Year, (or partial Lease Year, if applicable) the actual Percentage Rent shall be computed on a full Lease Year (or partial Lease Year, if applicable) basis and the balance of the Percentage Rent due, if any, shall be paid to LANDLORD within ninety (90) days after the end of such Lease Year, including if such is the last Lease Year (or partial Lease Year, as to which TENANT's obligation shall survive the expiration of the Term of this Lease). If at the end of any Lease Year the total amount of interim Percentage Rent payments made by TENANT exceeds the total amount of Percentage Rent required to be paid by TENANT for such Lease Year as shown in TENANT's Annual Report,

10

the amount of such excess shall be first applied as a credit (in any order LANDLORD shall elect) against any past due amounts payable by TENANT under this Lease but not collected by LANDLORD, and with respect to the balance, TENANT shall thereafter receive a credit equal to such excess (after such application shall be made) which may be deducted by TENANT from the next accruing payment (s) of Annual Basic Rent and Additional Rent following submission of TENANT's annual report. If such overpayment occurred in the last Lease Year or partial Lease Year of Term, LANDLORD shall pay the remainder (if any) of the amount of such overpayment to TENANT within thirty (30) days after the later of (x) LANDLORD's receipt of TENANT's Annual Report for the last Lease Year or partial Lease Year as described in Section F.(i)(c) or (y) the final resolution of any audit performed by LANDLORD under this Section 3.5., but in no event later than ninety (90) days following LANDLORD's receipt of TENANT's annual report for the last Lease Year.

D. (i) The term "Gross Sales" shall mean (A) the dollar aggregate of the actual sales price collected and retained by TENANT or by any TENANT affiliates for all facility rentals, foods and beverages, both alcoholic and non-alcoholic, and all merchandise, wares and other goods sold or leased and the actual charges collected and retained for all services performed, business conducted and accommodations (including, without limitation, cover charges, admission fees, membership fees, other dues, and the like) rendered by TENANT or by any TENANT affiliates in, at, from, or arising out of the use of the Premises (and all fees, charges, subrents, concession payments or other payments collected and retained by TENANT from any subtenant, licensee, concessionaire and other occupant in, at, or arising out of the Lease of the Premises in respect of any such party's use or occupancy of the Premises), including the fair market value of all consideration other than money received for any of the foregoing and (B)

11

all monies or other things of value received by TENANT from any concessionaire or licensee of its operations at the Premises; and (C) any deposit accepted and retained by TENANT as being forfeited shall be included in Gross Sales; and (D) subject to adjustment relating to TENANT's costs of collection, refunds, and all amounts received under insurance policies in respect of loss of business, sales or profits, but excluding insurance proceeds received by TENANT with respect to Basic Annual Rent (except to the extent LANDLORD collects insurance proceeds for loss of Percentage Rent in respect thereof), shall be deemed actual sales prices collected and retained. No franchise tax, capital stock tax, tax based upon assets or net worth, and no income or similar tax based on income or profits shall be deducted from Gross Sales.

(ii)    Notwithstanding the foregoing, only the following shall be excluded from Gross Sales: (A) credits for returns to suppliers, shippers or manufacturers; (B) cash or credit refunds to customers on transactions otherwise included in Gross Sales not exceeding the selling price of goods and services; (C) sales of TENANT's trade fixtures, machinery and equipment, which are not stock for sale or trade, after use thereof in the conduct of TENANT's business; (D) amounts separately stated in the sales receipt and collected from customers which are paid by TENANT to any government for any sales or excise tax on such sales imposed by law at the point of sale; (E) receipts resulting from sales at a discount to TENANT's employees made in the ordinary course of their employment; (F) monies representing tips, gratuities and service charges paid by a customer that are directly paid by TENANT to employees; (G) the actual amount of charges for services performed by unaffiliated contractors and service providers which are itemized and billed to TENANT's customers including, but not limited to, florists, musicians, lighting, performers and other entertainers, printers, decorators, travel services, caterers and bakers (exclusive of any surcharge, mark-up or

12

other amount charged by TENANT); (H) interest, service charges, or other carrying charges separately stated and paid to TENANT for the extension of credit by TENANT on account of sales made or services rendered by TENANT, provided no discount on the sale price of the item or service is provided in return; (I) proceeds of claims for damage to merchandise or fixtures; (J) interest, finance and other charges paid to third party credit card companies; (K) uncollected or uncollectible credit accounts in respect of which TENANT shall have made commercially reasonable efforts to collect; (L) gross revenues of non-affiliated third party hat check, men's room and similar concessionaires to the extent not retained, paid or remitted to and retained by TENANT and (M) unearned deposits. In no event shall any franchise tax or capital stock tax income tax or any similar tax based upon income, profits or gross sales be deducted from Gross Sales. If TENANT shall incur any costs for collection for Gross Sales, the costs shall be deducted from any recovery in determining such Gross Sales.

(iii)    TENANT shall not cause the nature or location of any transaction which would otherwise be included in the definition of Gross Sales set forth above to be altered or changed in such a manner that would cause such transaction to be excluded from Gross Sales. In the event of a breach of the foregoing covenant, LANDLORD, in addition to any other right or remedy available under this Lease, at law or in equity, may require that any such transaction be included in Gross Sales for the purpose of computation of the Percentage Rent hereunder and for all other purposes of this Section 3.5, as though said transaction had been made at the Premises.

E.    TENANT shall prepare and keep, for a period of not less than one (1) year following the end of each Lease Year, adequate books and records in customary form (including electronic media, if used by TENANT) from which LANDLORD and its professional

13

consultants can determine with reasonable ease the amount of Gross Sales for any given period, including but not limited to, records of inventories, purchases, and receipts of merchandise, and all sales and other transactions made by TENANT described in the definition of Gross Sales set forth above, which books and records shall be conveniently segregated from other business matters. TENANT shall record, at the time thereof, each sale or other transaction described in the definition of Gross Sales set forth above. No food, beverage or other item may be sold or otherwise provided in connection with TENANT's business operations at the Premises unless the transaction in respect thereof is recorded in such system. All original records, in their original and unaltered form, shall be part of the books and records required to be retained hereunder. TENANT shall keep, for at least one (1) year following the end of each Lease Year, all pertinent original sales records relating to TENANT's operation of its business at the Premises as follows: (a) such records which would normally be examined and reasonably required to be kept by an independent accountant pursuant to generally accepted auditing standards in performing an audit of TENANT's Gross Sales, (b) duplicate bank deposit slips and bank statements for all bank accounts, as well as all canceled checks and checkbooks, (c) credit card receipts and monthly reports from credit and clearing companies, (d) sales journals, and (e) cash receipts journals. If TENANT fails to maintain such books of account and records as is reasonably necessary to determine Gross Sales and the respective categories thereof as described in Section D.(i), or to make the same available as provided in Section G.(i) and such failure shall continue for fourteen (14) business days after LANDLORD shall have given TENANT written notice thereof, then LANDLORD, without limiting any other rights or remedies hereunder, at law or in equity, may hire an accountant, at TENANT's sole cost and expense (the amount of which shall be payable by TENANT to LANDLORD as Additional Rent within ten (10) business days after TENANT's

14

receipt of written demand therefor), to maintain such books of account and records, and TENANT shall cooperate with such accountant with respect thereto.

F.    (i)    TENANT shall deliver to LANDLORD the following reports of Gross Sales (collectively, the "Reports") in the manner and at the times as set forth below, time being of the essence in each instance:

(a)    TENANT shall deliver to LANDLORD on or before the fifteenth (15th) day following the end of each month during the term hereof (including the fifteenth (15th) day of the month following the end of the Term), the statement of Gross Sales for TENANT's business in the Premises during the immediately preceding month on a cash basis (the "Monthly Report").

(b)    TENANT shall deliver to LANDLORD on or before the thirtieth (30th) day following the end of each Quarter a written statement signed by TENANT and certified by an authorized officer or member of TENANT to be true and correct, showing the amount of Gross Sales during the immediately preceding Quarter (the "Quarterly Report"); and

(c)    TENANT shall deliver to LANDLORD on or before the ninetieth (90th) day following the end of each Lease Year (including the ninetieth (90th) day following the Expiration Date) a written statement signed by TENANT and certified by an authorized officer or member of TENANT to be true and correct showing the amount of Gross Sales during the preceding full or partial Lease Year, as applicable (the "Annual Report").

(ii)    Each Monthly Report, Quarterly Report and Annual Report shall be prepared using the cash method of accounting and shall have separate detailed calculations of the amounts of Gross Sales for the period covered by such statement and a reasonable detailed itemization of all inclusions and permitted deductions and exclusions used in said calculations.

15

(iii)    TENANT shall submit to LANDLORD photocopies of the federal, State or local sales tax returns concurrently with the filing of same with the appropriate governmental agency.

(iv)    The acceptance by LANDLORD of payments of Percentage Rent or Reports thereon shall be without prejudice and shall in no case constitute a waiver of LANDLORD's right to examine TENANT's books and records of its Gross Sales and LANDLORD's right to any further sums subsequently shown to be due for any period.

G.    (i)    Upon thirty (30) days' prior written notice to TENANT and not more frequently than one (1) time in any Lease Year, LANDLORD, at its sole cost and expense (except as set forth below), shall have the right to cause a complete audit to be made of Gross Sales by TENANT and of all books and records pertaining thereto, including but not limited to those specified in Section E, and TENANT will make all of TENANT's books and records available, or cause the same to be made available, for examination (and photocopying or duplicating) at the Premises, or at TENANT's business office in New York City by LANDLORD or its authorized representatives (and TENANT shall make TENANT's photocopy or duplicating machines available to LANDLORD, with the actual cost of photocopies and duplication to be borne by LANDLORD, subject to the provisions of this Section G.(i). If the results of any such audit described above show that TENANT's statement of Gross Sales for any full or partial Lease Year has been understated, TENANT shall pay LANDLORD the amount of any such deficiency, together with interest thereon computed at the Interest Rate from the date due to the date LANDLORD shall collect payment thereof from TENANT. If any such understatement shall exceed three (3%) percent of the actual amount of Gross Sales for the period in question, then all reasonable, actual costs and expenses incurred by LANDLORD in

NY1 26400900 3

connection with such audit shall be paid by TENANT to LANDLORD as Additional Rent within ten (10) business days after written demand therefor, together with interest thereon computed at the Interest Rate from the date due to the date LANDLORD shall collect payment thereof from TENANT.

(ii)     Without limiting LANDLORD's rights and remedies under this Section 3.5 or elsewhere in this Lease, or otherwise available at law and in equity, if TENANT, at any time, is two (2) or more months delinquent in the furnishing of any Quarterly or Annual Report and such delinquency shall continue for ten (10) days after LANDLORD gives TENANT written notice thereof, in addition to all other remedies available to LANDLORD hereunder or at law or in equity, LANDLORD may, on five (5) days' notice, conduct an audit on the conditions set forth in subsection (i) above at TENANT's sole cost and expense with all reasonable, actual costs and expenses incurred by LANDLORD in connection therewith payable by TENANT to LANDLORD as Additional Rent, within ten (10) business days after written demand therefor. The willful furnishing by TENANT of any materially inaccurate statement shall constitute a default under this Lease and TENANT agrees any information obtained by LANDLORD through the means described in Section G.(ii) above shall be deemed furnished by TENANT. Any information obtained by LANDLORD as a result of any audit described in this Section G shall be held in strict confidence by LANDLORD, except in any action or proceeding to recover such deficiency or any costs or expenses in respect of such audit, or in connection with any existing financing or any prospective sale, lease or leaseback or financing of all or any part of the Premises, or in connection with any registration or filing with any governmental authority or pursuant to a subpoena or other judicial process, or, if otherwise required pursuant to Legal Requirements.

(iii)    Pending the determination of any dispute in respect to Gross Sales and as a condition precedent to TENANT's right to dispute the correctness of any LANDLORD's audit (as referred to in Subsection (i) above), TENANT shall pay to LANDLORD, as Additional Rent, the amount shown as due from TENANT based upon Gross Sales as determined by LANDLORD's auditor. TENANT shall have the right within thirty (30) days of receipt of the results of LANDLORD's audit, to submit any dispute in respect of Gross Sales on the correctness of LANDLORD's audit to a determination by a certified public accountant with at least ten (10) years experience, mutually selected by the parties. Such dispute will be determined without a hearing solely upon TENANT's books and records and LANDLORD's audit report with respect thereto (the "Audit Documents") and the arbitrator shall make such decision within thirty (30) days of its appointment. If the parties cannot agree on an accountant, or if such certified public accountant fails to make its decision within such time period, both parties shall apply to the American Arbitration Association of the City of New York for the appointment of an accountant possessing the qualifications set forth above, who shall receive the Audit Documents within thirty (30) days of the appointment, and whose decision shall be conclusive, final and binding on the parties hereto. The party against whom the determination is made shall bear the cost of such arbitration, and if each party is partially successful, the arbitrator will apportion such costs between the parties. If such dispute is ultimately determined in TENANT's favor, LANDLORD shall, within ten (10) business days after the arbitrator shall have rendered its final determination, pay to TENANT any amount so overpaid by TENANT, plus interest at the Interest Rate for the period commencing on the date such overpayment was paid by TENANT until the date TENANT shall have received payment in full, plus interest, of the entire amount of the overpayment.

18

H.      IF TENANT shall fail to operate its business in the Premises for a period

of 60 days in any 12 month period then, for the purpose of computing Percentage Rent (and not

in lieu of any rights or remedies of LANDLORD in respect thereof), Gross Sales for the period

in excess of said 60 days shall be deemed to be the average Gross sales for the corresponding

period of the immediately preceding two (2) Lease Year periods (taking into account day of the

week and week of the month) or the highest Gross Sales in any Lease Year for the corresponding

period during the entire previous portion of the Term if the period since the Lease

Commencement Date has been less than three (3) Lease Years.

I.      LANDLORD and TENANT expressly agree that nothing in this Lease

(including, without limitation, the payment of Additional Rent by TENANT based on a portion

of Gross Sales) shall create or be deemed to create any relationship between LANDLORD and

TENANT, whether as partners, joint venturers, or otherwise, other than that of LANDLORD and

TENANT under this Lease.

J.      The obligations of TENANT in any and all Lease Years during the Term

(i) to pay Percentage Rent due under this Section 3.5 and (ii) to keep its books and records in

accordance with Section 3.5E shall survive termination of this Lease for a period of one (1) year

from the date on which the Percentage Rent was paid or became payable by TENANT.

LANDLORD's right to audit any Annual Report pursuant to Section 3.5G shall survive the

termination of this Lease for a period of twelve (12) months following the month in which

TENANT delivers its Annual Report pursuant to Section 3.5.F in respect of the final Lease Year

and, in any event, until the resolution of any dispute in respect of any amount of Percentage Rent

which LANDLORD shall determine is due and payable under this Section 3.5, provided the

dispute resolution is commenced and diligently pursued by LANDLORD within the time period

19

specified above. Sums collected and retained by TENANT for a period of six (6) months after termination or expiration of the Lease shall be deemed included in the final Quarter prior to said expiration or termination, which Quarter shall be promptly readjusted after the expiration of said six (6) month period to include such sums.

## ARTICLE 4
### UTILITIES AND SERVICES

4.1    TENANT shall contract directly with the local utility companies for all electric, gas and water (including any stand-by water required for any sprinkler system) used and consumed in the Premises. TENANT shall pay for all such utilities and services. TENANT shall not be required to pay for any electricity supplied to Cingular or Nextel.

## ARTICLE 5
### LANDLORD'S WORK, TENANT WORK, REPAIR AND MAINTENANCE

5.1    TENANT has inspected the Premises and accepts the Premises in "as is" condition and LANDLORD shall not be obligated to do any work other than the removal of the existing personal property and equipment in the Sunday School section of the basement and the storage area of the 4th floor (LANDLORD's Work"). LANDLORD's work shall be completed prior to the Commencement Date.

5.2    TENANT at TENANT's sole cost and expense shall renovate the Premises substantially in accordance with the preliminary plans (Exhibit C) and specifications (Exhibit E) attached hereto (the "TENANT Work").

5.3    A.    TENANT shall provide LANDLORD with detailed plans and specifications for the renovation of the Premises, which shall include, inter alia, electrical and mechanical drawings (the "Plans and Specifications"). The Plans and Specifications shall include provisions for the following, all of which shall be done by TENANT at TENANT's sole

cost and expense: removal and storage off site of the pews from the main floor of the auditorium and the first (lowest) row of the balconies (and restore the balcony cosmetically so that the removal of the first pew is not noticeable), said pews to be reinstalled by TENANT upon the expiration or termination of this Lease (provided that TENANT, at TENANT's option may elect not to store the pews in which case TENANT shall install new pews, of similar design and quality to existing pews upon the expiration or termination of this Lease), renovation of a building entrance to make it ADA compliant (as required by law), upgrading of restrooms in the Premises and making one restroom ADA compliant (as required by law), specifications for at least 350 custom stackable chairs to be located on the ground floor of the Premises, installation of a fully equipped catering kitchen in the area now used by LANDLORD's Child Care and Sunday School offices, creation of a new room in the basement to serve as LANDLORD's Sunday School office and nursery with a door providing direct access to the Sunday School area, cosmetic refurbishment of the auditorium as well as other rooms such as the existing Board Room and existing storage areas, leveling of the auditorium floor and installation of high quality carpeting, painting and repairing of the auditorium, 4th floor hallway and other public portions of the Premises which will be used by TENANT's clients, and LANDLORD's congregation, repair of all existing damage in the auditorium, design and installation of curtains to cover the organ pipes if TENANT shall so elect, and existing religious messages in the auditorium, installation of facilities and equipment to render the Premises in compliance with applicable legal requirements, installation, if TENANT shall so elect, of a VIP room/Bridal Suite on the North side of the lower level including separate bathroom, power and wiring upgrades as needed or required to accommodate TENANT's catering business with TENANT removing any visible abandoned wiring or conduit, modifications to the existing heating, ventilating and air conditioning systems

21

to accommodate TENANT's catering business, installation of a new communications system, upgrading and repair of the existing elevator, all installations needed to bring the Premises into code compliance for TENANT's catering business, other than conditions which are in violation of applicable code on the day prior to the Commencement Date (other than conditions which are to be remedied by TENANT Work) renovation of the existing 4th floor Literature Distribution Room into TENANT's office and presentation room with the option for TENANT to relocate or expand such space, installation of replacement Literature Distribution Room/Committee Room, storage facilities and a Treasurer's office for LANDLORD in the fourth floor attic area in a location adjacent to the existing Board Room, installation of kitchen ventilation and fire suppression systems, installation of a new electronic sign compatible with the appearance of the Building at approximately eye level on the corner of the Building facing Park Avenue at 63rd Street identifying at the times herein specified the various uses of the Building as further delineated in this Lease and/or in the Exhibits hereto, installation of a new electronic sign to the left of the 63rd Street side entrance which will indicate the existence of LANDLORD's Sunday School and Sunday and Wednesday services at all times except when TENANT is using or actively marketing the Premises for a 3rd party function, provide a storage area for LANDLORD's Hymnals, hand-out literature and that upon which such literature will be displayed and signs in a location to be mutually determined installation of a new sound system with controls in the auditorium. LANDLORD will approve or provide comments on TENANT's plans and specifications within two (2) weeks after submission, and within ten (10) days after resubmission in response to comments made by LANDLORD. Except for the design and engineering in connection with the work described in this Paragraph 5.3 and in Paragraph 5.4,

TENANT shall not commence any physical work until the contingencies in Paragraph 2.3 have been satisfied.

B.    In furtherance of the foregoing, subject to all the non-monetary covenants, agreements, terms, provisions and conditions of this Lease including, but not limited to, the prohibition against physical work in Paragraph 5.3.A, effective after the signing of this Lease, LANDLORD hereby grants to TENANT use of the existing Literature Distribution Room and treasurer's office on the 4th floor of the Premises and grants to TENANT's decorators, suppliers, and contractors access to the Premises for the purpose of arranging for and making improvements and installing TENANT's equipment, telephones, trade fixtures, movable partitions, furniture, and other furnishings, provided that TENANT's contractors obtain and maintain Comprehensive General Liability insurance with a combined single limit of at least $2,000,000.00 and including LANDLORD as an additional insured, and Worker's Compensation Insurance.  TENANT agrees that it shall use reasonable efforts not to disturb the current occupant of the Basement portion of the Premises (the Geneva School) in connection with TENANT's preparations of its plans and specifications or in the conduct of any of TENANT Work hereunder.

5.4    In addition to the foregoing improvements and work, after the Rent Commencement Date TENANT agrees to complete the repair of the Building's roof in accordance with proposals previously obtained by LANDLORD.  It is estimated that the cost of such repairs is approximately $650,000.  Upon completion of the roof repair project LANDLORD shall reimburse TENANT for the cost incurred by TENANT to complete said roof repair together with an amount equal to (i) the actual rate of interest paid or payable by TENANT in connection with TENANT's financing of all or a portion of the cost of such repair

or (ii) the Interest Rate if TENANT shall not have financed such cost, said reimbursement to be deducted from the Percentage Rent to be paid to LANDLORD pursuant to Section 3.5 of this Lease in an amount equal to Fifty Thousand ($50,000.00) Dollars per year until the final year of payment at which time the balance shall be due and payable. In no event shall this reimbursement obligation reduce the Basic Annual Rent payable hereunder. LANDLORD shall make available to TENANT all warranties and guarantees relating to the work heretofore performed to the roof of the Premises. LANDLORD shall cooperate with and assist TENANT should TENANT desire to enforce any of such warranties or guaranties. All warranties or guaranties relating to the roof work to be performed by TENANT shall be in the name of LANDLORD and TENANT.

5.5    TENANT covenants throughout the Term, at TENANT's sole cost and expense, to take good care of the interior of the Premises and keep the same in good order and condition and to make all repairs therein except as provided for herein.

5.6    A.    TENANT covenants throughout the term of the Lease, at TENANT's sole cost and expense, to maintain and keep in good repair the Building's sanitary, electrical, heating, air conditioning and other systems, subject to the allocation of the cost between TENANT and LANDLORD, as set forth below. LANDLORD will assign to TENANT any mechanical equipment warranties which may be in effect on the Commencement Date.

B.    In the event that TENANT fails to maintain or repair any portion of the Premises required to be maintained or repaired by TENANT hereunder, and said failure continues for a period of thirty (30) days after TENANT receives written notice of such failure, LANDLORD may, but is not obligated to, make such repair unless TENANT is then in the process of making such repair. In the event LANDLORD makes any repairs which are the

24

obligation of TENANT hereunder, LANDLORD shall submit a copy of the bill for same and TENANT shall pay to LANDLORD within ten (10) days of TENANT's receipt thereof the amount of such bill, together with interest at the Interest Rate.

5.7     Except as expressly provided otherwise in this Lease, there shall be no allowance to TENANT or diminution of rent and no liability on the part of LANDLORD by reason of inconvenience, annoyance or injury to business arising from the necessity to make any repairs, alterations, additions or improvements in or to any portion of the Building or the Premises, or in and to the fixtures, appurtenances and equipment thereof.

5.8     TENANT shall, to the extent same are cost effective, during the entire Term or any Extended Term maintain maintenance contracts for the HVAC system, the elevator and all other systems which as a matter of law require such maintenance contracts, at TENANT's sole cost and expense.

5.9     LANDLORD shall not be required to furnish any services for the Premises, including, but not limited to, heat, water, light and electric power, and shall not be liable for interference with light or other incorporeal hereditaments or easements not caused or placed upon the Building by LANDLORD, or for any failure of water supply or electric current or of any services by any utility, nor for injury or damage (including death) to person or property caused by or resulting from steam, gas, electricity, water, rain or snow, which fall upon, flow or leak from any part of the Premises, or from any pipes, appliance or plumbing works of the same, or from the street or sub-surface or from any other place unless same are a consequence of LANDLORD's negligence, gross negligence or willful default.

5.10    INTENTIONALLY DELETED

5.11    TENANT shall contract and pay for, at its sole cost and expense, all utilities supplied to the Premises by any utility company, whether public or private, including, but not limited to, gas, electricity, water and telephone.  LANDLORD shall reimburse TENANT for all telephone charges incurred by LANDLORD or its employees, officers or trustees through its use of TENANT's communication system.

5.12    TENANT agrees to take all reasonable precautions to protect the Church's organ in the Premises during the performance of TENANT Work and promptly to repair any damage to said organ caused by TENANT or any of TENANT's employees or contractors.

5.13    The hiring and retention by Landlord at the Building of any and all employees in the capacities of custodian and/or Building maintenance, including the terms and conditions of employment, shall be subject to the prior written approval and consent of Tenant (each, an "Employee"), which may be given or withheld, at Tenant's sole discretion.  The terms and conditions of employment shall include, without limitation, each Employee's working hours, compensation, job description and benefits shall be determined by Tenant at Tenant's reasonable discretion.  Tenant shall reimburse Landlord within thirty (30) days of written demand therefor, in an amount equal to any such Employee's compensation, including FICA and similar costs, provided Tenant shall have theretofore approved such amounts in writing.  Subject to the foregoing, LANDLORD shall continue to employ the current Church custodians.  The LANDLORD shall inform the custodians, and any replacement custodians approved by TENANT, that they shall be subject to the direction and supervision of TENANT, except when the Building is being used exclusively for Church Activities, during which periods the custodians with respect to Church activities only shall be subject to the direction of the Church.  Nothing in

26

this Lease shall be deemed to create any claims of third party beneficiary right or remedies whatsoever.

## ARTICLE 6
## CHANGES AND ALTERATIONS — SURRENDER OF PREMISES

6.1     TENANT shall have the right, at any time and from time to time, during the Term to make such nonstructural changes and alterations to the interior of the Premises as TENANT shall deem necessary or desirable.  However, all changes and alterations must be made with the prior written consent of LANDLORD, which consent will not be unreasonably withheld, conditioned or delayed.  In determining the reasonableness of LANDLORD's refusal to consent the parties shall bear in mind the fact that during the term of this Lease the Premises will continue to be used by LANDLORD as a place of worship and for Sunday School services and for other Church related activities, and that the Premises is intended to be used as a church facility after the termination of this Lease.  Prior to TENANT doing any work in the Premises, TENANT shall deliver to LANDLORD a description thereof (including samples of paint colors, wallpaper and carpet) (if same are limited to cosmetic work) or detailed plans and specifications thereof prepared by a licensed architect or licensed engineer for any other work.  LANDLORD shall notify TENANT in writing of its approval or disapproval (setting forth in detail the basis of such disapproval) no later than two (2) weeks following TENANT's request for consent and shall notify TENANT of its approval no later than ten (10) days following TENANT's resubmissions satisfying LANDLORD's reasonable basis of disapproval.

6.2     TENANT without the prior written consent of LANDLORD, shall not place any signs on the roof or on or about the inside or outside of the Building, except as noted in Articles 5 and 27 of this Lease.

27

6.3    All permanent improvements and alterations made or installed by or on behalf of TENANT, shall at the expiration or sooner termination of this Lease be and become the property of LANDLORD without payment therefor by LANDLORD, except as hereinafter provided.

6.4    TENANT shall, upon the expiration or earlier termination of this Lease, surrender to LANDLORD the Premises, together with all alterations and replacement thereto, in good order and condition, except for reasonable wear and tear or damage by fire or casualty.  In addition to the foregoing, TENANT shall, at the expiration or sooner termination of the Lease, label all telephone and other communications wiring installed in the Premises.  TENANT shall also re-install or replace, as the case may be, all of the church pews which were removed prior to the initial alterations.

If TENANT shall make any alterations or changes or additions to the Premises other than TENANT Work, which are not customarily found in a church type facility, after the commencement of the Term, and LANDLORD shall desire the same to be removed upon the expiration of the Term, then, providing TENANT, in its request for consent, specifically requests LANDLORD to indicate whether or not such alteration must be removed and LANDLORD gives notice to TENANT of its desire to have the same removed prior to the installation of same, TENANT shall remove same prior to the expiration of the Term at TENANT's sole cost and expense and TENANT shall, at its own cost and expense, restore the Premises to the condition which they were in prior to such installation, normal wear and tear and damage by fire excepted.

6.5    In connection with any alterations to the Premises done by TENANT including decorating, prior to any work being commenced, TENANT shall supply to LANDLORD: (i) liability insurance from the Contractor doing the work in an amount not less than Two Million Dollars ($2,000,000), naming LANDLORD as an additional insured; (ii) evidence that all

28

workers doing work in the Premises are covered by Workmen's Compensation Insurance, to the extent required by applicable laws, rules and regulations; (iii) an agreement from TENANT's contractor to remove all debris from the Premises after 6:00 P.M. at the end of each day's work and prior to 7:00 a.m. the following day.  In the event TENANT's contractor shall fail to remove debris on a daily basis, as hereinabove provided, and continue such failure after written notice from LANDLORD, LANDLORD may order said contractors off the Premises and refuse them access thereafter.

## ARTICLE 7
### COMPLIANCE WITH ORDERS, ORDINANCES, ETC.

7.1    TENANT covenants and agrees that all work to be done by TENANT shall comply with all building codes and regulations, laws, ordinances and regulations and the American's with Disabilities Act applicable thereto.  TENANT further represents that all such work will be done in accordance with the Plans and Specifications.

7.2    TENANT covenants throughout the Term and any renewals hereof, at TENANT's sole cost and expense, to comply with all laws and ordinances and the orders and requirements of all federal, state and municipal governments and appropriate departments, commissions, boards and officers thereof ("Legal Requirements"), which may be applicable to TENANT's use or occupancy of the Premises, excepting all conditions existing at the Premises or the Building prior to the Commencement Date (excluding these conditions which are to be remedied by TENANT work), and LANDLORD shall comply with all Legal Requirements the compliance with which is specifically necessitated by the use of the Building and the Premises as a Church facility.

7.3    TENANT shall have the right to contest by appropriate legal proceedings, in the name of TENANT or LANDLORD or both, but without cost or expense to LANDLORD, the validity of any Legal Requirement to be complied with by TENANT herein.  Provided such

noncompliance does not subject LANDLORD to any criminal liability for failure so to comply or create any dangerous or hazardous condition either to person or property, TENANT may postpone compliance therewith until the final determination of any proceedings, provided that all such proceedings shall be prosecuted with all due diligence and dispatch, and if any lien or charge is incurred by reason of noncompliance, TENANT may nevertheless make the contest aforesaid and delay compliance as aforesaid, provided that TENANT indemnifies LANDLORD against any loss or injury by reason of such noncompliance or delay therein excepting therefrom all conditions existing at the Premises prior to the Commencement Date except those conditions which are to be remedied by TENANT Work.

      7.4    A.    TENANT, as to any hazardous substances brought into, on or under the Premises by TENANT or its invitees, agents, employees and contractors subsequent to the Commencement Date, hereby agrees to indemnify, defend and hold harmless LANDLORD, its employees, agents, successors, and assigns, from and against any and all damages, claims, lawsuits, liability, or loss, including reasonable attorney fees, arising out of or in any way connected with the generation, treatment, storage or disposal of hazardous substances by TENANT or any of TENANT's employees, agents, contractors, or invitees, in the Premises, under all Federal, State and Local Environmental laws, rules and ordinances, strict liability and common law. TENANT acknowledges that it has been informed by LANDLORD of the existence of asbestos containing tiles under the carpet in the auditorium and TENANT agrees to use due care during the performance of TENANT Work not to disturb any such asbestos containing materials or to remove same in accordance with applicable rules and regulations. Any hazardous substances in, on or under the Premises prior to the Commencement Date which are required to be removed pursuant to applicable law will be so removed by LANDLORD prior

30

to the Commencement Date or within thirty (30) days thereafter unless such removal is required as a result of TENANT's proposed alterations or TENANT Work.

      B.     TENANT agrees promptly to notify LANDLORD of any disposal of hazardous substance in the Premises or of any discovery of hazardous substances in the Premises, or of any notice received by TENANT from a governmental authority or private party alleging that a disposal of hazardous substances on the Premises or the Building may have occurred. Furthermore, TENANT agrees to provide LANDLORD with full and complete access to any documents or information in its possession or control relevant to the question of generation, treatment, storage, or disposal of hazardous substances on the Premises or the Building.

## ARTICLE 8
## MECHANIC'S LIENS

8.1     TENANT covenants not to suffer or permit any mechanic's liens to be filed against the fee interest of LANDLORD nor against TENANT's leasehold interest in the Premises by reason of work, labor, services or materials supplied or claimed to have been supplied to TENANT or any contractor, subcontractor or any other party or person acting at the request of TENANT (other than LANDLORD), or anyone holding the Premises or any part thereof through or under TENANT. TENANT agrees that in the event any mechanic's lien shall be filed against the fee interest of LANDLORD or against TENANT's leasehold interest as the result thereof, TENANT shall, within forty five (45) days after TENANT's receiving notice of the filing thereof, cause the same to be discharged of record by payment, deposit, bond or order of a court of competent jurisdiction or otherwise.

     If TENANT shall fail to cause such lien to be discharged or bonded within the aforesaid forty five (45) day period, then, in addition to any other right or remedy, LANDLORD

31

may, but shall not be obligated to, discharge the same by paying the amount claimed to be due or by bonding the said lien, and in any such event, LANDLORD shall be entitled, if LANDLORD so elects, to compel the prosecution of an action for the foreclosure of such lien by the lienor and to pay the amount of any judgment in favor of the lienor with interest, costs and allowances. Any amount so paid by LANDLORD and all reasonable costs and expenses incurred by LANDLORD in connection therewith, including, but not limited to premiums on any bonds and reasonable attorneys' fees, shall constitute Additional Rental payable by TENANT to LANDLORD within ten (10) business days of TENANT's receipt of LANDLORD's written demand therefore.

## ARTICLE 9
### USE OF PREMISES BY LANDLORD

9.1    During the term of this Lease, LANDLORD shall continue to occupy the existing Church office, the Board Room, the two readers' rooms, the organist's room, the new Literature Distribution/Committee Room, Treasurer's office, 4th floor storage space, Sunday School office and nursery in the basement and all areas of the Building which contain portions of the Church's organ, including, but not limited to, organ pipes and mechanical equipment, which areas are not part of the Premises and shall not be accessed by TENANT, its employees, agents, invitees and contractors except in the event of an emergency or as otherwise specifically set forth herein. LANDLORD shall also have access to all other parts of the Premises not specifically designated for the exclusive use of TENANT, such as the 4th floor offices of TENANT, for the conduct of church services, Sunday School services, lectures, corporate meetings, classes and associations as more particularly set forth in Article 35 below.  TENANT shall install a door separating such 4th floor TENANT space from the Church space.  The 4th floor TENANT space shall be designated by a sign specifying "583 Park," and the 4th floor Church space shall be designated by

32

NY1 26400000 1

a sign specifying "Private Offices."  LANDLORD, at LANDLORD'S expense, shall also maintain a literature distribution box on the 63rd Street side of the Building at a location to be mutually agreed upon by the parties, which shall be constructed by LANDLORD at LANDLORD's expense, and shall be of the same quality and architectural detail as the new electronic signs, and which will conform to the aesthetics of the Building, such design and the materials used to construct same to be mutually agreed upon by the parties; however, the parties agree that the box shall have a transparent front.

### ARTICLE 10
### RIGHT TO PERFORM COVENANTS

10.1    TENANT covenants and agrees that if TENANT shall, at any time, fail to make any payment or perform any other act on its part to be made or performed under this Lease, LANDLORD, after the expiration of any time limitation set forth in this Lease (except in cases of emergency) and, in all events, after not less than five (5) days' written notice having been received by TENANT, may, but shall not be obligated to, make such payment or perform such other act to the extent LANDLORD may reasonably deem necessary to protect LANDLORD's interest in the Premises or to protect the condition of the Premises or the Building, and in connection therewith to pay expenses and employ counsel.  All sums so paid by LANDLORD and all expenses in connection therewith shall be deemed Additional Rent hereunder and be payable to LANDLORD on the first day of the next month following TENANT's receipt of not less than ten (10) days' written notice thereof from LANDLORD, and LANDLORD shall have the same rights and remedies for the nonpayment thereof as in the case of default in the payment of the Annual Basic Rent reserved hereunder.

33

## ARTICLE 11
## DAMAGE OR DESTRUCTION

11.1    A.    If the Premises or any part thereof shall be damaged by fire or other casualty, TENANT shall give prompt notice thereof to LANDLORD and this Lease shall continue in full force and effect except as hereinafter set forth.

B.    If the Premises are partially damaged or rendered unusable by fire or other casualty, the damages thereto shall be repaired by and at the expense of LANDLORD utilizing due diligence, and to the extent of the proceeds of the insurance policies required to be maintained by TENANT or LANDLORD hereunder, as the case may be.

C.    If the Premises are rendered wholly unusable or if the Building shall be so damaged to the extent of fifty (50%) percent or more in square footage or value and LANDLORD shall decide to demolish it or not to rebuild it, then, in such event, LANDLORD or TENANT may elect to terminate this Lease by written notice to the other given within ninety (90) days after such fire or casualty specifying a date for the expiration of the Lease, which date shall not be more than thirty (30) days after receipt of such notice. Upon the date specified in a notice of termination given under and pursuant to this Article 11, the Term shall expire as fully and completely as if such date were the date set forth above for the termination of this Lease and TENANT shall forthwith quit, surrender and vacate the Premises without prejudice however, to each party's rights and remedies against the other under the Lease provisions in effect prior to such termination, and any rent owing shall be paid up to the date of the occurrence. Any payments of rent made by TENANT which were on account of any period subsequent to such date shall be returned to TENANT within thirty (30) days after the effective date of such termination. Also, LANDLORD shall repay to TENANT the balance of the cost to repair the roof as set forth in Paragraph 5.4 of this lease which has not previously been deducted by

34

NY1 26400000 3

TENANT from the Percentage Rent to be paid hereunder. Unless LANDLORD or TENANT shall serve a termination notice as provided for herein, LANDLORD shall make the repairs and restorations under the conditions of this Article 11, with all reasonable expedition, subject to delays due to adjustment of insurance claims, labor troubles and causes beyond LANDLORD'S control.

D.    Except as specifically provided herein, LANDLORD and TENANT each hereby releases the other, and waives its entire right of recovery against the other, for loss or damage to its respective property (real and personal) in, on or about the Premises, whether due to the negligence of LANDLORD or TENANT or their agents, employees, contractors and/or invitees and any subtenants of TENANT or otherwise. LANDLORD and TENANT further agree that their respective policies of property insurance shall contain a waiver of the insurer's right of subrogation (or a provision permitting the insured to waive the insurer's right of subrogation, in which event LANDLORD and TENANT hereby waive their insurer's right of subrogation) against the other party to this Lease for any claims for the loss or damage to the insured's property (real and personal). In the event that there are additional premiums for such waiver of subrogation, the party in whose favor such waiver is intended shall have the option to either pay the additional premium or waive the condition that the other's policy contains the same. TENANT acknowledges that LANDLORD will not carry insurance on TENANT's furniture and/or furnishings or any fixtures or equipment, improvements, or appurtenances removable by TENANT and agrees that LANDLORD will not be obligated to repair any damage thereto or replace the same. If thirty (30%) percent or more of the Premises is damaged by said fire or other casualty and less than two (2) years would remain in the Term, either LANDLORD or TENANT shall have the right to terminate this Lease upon written notice to the other within

thirty (30) days after said occurrence, and in such event, this Lease and the tenancy hereby created shall cease as of the date of said occurrence, and the Base Rent and additional rent will be adjusted and apportioned as of said date. Notwithstanding the foregoing, however, if LANDLORD shall terminate this Lease as aforesaid and TENANT shall, at that time, have not exercised either of the two (2) options to extend the Term, then, provided TENANT shall exercise the next remaining unexercised option, LANDLORD's notice shall be deemed null and void and LANDLORD, subject to the provisions of Section D hereof, shall restore the Premises as hereinbefore provided.

E.    TENANT hereby waives the provisions of Section 227 of the Real Property Law and agrees that the provisions of this Article shall govern and control in lieu thereof.

11.2    TENANT shall not knowingly do or permit to be done any act or thing upon the Premises, which will invalidate or be in conflict with fire insurance policies covering the building of which Premises form a part, and fixtures and property therein. TENANT shall, at its expense, comply with all rules, orders, regulations or requirements of the New York Board of Fire Underwriters, or any other similar body, which may be applicable to TENANT's use and occupancy of the Premises, provided that the necessity for such compliance results from the use and occupancy of the Premises by TENANT, and shall not do, or permit anything to be done, in or upon the Premises or bring or keep anything therein, or use the Premises in a manner which shall increase the rate of fire insurance on the building. This provision shall not prohibit TENANT from construction of the kitchen facilities in the Premises as set forth in Paragraph 5.3A and Exhibits C and E, nor from the use of the Premises as in this Lease provided.

36

11.3    Notwithstanding anything to the contrary contained in this Lease, during any period after damage or destruction and until the Premises have been restored, TENANT shall be entitled to an abatement of Annual Basic Rent and Additional Rent for the unusable portion of the Premises.

## ARTICLE 12
## CONDEMNATION

12.1    If the whole of the Premises shall be taken for any public or quasi-public use by any lawful power or authority by exercise of the right of condemnation or eminent domain (hereinafter called "Taking"), the Term and all rights of TENANT hereunder, except as hereinafter provided, shall cease and expire as of the date of vesting of title as a result of the Taking and the rent or additional rent paid for a period after such date shall be refunded to TENANT upon demand.

12.2    In the event of a Taking of less than the whole of the Premises, this Lease shall cease and expire in respect of the portion of the Premises taken upon vesting of title as a result of the Taking, and LANDLORD shall promptly restore the remaining portion of the Premises to a complete secure building.  If the Taking results in the portion of the Premises remaining after the Taking being inadequate, in the judgment of TENANT, for the efficient, economical operation of TENANT's business conducted at such time in the Premises, TENANT may elect to terminate this Lease by giving notice to LANDLORD of such election not more than forty-five (45) days after the actual Taking by the condemning authority, stating the date of termination, which date of termination shall be not more than thirty (30) days after the date on which such notice to LANDLORD is given, and upon the date specified in such notice to LANDLORD, this Lease and the Term shall cease and expire and LANDLORD, on demand, shall reimburse TENANT for

37

the cost of all or the portion of the roof that TENANT shall not as then have recouped from the Percentage Rent. If TENANT does not elect to terminate this Lease as aforesaid:

(i) The Annual Basic Rent and Additional Rent payable under this Lease shall be proportionately adjusted, and

(ii) The net award for the Taking shall be paid to and first used by LANDLORD, subject to the rights of any mortgagee, to restore the portion of the Premises and the building remaining after the Taking to substantially the same condition and tenantability (hereinafter called the "Pre-Taking Condition") as existed immediately preceding the date of the Taking; and

(iii) The balance, if any, shall be shared by LANDLORD and TENANT, pro rata to their respective interests in the Premises.

12.3 In the event of a Taking of less than the whole of the Premises which occurs during the period of two (2) years next preceding the date of expiration of the Term, other than a de minimus taking, LANDLORD or TENANT may elect to terminate this Lease by giving notice to the other party to this Lease of such election, not more than forty-five (45) days after the actual Taking by the condemning authority, unless TENANT, if TENANT, shall at that time have not exercised either of the options to extend the Term, then TENANT shall exercise the next remaining unexercised option, in which event, LANDLORD shall promptly restore the remaining portion of the Premises to a complete secure building. If either party elects to terminate this Lease, the notice shall state the date of termination, which date of termination shall not be more than thirty (30) days after the date on which such notice of termination is given. Upon the date specified in such notice, this Lease and the term hereof shall cease and expire all Annual Basic Rent and Additional Rent paid under this Lease for a period after such date of

NY1 26400900.3

termination shall be refunded to TENANT on or prior to the termination date. On or before such date of termination, TENANT shall vacate the Premises, and any of TENANT's property remaining in the Premises subsequent to such date of termination shall be deemed abandoned by TENANT and shall become the property of LANDLORD.

12.4    In the event of a Taking of the Premises or any part thereof, and whether or not this Lease is terminated, TENANT shall have no claim against LANDLORD or the condemning authority for the value of the unexpired term of this Lease, but TENANT may interpose and prosecute a claim in any proceedings in respect of the Taking and shall be entitled to the value of TENANT's leasehold improvements and the unreimbursed cost of the roof repairs (if any) caused to be performed by TENANT pursuant to this Lease and the reasonable value of TENANT's fixtures and its moving expenses.

12.5    If, as a result of a Taking, TENANT shall no longer have the use and occupancy of the entire Premises as provided in this Lease, the Annual Base Rent and Additional Rent and the percentage of Percentage Rents shall be reduced pro rata to the square footage of the Premises no longer usable by TENANT as contemplated in this Lease transaction.

## ARTICLE 13
## BANKRUPTCY OR OTHER DEFAULT

13.1    A.    <u>Events of Bankruptcy</u>. The following shall be Events of Bankruptcy under this Lease:

(i)    TENANT's becoming insolvent, as the term is defined in Title 11 of the United States Code, entitled Bankruptcy, 11 U.S.C. Sec. 101 et seq. (the "Bankruptcy Code") or under the insolvency laws of New York State;

(ii)    The appointment of a Receiver or Custodian for any or all of TENANT's property or assets;

39

(iii)    The filing of a voluntary petition under the provisions of the Bankruptcy Code or Insolvency Laws;

(iv)    The filing of an involuntary petition against TENANT as the subject debtor under the Bankruptcy Code or Insolvency Laws, which is either not dismissed within ninety (90) days of filing, or results in the issuance of an order for relief against the debtor, whichever is later; or,

(v)    TENANT's making or consenting to an assignment for the benefit of creditors of a common law composition of creditors.

B.    LANDLORD's Remedies

(i)    Termination of Lease.  Upon the occurrence of an Event of Bankruptcy, LANDLORD shall have the right to terminate this Lease by giving fifteen (15) days prior written notice to TENANT that LANDLORD intends to terminate this Lease and, if within said fifteen (15) day period, the Event of Bankruptcy is not cured, LANDLORD may serve a thirty (30) day notice of termination, provided, however, that this Section "13.1 (B) (i)" shall have no effect while a case in which TENANT is the subject debtor under the Bankruptcy Code is pending, unless TENANT or its Trustee in Bankruptcy is unable to comply with the provisions of Sections "13.1B (v)" and "13.1B (vi)" below.  If TENANT or its Trustee is unable to comply with Sections "13.1 B(v)" and "13.1 B(vi)" below, this Lease shall automatically cease and terminate, and TENANT shall be immediately obligated to quit the Premises upon the giving of notice pursuant to this Section "13.1 B(i)".  Any other notice to quit, or notice of LANDLORD'S intention to re-enter is hereby expressly waived.  If LANDLORD elects to terminate this Lease, everything contained in this Lease on the part of LANDLORD to be done and performed shall cease without prejudice, subject, however to the right of LANDLORD to recover from TENANT

NY1 26400900.3

all rent and any other sums accrued up to the time of termination or recovery of possession by LANDLORD, whichever is later, and any other monetary damages or loss of reserved rent sustained by LANDLORD provided that any unamortized portion of TENANT's cost for the repair of the roof shall be refunded to TENANT prior to the Termination date.

(ii)    <u>Suit for Possession</u>.  Upon termination of this Lease, pursuant to Section "13.1 (B) (i)", LANDLORD may proceed to recover possession under and by virtue of the provisions of the laws of the State of New York, or by such other proceedings, including re-entry and possession, as may be applicable.

(iii)    <u>Reletting of Premises</u>.  Upon termination of this Lease, pursuant to Section "13.1 (B) (i)", the Premises may be relet by LANDLORD for such rent and upon such terms as are not unreasonable under the circumstances (bearing in mind the need for LANDLORD to continue to occupy the Premises as a church facility at all times), and if the full rental reserved under this Lease (and any of the costs, expenses, or damages indicated below) shall not be realized by LANDLORD, TENANT shall be liable for all damages sustained by LANDLORD, including, without limitation, deficiency in rent, reasonable attorneys' fees, brokerage fees, and expenses of placing the Premises in good condition.  LANDLORD, in putting the Premises in good order or preparing the same for re-rental may, at LANDLORD'S option, make such alterations, repairs, or replacements in the Premises as LANDLORD, in LANDLORD'S reasonable judgment, considers advisable and necessary for the purpose of reletting the Premises, and the making of such alterations, repairs, or replacements shall not operate or be construed to release TENANT from liability hereunder as aforesaid.  LANDLORD shall, in no event, be liable in any way whatsoever for failure to relet the Premises, or in the event that the Premises are relet, for failure to collect the rent thereof under such reletting, and in

41

no event shall TENANT be entitled to receive any excess, if any, of such net rent collected over the sums payable by TENANT to LANDLORD hereunder.

(iv)  Monetary Damages.  Any damage or loss of rent sustained by LANDLORD as a result of an Event of Bankruptcy may be recovered by LANDLORD, at LANDLORD'S option, at the time of the reletting, or in separate actions, from time to time, as said damage shall have been made more easily ascertainable by successive relettings, or in a single proceeding deferred until the expiration of the term of this Lease (in which event TENANT hereby agrees that the cause of action shall not be deemed to have accrued until the date of expiration of said term).  In the event TENANT becomes the subject debtor in a case under the Bankruptcy Code the provisions of this Section "13.1 B(iv)" may be limited by the limitations of damage provisions of the Bankruptcy Code.

(v)  Assumption or Assignment by Trustee.  In the event TENANT becomes the subject debtor in a case pending under the Bankruptcy Code, LANDLORD'S right to terminate this Lease pursuant to this Section "13.1" shall be subject to the rights of the Trustee in Bankruptcy to assume or assign this Lease.  The Trustee shall not have the right to assume or assign this Lease unless the Trustee: (a) promptly cures all defaults under this Lease, (b) promptly compensates LANDLORD for monetary damages incurred as a result of such default, and (c) provides adequate assurance of future performance.

(vi)  Adequate Assurance of Future Performance.  LANDLORD and TENANT hereby agree in advance that adequate assurance of future performance, as used in Section "13.1 B(v)" above, shall mean that all of the following minimum criteria must be met:

(a)  The Trustee must pay to LANDLORD, at the time the next payment of the monthly installment of Annual Basic Rent is due under this Lease, in addition to

42

such payment of Annual Basic Rent, an amount equal to the next three months Annual Basic Rent due under this Lease, said amount to be held by LANDLORD in escrow until either the Trustee or TENANT defaults in its payment of Annual Basic Rent or other obligations under this Lease (whereupon LANDLORD shall have the right to draw such escrow funds) or until the expiration of this Lease (whereupon the funds shall be returned to the Trustee or TENANT);

(b)      TENANT or Trustee must agree to pay to LANDLORD, at any time LANDLORD is authorized to and does draw on the funds escrowed pursuant to Section "13.1 B(vi)(a)" above, the amount necessary to restore such escrow account to the original level required by said provision;

(c)      TENANT must pay its estimated pro-rata share of the cost of all services provided by LANDLORD (whether directly or through agents or contractors, and whether or not the cost of such service is to be passed through to TENANT) in advance of the performance or provision of such services;

(d)      The Trustee must agree that TENANT's business shall be conducted in a first class manner, and that no liquidating sales, auctions, or other non-first class business operations shall be conducted on the premises;

(e)      The Trustee must agree that the use of the Premises as stated in this Lease will remain unchanged, including, but not limited to, the requirement that LANDLORD continue to operate as a church in the Premises as set forth herein and that TENANT shall continue to perform its obligations in support of such church use as set forth herein;

(f)      The Trustee must agree that the assumption or assignment of this Lease will not violate or affect the rights of other tenants of LANDLORD.

43

(vii)    Failure to Provide Adequate Assurance.  In the event TENANT is unable, within the time periods in the Lease provided, to:

(a)    Cure its defaults; or

(b)    Reimburse LANDLORD for its monetary damages; or

(c)    Pay the rent due under this Lease, on time (or within applicable grace and notice periods); or

(d)    Meet the criteria and obligations imposed by Section "13.1B(vi)" above; then TENANT agrees in advance that it has not met its burden to provide adequate assurance of future performance, and this Lease may be terminated by LANDLORD in accordance with Section "13.1B(i)" above.

13.2    Events of Default.  The following shall be Events of Default under this Lease.

(i)    TENANT's failure to pay any monthly installment of Annual Basic Rent, Percentage Rent or Additional Rent, the amount of which has been ascertained, within ten (10) business days after TENANT has received written notice of such failure from LANDLORD; nothing herein shall be deemed an election by LANDLORD of remedies and LANDLORD shall also have the right to commence a non-payment landlord/tenant proceeding against TENANT arising out of TENANT's failure to pay Annual Base Rent, Percentage Rent and Additional Rent under this Lease.

(ii)    TENANT's failure to make any other payment required under this Lease if such failure shall continue beyond thirty (30) days after LANDLORD'S notice that the same has not been paid.

(iii)    TENANT's violation or failure to perform any of the other terms, conditions, covenants or agreements herein made by TENANT if such violation or failure

44

continues for a period of thirty (30) days after LANDLORD'S written notice thereof to TENANT.

(iv)    In the event of any violation or failure to perform a covenant as contemplated in Section 13.2 A(iii), and if such covenant cannot be performed within the said thirty (30) day period, then and in that event, providing TENANT has promptly commenced to cure such violation and is diligently proceeding with the cure the time within which TENANT may cure the same shall be extended to such reasonable time as may be necessary to cure the same with all due diligence.

B.    If an Event of Default as hereinabove specified in Section 13.2 A(i), (ii) or (iii)' shall occur, and shall not be cured within the time period specified in LANDLORD'S notice, or as to a default provided for in Section 13.2A(iv) if TENANT has commenced a cure but fails to diligently proceed with same after thirty (30) days' written notice from LANDLORD then:

(i)    LANDLORD may give TENANT a ten (10) day written notice of its termination, and thereupon, at the expiration of said ten (10) day period following TENANT's receipt of such notice, this Lease shall expire as fully and completely as if the day were the date herein originally fixed for the expiration of the Term, and TENANT shall then quit and surrender the Premises to LANDLORD but TENANT shall continue to remain liable as hereinafter provided; or, (ii) LANDLORD, without prejudice to any other right or remedy of LANDLORD, held hereunder or by operation of law, and notwithstanding any waiver of any breach of a condition or Event of Default hereunder may, at its option and without further notice, dispossess TENANT and any legal representative or successor of TENANT or other occupant of the

Premises by summary proceedings or other appropriate suit, action or proceeding and remove his, her or its effects and hold the Premises as if this Lease had not been made.

13.3    Notwithstanding such default, re-entry, expiration and/or dispossession by summary proceedings, as provided in Section '13.2' above, TENANT shall continue liable during the full period which would otherwise have constituted the balance of the Term, and shall pay as liquidated damages at the same times as the Annual Basic Rent and Additional Rent and other charges become payable under the terms hereof, a sum equivalent to the Annual Basic Rent and Additional Rent and other charges reserved herein (less only the net proceeds of reletting as hereinafter provided), and LANDLORD may, but is not obligated to, rent the Premises either in the name of LANDLORD or otherwise, reserving the right to rent the Premises for a term or terms which may be less than or exceed the period which would otherwise have been the balance of the Term or any renewal term without releasing the original TENANT from any liability, applying any monies collected, first to the expense of resuming or obtaining possession, next to restoring the Premises to a rentable condition, and then to the payment of any brokerage commissions and legal fees in connection with the reletting of the Premises and then to the payment of the Annual Basic Rent, Additional Rent and other charges due and to grow due to LANDLORD hereunder, together with reasonable legal fees of LANDLORD therefor.

13.4    LANDLORD and TENANT do hereby mutually waive trial by jury in any action, proceeding or counterclaim brought by either LANDLORD or TENANT against the other with regard to any matters whatsoever arising out of or in any way connected with this Lease, the relationship of LANDLORD and TENANT, and TENANT's use or occupancy of the Premises, provided such waiver is not prohibited by any laws of the State of New York. Any action or proceeding brought by either party hereto against the other, directly or indirectly, arising out of

46

this agreement (except for a summary proceeding), shall be brought in a court in the County in which the Premises are located and all motions in any such action shall be made in such County.

13.5    TENANT hereby agrees that in any action or summary proceeding brought by LANDLORD for the recovery of Annual Basic Rent, it will not interpose any counterclaim nor will TENANT seek to consolidate or join for trial any such action or proceeding with any other action or proceeding, unless TENANT will, as a matter of law, lose its cause of action for failure to institute such counterclaim or effectuate such joinder.

13.6    If TENANT shall default in the observance or performance of any term or covenant on TENANT's part to be observed or performed under or by virtue of any of the terms or provisions in this Article of this Lease, LANDLORD may immediately or at any time thereafter and, after at least ten (10) days' prior written notice to TENANT and the opportunity to cure or to commence to cure, perform the same for the account of TENANT, and if LANDLORD makes any expenditures or incurs any obligations for the payment of money in connection therewith including, but not limited to, reasonable attorneys' fees in instituting, prosecuting or defending any action or proceeding such sums paid or obligations incurred with interest and costs shall be deemed to be additional rent hereunder and the sum shall be due immediately upon LANDLORD incurring same and may be included as an item of additional rent in any summary proceeding instituted by LANDLORD.

13.7    In the event that TENANT shall, twice within any twelve (12) month period, fail to pay, within ten (10) days of receipt of written notice that same is due, any installment of Annual Basic Rent, Percentage Rent or Additional Rent then, in addition to all of the other rights and remedies reserved to LANDLORD herein, LANDLORD may, upon giving TENANT ten (10) days' prior written notice, require that all future payments of Annual Basic Rent, Percentage

47

Rent and Additional Rent shall be paid for the next twelve (12) calendar months during the Term by certified check or bank check only. The failure of TENANT to comply with the terms and provisions of this paragraph shall be deemed to constitute a breach of a material and substantial covenant of this Lease.

## ARTICLE 14
### CUMULATIVE REMEDIES — NO WAIVER

14.1    The specific remedies to which LANDLORD or TENANT may resort under the terms of this Lease are cumulative and are not intended to be exclusive of any other remedies or means of redress of which they may be lawfully entitled in case of any breach or threatened breach by either of them of any provision of this Lease. The failure of LANDLORD or TENANT to insist in any one or more cases upon the strict performance of any of the covenants of this Lease, or to exercise any option herein contained, shall not be construed as a waiver or relinquishment for the future of such covenant or option. A receipt by LANDLORD of rent with knowledge of the breach of any covenant thereof shall not be deemed a waiver of such breach, and no waiver, change, modification or discharge by either party hereto of any provision in this Lease shall be deemed to have been made or shall be effective unless expressed in writing and signed by both LANDLORD and TENANT. In addition to the other remedies in this Lease provided, LANDLORD or TENANT shall be entitled to restraint by injunction of any violation, or attempted or threatened violation, of any of the covenants, conditions or provisions of this Lease or to a decree compelling performance of any such covenants, conditions or provisions.

## ARTICLE 15
### SUBORDINATION

15.1    Subject to the provisions set forth below, it is hereby expressly agreed that this Lease and all rights of TENANT hereunder shall be subject and subordinate at all times to any

mortgages and any renewals, replacements, extensions or modifications thereof, which may now be or shall hereafter become liens on the Premises provided, however, that TENANT's estate in the Premises shall not be disturbed so long as TENANT shall be making payment of all rents due under this Lease and shall attorn to any lender or other party which succeeds to the interest of LANDLORD under this Lease. TENANT agrees that at any time upon ten (10) days' written notice, TENANT will execute and deliver to LANDLORD a subordination, nondisturbance and attornment agreement on terms reasonably acceptable to TENANT confirming the provisions of this Article and failure of TENANT to execute and deliver such agreement shall not affect the subordination provided for hereunder.

15.2    LANDLORD represents that there is currently no mortgage encumbering the Premises. Any future mortgage obtained by LANDLORD shall be subordinate to this Lease, unless LANDLORD obtains a mutually acceptable subordination and non-disturbance agreement ("SNDA") from such mortgagee, in which event this Lease shall be subordinate to the mortgage and TENANT agrees to sign such SNDA on terms reasonably acceptable to TENANT with ten (10) days of LANDLORD presenting same to TENANT.

## ARTICLE 16
### QUIET ENJOYMENT

16.1    LANDLORD covenants and agrees that TENANT, upon paying the Annual Basic Rent and all other charges herein provided and observing and keeping the covenants, agreements and conditions of this Lease on its part to be kept on the terms in this Lease provided, shall and may peaceably and quietly hold, occupy and enjoy the Premises during the Term, subject to LANDLORD's right to continue to occupy and utilize those portions of the Premises for Church purposes as set forth herein.

49

ARTICLE 17
NOTICES

17.1    All notices, demands and requests, which may, or are required to, be given by

either party to the other shall be in writing.  All notices, demands and requests by LANDLORD

to TENANT shall be deemed to have been properly given if sent by United States registered or

certified mail, return receipt requested, postage prepaid, by facsimile transmission with receipt

confirmed by the sender, or by a nationally recognized overnight carrier, such as Federal

Express, as follows:

A.    If to LANDLORD:

Clerk
Third Church of Christ, Scientist, of New York City
583 Park Avenue
New York, NY  10021
Fax No. 212-838-7824

With a Copy to:

SATTERLEE STEPHENS BURKE & BURKE LLP

230 Park Avenue
New York, NY 10169
Attention:  J. Gregory Saver, Esq.
Fax No. 212-818-9606

B.    If to TENANT prior to the Commencement Date:

1111 Park Avenue
New York, NY  10128
Attention:  Louis Rose
Fax No. 212-410-1217

If to TENANT subsequent to the Commencement Date at the Premises.

NYJ 26400900.3

With a Copy to:

Seyfarth Shaw LLP
1270 Avenue of the Americas
New York, New York  10020
Attention:  Barry H. Mandel, Esq.
Fax No. 212-218-5526

Either party may, by notice given to the other party, designate a new address to which notices, demands and requests will be sent and, thereafter, any of the foregoing shall be sent to the address most recently designated by such party.  Notices in the aforesaid manner shall be deemed to have been served or given for all purposes under this Lease at the time such notice, demand or request shall be received by the party to whom addressed or returned by the Post Office as having been "refused" or "undeliverable".  Notices given by the attorney for either party shall be deemed given by said party.

## ARTICLE 18
### DEFINITION OF CERTAIN TERMS, ETC.

18.1    The captions of this Lease are for convenience and reference only and, in no way, define, limit or describe the scope or intention of this Lease or in any way affect this Lease.

18.2    The term "TENANT" as referred to hereunder shall refer to this TENANT and any successor or assignee of this TENANT.

18.3    The term "LANDLORD" as used hereunder shall mean only the owner for the time being of the land and building of which the Premises form a part, so that in the event of any sale of the Building (subject to TENANT's right of first refusal as set forth in Article 36 below), this LANDLORD shall be and hereby is entirely free and relieved of all covenants and obligations of LANDLORD hereunder and it shall be deemed and construed without further agreement between the parties, or their successors in interest, that the purchaser of the Building agreed to carry out all of the terms and covenants and obligations of LANDLORD hereunder.

51

18.4    The term "Interest Rate" shall mean the prime rate of interest as published in the Wall Street Journal (or successor publication) plus two (2%) percent.

## ARTICLE 19
## INVALIDITY OF PARTICULAR PROVISIONS

19.1    If any term or provision of this Lease or the application thereof to any person or circumstance shall, to any extent, be invalid or unenforceable, the remainder of this Lease, or the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and each term and provision of this Lease shall be valid and be enforced to the fullest extent permitted by law.

## ARTICLE 20
## COVENANTS TO BIND AND BENEFIT RESPECTIVE PARTIES

20.1    It is further covenanted and agreed by and between the parties hereto that the covenants and agreements herein contained shall bind and inure to the benefit of LANDLORD, its successors and assigns, and TENANT, its successors and assigns, subject to the provisions of this Lease.

20.2    Each party hereby agrees to cooperate with and assist the other party in a commercially reasonable manner in order to carry out and effectuate the purposes of this Lease. Without limitation, the parties shall execute such documents (including all necessary or desirable governmental filings) and take such actions in compliance with the provisions of the foregoing sentence.

## ARTICLE 21
## INSURANCE

21.1    A.    TENANT shall, at all times during the Term, carry Public Liability Insurance (including liquor liability coverage if available at commercially reasonable rates) for

the Premises naming LANDLORD as an additional insured with combined single limits of $2,000,000.00 for injury to persons, death and property damage. LANDLORD reserves the right during the term and any extension term to reasonably increase the limit of insurance to an amount which is commercially reasonable and comparable to the limits required by landlords of properties in which similar operations are carried out.

      B.     LANDLORD shall, at all times during the Term, carry Public Liability Insurance for the Premises naming TENANT as an additional insured with combined single limits of $2,000,000.00 for injury to persons, death and property damage. TENANT reserves the right during the term and any extension term to reasonably increase the limit of insurance to an amount which is commercially reasonable and comparable to the limits required by landlords of properties in which similar operations are carried out.

    21.2   A.     Prior to taking possession, TENANT shall deliver to LANDLORD a certificate of the insurance company licensed to do business in the State of New York with a Bests rating of A, certifying that the aforesaid liability policy is in full force and effect. A certificate evidencing the renewal of such liability insurance policy shall be delivered to LANDLORD at least twenty (20) days before the expiration thereof and each such renewal certificate shall include LANDLORD as an additional insured. TENANT may carry the aforesaid insurance as a part of a blanket policy provided, however that a certificate thereof naming LANDLORD as an additional insured is delivered to LANDLORD as aforesaid. Such policy of insurance or certificate shall also provide that said insurance may not be canceled unless ten (10) days' notice is given to LANDLORD prior to such cancellation and that the insurance as to the interest of LANDLORD shall not be invalidated by any act or neglect of TENANT.

B.    Prior to taking possession, LANDLORD shall deliver to TENANT a certificate of the insurance company licensed to do business in the State of New York with a Bests rating of A, certifying that the aforesaid liability policy is in full force and effect. A certificate evidencing the renewal of such liability insurance policy shall be delivered to TENANT at least twenty (20) days before the expiration thereof and each such renewal certificate shall include TENANT as an additional insured. LANDLORD may carry the aforesaid insurance as part of a blanket policy provided, however, that a certificate thereof naming TENANT as an additional insured is delivered to TENANT as aforesaid. Such policy of insurance or certificate shall also provide that said insurance may not be canceled unless ten (10) days' notice is given to TENANT prior to such cancellation and that the insurance as to the interest of TENANT shall not be invalidated by any act or neglect of LANDLORD.

21.3    TENANT shall, prior to doing any work in the Premises, obtain any and all permits necessary therefor and will provide Worker's Compensation Insurance and Liability Insurance in the limits provided for in Section "21.1" hereof if and as required by law.

21.4    LANDLORD shall throughout the term of this Lease provide and keep in force the following insurance:

A.    All-risk insurance against loss or damage or injury or destruction to the Building and appurtenances thereto resulting from fire or other casualty and malicious mischief and including sprinkler leakage, in a stated amount equal to the replacement cost of the Building, but in any event in an amount not less than eighty (80%) percent of the replacement value of the Premises. Such insurance shall cover the Building, LANDLORD'S Work and TENANT Improvements.

54

B.     Rent insurance in an amount equal to one year's Basic Annual Rent and Taxes either as a separate policy or as a part of LANDLORD's casualty policy.

C.     War risk insurance upon the Building if, as and when such insurance is obtainable from the United States Government or any agency or instrumentality thereof at commercially reasonable rates, and a state of war or national or public emergency exists or threatens, in an amount not less than the full insurable value thereof.

21.5    TENANT shall pay to LANDLORD the premiums for the insurance set forth in Section 21.4 hereof as Additional Rent, which amount shall be paid to LANDLORD within ten days after LANDLORD renders a bill therefor.

21.6    The proceeds of rent insurance provided for herein shall be paid solely to LANDLORD who shall apply them, from time to time, to TENANT's obligation to pay Rent and Additional Rental during the period of any restoration as provided for herein.

21.7    TENANT shall not take out separate insurance concurrent in form or contributing in the event of loss with that carried by LANDLORD pursuant to this Article 21.  The foregoing shall in no way prohibit TENANT from having the right to take out business interruption insurance and contents insurance, among others.

21.8    TENANT shall cause LANDLORD to be named as an additional insured on any insurance policy required by TENANT from any of TENANT's vendors or suppliers in connection with any TENANT related event in the Premises.

21.9    LANDLORD shall cause TENANT to be named as an additional insured on all policies of insurance required to be maintained by LANDLORD hereunder.  The insurance coverage to be secured by LANDLORD hereunder shall be secured through an insurance broker or brokers approved by TENANT.

55

## ARTICLE 22
## USE, ASSIGNMENT OR SUBLETTING

22.1    TENANT shall use and occupy the Premises solely as a high end, first class

catering facility and for banquets, special events and meetings, all of which may include the

preparation and service of food and alcoholic and non-alcoholic beverages and may include

music and dancing as well as the use by TENANT of LANDLORD's organ and piano located at

the Premises (subject to the restrictions set forth below).  TENANT may also use the Premises

for related uses, including but not limited to a venue for TENANT's corporate meetings, storage,

telecommunications equipment, video display terminals, computer terminals, personal

computers, computer room and conference and copy rooms, all of which must be related to and

ancillary to the operation of TENANT's business for the uses and purposes set forth above.  Any

items stored by TENANT in the auditorium during use of the auditorium by LANDLORD must

be appropriately covered and screened.  All events conducted by TENANT at the Premises shall

be private events, not open to the general public.  In connection with any event conducted by

TENANT at the Premises.  TENANT shall exercise commercially reasonable efforts to insure

that no smoking shall be permitted at any of the front doors to the Building.  TENANT shall

provide and maintain sand urns to the left of the front entrance and to the right of the side

entrance to the Building, similar to those utilized outside the Pierre Hotel.

22.2    Unless LANDLORD shall have given its consent thereto, this Lease may not be

assigned nor may the Premises be sublet in whole or in part.  In determining whether or not to

consent, LANDLORD shall take into consideration the use to which the sub-tenant or assignee

will put the space and the nature of the sub-tenant's or assignee's business, the location of the

space within the building (in the event of a sublease), the character and reputation of the

proposed subtenant or assignee, any alterations which may be necessary to accommodate the

56

subtenant or assignee and the impact of all of the foregoing on the Premises and LANDLORD's right to continue to occupy and utilize the Premises or portions thereof for Church purposes as set forth herein. Notwithstanding the foregoing, LANDLORD shall not unreasonably withhold its consent to an assignment of this Lease in connection with a sale of TENANT's business operations on the following terms and conditions:

A.    At least sixty (60) days prior to any proposed assignment or sublease, TENANT shall submit to LANDLORD a statement containing the name and address of the proposed assignee and all of the principal terms and conditions of the proposed assignment including, but not limited to, the proposed effective date of the assignment, the nature of the proposed assignee's business, the prior three (3) year history of the proposed assignee and its principals, together with satisfactory proof of financial responsibility and personal references to substantiate the required financial statements and such financial and other information as LANDLORD may reasonably request.

B.    LANDLORD shall not be deemed unreasonable in withholding its consent to any assignment if LANDLORD's determines, in LANDLORD's reasonable discretion that:

(i)    the character, reputation or nature of the business of the proposed assignee or subtenant is not in keeping with that of the Premises or would interfere with LANDLORD's right to continue to occupy and utilize the Premises or portions thereof for Church purposes on the terms herein provided;

(ii)    the proposed occupancy shall impose an extra burden on the Premises' HVAC or other systems or Premises' services;

(iii)    the proposed assignment shall not prohibit any further assignment except in compliance with the provisions of this Lease;

57

(iv)    TENANT is in default beyond applicable grace and notice periods under this Lease either at the time LANDLORD's consent to such assignment is requested or at the effective date of any assignment;

(v)    TENANT shall fail to reimburse Owner for Owner's reasonable costs incurred in connection with said assignment, including, without limitation, reasonable attorneys fees and disbursements, investigation as to the acceptability of a proposed assignee and the preparation and review of documents relating to such transaction;

(vi)    the proposed assignee has diplomatic or sovereign immunity or is not subject to the service of process in or the jurisdiction of the courts of New York State;

(vii)    the proposed assignee (or any principal thereof) is not a person held in high regard or does not have a reputation equivalent to or better than that enjoyed by the Rose Group Park Avenue LLC or does not possess the financial resources to meet the obligations of the TENANT under this Lease;

(viii)    the proposed assignee has not been engaged in a business substantially similar to that conducted by TENANT on the Premises for at least three (3) years;

(ix)    TENANT fails to deliver to LANDLORD the information and documents required by Article 22 or the form and substance of the assignment and all ancillary documents shall not have been approved by LANDLORD.

22.3    TENANT shall, at least thirty (30) days prior to the effective date thereof, deliver to LANDLORD a fully executed counterpart of the assignment and all ancillary documents thereto, in form and substance reasonably satisfactory to LANDLORD, and in which the assignee assumes TENANT's obligations under this Lease.

22.4    In the event that any sub-tenant or assignee should hold over in the Premises beyond the expiration of the Term, TENANT hereunder shall be responsible to LANDLORD for all Annual Basic Rent and additional rent until the Premises are delivered to LANDLORD in the condition provided for in this Lease.

22.5    In the event of any sublease, notwithstanding the terms and conditions thereof, the terms and conditions of this Lease shall be controlling between LANDLORD and TENANT and in the event of an assignment, the assignee must execute an assumption agreement assuming all of TENANT's obligations under this Lease. A copy of the executed sublease and assignment and assumption agreement shall be delivered to LANDLORD prior to the effective date thereof.

22.6    TENANT shall pay LANDLORD'S reasonable legal fees in connection with LANDLORD's approval of any subletting or assignment.

## ARTICLE 23
## LANDLORD'S LIABILITY

23.1    In the event that LANDLORD shall default under the terms of this Lease and TENANT shall recover a judgment against LANDLORD by reason of such default or for any reason arising out of the tenancy or use of the Premises by TENANT or the Lease of the Premises to TENANT, LANDLORD'S liability hereunder shall be limited to LANDLORD'S interest in the Premises and no further, and TENANT agrees that in any proceeding to collect such judgment, TENANT's right to recovery shall be limited to LANDLORD'S interest in the Premises.

## ARTICLE 24
## ENTIRE AGREEMENT

24.1    This instrument contains the entire agreement between the parties hereto and the same may not be changed, modified or altered except by a document in writing executed and delivered by the parties hereto.

## ARTICLE 25
## CERTIFICATES

25.1    Upon request, LANDLORD or TENANT agrees to execute and deliver to the other any certificate or certificates evidencing the Commencement Date and the fact that the Lease is in full force and effect, if such is the case, and that there are no pending set-offs or other claims against the other or stating those claims which such party might have against the other.

25.2    Simultaneously with the execution of this Lease, LANDLORD and TENANT shall execute a memorandum of lease in recordable form, which memorandum shall set forth the Commencement Date, the Expiration Date and the subordination of the Lease to a permanent first mortgage to be held by an institutional lender subject to the terms of this Lease and subject to TENANT's right of attornment.

## ARTICLE 26
## BROKER

26.1    LANDLORD and TENANT each represent that it dealt only with Rhoda Forman, as broker in connection with this transaction and LANDLORD and TENANT each agree to indemnify the other against any claims or expenses which the indemnified party may incur by reason of the indemnifying party having dealt with any other broker in connection with this transaction.  LANDLORD and TENANT agree THAT EACH SHALL PAY ONE-HALF OF the commission due Rhoda Forman pursuant to a separate agreement.

NY1 26400900 3

## ARTICLE 27
### SIGNS

27.1    TENANT shall, subject to obtaining LANDLORD's written consent, which shall not be unreasonably withheld, conditioned or delayed, and any necessary permits therefor (including any permits needed from the Landmarks Preservation Commission, if any), install a sign above the center doorway of the center front of the Building identifying it as "583 Park Avenue" or "583". TENANT shall also remove or cover, at TENANT'S option, the existing signs on the building façade and replace or cover them with blank ("faux") windows. TENANT shall also install, in such a manner as to not damage the existing engraving a blank piece of limestone or limestone veneer over the engraved lettering over the front pillars. Tenant shall also install an electronic sign to the left of the 63rd Street side entrance (the "63rd Street Sign") and another electronic sign at approximately eye level on the corner of the Building facing Park Avenue (the "Park Avenue Sign"), both of which will indicate the existence of LANDLORD's Sunday School and Church at all times except when TENANT is using the Premises for a third-party function or marketing the Premises. TENANT shall not market the Premises whenever a Church Related Activity, as defined below, is taking place in the Premises (except for Church Classes).

## ARTICLE 28
### HOLDING OVER

28.1    TENANT covenants that it will vacate the Premises not later than 5:00 p.m. on the last day of the Term as same may be extended.

28.2    If TENANT, or anyone holding through TENANT, retains possession of the Premises or any part thereof after the termination of the Term or any renewal term, TENANT shall pay LANDLORD a fee for use and occupancy equal to one hundred fifty (150%) percent of

the Annual Basic Rent, Percentage Rent and Additional Rent payable during the last year of the Term or renewal term for the period TENANT thus remains in possession. TENANT shall not become a month-to-month tenant without a writing signed by LANDLORD. The provisions of this Section do not exclude LANDLORD'S other rights hereunder, including without limitation, the right to remove TENANT through summary proceedings for holding over beyond the expiration of the Term or renewal term.

28.3    TENANT shall remove all of its property from the Premises prior to the expiration or sooner termination of the Lease. In the event TENANT should leave any fixtures, equipment or any other personal property in the Premises after the date fixed for the expiration of this Lease (or an earlier termination of this Lease), any such property shall be deemed abandoned by TENANT and shall, at LANDLORD's option, become the property of LANDLORD, or the same may be disposed of by LANDLORD at TENANT's cost and expense.

### ARTICLE 29
### LANDLORD'S RESERVATION OF RIGHTS

29.1    LANDLORD reserves to itself all rights to the use and access to the roof of the Building to install on the Building roof the antennas required by Cingular and Nextel or their successors and assigns. LANDLORD acknowledges that TENANT intends to repair the roof as hereinabove provided, and agrees that the installation of antennas on the roof will not void any roof guaranty or warranty. LANDLORD also reserves to itself all air rights or development rights appurtenant to the Building and TENANT agrees that it has no rights or interest whatsoever in or to any of said air rights or development rights or to any unused allowable floor to area ratio as permitted by the Zoning Code of the City of New York. TENANT consents to any utilization of such rights by LANDLORD and agrees promptly to execute and deliver any instruments which may be reasonably requested by LANDLORD, including instruments merging

62

zoning lots, evidencing such acknowledgement and consent if and to the extent TENANT's rights under this Lease are not adversely affected, except to a de minimus extent, and TENANT's signature is required. LANDLORD shall pay TENANT's reasonable costs and expenses, including reasonable attorneys' fees, incurred in connection therewith. The provisions of this paragraph shall be deemed to be and shall be construed as an express waiver by TENANT of any interest TENANT may have as a "party in interest" (as such term is defined in Section 12-10 of the Zoning Resolution of the City of New York) in the Building. LANDLORD also reserves to itself all rights to use and occupy the existing church office, the two readers' rooms, the existing Board Room, the organist's room, the new Literature Distribution/Committee Room, 4th floor storage area and Treasurer's office, the new Sunday School office and nursery in the basement and all areas of the Building containing portions of the Church's organ, as herein further provided in this Lease. LANDLORD agrees that TENANT shall be permitted the use of the Board Room on a "when available" basis. TENANT agrees that its renovation of the Premises shall include a cosmetic refurbishment of the Board Room in accordance with the Plans and Specifications to be approved by LANDLORD, which approval is not to be unreasonably withheld, delayed or conditioned.

### ARTICLE 30
### OPTION TO RENEW

30.1    Provided that TENANT is not in default beyond any applicable grace and notice periods either at the time of the exercise of this option or at the commencement of the Renewal Term, TENANT shall have the option to extend the Term of this Lease for two (2) additional periods of five (5) years each (the "Renewal Term").

30.2    In order to exercise this option, TENANT shall notify LANDLORD of the exercise not later than June 30, 2025 as to the first Renewal Term and June 30, 2030 as to the second Renewal Term.

30.3    All of the terms, covenants and conditions of this Lease shall attach to the Renewal Terms and the Annual Basic Rent to be paid by TENANT during the first Renewal Term shall be $663,224.00 and during the second Renewal Term shall be $846,589.00.

ARTICLE 31
GENERATOR

31.1    TENANT shall have the right to install an emergency generator and related equipment in an area mutually determined by LANDLORD and TENANT.

ARTICLE 32
RESTRICTIONS ON TENANT

32.1    TENANT agrees that at all times during the Term, it shall:

A.    Load and unload its merchandise, equipment and supplies, and remove any rubbish, at the side or rear of the Premises, at TENANT's cost and expense.  TENANT shall supply refrigerated storage for all rubbish and maintain a system to eliminate any offensive odors.  TENANT's rubbish storage and removal system must present no unreasonable physical or aesthetic hindrance to persons entering or leaving the Premises through the 63rd Street door.  TENANT shall retain the services of a private carting company to remove all rubbish from the Premises.

B.    Permit no act or practice which may tend to injure the building or its equipment or be a nuisance, or unreasonably obstruct the sidewalks or areas outside the Premises, nor burn any rubbish in or about the Premises, or, change the exterior color of the

64

Premises or the color, size or location of any sign approved by LANDLORD, nor permit any advertising medium or loudspeaker, radio broadcasts, etc. to be heard outside of the Premises.

## ARTICLE 33
## MAINTENANCE OF SIDEWALKS

33.1    TENANT shall, throughout the Term, maintain the sidewalks adjacent to the Building and shall shovel snow and sand or salt ice on the sidewalks and promptly repair same and any curbs and curb cuts.

33.2    In the event TENANT shall fail to maintain the sidewalks, after ten (10) business days' prior written notice from LANDLORD, LANDLORD may do any work necessary to preserve the sidewalks and TENANT shall pay to LANDLORD the cost in connection therewith.

## ARTICLE 34
## INDEMNIFICATION

34.1    TENANT shall and does hereby hold harmless, indemnify and defend LANDLORD and its employees, agents, servants, customers, vendors, tenants or invitees against all claims, demands and action or loss, liability, damage, cost and expense resulting from injury or death to any person and damage to property on or in connection with the Premises and this lease, except that resulting from LANDLORD's negligence or willful misconduct, or from or as a result of LANDLORD's use and occupancy of any portion of the Premises.

34.2    TENANT hereby releases LANDLORD and its agents and employees and any lessor under an over-lease and each mortgagee in respect of any claim (other than for LANDLORD's negligence or willful misconduct) which it might otherwise have against LANDLORD or its agents or employees or any lessor under an over-lease or mortgagee for loss, damage or destruction with respect to TENANT's property by fire or other casualty (including rental value or business interest, as the case may be) occurring during the term of this Lease and

which is required to be covered under a fire insurance policy with extended coverage and endorsement in the form required to be carried by TENANT pursuant to the provisions of this Lease.

34.3    LANDLORD shall and does hereby hold harmless, indemnify and defend TENANT and its employees, agents, servants, customers, vendors, tenants or invitees against all claims, demands and action or loss, liability, damage, cost and expense resulting from injury or death to any person and damage to property on or in connection with the Premises and this lease, except that resulting from TENANT's negligence or willful misconduct, or from or as a result of TENANT's use and occupancy of any portion of the Premises.

34.4    LANDLORD hereby releases TENANT and its agents and employees in respect of any claim (other than for TENANT's negligence or willful misconduct) which it might otherwise have against TENANT or its agents or employees or any lessor under an over-lease or mortgagee for loss, damage or destruction with respect to LANDLORD's property by fire or other casualty (including rental value or business interest, as the case may be) occurring during the term of this Lease and which is required to be covered under a fire insurance policy with extended coverage and endorsement in the form required to be carried by LANDLORD pursuant to the provisions of this Lease.

## ARTICLE 35
### USE OF PREMISES BY LANDLORD

35.1    TENANT acknowledges and agrees that during the term of this Lease and any renewal thereof, LANDLORD shall continue to use and occupy the Premises for the conduct of church services and other church related activities as herein set forth, subject to the relocation of certain Church or Church related rooms and offices and to the exclusive use by TENANT of

certain portions of the Premises, all as more particularly set forth herein.  Such Church services and other related activities are as follows:

A.    Sunday Church Services and Sunday School Services.  These services will require the use of the auditorium, the entrances to the Premises and the Sunday School Room and offices in the basement of the building from 7:00 a.m. until 1:00 p.m.

B.    Church services on each Wednesday evening and on Christmas Eve.  This will require the use of the auditorium and the entrances to the Premises from 5:30 p.m. until 9:00 p.m.

C.    Thanksgiving Church Services.  This will require the use of the auditorium and the use of the entrances to the Premises from 7:00 a.m. until 1:00 p.m. on each Thanksgiving Day.

D.    Association Meetings.  Association Meetings may be held in both the auditorium and the basement on four (4) Saturdays during each calendar year and will require the use of the entire Building from 7:00 a.m. until 7:00 p.m. on those days when such Association Meetings are scheduled.  Currently, Association Meetings are scheduled for the second Saturday in June 2006, the third Saturday in August 2006, the fourth Saturday in August 2006 and the first Saturday in November 2006.  The dates for the Association Meetings, subject to Paragraph 35.1G below, not to exceed four (4) in any calendar year, may change in the future and LANDLORD agrees to give TENANT not less than one (1) year's prior written notice of any such change in the date of an Association Meeting and will use reasonable efforts to accommodate TENANT's use of the Premises on those days.

E.    Church Classes.  Classes are held for two (2) weeks in late June/early July and two (2) weeks in August.  LANDLORD will notify TENANT in writing at least one (1) year

67