Exhibit D

It was **MOVED and SECONDED** to approve the lease with the Rose Group LLC, which lease has been presented to the membership at this meeting and will be attached to the minutes of the meeting, and to authorize the Chairman and Vice Chairman of the Board of Trustees to sign the lease on behalf of the Church.

It was **MOVED, SECONDED,** but **NOT CARRIED** to amend the above motion to require a two thirds majority vote to approve the motion.
No 19  Yes 13

The main motion **CARRIED**.
  Total number of members of the church is 64
  Number of members present is 32
  Number of members in favor is 17
  Number of members who voted against is 14
  Quorum is 14 (see Article IX, Section 5 of Church By-Laws)

It was **MOVED, SECONDED,** and **CARRIED** that until the completion of the initial installation by the Rose Group LLC (defined as Tenant's Work in the lease), the Board of Trustees be authorized to make structural alteration in the Church edifice and to the character of its decorations and furnishings, and in the character of any additions thereto, consistent with the plans and specifications contained in the lease that has been approved by the corporate body.

It was **MOVED, SECONDED,** and **CARRIED** that the Board of Trustees be authorized to change the terms of the lease in ways that do not significantly affect the costs and benefits to the church and that will enable the lease to conform to the requirements of the authorities from which the parties must obtain a necessary determination, license or order.

# THE BOARD OF TRUSTEES

## IN LIEU OF A SPECIAL MEETING OF

### THE BOARD OF TRUSTEES OF

### THIRD CHURCH OF CHRIST, SCIENTIST, OF NEW YORK CITY

The undersigned, being all of the Trustees of Third Church of Christ, Scientist, of New York City, a New York religious corporation (the "Church"), do hereby adopt the following resolutions:

**RESOLVED**, that the Indenture of Lease (the "Lease Agreement") between the Church and Rose Group Park Avenue LLC ("Tenant"), providing for the lease by the Church to Tenant of the premises located at 583 Park Avenue, New York, NY, which has been presented to each of the Trustees of the Church, be, and the same hereby is, approved in all respects; and that the Chairman and the Vice-Chairman (the "Authorized Officers") of the Church be, and each of them hereby is, authorized and directed, in the name and on behalf of the Church, to execute and deliver the Lease Agreement, (the "Final Lease Agreement"), and that the transactions contemplated in the Final Lease Agreement be, and the same hereby are, approved in all respects; and it is further

**RESOLVED**, that the Authorized Officers of the Church be, and each of them hereby is, authorized and directed, in the name and on behalf of the Church, to execute, deliver and perform all other agreements, certificates or other documents required to be executed, delivered, or performed by the Church or any of its officers or take any other action pursuant to the terms of the Final Lease Agreement or in connection with or in furtherance of the transactions contemplated thereby; and it is further

**RESOLVED**, that the Authorized Officers of the Church be, and each of them hereby is, authorized and directed to negotiate, prepare, execute, deliver, file, record, acknowledge, swear to, and affix the corporate seal (if any) to all such agreements, documents, certificates, instruments and other papers, and take all such action, and cause all such action to be taken, and do any and all of those things as each such officer doing any such thing may deem necessary, desirable, appropriate, expedient or

640835_1

Exhibit E

terms and conditions of all such agreements referred to therein, his or her execution thereof or action taken thereby to be deemed conclusive evidence of his or her approval thereof; and it is further

**RESOLVED**, that the corporate seal of the Church, if any, may be affixed to any instrument or document executed pursuant to the foregoing resolutions in original or facsimile form; and it is further

**RESOLVED**, that the Clerk of the Church be, and such officer hereby is, authorized and directed to certify copies of these resolutions and to provide such certified copies to all such parties as may be required or otherwise entitled to receive the same.

**WITNESS OUR HANDS**, as of this       day of February, 2006.

Fulton Macdonald

Thomas Draper

Joan Geier

John Ingraham

Martin Sirota

Exhibit E

The Ex Parte Motion office

At a Special Term, Part — of the
Supreme Court of the State of
New York, County of New York,
held at    Centre Street, New
York, New York, on the 22 day of
2006.

PRESENT: Honorable **WILLIAM J. DAVIS**

Justice

-------------------------------------- x

In the Matter of the Application of                    : Index No. 06/106847

THIRD CHURCH OF CHRIST, SCIENTIST, OF NEW
YORK CITY,

Petitioner

**FILED**
MAY 2 2 2006

For Leave to Lease Certain Real Property

NEW YORK
COUNTY CLERK'S OFFICE

**ORDER GRANTING LEAVE
TO LEASE CERTAIN REAL
PROPERTY OF A
RELIGIOUS CORPORATION**

Upon the reading and filing of the Petition, duly verified on March 16 & 17, 2006, of Third

Church of Christ, Scientist, of New York City, a Religious Corporation duly organized under

the Religious Corporation Law of the State of New York seeking an order of this Court

granting Petitioner permission to lease certain real property to the Rose Group Park Avenue

LLC for a term of up to twenty (20) years with a base rent of Two Hundred and Fifty

Thousand dollars ($250,000) per year for each of the first five years of the Lease; Three

Hundred Nineteen Thousand and Seventy Dollars ($319,070) per year for each of the sixth

through tenth years of the Lease; Four Hundred Seven Thousand Two Hundred and Twenty

Four Thousand Dollars ($407,224) per year for each of the eleventh through fifteenth years of

the Lease; and Five Hundred Nineteen Thousand Seven Hundred and Thirty Two dollars

($519,732) per year for each of the sixteenth through twentieth years of the Lease, along with

other additional and percentage rents as set forth in the Final Agreement of Lease annexed to

- 1 -

641028_1

the Petition.

NOW, upon the motion of Satterlee Stephens Burke & Burke LLP, attorneys for

Petitioner, it is hereby

ORDERED, that Petitioner hereby is granted permission to lease to Rose Group Park

Avenue LLC, pursuant to the Petition herein and the terms of the Final Agreement of Lease

annexed thereto and as set forth herein the following described property:

> 583 Park Avenue
> New York, New York
> Section 1, Block 1398, Lot 1

and it is further;

ORDERED that Petitioner shall use the rents realized pursuant to the Final Agreement

of Lease to further the established purposes of the Petitioner, which include among other

services:  public services, Sunday School, the maintenance of reading rooms, public lectures,

hospital services, and it is further

ORDERED, that Petitioner is hereby authorized to execute and deliver all necessary

documents in connection with completing such lease pursuant to said Petition and Final

Agreement of Lease, and to receive and apply the consideration for such lease to the purposes

set forth in said Petition; and it is further;

ORDERED, that Petitioner provide the Attorney General with a signed copy of this

Order; and it is further;

ORDERED, that the Petitioner shall notify the Attorney General in writing of any of the

following events: 1) the completion of the proposed transaction; 2) the abandonment of the

proposed transaction or 3) the pendancy of the proposed transaction after a period of ninety

641028_1

(90) days following the signing of this Order.

ENTER:

_____

J.S.C.

FILED

MAY 22 2006

NEW YORK
COUNTY CLERK'S OFFICE

THE ATTORNEY GENERAL HEREBY APPEARS HEREIN,
HAS NO OBJECTION TO THE GRANTING OF
JUDICIAL APPROVAL HEREON, ACKNOWLEDGES
RECEIPT OF STATUTORY NOTICE, AND DEMANDS
SERVICE OF ALL PAPERS SUBMITTED HEREIN
INCLUDING ALL ORDER, JUDGMENTS AND
ENDORSEMENTS OF THE COURT. SAID NO OBJECTION
IS CONDITIONED ON SUBMISSION OF THE MATTER
TO THE COURT WITHIN 30 DAYS HEREAFTER.

_____    5-17-06
ASSISTANT ATTORNEY GENERAL    DATE

- 3 -

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---------------------------------------------- x

In the Matter of the Application of : Index No.

THIRD CHURCH OF CHRIST, SCIENTIST, OF NEW
YORK CITY, :

                               Petitioner, :

                                        **VERIFIED PETITION**

For Leave to Lease Certain Real Property :

                                          :

---------------------------------------------- X

TO THE SUPREME COURT OF THE STATE OF NEW YORK:

        The Verified Petition of Third Church of Christ, Scientist, of New York City

(the "Church"), located at 583 Park Avenue, New York, New York 10021, respectfully shows:

        1.      The Church is a religious corporation duly organized and existing under

the New York State Religious Corporation Law.

        2.      The names and addresses of the Trustees of the Church are as follows:

Fulton Macdonald                    Thomas Draper
125 East 78th Street                25 Sutton Place South, #8P
New York, NY 10021              New York, NY 10022

Joan Geier                            John Ingraham
39-91 48th Street                   25 Sutton Place, 3rd Floor
Sunnyside Garden, NY 11104      New York, NY 10021

Martin Sirota
1 Strawberry Lance
Levittown, NY 11756

        3.      The Church is a branch of The First Church of Christ, Scientist, in

Boston, Massachusetts ("The Mother Church").  When The Mother Church was organized, the

stated purpose was "To organize a church designed to commemorate the word and works of our

641131_1

Master [Jesus Christ], which should reinstate primitive Christianity and its lost element of healing."

The activities of the Church are those required of a branch church by the Manual of The Mother Church (the "Manual").

Pursuant to Article 7, Section 6 of the Manual, a branch church holds public services. The Church holds a weekly Sunday service and weekly testimony meetings on Wednesday evening.

Pursuant to Article 20, Section 1 of the Manual, a branch church may receive students up to the age of twenty years in classes for teaching the Scriptures. The Church conducts a weekly Sunday School for such children.

Pursuant to Article 21, Section 1 of the Manual, each branch church maintains a Christian Science Reading Room. The Church currently maintains a Reading Room at 147 East 62nd Street. The Church also supports the activities of the Tri-State Reading Room Committee, which maintains a Christian Science Reading Room on John Street in New York City.

Pursuant to Article 32, Section 4, of the Manual, The Church sponsors, annually, at least one public lecture by a member of the Christian Science Board of Lectureship. In recent years, the Church has been sponsoring a lecture on or close to Christmas Eve and sometimes a second lecture.

Pursuant to Article 33, Section 3 of the Manual, the three largest churches in the State of New York appoint a person, called the Committee on Publication, whose duty it is to correct in a Christian manner, erroneous statements by the daily press concerning Christian Science, the founder of the church, (Mary Baker Eddy), or members of the church. The Church

2

and all other branch churches in the State of New York support the activities of the Committee on Publication by contributions.

Pursuant to Article 8, Section 31 of the Manual, persons knowledgeable in Christian Science who understand the practical wisdom necessary in a sick room can be listed as a Christian Science nurse in the Christian Science Journal, a monthly publication of the Christian Science Publishing Society. The Church and other Christian Science churches in the New York metropolitan area support a nursing and training facility in Riverdale, New York, known as High Ridge House, and the activity of the visiting nurse service of High Ridge House.

The Church supports a number of other joint activities of Christian Science Churches in the New York City metropolitan area. The Institutional Services Committee organizes visits by Christian Scientists to persons in prisons and hospitals for the purpose of holding services and discussing the application of prayer, the Scriptures and Christian Science. The Joint Media Project sponsors programs on radio and television that explain Christian Science and its application. The "Prayer Heals" project provides a telephone number that people can call to hear testimonies by persons who were healed through prayer. The Joint Advertising Committee purchases advertisements of the time and place of Christian Science services and lectures in the New York City metropolitan area. The Christian Science Bookmobile project distributes Christian Science books and literature at street fairs, at Christian Science lectures and on street corners.

The Church contributes annually to The Mother Church.

4.      The property owned by Petitioner and proposed to be leased is located at 583 Park Avenue, New York, New York 10021 (the "Property"). Upon the Lease becoming

3

in addition, the proposed tenant, Rose Group Park Avenue, LLC ("Rose Group") will utilize the Property to conduct its business as a high end, first class catering facility for banquets, special events and meetings. The Church will continue to operate and conduct services at the Property, as well as all other church functions, as set forth in the preceding paragraph.

5.  The fair market value of the Property is approximately $9,430,000.00 as a church building and $26,800,000.00 as a development site. This value was determined by an appraisal conducted by J.A. Cowan & Associates, Inc. A copy of the appraisal is annexed hereto as Exhibit A. An opinion letter was issued by the Staubach Company on May 12, 2006, concluding that the terms of the Lease, when compared to other comparable properties is fair. A copy of the opinion letter of the Staubach Company is annexed hereto as Exhibit J.

6.  Annexed hereto as Exhibit B is a certified financial statement of the Church for the year 2004. Annexed hereto as Exhibit C is an unaudited and uncertified draft financial statement of the Church for the year 2005.

7.  The Church will use the proceeds from the lease to support the activities of the Church as set forth in paragraph 3 herein. The Church has had a Christian school as a tenant for the last six years that paid approximately $100,000 per year. The Church used such rent to maintain the building and share expenses. The Church will no longer be able to lease space to that tenant. Thus, the cash proceeds from the lease will partially replace the rent previously received by the Church. The Church has continuing obligations under the new Lease to share the cost of any structural repairs. The Church will use the increased rent in part to fulfill such obligations. In addition, the Church expects the increased rent income will permit an expansion of community outreach activities and also consideration of a new and more visible Reading Room, which will benefit the community.

641131_1

4

8.     The Church proposes to lease the Property to Rose Group pursuant to the terms of the Final Agreement of Lease annexed hereto as Exhibit D.  In addition to the increased rents referenced in Paragraph 7 herein, the Church will benefit from the Final Agreement of Lease by way of Rose Group's obligation to advance the costs associated with the construction of a new roof for the property along with various other improvements to the property to be completed at the expense of the tenant, including but not limited to, an upgrade of all power and wiring systems, the installation of new telephone systems, the upgrade or replacing of heating, ventilation and air conditioning systems, etc.  See Exhibit C to Final Agreement of Lease (Exhibit D hereto) entitled "Tenant Improvement Works".  If not for the obligations of Rose Group under the Final Agreement of Lease, the Church would not have the finances to provide these necessary renovations to the Property.

9.     The dissolution of the Church is not contemplated after the lease of the Property.

10.     The consideration and terms provided by the Lease are fair and reasonable to the Church and the purposes of the Church as expressed in paragraphs 3 and 7 herein will be promoted by the Lease.

11.     The Lease, and terms contained therein, has been authorized by consent of the Trustees of the Church at a meeting held March 1, 2006.  A copy of the consent of the Trustees of the Church is annexed hereto as Exhibit E.

12.     A vote of the Church Congregation, pursuant to New York State Religious Corporation Law § 189,  regarding the approval of the Lease was presented to its membership and a majority voted in favor of the Lease.  Annexed hereto as Exhibit F is a true copy of the Motions from the January 28, 2006 Corporate Meeting of the Church.

5

641131_1

13.     Annexed hereto as Exhibit G is a certified copy of the By-Laws of the Church.

14.     Annexed hereto as Exhibit H and Exhibit I respectively, are true copies of the Certificate of Incorporation of the Church and its subsequent Name Change Order.

15.     This Verified Petition is made pursuant to Article 12 of the Religious Corporation Law of the State of New York.

16.     No prior application has been made to this or any other Court for the relief sought herein.

WHEREFORE, the Church respectfully requests that this Petition be granted in its entirety.

Dated: May 16, 2006

SATTERLEE STEPHENS BURKE & BURKE LLP

By: _____
J. Gregory Saver
Attorneys for Petitioner
230 Park Avenue, Suite 1130
New York, NY 10169
(212) 818-9200

6

641131_1

## VERIFICATION

STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF NEW YORK   )

FULTON MACDONALD, being duly sworn, deposes and says:

I am the Chairman of the Board of Trustees of Petitioner, Third Church of Christ, Scientist, of New York City

I have read the foregoing Petition.  The allegations contained therein are true to my own knowledge, except as to matters therein stated on information and belief and as to those matters I believe them to be true.

FULTON MACDONALD

Sworn to before me this
17 day of May, 2006

NOTARY PUBLIC

J. GREGORY SAVER
Notary Public, State of New York
No. 4689652
Qualified in Suffolk County
Commission Expires August 31, 199 2009

7

641131_1

## VERIFICATION

STATE OF NEW YORK     )
                               ) ss.:
COUNTY OF NEW YORK  )

      THOMAS DRAPER, being duly sworn, deposes and says:

I am the Vice Chairman of the Board of Trustees of Petitioner, Third Church of Christ,

Scientist, of New York City

      I have read the foregoing Petition.  The allegations contained therein are true to my own

knowledge, except as to matters therein stated on information and belief and as to those matters

I believe them to be true.


                                                       THOMAS DRAPER

Sworn to before me this
  day of May, 2006

NOTARY PUBLIC

                        LISA LE
           NOTARY PUBLIC, State of New York
                 No. 31-5001919
               Qualified in Queens County
      Commission Expires September 21, 20 06

8

641131_1

EXHIBIT E-1

Third Church of Christ, Scientist, of New York City

583 PARK AVENUE   NEW YORK, NY 10021-7363   (212) 838-1870
E-Mail Third ChurchOffice@Juno.com

February 3, 2006

Geneva School
Mr. Scott Parson
583 Park Ave.
New York, NY 10021

Dear Scott,

As you and many of the board members know, the church has been experiencing financial difficulty for the past several years, making it necessary for us to explore many avenues. These avenues thus far have involved solutions that would enable us to maintain our tenant relationship with you. Current conditions require major repairs, however, which can no longer be postponed.

A few days ago, the membership voted to enter a shared occupancy lease with a tenant who will contribute towards these repairs, making it possible to begin work in the near future.

This decision brings a bitter side - the inability to renew your lease. The Geneva School has become part of our family. We have enjoyed the harmonious atmosphere, working with you and your staff these past few years. It has been humbling to witness the poise and grace in your way of dealing with the students, staff, and the church. You have set a high standard and example for each student to attain and have maintained a disciplined environment. Communications between your staff and ours have been conducted with a sense of gratitude and love. These are additional reasons that this decision was very difficult.

Your lease ends on June 16th which is the last day of school for the teachers. Anticipating the challenges of moving, the church offers additional time – through June 30th – for the removal of your possessions. We will certainly try to make accommodations if time is needed beyond this date.

Please let us know how we can help.

Sincerely,
BOARD OF TRUSTEES

*Dora Redman*

Dora Redman
Clerk

# Exhibit F

 **BUILDINGS**          Additional Information

**1  Filing Status**

| Job Number | | | | |
|---|---|---|---|---|
| Sheet Number | 1 | of | 1 | Sheets |

As an attachment to:
Block  1398, lot 1          Third Church of Christ Scientist

**2  Additional Information**

Respectfully request pre consideration before  filing a professional certification application that a proposed accessory social hall,  ballroom  and catering within the existing church is an accessory use to the existing building.

The building is an existing two story and cellar  structure,  located in a landmark district, and constructed in 1921 under application NB 390/1921.  The lot is located in R-10  Park Improvement ( PI ) zoning district.

The existing plans  from 1922 indicate the first floor as the main auditorium and church, and lower level as Sunday school room. Since the building was constructed in 1921, it does not have a certificate of occupancy.

It is proposed to continue the use as a church , and add an accessory use of social hall,  ballroom and catering at first floor and cellar , for the periods that the hall is not being used as a church .   The accessory ballroom and catering meets the accessory use definition in Zoning Resolution 12-10 in that they are located in the same zoning lot as the principal use. They will remain under the same ownership of the Third Church of  Christ Scientist. The use is clearly incidental and customarily found in connection with the principal use, as a catering and ballroom is substantially for the benefit or convenance of the owners, occupants, employees, customers or visitors of the principal use.  The use, therefore remains the same use group 4 church and accessory uses.

The occupancy group  will also remain as F occupancy as a place of assembly and will have F-1b and F-4 occupancy.  Under the old code of 1938, the occupancy of the building remains as a public building.

Based on above, there is no change in use and occupancy of the building. The work should not require a new certificate of occupancy.  The building will be upgraded for ADA and handicapped access (LL 58/87), and also for exits, and fire protection equipment. The work will be filed as ALT-2 directive 14 applications.  A place of assembly permit will also be obtained for both church and ballroom catering.

*OK To Accept provided a new Certificate of occupancy is obtain with a restrictive declaration and note on the C.O that The accessory social Hall is To be use and operated exclusively and Only By The Church and for its member*

[stamp: REGISTERED ARCHITECT  MICHAEL L. GOLDBLUM  019536  STATE OF NEW YORK]

**3  Statements and Signatures**

I hereby state that the above information is correct and complete to the best of my knowledge.

Falsification of any statement is a misdemeanor under Section 28-124 of the Administration Code and is punishable by a fine or imprisonment, or both.

It is unlawful to give to a city employee, or for a city employee to accept, any benefit, monetary or otherwise, either as a gratuity for properly performing the job or in exchange for special consideration. Violation is punishable by imprisonment or fine or both.

Applicant Name          MICHAEL L. GOLDBLUM, R.A.

Signature

Date   3.29.06

4/10/06

Exhibit G

# Third Church of Christ, Scientist, of New York City

583 PARK AVENUE    NEW YORK, NY 10021-7363  (212) 838-1870
E-Mail Third ChurchOffice@Juno.com

June 2, 2006

To Whom It May Concern:

"For limited periods when the church building is not being utilized for our congregation, we have provided for various catered events which will also contribute to the church's ability to sustain itself.  These functions will be operated by a highly qualified, fully insured, professional caterer who will be under contract with the Church.  These ancillary functions are necessary because they will not only ensure our building will be upgraded and rehabilitated but will also allow us to be exposed to and reach out to a larger community.  The functions will be restricted by the contract with the Church and will make certain that 583 Park Avenue continues to serve as our Church in New York City well into the future."

Respectfully submitted,

R. Fulton Macdonald
Chairman of the Board

Thomas G. Draper, Jr.
Vice Chairman of the Board

*Ok to accept catered events under contract with the Church as complying with "accessory Social Hall" requirement of April 10, 2006 determination by L. Osorio*

6/28/06

Exhibit H

# NYC BUILDINGS

# Work Permit Department of Buildings

**Permit Number:** *104511495-01-AL*

**Issued:** *08/11/2006*    **Expires:** *08/11/2007*

**Address:** *MANHATTAN    583 PARK AVENUE*

**Description of Work:** *NO WORK*

*ALT1 - This no work application is being filed to change the occupancy from church and school to church, school, accesory social hall, ballroom and catering. All work*

For detailed information regarding this permit, please log on to BISWeb at www.nyc.gov/buildings

**Emergency Telephone Day or Night: 311**

**Borough Commissioner:** *Christopher M Santulli* **Commissioner of Buildings:**



Tampering with or knowingly making a false entry in or falsely altering this permit is a crime that is punishable by a fine, imprisonment or both.

OP-35A (2/05)

# NYC BUILDINGS



☒ CLICK HERE TO SIGN UP FOR BUILDINGS NEWS

### NYC Department of Buildings
## Work Permit Data

Premises: 583 PARK AVENUE MANHATTAN

Filed At: 583 PARK AVENUE MANHATTAN

BIN: 1042086  Block: 1398  Lot: 1

### NO WORK PERMIT

#### Printable (PDF) version of this Permit

| | | | |
|---|---|---|---|
| Job No: | 104511495 | Job Type / App No.: ALT1 | Fee: STANDARD |
| Permit No: | 104511495-01-AL | Issued: 08/11/2006 | Expires: 08/11/2007 |
| Seq. No.: | 01 | Filing Date: 08/11/2006 INITIAL | Status: ISSUED |
| Work: | | Proposed Job Start: 08/11/2006 | Work Approved: 08/08/2006 |

ALT1 - This no work application is being filed to change the occupancy from church and
school to church, school, accesory social hall, ballroom and catering. All work
is filed under DIR-14 application.

Zoning:  R10,,
Use:       ASSEMBLY (CHURCHES, CO
Total Floor Area:   36,511

Special District:  N/A
No. Dwellings:   N/A
Landmark:          YES

Stories:  2

Contractor:      LOUIS ROSE
Business:       ROSE GROUP PARK AVENUE, LLC.
  583 PARK AVENUE NEW YORK NY 10128

Lic:    0999991-NW
Phone:  212-300-6848

Superintendent of Construction:      LOUIS ROSE
Business:       ROSE GROUP PARK AVENUE, LLC.
  583 PARK AVENUE NEW YORK NY 10128

Phone:  212-300-6848

Filing Rep:
Business:

Phone:

Site Mgr:
Business:

Phone:

If you have any questions please review these Frequently Asked Questions, the Glossary, or call the 311 Citizen Service Center by
dialing 311 or (212) NEW YORK outside of New York City.

Exhibit I

# NYC BUILDINGS

## Work Permit Department of Buildings

**Issued:** 05/04/2007    **Expires:** 05/03/2008

**Permit Number:** 104564213-01-PL

**Address:** MANHATTAN       583 PARK AVENUE

**Description of Work:**
PLUMBING - ALT2 This application is being filed for interior demolition on Sub, Cel, Mez, 001-004 floors and Roof as shown on the plans submitted herewith. No change in

For detailed information regarding this permit, please log on to BISWeb at www.nyc.gov/buildings

**Emergency Telephone Day or Night:** 311

**Borough Commissioner:** Christopher M. Santulli       **Commissioner of Buildings:**

Tampering with or knowingly making a false entry in or falsely altering this permit is a crime that is punishable by a fine, imprisonment or both.

OP-35A (2/05)

# NYC ⬡BUILDINGS

## Work Permit Department of Buildings

Permit Number: *104754847-01-EQ-SH*

Address: *MANHATTAN        583 PARK AVENUE*

Description of Work:

*ALT3 - CONSTRUCTION EQUIPMENT - SIDEWALK-SHED*

Issued: *05/11/2007*    Expires: *04/01/2008*

For detailed information regarding this permit, please log on to BISWeb at www.nyc.gov/buildings

Emergency Telephone Day or Night:    311

Borough Commissioner: *Christopher M. Santulli* - Commissioner of Buildings:

Tampering with or knowingly making a false entry in or falsely altering this permit is a crime that is punishable by a fine, imprisonment or both.



OP-35A (205)

# NYC BUILDINGS

## Work Permit Department of Buildings



**Permit Number:** 104506991-01-EW-OT          **Issued:** 07/13/2007    **Expires:** 07/15/2009

**Address:** MANHATTAN          583 PARK AVENUE

**Description of Work:**
ALT2 - GEN.CONSTRUCTN.
This application is being filed in order to install a handicap lift and ramp at

For detailed information regarding this permit, please log on to BISWeb at www.nyc.gov/buildings

**Emergency Telephone Day or Night:** 311

**Borough Commissioner:** *Christopher M. Santulli*   **Commissioner of Buildings:**

Tampering with or knowingly making a false entry in or falsely altering this permit is a crime that is punishable by a fine, imprisonment or both.

OP-35A (2/05)

# NYC BUILDINGS

# Work Permit Department of Buildings

**Permit Number:** 104677208-01-EW-OT

**Issued:** 07/13/2007    **Expires:** 07/15/2009

**Address:**    MANHATTAN    583 PARK AVENUE

**Description of Work:**

ALT2 - GEN CONSTRUCTN.
Structural work, Roof airconditioning dunnage, Mezzanine framing, Elevator pit

For detailed information regarding this permit, please log on to BISWeb at www.nyc.gov/buildings

**Emergency Telephone Day or Night:** 311

**Borough Commissioner:** *Christopher M. Santulli* Commissioner of Buildings:

Tampering with or knowingly making a false entry in or falsely altering this permit is a crime that is punishable by a fine, imprisonment or both.

OP-35A (2/05)

# NYC BUILDINGS

# Work Permit Department of Buildings

Permit Number: *104650147-01-PL*

Issued: *02/09/2007*    Expires: *02/09/2008*

Address:    *MANHATTAN    583 PARK AVENUE*

Description of Work:

*PLUMBING - ALT2 INSTALLATION OF PLUMBING AND GAS FIXTURES AS PER PLAN.    APPLICATION FILED CONJUNCTION WITH ALTERATION#104511495.*

For detailed information regarding this permit, please log on to BISWeb at www.nyc.gov/buildings

Emergency Telephone Day or Night:    311

Borough Commissioner: *Christopher M Santulli*    Commissioner of Buildings:

Tampering with or knowingly making a false entry in or falsely altering this permit is a crime that is punishable by a fine, imprisonment or both.

OP-35A (2/05)

# NYC BUILDINGS

# Work Permit Department of Buildings

**Permit Number:** *104650165-01-EW-SP*

**Issued:** *03/08/2007*    **Expires:** *03/07/2008*

**Address:**    *MANHATTAN    583 PARK AVENUE*

**Description of Work:**

*ALT2 - SPRINKLER INSTALLATION OF SPRINKLER SYSTEM IN ALL CATERING AREAS (F-4) OCCUPANCY, INCLUDING KITCHEN AND SUBCELLAR. INSTALL SMOKE DETECTION IN LIEU OF SPRINKLERS*

For detailed information regarding this permit, please log on to BISWeb at www.nyc.gov/buildings

**Emergency Telephone Day or Night:** 311

**Borough Commissioner:** *Christopher M. Santulli* - **Commissioner of Buildings:**

Tampering with or knowingly making a false entry in or falsely altering this permit is a crime that is punishable by a fine, imprisonment or both.

OP-35A (205)

# NYC BUILDINGS

# Work Permit Department of Buildings

**Permit Number:** *104650165-01-PL*

**Issued:** *03/26/2007*    **Expires:** *03/25/2008*

**Address:** *MANHATTAN      583 PARK AVENUE*

**Description of Work:**
*PLUMBING - ALT2 INSTALLATION OF SPRINKLER SYSTEM IN ALLCATERING AREAS(F-4) OCCUPANCY,*
*INCLUDING KITCHEN AND SUBCELLAR. INSTALLSMOKE DETECTION IN LIEU OF SPRINKLERS*

For detailed information regarding this permit, please log on to BISWeb at www.nyc.gov/buildings

**Emergency Telephone Day or Night:  311**

**Borough Commissioner:** *Christopher M. Santulli*  **Commissioner of Buildings:** 

Tampering with or knowingly making a false entry in or falsely altering this permit is a crime that is punishable by a fine, imprisonment or both.

OP-35A (2/05)

# NYC BUILDINGS

## Work Permit Department of Buildings

**Permit Number:** 104878900-01-EW-FP

**Issued:** 09/05/2007    **Expires:** 07/15/2008

**Address:**    MANHATTAN    583 PARK AVENUE

**Description of Work:**
ALT2 - FIRE SUPPRESSION INSTALL FIRE SUPP. SYSTEM ONLY. GAS VALVE WAS FILED UNDER APPL#104
NO CHANGE IN USE, EGRESS OR OCCUP.

For detailed information regarding this permit, please log on to BISWeb at www.nyc.gov/buildings

**Emergency Telephone Day or Night:**    311

**Borough Commissioner:** _Christopher M. Santulli_    **Commissioner of Buildings:**

Tampering with or knowingly making a false entry in or falsely altering this permit is a crime that is punishable by a fine, imprisonment or both.

OP-35A (2/05)

# NYC BUILDINGS

## Work Permit Department of Buildings

Permit Number: 104564213-01-EW-OT

Issued: 07/13/2007    Expires: 07/15/2009

Address: MANHATTAN    583 PARK AVENUE

Description of Work:
ALT2 - GEN. CONSTRUCTN.
This application is being filed for interior demolition on Sub, Cel, Mez,

For detailed information regarding this permit, please log on to BISWeb at www.nyc.gov/buildings

Emergency Telephone Day or Night:    311

Borough Commissioner:    Christopher M. Santulli    Commissioner of Buildings:

Tampering with or knowingly making a false entry in or falsely altering this permit is a crime that is punishable by a fine, imprisonment or both.

OP-35A (2/05)

# NYC BUILDINGS

# Work Permit Department of Buildings

**Permit Number:** 104651609-01-EW-OT

**Issued:** 07/13/2007    **Expires:** 07/15/2009

**Address:** MANHATTAN    583 PARK AVENUE

**Description of Work:**
ALT2 - GEN.CONSTRUCTN.
This application is being filed for General Construction in conjunction to

For detailed information regarding this permit, please log on to BISWeb at www.nyc.gov/buildings

**Emergency Telephone Day or Night:** 311

**Borough Commissioner:** Christopher M. Santulli    **Commissioner of Buildings:**

Tampering with or knowingly making a false entry in or falsely altering this permit is a crime that is punishable by a fine, imprisonment or both.

OP-35A (2/05)

Exhibit J

583 Park Avenue
New York, New York

## FIRST LEASE AMENDMENT AGREEMENT

THIS FIRST LEASE AMENDMENT AGREEMENT is made and entered into as of the 15th day of September, 2006 (the "Effective Date"), by and between Rose Group Park Avenue LLC, hereinafter referred to as "Tenant", and Third Church Christ, Scientist, of New York City, hereinafter referred to as "Landlord" or "Church";

WHEREAS, Landlord and Tenant entered into that certain Final Agreement of Lease dated January 31, 2006, and that certain Commencement Date Agreement dated July 3, 2006, hereinafter collectively referred to as the "Lease", wherein Landlord demised to Tenant the premises known as 583 Park Avenue, New York, New York (the "Premises"); and

WHEREAS, among other things, the Lease obligates the Tenant to secure and maintain Public Liability Insurance of the types and in the amounts specified in the Lease; and

WHEREAS, among other things, the Lease obligates the Landlord to secure and maintain Public Liability Insurance of the types and in the amounts specified in the Lease, naming Tenant as an additional insured; and

WHEREAS, Landlord and Tenant desire to clarify and amend the types and amounts of Public Liability Insurance to be secured and maintained by Tenant and Landlord during the Lease Term; and

WHEREAS, in any Lease Year in which Gross Sales exceeds an amount equal to the then Annual Basic Rent multiplied by ten(10), the Lease obligates the Tenant to pay Percentage Rent in an amount equal to the sum of the Excess Gross Sales for such Lease Year, multiplied by ten (10%) percent; and

WHEREAS, Landlord and Tenant desire to clarify and amend the definition of Gross Sales as set forth in Subsections 3.5D.(i) and (ii) of the Lease; and

WHEREAS, in light of the foregoing, the parties desire to modify Sections 21.1A, 21.1B., 21.2B. and 21.9 concerning, among other things, certain insurance provisions in the Lease and Subsections 3.5D.(i) and (ii) concerning, among other things, the definition of Gross Sales; and

WHEREAS, the Lease permits Tenant to remove the pews from the main floor of the auditorium and the first row of the balconies; and

WHEREAS, the Landlord and Tenant desire to permit the Tenant to remove all of the pews from the balconies subject to the same conditions which apply to removal of the other pews.

NOW, THEREFORE, in consideration of the foregoing, the mutual covenants hereinafter contained and for other good, lawful and valuable consideration received by each of the parties to be bound hereby, the receipt and sufficiency of which is hereby acknowledged, Landlord and Tenant agree as follows:

1. Effect of this Document. This First Lease Amendment Agreement shall operate to amend the Lease only to the extent that the terms of the Lease are inconsistent with the provisions of this First Lease Amendment Agreement. Except as amended or modified by this First Lease Amendment Agreement, all terms and conditions of the Lease shall remain in full force and effect and Landlord and Tenant shall be bound thereby.

2. Builder's Risk Insurance. Section 6.5 is hereby amended by deleting the period at the end of the penultimate sentence thereof and adding the following: "; and (iv) evidence of builder's risk insurance for the period during which TENANT shall be performing alterations to the Premises, naming LANDLORD as additional insured."

3. Tenant Public Liability Insurance. Section 21.1A. of the Lease is hereby deleted in its entirety, and the following substituted in its place and stead:

"21.1A. TENANT shall, at all times during the Term, carry Public Liability Insurance (including liquor liability coverage if available at commercially reasonable rates) for the Premises naming LANDLORD as an additional insured with (i) a combined single limit of $2,000,000.00 for injury to persons, death and property damage, or (ii) split limits of $1,000,000 each occurrence, $2,000,000 general aggregate for injury to persons, death and property damage. LANDLORD reserves the right during the Term and any extension Term to reasonably increase the limit of insurance to an amount which is commercially reasonable and comparable to the limits required by landlords of properties in which similar operations are carried out."

4. Landlord Public Liability Insurance. (i) Section 21.1B. of the Lease is hereby deleted in its entirety, and the following substituted in its place and stead:

"B. LANDLORD shall, at all times during the Term, carry Public Liability Insurance for the Premises with (i) a combined single limit of $2,000,000.00 for injury to persons, death and property damage, or (ii) split limits of $1,000,000 each occurrence, $2,000,000 general aggregate for injury to persons, death and property damage. TENANT reserves the right during the term and any extension term to reasonably increase the limit of insurance to an amount which is commercially reasonable and comparable to the limits customarily carried by landlords of properties in which similar operations are carried out."

2

(ii) Section 21.2B. of the Lease is hereby deleted in its entirety, and the following substituted in its place and stead:

"B.    Prior to taking possession, LANDLORD shall deliver to TENANT a certificate of the insurance company licensed to do business in the State of New York with a Bests rating of A, certifying that the aforesaid liability policy is in full force and effect. A certificate evidencing the renewal of such liability insurance policy shall be delivered to TENANT at least twenty (20) days before the expiration thereof. LANDLORD may carry the aforesaid insurance as part of a blanket policy provided, however, that a certificate thereof is delivered to TENANT as aforesaid. Such policy of insurance or certificate shall also provide that said insurance may not be canceled unless ten (10) days' notice is given to TENANT prior to such cancellation and that the insurance as to the interest of TENANT shall not be invalidated by any act or neglect of LANDLORD."

5.    Removal and Replacement of Pews.  The first listed item after the colon in the second sentence of Paragraph 5.3A is hereby deleted in its entirety and the following is substituted in its place instead: "Removal and storage off site of the pews from the main floor of the auditorium and the balconies, said pews to be reinstalled by TENANT upon the expiration or termination of this lease (provided that TENANT, at TENANT'S option may elect not to store the pews in which case TENANT shall install new pews, of similar design and quality to existing pews, upon the expiration or termination of this lease)". In addition, the first sentence of Item 6 in Exhibit C is hereby deleted in its entirety and the following substituted in its place and stead: "Removal and store off-site of all pews on the main floor of the auditorium and in the balconies."

Landlord General Insurance Obligation.    Section 21.9 of the Lease is hereby deleted in its entirety, and the following substituted in its place and stead:

"21.9  The insurance coverage to be secured by LANDLORD hereunder shall be secured through an insurance broker or brokers reasonably approved by TENANT."

7.    Gross Sales.  Subsections 3.5D.(i) and (ii) of the Lease are hereby deleted in their entirety, and the following substituted in their place and stead.

"D.(i)  The term "Gross Sales" shall mean (A) the dollar aggregate of the actual sales price collected and retained by TENANT or by any TENANT affiliates for all facility rentals, foods and beverages, both alcoholic and non-alcoholic, and all merchandise, wares and other goods sold or leased and the actual charges collected and retained for all services performed, business conducted and accommodations (including, without limitation, cover charges, admission fees, membership fees, other dues, and the like)

3

rendered by TENANT or by any TENANT affiliates arising out of the use of the Premises (and all fees, charges, subrents, concession payments or other payments collected and retained by TENANT from any subtenant, licensee, concessionaire and other occupant in, at, or arising out of the Lease of the Premises in respect of any such party's use or occupancy of the Premises), including the fair market value of all consideration other than money received for any of the foregoing and (B) all monies or other things of value received by TENANT from any concessionaire or licensee of its operations at the Premises; and (C) any deposit accepted and retained by TENANT as being forfeited shall be included in Gross Sales; and (D) subject to adjustment relating to TENANT's costs of collection, refunds, and all amounts received under insurance policies in respect of loss of business, sales or profits, but excluding insurance proceeds received by TENANT with respect to Basic Annual Rent (except to the extent LANDLORD collects insurance proceeds for loss of Percentage Rent in respect thereof), shall be deemed actual sales prices collected and retained. No franchise tax, capital stock tax, tax based upon assets or net worth, and no income or similar tax based on income or profits shall be deducted from Gross Sales.

(ii)    Notwithstanding the foregoing, only the following shall be excluded from Gross Sales: (A) credits for returns to suppliers, shippers or manufacturers; (B) cash or credit refunds to customers on transactions otherwise included in Gross Sales not exceeding the selling price of goods and services; (C) sales of TENANT's trade fixtures, machinery and equipment, which are not stock for sale or trade, after use thereof in the conduct of TENANT's business; (D) amounts separately stated in the sales receipt and collected from customers which are paid by TENANT to any government for any sales or excise tax on such sales imposed by law at the point of sale; (E) receipts resulting from sales at a discount to TENANT's employees made in the ordinary course of their employment; (F) monies representing tips, gratuities and service charges paid by a customer that are directly paid by TENANT to employees or to a staffing agency, which may be affiliated with TENANT, but only to the extent such monies are paid to or for the benefit of such agency's employees relating to their performance of services at the Premises; (G) the actual amount of charges for services performed by unaffiliated contractors and service providers which are itemized and billed to TENANT's customers including, but not limited to, florists, musicians, lighting, performers and other entertainers, printers, decorators, travel services, caterers and bakers (exclusive of any surcharge, mark-up or other amount charged by TENANT); (H) interest, service charges, or other carrying charges separately stated and paid to TENANT for the extension of credit by TENANT on account of sales made or services rendered by TENANT, provided no discount on the sale price of the item or service is provided in return; (I) proceeds of claims for damage to merchandise or fixtures; (J) interest, finance and other charges paid to third party credit card companies; (K) uncollected or uncollectible

4

credit accounts in respect of which TENANT shall have made commercially reasonable efforts to collect; (L) gross revenues of non-affiliated third party hat check, men's room and similar concessionaires to the extent not retained, paid or remitted to and retained by TENANT and (M) unearned deposits. In no event shall any franchise tax or capital stock tax income tax or any similar tax based upon income, profits or gross sales be deducted from Gross Sales. If TENANT shall incur any costs for collection for Gross Sales, the costs shall be deducted from any recovery in determining such Gross Sales.

8.  <u>Binding Effect</u>.   The covenants, agreements, terms, provisions and conditions contained in this Agreement shall bind and inure to the benefit of the parties hereto and their respective heirs, successors, legal representatives and assigns.

9.  <u>Modifications</u>.  This Agreement may not be modified orally, but only by an agreement in writing signed by the party against whom enforcement or any waiver, change, modification or discharge is sought.

10. <u>Capitalized Terms</u>.  All capitalized terms used but not defined in this Agreement shall be deemed to have the meanings ascribed to them in the Lease.

11. <u>Counterparts</u>.   This Agreement may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed to be an original and all of which together shall constitute but one and the same instrument.

12. <u>Authority</u>.   Each individual executing this First Lease Amendment Agreement on behalf of Landlord and Tenant represents and warrants that he/she is duly authorized to execute and deliver this Lease Amendment/Extension Agreement on behalf of said party and that this Lease Amendment Agreement is binding upon said party in accordance with the terms and conditions herein.

SIGNATURE PAGE FOLLOWS

NYI 26460467.2 / 63739-000015

IN WITNESS WHEREOF, the parties have executed this Lease Amendment Agreement as of the date first above written.

LANDLORD, Third Church of Christ, Scientist

BY:

TENANT, Rose Group Park Avenue LLC

BY: 583 PARK LLC

By:

Louis Rose, Managing Member

6

NY1 26460467.2 / 63739-000015

Exhibit K

## SECOND AMENDMENT TO LEASE

This Second Amendment to Lease (this "Amendment") is made as of March 27, 2007 by and between Rose Group Park Avenue LLC ("Tenant") and Third Church Christ, Scientist, of New York City ("Landlord").

Whereas, Landlord and Tenant entered into that certain Final Agreement of Lease dated as of January 31, 2006, a certain Commencement Date Agreement dated July 3, 2006 and a certain First Lease Amendment Agreement dated as of September 15, 2006 (such lease, as amended, hereinafter referred to as the "Lease"), pursuant to which Landlord demised to Tenant premises known as 583 Park Avenue, New York, New York (such premises, as more particularly described in the Lease, hereinafter referred to as the "Premises");

Whereas, Tenant has heretofore has expended approximately $2,500,000.00 in connection with improvements made to the Premises in order to prepare the Premises for the conduct of Tenant's business therein for the permitted use under the Lease ("Initial Expenditures");

Whereas, Tenant anticipates spending an additional approximately $5,000,000 to make further improvements to the Premises in order to prepare the Premises for the conduct of Tenant's business therein for the permitted use under the Lease ("Additional Expenditures"); and

Whereas, because of zoning and land use restrictions affecting the Premises and beyond the control of Landlord and Tenant, Tenant may be unable to use the Premises for the permitted use as set forth in the Lease and may be compelled to discontinue using the Premises for the permitted use under the Lease (such date of Tenant's discontinuing the permitted use of the Premises referred to herein as the "Discontinuance Date"), and Landlord and Tenant wish to set forth the rights of the respective parties in such event.

NOW, THEREFORE, in consideration of Ten Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1.    <u>Defined Terms</u>. All capitalized terms used but not defined in this Amendment shall be deemed to have the meanings ascribed to them in the Lease.

2.    <u>Church Functions</u>. Tenant shall provide, at cost, catering for up to twenty (20) functions during each Lease Year related to Church activity. Church functions in excess of twenty (20) in any Lease Year and functions on behalf of Church members shall be provided by Tenant at ten percent (10%) discount off Tenant's standard pricing.

3.    <u>Tenant's Inability to Use Premises for Permitted Use</u>. Landlord and Tenant acknowledge and agree that, because of restrictions under the New York City Zoning Resolution and other governmental regulations and requirements, Tenant may not be able to use the Premises for the permitted use under this Lease for reasons beyond the control of both Landlord and Tenant. If, notwithstanding commercially reasonable efforts exercised by both Landlord and Tenant, including such subletting as may be appropriate, Tenant is unable to use the Premises for the permitted use under the Lease, then:

(a)    Landlord shall use its best efforts to make a disposition of the Premises, mutually acceptable to Landlord and Tenant, so as to generate sufficient proceeds to pay to Tenant the Additional Expenses, together with interest as set forth in subparagraph (i) below. If Landlord and Tenant shall be unable to agree upon such disposition, then Landlord shall use its best efforts to sell the Premises in an arms-length transaction at a purchase price to be paid in cash upon closing (the proceeds derived from either a disposition or sale of the Premises hereinafter referred to as the "Proceeds"). Landlord shall at all times keep Tenant informed of its

negotiations with respect thereto and of any agreements made by Landlord in connection with the disposition or sale of the Premises and shall deliver to Tenant, within two business days of the execution and delivery thereof, a true and correct copy of any executed written agreement entered into by Landlord with respect to the Premises.  Landlord and Tenant hereby agree that the Proceeds, net of Landlord's actual costs and expenses incurred in the disposition or sale of the Premises for brokerage commissions, New York City and New York State real estate transfer taxes, if any, and reasonable attorneys' fees, shall be disbursed immediately upon receipt, as follows:

      (i)    First, to Tenant, in reimbursement of Tenant for its Additional Expenditures, the amount of up to $5,000,000;

      (ii)   Next, to Landlord and Tenant in equal amounts until Tenant has been reimbursed in full for the Initial Expenditures plus fifty (50%) percent of all costs incurred by tenant in connection with the 74-711 application to the New York City Landmarks Commission (the "74-711 Application").

      (iii)  Next, to Landlord, up to $10,000,000;

      (iv)  Next, to Tenant, an amount equal to interest on the Additional Expenditures and the Initial Expenditures for the period commencing on the Discontinuance Date through and including the date upon which Tenant receives payment in full of the Additional Expenditures and Initial Expenditures, such interest to be calculated upon the rate paid by Tenant to its lender(s); and

      (v)   Finally, the balance of the net Proceeds, if any, to Landlord.

(b)   If and to the extent that Tenant has realized any net profits from the use of the Premises as a catering facility prior to the Discontinuance Date, as determined by Tenant's

certified public accountant in accordance with generally accepted accounting principles, then such amounts, if any, shall be deducted from the payments to which Tenant is entitled under the provisions of Section 3(a)(i) of this Amendment.

(c)    Provided that Landlord has fully and faithfully complied with its obligations and undertakings as set forth in this Amendment, Article 36 shall not apply to Landlord's sale of the Premises pursuant to the provisions of this Amendment.

(d)    Upon the sale of the Premises in accordance with the terms and conditions set forth in this Amendment, the Lease shall be terminated and neither Landlord nor Tenant shall have any further rights or obligations thereunder except for those rights and obligations that are expressly set forth in the Lease to survive termination. All of the provisions set forth in this Amendment shall survive termination of the Lease.

(e)    Tenant's right to receive the payments due pursuant to Section 3(a) of this Amendment shall be conditioned upon Tenants completing all work required to be performed by Tenant under the Lease and Tenant's prosecuting the 74-711 Application with the appropriate municipal authorities through final appeal.

4.    Ratification of Lease.  Except as expressly modified herein, the parties hereto affirm that the Lease is in full force and effect, and, as modified hereby, the Lease is hereby ratified and confirmed in all respects.

5.    Standards.  Landlord and Tenant shall negotiate in good faith to establish standards concerning sound, light levels, traffic control, signage, external marketing, communications, number of events and number of guests at such events. Until such time as the standards have been established and set forth in a written form to be agreed upon by Landlord and Tenant, Tenant agrees to consult with Landlord in advance concerning the anticipated sound

and light levels, signage, advertising, traffic control plans and number of guests for each planned event. Tenant shall also consult with Landlord in connection with Tenant's marketing to the public and advertising programs.

6.    <u>Governing Law</u>. This Amendment shall be governed by, construed in accordance with and enforced under the laws of the State of New York, without regard to the principles of conflicts of law of such state.

7.    <u>Binding Effect</u>. The covenants, agreements, terms, provisions and conditions contained in this Amendment shall bind and inure to the benefit of the parties hereto and their respective heirs, successors, legal representatives and assigns.

8.    <u>Counterparts</u>. This Amendment may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed to be an original and all of which together shall constitute one and the same instrument.

9.    <u>Authority</u>. Each individual executing this Amendment represents and warrants that he/she is duly authorized to execute and deliver this Amendment of behalf of Tenant or Landlord, as the case may be, and that this Amendment is binding upon said party in accordance with the terms and conditions contained herein.

10.    <u>Broker</u>. Tenant and Landlord each represents to the other that no broker was instrumental in consummating this Amendment and that it had no conversations or prior negotiations with any broker concerning this Amendment. Tenant and Landlord each hereby indemnifies and agrees to hold the other party harmless from and against any loss, cost, damage, expense, claim or liability (including, without limitation, attorneys' fees, disbursements and court costs suffered or paid directly or indirectly by the indemnified party in any action or

proceeding between Landlord and Tenant or between the indemnified party and any third party or otherwise) arising out of any inaccuracy or alleged inaccuracy of the above representation.

In witness whereof, the parties have executed this Amendment as of the date first above written.

Landlord:                           Third Church of Christ, Scientist, of New York City

                                    By: _____
                                    Name: Chairman
                                    Title:

                                    _____ Thomas G. Draper, Jr.
Tenant:                             Vice Chairman
                                    Rose Group Park Avenue LLC
                                    By:    583 Park LLC, Manager

                                    By: _____
                                        Louis Rose, Managing Member

NY1 26453971.4 / 63739-000009