UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK

------------------------------------------------------------- x

THIRD CHURCH of CHRIST, SCIENTIST, of :
NEW YORK CITY, :

                      Plaintiff, :

            - against - :

THE CITY OF NEW YORK and PATRICIA J. :
LANCASTER, in her official capacity as, :
Commissioner of the New York City Department :
of Buildings :

                   Defendants. :

------------------------------------------------------------- x

07 Civ. 10962 (DAB)

**REPLY DECLARATION OF**
**THOMAS G. DRAPER, Jr.**

I, THOMAS G. DRAPER, Jr., pursuant to 28 U.S.C. § 1746, declare as follows:

1.      I am the Vice Chairman of the Board of Trustees of the Third Church of Christ,

Scientist, of New York City (the "Church"). I make this declaration in further support of the

Church's motion for a temporary restraining order, preliminary injunction, and other relief.

### The Church's Dwindling Congregation and its Historic Building

2.      The Church's historic building, located at 583 Park Avenue, New York, New

York (the "Building") was erected in the 1920s, and has remained the congregation's house of

worship for approximately 85 years. This Building is the epicenter of the Church's

congregation. Upon information and belief, the congregation consisted of approximately 1,000

members in the 1940's and 50's. Over the years, its membership has declined and is currently

less than one hundred members.

3.      A contributing factor to the decline in membership has been the growing state of

disrepair of the Building and the prohibitive costs of the necessary major capital repairs and

renovations to the Building's aging infrastructure and to bring the Building into compliance with

the New York City Building Code (the "Required Capital Repairs"). For example, the roof of the Building needed almost $1 million in repairs. Leaks from the roof caused water damage to the auditorium walls, as well as walls and ceiling throughout the Building. The subbasement had standing water seeping in from an underground stream and had attracted mosquitoes. The malfunctioning plumbing system frequently caused flooding in the restroom and in the subbasement.

4.    In May 2005, the Church engaged the engineer Joseph K. Blum to analyze the Building's heating, ventilation and air-condition system ("HVAC"). (*See* Property Committee Report (May 17, 2005) attached as Exhibit A)  The Blum engineers found that the Church's failure to repair the HVAC, which was in violation of the NYC Building Code, was creating further damage and mounting costs. Blum recommended other safety measures, such as replacing defective low pressure condensate pumps in the Building's sub-basement, and repairing or replacing leaking pressure valves. (*Id.*) The total costs for all of the necessary repairs totaled approximately $50,000. (*Id.*)

5.    In addition to necessary repairs, the operating costs of the Church and the daily maintenance of the Building are challenging. From 2002 to 2006, the average cost for maintaining the Building exceeded $190,000[1], which included the cost for air conditioning, electricity, elevator maintenance, heating, building supplies, landscaping, building insurance, and salaries for the building maintenance staff and administrative personnel. This amount does not include extraordinary Building repairs, such as the $187,733 spent in 2002 to temporarily fix the leaking roof, $74,690 spent in 2005 to repair the HVAC system, and other miscellaneous but

---

[1] All financial figures reported herein are based upon information supplied to me by the Church Treasurer and are based upon the Church's audited financial statements and contemporaneously maintained financial journals and records.

costly repairs for the Building's exterior, plumbing and electrical systems. Were it not for the Rose Group's overhaul of the Building beginning in 2006, general operating costs and extraordinary repair costs would have grown exponentially over the future years, and would likely have far exceeded $200,000 per year to maintain the Building.

6.      In addition to Building upkeep and repairs, the Church was also confronted with general operating costs consisting of outside accounting costs, insurance (employment, property, etc.), employee salaries, salaries for Readers, required contributions to other Christian Science organizations and programs, lecturer's fees, organist and organ repair and upkeep, and office supplies. In addition, the Christian Science reading room which the Church maintains at a location on 147 East 62nd Street between Lexington and 3rd Avenue, an integral aspect of our outreach, costs an average of $100,000 per year to operate, which includes rent, merchandise, office supplies, utilities, and salaries for the librarian and custodian.

7.      The Church's income was not keeping up with these mounting operational and extraordinary expenses. Its income generally consisted of the voluntary collection at our Sunday services, mail-in contributions from members, a grant from a charitable foundation, sales of materials from our reading room, income from past investments (*e.g.*, accrued dividends), and income from leasing out the Building's roof space for a cell phone tower (average of $30,000 per year). In addition, the Church intermittently received bequests from its members. It was not possible, however, to rely on bequests as a sustainable source of operating income.

8.      From 2002-2005, excluding bequests which occurred in 2004 and 2005, the Church consistently operated at a substantial deficit. As the Church headed into 2006, given the financial circumstances and the inability responsibly to rely on bequests as a source of operating revenue going forward, the Church foresaw a future of continued deficits that it did not have a

way to fund.  Entering into the lease with the Rose Group was the best solution we found to our

financial problems.  Our financial results for 2006 confirmed expectations.  With the income

from the lease, the Church's income exceeded its operating expenses.  If we were to assume that

the lease with the Rose Group was not entered into (e.g., not count income or expenses

associated with the Lease), and further assume that the Church instead continued to receive

income from a lease with Geneva School, the Church would have continued to operate at a

deficit in 2006.

### The Church Has Sought Different Ways to Supplement Its Income for the Past Several Years with Little Success

9.      Throughout the years, the Church actively pursued ways to balance its budget and

to remain in its historic home.  The Church explored low-cost loans from the Historic Properties

Fund (administered by the New York Landmarks Conservancy), as well as government and

private foundation grants.  We also considered taking out a mortgage on the Building, but, as I

explained in my original declaration, that was not feasible.

10.      Upon information and belief, the Church had several discussions with other

religious institutions about possibly sharing space in the Building, but none of these

organizations was interested in sharing the burden of funding the Required Capital Repairs.

11.      The Church considered numerous other options, including:

- Mounting a capital campaign;

- Selling air rights over the Building;

- Engaging architects to subdivide the space in the Building and leasing out portions of the space to third-parties;

- Selling the Building outright; and

- Working with a developer to convert the property into a church/luxury apartment property.

12.     These options were seriously considered.  In exploring these alternatives, the Church invested substantial amounts of money to retain various experts, such as leasing agents, architects, and engineers to explore ways to creatively use the Building – the Church's most valuable asset.  For example:

- On May 16, 2000, the membership voted to spend $999 to engage an engineer to explore ways of partitioning the Building for possible leasing options;

- On September 26, 2000, the Church spent $1,000 for an engineer to determine whether the Church's Christian Science Reading Room could be moved into the Building's auditorium, thereby saving the costs of having to rent space for the separate Reading Room facility on 62nd Street;

- On January 20, 2001, the members authorized the cost for the reading room feasibility study to be increased to $10,000;

- On May 15, 2001, the membership authorized the Leasing Committee to receive a budget of $3,000 to pay for brochures, listings and legal fees associated with renting out the Building's auditorium space to day renters; and,

- On June 12, 2001, our members authorized an expenditure of up to $10,000 to engage qualified professionals to ascertain the true value of the Building and to advise the Church how to proceed in generating rental income.

13.     Faced with mounting repair costs, and unable to find any way of supplementing its diminishing income, in 2003, the Church's membership voted to authorize a sale of the Building.  In April 2004, the Board considered three unsolicited offers to purchase the Building for $20-30 million, in addition to other proposals to lease the auditorium.  However, several other Christian Science groups voiced concern over the potential sale of the Building and offered to provide financial assistance to save the Church.  In fact, a neighboring Christian Science Church provided us with a donation of $50,000 in order to assist with building repair costs.  The Church membership changed its decision, and decided not to sell the Building.

### Geneva School

14.     The largest tenant in the Building prior to the Rose Group was the Geneva School

of Manhattan, a private, not-for-profit Christian school focusing on classical education for grades

K-12.  I am informed that its elementary and middle schools are now located at the Calvary

Baptist Church, 123 West 57th Street, New York, New York.

15.     From 1999 to 2006, the Church leased the basement of the Building to the Geneva

School five days a week.

16.     The rental income generated by the Geneva School was not sufficient to balance

the budget.  In fact, in order to make the Building available for rent, the Church incurred

substantial repair costs, including for removing asbestos, repairing the plumbing, and making

other improvements in the rented basement space.  In 2000, the Geneva School reported the

presence of mosquitoes caused by the existence of "standing water" in the Building's sub-

basement.  The Church's engineering firm, Joseph K. Blum, investigated the cause of the leak,

finding that it would cost approximately $35,000 to repair several leaks in the sub-basement

from deteriorating equipment.  (*See* 4/8/00 email, attached as Exhibit B)

17.     Without making several costly repairs, however, the Building would not have

been in suitable condition to rent to anyone.  Thus, any earned rental income from the Geneva

School or other tenants was offset by the mounting repair costs that the Church had to bear as a

landlord.  (*See, e.g.,* Exhibit C, invoices for repairs for Geneva School, correspondence re:

repairs from Geneva School)

18.     As the foregoing makes clear, the Church has strived for many years to meet the

mounting costs of maintaining the Building.  As the Church's financial Reserves diminished, the

Church was confronted either with selling the Building or allowing it to fall further into a state of

disrepair.

## The Lease Arrangement with the Rose Group Saved the Church

19.    The Lease is highly beneficial for the Church and protects its interests.  It permits the Church to continue owning the Building and using it substantially to the same extent it did in the past, while accomplishing much needed building repairs and ongoing relief from many operating expenses.  (Lease ¶ 5.2-5.6)  The Church especially benefits from these improvements because it has the use of the improved edifice and will continue to own the improved Building.

20.    The fairness of the Lease was affirmed by the third-party appraiser, The Staubach Company, retained by the Church to evaluate the Lease in May 2006.  The appraiser concluded that the lease is fair for the Church when compared to agreements with restaurants and catering facilities in various Manhattan markets.  (A copy of the appraisal is attached as Exhibit D.) Specifically, it found that the

> Church's lease is unique because the Church has the continued use of the premises for all of its current needs. ***This is atypical in the market and is viewed as extremely favorable for the Church***.

(*Id.*, emphasis added)  This is especially beneficial in that the Church may continue to use the Building without the overhead expenses associated with the Building.  (*Id.*)

21.    The appraiser assessed the fairness of the Lease by comparing it to similar arrangements with other institutions.  The first two institutions selected by the appraiser as "comparable transactions" included the Park Avenue Synagogue's lease agreement with the caterer Neuman and Leventhal Caterers, Inc. for $150,000 annual rent, and the Park Avenue East Synagogue's lease agreement with that same caterer for $80,000 annual rent.  (*Id.*)

22.    Contrary to the City's assertions, the Required Capital Repairs, for which the "hard costs" (actual construction costs) exceeded $6.5 million, were not simply to convert the Building so that it could be used as a catering facility.  (See Brennan Decl. ¶ 122, claiming the Required Capital Repairs "so that the Rose Group can run its catering business, plaintiff

disingenuously transforms those expenditures into something entirely different.")  Most of the structural improvements provided in the Lease were either dictated by the need to bring the Building into a state of good repair, to comply with applicable building, safety and health laws, or to provide improvements that benefited both the Church and the Rose Group.

23.    The repairs and renovations contemplated by the Lease include:

- Upgrading the Building's electrical service;

- New HVAC;

- Repair the Building's roof (cost to be repaid with interest only from percentage rent capped at $50,000 per annum);

- New or upgraded elevator;

- New rest rooms and building entrances that will comply with disability laws;

- Renovated entrance on 63rd Street, which will include an entrance ramp, a rebuilt external elevator between the cellar and 63rd Street to haul trash, and new ADA–compliant doors to the Auditorium;

- Reconfiguration of space so that there will be direct access from the back corridor of the Building to the podium in the auditorium;

- Subject to approval from the Landmark Commission, a new digital sign on the 63rd Street side entrance that will advertise the Church's services and activities;

- Creation of a new room in the basement for the Church's child care and Sunday School room and office.  The Sunday School room is being finished with new, high-quality and very durable cork flooring and heavy-duty doors that permit sealing off the Sunday School from the Auditorium;

- Cosmetic refurbishment of the auditorium (level the floor, new high quality carpeting, repainting, plaster repair);

- Cosmetic refurbishment of other areas, such as the board room, the storage areas, the 4th floor hallway, and other portions of the Building;

- Removal of all visible but abandoned wiring and conduits;

- New sound and communications systems;

- A custom cover for the organ pit for the Church's organ; and

- Installation of a fully equipped kitchen;

(Lease ¶ 5.3-5.4, 35.4)

24.    A working kitchen, which will be added to the Building (Lease ¶ 5.3), is present in many churches and synagogues today. A kitchen gives the Church the flexibility to host lunch or dinner meetings or post-service receptions, and facilitates day-long workshops.

25.    All of these repairs and renovations are nearly completed with the exception of the major roof repair, which includes a very expensive replacement of the slate roofing shingles that has been delayed due to a combination of the expense, the winter weather and the necessity of obtaining the approval of the Landmarks Preservation Commission for the contemplated work. It is anticipated that the roof work will commence in the summer of 2008 and will proceed at the pace permitted by the financial resources of the Rose Group. In the meantime, the roof is substantially watertight, and work on the building systems and the interior of the Building is almost (95%) complete as of today.

26.    In addition to receiving these needed repairs, the Church also enjoys a substantial income stream from the Rose Group, which pays the Church an annual base rent (with gradual increases), starting at $250,000 and escalating to $519,732 (in the 16th year of the Lease). (*Id.* ¶ 3.1) In addition, the Church will receive percentage rent equal to 10% of the amount by which the Rose Group's net gross proceeds exceeds 10 times the base rent. (*Id.* ¶ 3.4A) If, for example, the Rose Group realizes net gross proceeds of $6.5 million in 2008 (an amount $4 million in excess of 10 times the base rent), the Church would receive 10% of that amount – *i.e.,* an additional $400,000 of rent from the Rose Group (although this amount would be reduced by $50,000 per annum until the $650,000 cost of replacing the roof is repaid).

27.     Because the financial terms of the Lease are similar to a "triple-net" lease (in which the tenant assumes all responsibility for the maintenance of the leased property), the Rose Group shoulders the burden of the Building's operating costs and utilities, such as heat, water, electric, gas, insurance, garbage disposal, and sewage.  (Lease ¶ 5.9)

28.     The City claims that, by successfully negotiating so that the Rose Group, rather than the Church, would be responsible for paying the ongoing costs of operating the Building, the Church effectively assigned away its ownership interest in the Building.  (Brennan Decl. ¶ 19)  This conclusion is not supported by the facts.  The Church was pleased to be able to retain ownership and the ongoing predominant use of its home while at the same time being relieved of these ever-mounting operating costs.  The shifting of expenses to the Rose Group says nothing about the Building's primary use.  Unlike in a traditional commercial lease, the Church retains extensive rights, significantly in excess of the Rose Group, to continue to use the building for our religious activities.  (Lease ¶ 35.1.)

29.     Finally, as an added benefit, the Lease requires the Rose Group to sponsor twenty Church events at strictly cost.  (Lease, 2d Am. ¶ 2)  This will allow a format for Church activities in the Building that will be welcoming to participants and that were previously impractical.

30.     The Lease has made the Church's finances more stable now than they were just two years ago when, having experienced years of operating deficits and anticipating operating and capital improvement deficits going forward, there did not appear to be any way to continue to maintain and occupy the Building.  As a result of the Lease, instead of being forced to sell the Building, the congregation now has had its historic home largely rebuilt, which it owns outright and will be able to enjoy for decades to come.

31.     Until we encountered the unexpected opposition from some of our neighbors and the apparent inability to find an amicable solution, the Church was grateful that it had finally found a way that permitted us to restore the Building, the congregation's home of the past 85 years, and to have a structural and economic base for the Church for the next 20-30 years.

## The Church's Religious Use of the Building is the Primary Use; the Rose Group's Catering Activities Are Intermittent and Secondary

### The Lease Makes Clear That the Church Is the Primary Occupant

32.     The Lease explicitly provides that the Church remains the primary occupant of the Building – the party that owns and controls the Building.  The Rose Group's catering use is subordinate and intermittent compared to the Church's primary use.

33.     The express purpose of the Lease is to supplement the Church's income: "[The Church] is desirous of leasing the Premises *during those times when there are no scheduled Church services or Church related activities* . . . in order to generate income that can be used to maintain the Building and to support the Church activities." *See* "Whereas" provision, Lease, at 1 (emphasis added); *see also* Lease, at ¶ 35.1 (the Rose Group "acknowledges and agrees that during the term of this Lease and any renewal thereof, [the Church] shall continue to use and occupy the Premises for the conduct of church services and other church related activities").

34.     The Lease identifies many of the Church's services and activities which may not be disturbed or impeded by the tenant during the Lease term, including:

- Sunday Church Services and Sunday School Services (from 7:00 a.m. until 1 p.m.), and Wednesday evening services (5:30 p.m. until 9:00 p.m.);

- Services for Christmas Eve and Thanksgiving;

- Association Meetings (requiring use of the entire Building from 7:00 a.m. to 7:00 p.m., four Saturdays during each calendar year);

- Church Classes (four weeks total, 9:00 a.m. to 5:00 p.m., Monday through Sunday);

- Church Corporate or Organizational Meetings; and

- Occasional non-regularly scheduled events, association meetings, classes and special meetings of the Church that will be scheduled from time to time at times mutually agreed upon by the Church and Rose Group.

(Lease ¶ 35.1)

35.　　The Lease requires that these times be reserved exclusively for the use of the Church. The Rose Group "must respect [the Church's] privacy during all Church related activities. [The Rose Group] agrees that it shall not enter any portion of the Premises or the Building[.]" (*Id.* ¶ 35.5) Indeed, failure to respect the Church's privacy during its services or meetings amounts to a "serious and material default under this lease" and may entitle the Church to injunctive relief. (*Id.* ¶ 35.6)

36.　　Further, it is the Rose Group's responsibility to set up the Building for Church services (twice a week), and other Church activities and events (at least once or twice a month), including setting up at least 100 chairs and the podium, turning on the lights and HVAC system, removing the protective covering from the organ pit, and setting up the Sunday School room. (*Id.* ¶ 35.2) Promptly after the Church activity is concluded, the Rose Group must turn off the lights and the HVAC system, and cover the organ pit. (*Id.*)

37.　　The City argues that the Lease carves out only a limited area of the Building for the conduct of Church services and church related activities, while the Rose Group is granted carte blanche over the entire Building. (Brennan Decl. ¶ 26, 30) The opposite is true. The Church has exclusive use of the Building's Church office, the two reader rooms, the Board Room, the organist room, a new literature distribution/committee room, the 4th floor storage area, the treasurer's office, the new Sunday school office and nursery. (Lease ¶ 9.1) The remaining space is shared, and only two rooms in the fourth floor, the kitchen and some storage area in the basement are exclusively reserved for the Rose Group. (*Id.*)

38.    Upon information and belief, the square footage of the Building's spaces are as

follows:

BUILDING'S SQUARE FOOTAGE ALLOCATION

**FIFTH FLOOR:**
| | | |
|---|---|---|
| Organ Echo Chamber | 220 | Church Space |
| Additional Space | 352 | Shared Space |
| Landing | 56 | Shared Space |
| Maintenance Room | 25 | Shared Space |
| | 653 | |

**FOURTH FLOOR:**
| | | |
|---|---|---|
| Literature Distribution | 950 | Rose Space |
| Attic 1 | 1100 | Rose Space |
| Attic 2 | 1071 | Church Space |
| Boardroom | 418 | Shared Space[2] |
| Church Office | 330 | Church Space |
| Hallway | 176 | Shared Space |
| Bathrooms | 140 | Shared Space |
| | 4158 | |

**THIRD FLOOR:**
| | | |
|---|---|---|
| First Reader's Room | 194 | Church Space |
| Organ Chamber | 416 | Church Space |

**SECOND FLOOR:**
| | | |
|---|---|---|
| Second Reader's Room | 145 | Church Space |
| Organ Chamber | 416 | Church Space |
| Left Balcony | 1249 | Shared Space |
| Center Balcony | 931 | Shared Space |
| Right Balcony | 1123 | Shared Space |
| Landings & Closets | 164 | Shared Space |
| | 4028 | |

**MEZZANINE**
| | | |
|---|---|---|
| Maintenance Office | 156 | Shared Space |
| Closet and Landing | 87 | Shared Space |
| (Between Basement & 1st Floor) | | |
| Organist Office | 171 | Church Space |
| (Between 1st & 2nd Floor) | 414 | |

_____

[2] Note that, pursuant to the Lease, the Boardroom is reserved exclusively for the Church's use. (Lease Article ¶ 9.1). This room is used exclusively for Church purposes, although the Rose Group may ask for permission to use this space if necessary.

**GROUND FLOOR:**

| | | |
|---|---|---|
| Auditorium | 5998 | Shared Space |
| Lobby | 1080 | Shared Space |
| Clerk's Office | 194 | Shared Space |
| Sitting – Mail Box area | 56 | Shared Space |
| 63rd Street Foyer | 96 | Shared Space |
| Back Hallway | 264 | Shared Space |
| Organ Chamber | <u>416</u> | Church Space |
| | 8104 | |

**BASEMENT:**

| | | |
|---|---|---|
| Kitchen/storage | 1408 | Rose Space |
| Sunday School Office (approx) | 204 | Church Space |
| Nursery (approx) | 204 | Church Space |
| Remaining space | <u>7399</u> | Shared Space |
| | 9215 | |

**SUB-BASEMENT:**

| | | |
|---|---|---|
| Garbage/Storage | 680 | Rose Space |
| AT&T | 160 | Church Space (May go to roof) |
| Organ | 130 | Church Space |
| Nextel | 182 | Church Space |
| Remaining Space | <u>3072</u> | Shared Space |
| | 4224 | |

(*See* Ex. C, Staubach Report, Ex. A)

39.     Of the total 13,391 square feet available in the Building, the Rose Group has exclusive use of 4,138 square feet.  The Church has the exclusive right or the shared right to the other 9,253 square feet, 69% of the Building.

40.     Moreover, it is the catering use, and not the Church use, that must be concealed the majority of the time.  The Lease requires that any catering items stored by the Rose Group must be "stored along the walls and appropriately covered and screened from sight" during the bi-weekly Church Services and other Church events.  (Lease ¶ 35.2.)

**In Practice, the Church Is the Dominant User of the Building**

41.     In 2007, the Rose Group held 45 events at the Building.  (A list of these events is attached as Exhibit E)  Upon information and belief, based on communications with Louis Rose

at the Rose Group, I understand that an event lasts typically 4.5 hours.  In addition, setting up the venue takes approximately two hours, and it takes one hour to clean up the Building to restore it to its primary Church use.  Also, setting up for the catering event frequently occurs in the kitchen behind walls, so this does not interfere with Church activities.  With 45 events, this equals 28 hours per month set aside for catering events.  Under the 125 catered events that this Court's temporary restraining order currently permits, setting up and hosting such activities would consume approximately 78 hours per month.

42.    In contrast to the Rose Group's 45 events in 2007, and up to 125 events in 2008, the Church conducts numerous religious services per year (Wednesday and Sunday service), and Christian Science meetings, lectures, workshops, and special events.  The following chart sets forth certain Church services, activities, workshops, meetings and other events that currently are planned for 2008, the frequency of these events, and the minimum hours of property use that these events would require.

| Activity | Frequency per year | Hours per year | Notes |
|---|---|---|---|
| Sunday Church Services | 52 | 260 | 8:00AM-1:00 PM |
| Sunday School (basement space) | 52 | | Same hours as Sunday service |
| Wednesday Testimony Meeting | 52 | 182 | 5:30-9:00 PM |
| Christmas Eve Lecture | 1 | 4 | 6-10 PM |
| Thanksgiving Service | 1 | 5 | 8 AM-1 PM |
| Christian Science Lectures and Prep meetings | 2 | 9 | 6:00-10:30 PM (2 scheduled in 2008 – 4/28, 9/15, in addition to the Christmas Eve lecture) |
| Christian Science Association Meetings | 2 | 20 | 7 AM-5PM; (2 scheduled in 2008 – 8/16 and 11/1); 10 hours for event. |

| Activity | Frequency per year | Hours per year | Notes |
|---|---|---|---|
| Christian Scientist Class Instruction | 10 | 120 | 7:30 AM-7 PM (1 class series scheduled in 2008, 8/4-8/15) |
| Branch Committee Meetings | 104 | 780 | Several times per week; 15-20 hours/week |
| Third Church Trustee Meetings | 18 | 99 | 5:30-11PM; 1 or 2/month |
| Corporate Meetings of Membership | 4 | 20 | Full day Saturday; (4 scheduled in 2008); lasts 4-6 hours |
| Readers Rehearsals | 156 | 364 | 3/week (3-4 hours/week) Once during Sunday |
| Soloist Rehearsals | 52 | 130 | 1/week; 2-3 hours/week |
| Organist Rehearsals | 104 | | 2/week (during Sunday and Wednesday services) |
| Piano Rehearsals | 52 | 78 | 1/week; 1-2 hours/week |
| Tri-State Christian Scientist Committee Meetings and Special Meetings, and providing administrative support for tri-state Christian Scientist activities (bookmobile, meetings, etc.) | 1 | 20 | 1 or 2/year; can cover two-four days each year; meetings generally in the evenings or on Saturdays |
| Special Workshops | 1 | 5 | From ½ day to several days, from once to a few times per year. Workshops can be relatively intimate or a couple hundred people |
| Youth Forum activities (see: www.TMCYouth.com) | 4 | 48 | 2 scheduled in 2008: 5/24-25, and 10/18-19 |
| **TOTALS** | **668** | **2144** | |

43.     Services, meetings workshops, classes, and rehearsals, on average, total 668

religious events per year, 2144 hours per year, or approximately 180 hours per month.

44.     In addition to these set activities, the Building is the hub of the Church's

administrative office, from where the Church manages all of its various activities, such as the

reading room program, Spanish-language outreach program, bookmobile, coordination of tri-state Christian Science activities, and various lectures and workshops. For these purposes, the Church is open six to seven days a week where its clerk/treasurer is actively performing these Church-related functions (and such hours of use are *not* reflected in the chart above).

45.     The Church services, meetings, activities, and workshops scheduled for 2008 are slightly more extensive than the activities and workshops scheduled in previous years, although most such activities have been conducted in prior years. For example, all Sunday and Wednesday services are mandated by the Manual of The Mother Church, and have always been held on these dates. Committee meetings, trustee meetings, Sunday School, Christian Science lectures, rehearsals, and other listed activities and events have also regularly occurred at the Church over the years.

46.     The Church also encourages the use of the Building's auditorium as a place for quiet prayer or the reading of Christian Science literature made available on tables in the Foyer and elsewhere, and as an informal gathering place between visitors and active members. Like many active religious institutions, the Church is available to any congregant or member of the community seeking a place for meditation or prayer.

### As a Result of the Rose Group's Capital Infusion, the Church is Poised to Expand

47.     Since the initiation of the Rose Group project, the Church has attracted several new members, which is more than in any previous year within the past fifteen years (during which the Church received an average of one new member a year). It also has recently seen more visitors on a fairly steady basis. Visiting Christian Science Lecturers and other high profile visitors have expressed appreciation for the refurbished edifice, and several members of neighboring Christian Science Churches, New York, have praised the renovations.

48.    As a result of the new economic foundation generated by the Rose Group project, the Church will now be able to pursue a growth strategy.  In addition to additional Sunday and Wednesday services, the Church is planning various religious workshops.  It now has money to host more Christian Science lectures, and three are already planned for 2008.  Lectures typically draw attendance in the rage of 300-500 guests.

49.    The Church is also conducting a Spanish-language outreach program for the greater New York area, a Sunday School Workshop, and a Christian Science Youth Conference, which could draw over 200 attendees in the age range of 12-30.  In fact, all of the Youth Conference Meetings will be catered by the Rose Group for the Church "at cost," which is a tremendous benefit under the Lease.

**The Building's Primary Identity Remains a House of Worship**

50.    The City makes much of the fact that the Rose Group allegedly conceals the true identity of the Building as a Church in its advertisements for catering events.  (Brennan Decl. ¶ 8)  It notes that, for example, pews of the Church have been removed (*Id.* ¶ 15) and the signs advertising the Church's Sunday School and Services may be removed when the Rose Group is using or actively marketing the Building for a third-party function.  (*Id.* ¶ 18, citing to Lease ¶ 5.3)

51.    There is, however, nothing inherently religious about having pews inside a house of worship.  Indeed, the flexible seating arrangements we can now make suit our congregation very well.

52.    Three signs on the Building's façade have been concealed pursuant to the City's Landmarks Preservation Commission's approval.  (*See* Exhibit F, "Permit for Minor Work" Docket # 072909 (Sept. 21, 2007))  One of the covered sign was high on the Building's pediment near the roof, and could only be seen from across the street.  (*See* Exhibit G)  The two engraved

signs on either side of the entrance were old and worn; they have been covered over – again, with the approval of the Landmark Commission – and now include simply the building's address and the symbol of a crown; directly under one of the two signs is Church's illuminated sign that sets forth its schedule of Christian Science services.  (*See* attached photographs as Exhibit H).

53.    The two new signs display a crown logo and the building's street address:



### 583 PARK AVENUE
#### NEW YORK

54.    The Crown has long been a symbol associated with the Church; indeed, there is a crown prominently displayed in the auditorium of the Church which has been there for years. This symbol is associated by the Church's members as a symbol of the Third Church congregation, and of the Christian Science faith.  The image of the crown that now adorns the exterior façade of Church, and which the Rose Group has adopted for its own marketing purposes, is inspired by the common Christian Science image, the "Cross and Crown":

 

55.    The Church's membership approved these alterations to the three external signs (which are not permanent) because signs that were neutral would better reflect the Building's shared use under the Lease.  We did, however, negotiate to improve the two street-level signs that exist (one facing Park Avenue, the other facing 63rd street) because these signs advertise the

Church's services to members of the Community. While the plans to modernize these signs are on hold, they remain illuminated and clearly visible to the general public, except on those occasions when there is a catered event being held in the Building. During such times, these illuminated signs simply show "583 Park Avenue" Crown logo. The other street-level sign on 63rd Street is not altered because guests attending catered events do not use that entrance.

56.     As a sign of the Rose Group's sensitivity to the Church's desire to increase its membership, though the Lease provides them with the right to cover these street-level signs when they are conducting marketing activities, I am informed that they rarely do so. Rather, as I have noted, these signs are typically not covered unless a catering event is occurring. (*See* attached photographs as Exhibit I)

57.     The City further complains that the Lease requires the parties to agree on the location and design of the literature distribution box on the 63rd side of the Building. (Brennan ¶ 22; Lease ¶ 9.1) The literature distribution box advertising the Church's faith and programs, however, has not changed its location or appearance since the Rose Group began its catering activities. (*See* attached photograph as Exhibit J)

58.     Finally, the City argues that the catered events conducted by the Rose Group have no connection with the religious mission of Christian Science because alcohol may be consumed at such events. (Def. Br. at 19) Christian Science does teach that any use of alcohol is an abuse. Although the Christian Science faith seeks to free men and women from the false attraction of alcohol and tobacco, the faith also believes in the Golden Rule: "just as they would not want impositions placed on their practice of Christian Science, they do not impose restrictions or Christian Science rules on others." (Draper Decl. Ex. D at ¶ 3)

59.    It was not easy to find a tenant that would utilize productively the full capacity of the Building only at times that the Church was not using the Building.  We did not consider it feasible or necessary to find a tenant that would embrace fully all of the teachings of the Church.  We could not and did not desire to devote the energy and resources of our membership to selectively leasing the Building for individual events.  In response to a unique opportunity, the Church decided to enter into a  lease with a third party that would operate catered events and generate income.  The energy and resources of our membership would continue to focus on practicing and preaching the Christian Science faith.  From the City's point of view, there is no practical distinction between the Church hiring a staff and hosting its own catered events for fundraising purposes (as many institutions around the City apparently do), or whether it simply contracted, as we did, with a third party to do the same.  The resulting impact on the City is no different.

60.    The Church does not insist that the catered events on its premises be reserved solely for members or hosted by members.  It does not matter to the Church who attends the event – the Church is open to the general public, and we welcome all visitors.  Moreover, because our congregation is small, it makes no sense to limit events at the Church to members only.  Indeed, to insist that religious or non-profit institutions may earn income only from member-sponsored events would discriminate against religious organizations, such as the Church, with small memberships.

61.    Indeed, the City attempts to distinguish well-established institutions that host catering events based on the fact that those institutions (such as the Council on Foreign Relations, the Union Club, the Asia Society) enjoy membership in the thousands, compared to the Church's far smaller congregation.  The City then concludes that, unlike these other

institutions, the Church does not actively use its Building for its primary religious purpose. (Brennan Decl. ¶ 104)  The City's attempt to equate these two different types of membership is puzzling.  Plainly, membership in a museum or club is different from being a member of a devout religious organization.  Membership for several of these institutions simply requires a monetary donation, ranging from $5,000-$10,000 for corporate membership for the Cooper-Hewitt Museum to $35,000 for the Frick.  (*Id.* at ¶ 96, 100)  By contrast, membership in the Church cannot be bought; instead, it requires a lengthy and heart-felt conversion to the Christian Science faith.  And it bears repeating that a main reason to enter into this Lease and allow catered events was to restore the Building so that the Church can grow its congregation.

### Rose Group Events Are Not Disruptive to the Church or the Community

62.    The Rose Group's catering activities have not disrupted the Church's services or activities in any way.  If anything, its capital contributions have only enhanced the Church's ability to provide services and activities to its congregation.

63.    The Rose Group's activities are comparatively modest and well managed.  The City cites to a LocationsMagazine.com article that incorrectly states that the "building was available seven days a week with a capacity of 2,500 for a cocktail reception (in the January 18, 2007 advertisement) and a capacity for 1,000 for a cocktail reception (in the March 12, 2007)." (Brennan Decl. ¶ 54)  I believe the capacity of the *entire* Building is only approximately 2,000 people.  And, in fact, the catered events in 2007 were attended by an average of 447 guests.  (Ex. E)  Only two events had more than 1,000 attendees, and two-thirds of the events had fewer than 447 guests.  Moreover, no catered events may be held on any Wednesday after 5:30 PM, or on any Sunday before 1:00 P.M.

64.    Further, the catering activities have not disrupted the neighborhood.  As discussed previously, the Rose Group takes exceptional care in minimizing the impact on the surrounding

neighborhood, such as by disposing of garbage and hiring security officers to direct traffic. (Draper Decl. ¶ 25-30)  There have not been any verified complaints of noise or disruptions.  For example, the New York City Police Department has confirmed that while there were approximately 26 "311" "quality of life" complaints received from June through December 2007 concerning events at the Building, "[i]n each such case, by the time an officer arrived at the location there either appeared to be no basis for the complaint or the situation giving rise to the complaint had already ended."  The letter further observed that, during this time period, the 19th Precinct has "never issued any summonses or otherwise taken any action against the Rose Group or anyone else responsible for events held at 583 Park Avenue."  (A copy of this correspondence is attached as Exhibit K)

## The Church Will Suffer Immediate and Irreparable Injury

### The City Misreads the Lease by Claiming That the Church Will Suffer No Adverse Consequences if the Rose Group is not Permitted To Host Catering Events

65.    The City argues that the Second Amendment to the Lease is unenforceable, and therefore apparently contends that the Rose Group has no recourse – other than perhaps litigation against the Church – to recover the millions of dollars it has expended on capital improvements. (Brennan Decl. ¶ 31).  But the Church knowingly and voluntarily entered into the Second Amendment and one cannot fairly interpret the Lease without considering its terms.

66.    The Second Amendment was validly negotiated, entered into, and supported by valuable consideration; as such, it is enforceable.  The Second Amendment, dated March 27, 2007, was motivated by the fact that on March 12, 2007, Phyllis H. Weisberg, attorney for certain Park Avenue residents in two neighboring buildings, requested that the DOB revoke all permits and approvals issued to the Rose Group.  (*Id.* ¶ 50)  This was well after the construction work had begun pursuant to the Lease.  While the Church reasonably believed at that time that

the DOB would adhere to its previous decision, which was fully justified and reasonable, to issue the pre-consideration approval for the accessory use permit, that provocative letter from counsel for the Church's neighbors introduced an element of uncertainty. Accordingly, the Church wanted to ensure that the alterations described in the Lease would be completed and that all necessary steps would be taken to maintain the accessory use permit or another form of permit that would allow continued use of the Building as contemplated by the Lease.

67.    Based on our conversations with the Rose Group, we understand that the Second Amendment was necessary in order to secure additional financing to complete the substantial capital improvements to the Building. No investor would be willing to invest millions of dollars in the Rose Group if the ultimate purpose of this project – hosting catering events at the Building – was arbitrarily terminated by the City. The Rose Group, and its investors, needed to be assured that it could recoup its multi-million dollar investment.

68.    Accordingly, the Second Amendment provides, in essence, that if the Rose Group and the Church were unable to use the premises for the use permitted under the Lease and certain other conditions were satisfied, then the Church would use its best efforts to make a "disposition" of the premises mutually acceptable to the Church and the Rose Group, so as to generate sufficient proceeds to pay to the Rose Group the expenses which it would incur to make further improvements to the Building from and after the date of the Second Amendment. That "disposition" could take any one of several different forms, such as a further subleasing of the premises, termination of the existing Rose Group lease and the execution of a new lease with a third party, a mortgage of the Building or an outright sale of the Building to a third party.

69.    The Church did not enter into the Second Amendment lightly. The decision whether to enter into that amendment was the subject of a special corporate meeting of the

Church held on Monday, March 26, 2007.  At that meeting, both the first and second amendments to the Lease were approved by the members of the congregation.  (A copy of the minutes of that special corporate meeting is attached as Exhibit L).  The congregation knowingly and intelligently entered into these amendments, knowing that the revenue from the lease with the Rose Group was its best chance of saving the Building, and that such an alteration to the Lease was necessary and reasonable in order to complete the renovations contemplated by the Lease.

70.    Apparently, the City has suggested that the Second Amendment is not enforceable because it was not submitted to the state court for approval.  We have been advised that there was no such requirement. (*See* G. Saver Letter (Feb. 20, 2008), attached as Exhibit M).

71.    Assuming *arguendo* that the events that would trigger a disposition of the Building under the Second Amendment occurred (*i.e.*, the revocation of approval for the conduct of catered events), and further assuming that the Church were to take the position that the Second Amendment were not enforceable, under the original Lease, the Church would still be required to reimburse the Rose Group for the costs for repairing the roof that has thus far been incurred. (Lease ¶ 5.2, 5.4, the roof repairs are estimated to cost at least $650,000).  More importantly, if the catering activities were prohibited, the Church would lose its primary source of operating revenue (and it well might also face the uncertainty and expense of litigation with the Rose Group regarding the enforceability of the Second Amendment).  In either or both events, the Church would again be in the position of not being able to sustain the ongoing costs of operating

the Building (just as it could not afford these costs two years ago), and would likely be forced to

sell the Building and embark on the effort to find a new home.

I declare under penalty of perjury that the foregoing is true and correct.


Executed on February 22, 2008.


THOMAS G. DRAPER, Jr.

**Property Committee Report - May 17, 2005**
As revised May 16, 2005

Madame President and Fellow Members:

We are all familiar with the paragraph in the *Manual of The Mother Church*:

"**God's Requirement.** SECT. 5. God requires wisdom, economy, and brotherly love to characterize all the proceedings of the members of The Mother Church, The First Church of Christ, Scientist."

We *will* need to exemplify wisdom, economy, and brotherly love when it comes to prayerfully considering and voting on motions being presented at the end of this report.

First , I'll start with a little good news regarding the roof. There is no need for any immediate action on completing the repairs of the roof. In all heavy rains since the last Corporate Meeting, there have been no visible water leaks. Consistently there's a little dampness on the ceiling in one spot, but no drops of water have reached the floor below.

The other news is regarding needed repairs and changes to the heating, ventilating and air-conditioning system which I'll refer to as HVAC. We recently completed repairs to the air-conditioning equipment serving the auditorium and it is fully functional once again. Today we need to consider action to bring our heating system into compliance with NYC Building Department Codes, which our system now violates. At the same time, we need to contemplate *long term cost savings* by making our HVAC systems operate more efficiently.

In the last ten years, this church has spent large sums to explore our HVAC deficiencies. And, *huge* sums are paid every year to Con Edison for our steam heat and electricity – almost $40,000 [$39,272] in 2004 for example. If we can reduce our energy costs as little as 15%, we can expect savings of $5,775 per year.

In the course of our current HVAC research, serious deficiencies in our heating and cooling systems have <u>again</u> been brought to our attention. These HVAC deficiencies are not new. When first reported to the Corporate body in 1995, no actions were recommended nor taken. If action had been taken, we would have already realized substantial financial benefits.

The initial investment to conserve energy and implement efficient operations may seem high, but over the long-term, thousands of dollars in unnecessary expenditures can be avoided, through *lowered* operating cost.

A small example is that this month we spent $260 for "compact fluorescent bulbs" for the fixtures in the Park Avenue lobby to replace the $8 worth of bulbs previously in use. Before these long-life, low-wattage, high-output bulbs burn out, we calculate that by spending **$260** on energy-saving 20 watt bulbs, we will save about **$720** in electricity, a savings of at least **$460** over the high energy costs of using ordinary 60-watt incandescent light bulbs.

As a result of our procrastination regarding our HVAC – failure to act has cost us not only higher operating costs for the past decade, but some of the changes that would have cost us $13,000 then, are now estimated at $20,000 – more than $7,000 additional expense.

Recently we engaged the Joseph K. Blum engineering firm to once again check out our HVAC. They last did an HVAC engineering survey for us in 1995. [By the way, Joseph K. Blum was originally selected for us by our longtime member, Daniel Lazar, who was an engineer of high standing here in New York City.]

The Blum engineers were called in to answer *operating questions* about the system. What does this switch or this valve do? Should it be on or off? Because of changes in custodial staff and the many changes the system has gone through over the years, we wanted to make sure we were operating it to the best advantage. We will soon receive a new diagram and clear operating instructions in writing.

This survey again brought up **safety concerns** regarding our steam heat. The cost of

1

disintegrating insulation on the fittings in the closet, pipes which are heated to 350 degrees as you recall. The current insulation is in much worse condition than is evident in the 1996 photo on your handout.

**Item 4**, we mentioned a few moments ago. **Item 5** on the list are two large steam Pressure Relief Valves in the sub-basement which are leaking. If they can be repaired, the cost is $800 each – or if they turn out to need replacement – they are $4,000 each.

**Item 6** is to disconnect an unused hot water heat exchanger and to cap it off for $1,500 – another safety measure.

EFFICIENCY OF OPERATIONS to save money in the long run.
For a moment, let's jump to another aspect of HVAC, the implementation of energy-saving, cost-saving measures.

## HEATING AND COOLING operating efficiency
The attic-to-sub-basement survey of our HVAC has uncovered several opportunities for "operating cost" savings.

We have an oversupply of fresh air being introduced into the building. There is a 7 ft. by 7 ft. opening on the North wall of the attic. In the winter, we have been heating this air as it comes into an attic room. And In the summer, we are cooling an overabundance of warm fresh air from the outside. **Item 7** on the handout addresses *this* concern *and also* the next shortcoming.

## INADEQUATE RE-CIRCULATION of partially heated or cooled air
We have an *inadequate return air system for both heating and cooling*. In effect, in the auditorium, we are heating and cooling mostly incoming air and re-circulating only a small amount of air. The ideal efficiency is to heat (or cool) re-circulated air until all air is warm enough (or cool enough) and all the while, to be adding sufficient fresh air from the outside.

**Four** phases of improving these heating and cooling efficiencies are being studied, but we are only presenting phase one of the *operational* improvements tonight. This is **item 7** on your handout for **$10,500** to accomplish the following:
- Provide two new openings in an interior block wall of in an attic room adjacent to the dome and install motorized control dampers and fire dampers at each opening..
- Reduce the size of the large outside air opening over existing abandoned steam coils.
- Provide this smaller size fresh air intake with a motorized damper and a fire damper.

This work will allow for cooled auditorium air to be recycled instead of using almost 100% outside air.

At the conclusion of this report, a series of motions will be offered to correct not only the code-related problems, but also the safety recommendations, and to implement the energy-saving measures just outlined.

The voting will require us to exercise wisdom, economy, and brotherly love in considering various elements totaling more than $55,000 if all aspects are approved.

The committee has requested secret ballots following a few moments of silent prayer while we all "listen" for the answer that satisfies the requirements of wisdom, economy, and brotherly love.

Lovingly submitted,

James Logan -- Chairman, Property Committee

Are there any questions on the report itself before we thoughtfully consider Motion No. 1? [Silent Prayer]

# HVAC recommendations - May 17, 2005

## Steam Service Closet

  

*Dotted line = Hidden Door   Steam Closet Door Open      Partial Inside View*
*1996 photos by Anne Collier*

**1.** Install a fire-rated door to the Steam Service Closet. Point/grout the inside wall of the steam closet and install a double layer cement sheet lining on outside     $ 7,000
*This is a safety recommendation included in Motion* ❷

**2.** Install a high pressure condensate flash tank with vent.          $20,000
**This NYC Code requirement** included in Motion ❶

**3.** Install high pressure shutdown device and insulate the
steam fittings in steam closet.          $ 4,500
*These are safety recommendations included in Motion* ❷

## Sub-Basement

**4.** Replace defective low pressure condensate pumps.          $ 3,500
**The NYC Code requirement is that water released into
Sewer be no warmer than 150 degrees** *– included in Motion* ❶

**5.** Repair or replace leaking steam Pressure Relief Valves.     **$1600 - $8,000**
$1600 if present valves can be repaired. $8,000 to replace.
*This is a safety recommendation included in Motion* ❷

**6.** Shut off steam to unused equipment, capping and disconnecting
obsolete hot water heat exchanger.          $ 1,500
*This is a safety recommendation included in Motion* ❷

## Return Air for Auditorium Air Conditioning

**7.** Provide two return air openings in interior block wall of upper mechanical room
adjacent to dome with motorized control dampers and fire dampers. Reduce the size
of the large outside air opening currently without dampers and install motorized
damper and fire damper to control fresh air intake.          $10,500
*Auditorium air to be recycled instead of using almost 100% outside air is Motion* ❸

## TURN OVER FOR MOTIONS TO BE PRESENTED

*(handwritten annotations)*: GENEVA SCHOOL — MOSQUITOS — STEAM HEAT/PUMPS — BLUM — PEST CONTROL — for complete file

**Subj:** **Information as Relayed to the Board**
**Date:** 4/8/00 6:44:37 PM Eastern Daylight Time
**From:** JLoganNY
**To:** Sswarzman
**CC:** MargoPGoodale

**FYI:** Here is the text of information relayed to Board last Thursday:

**The presence of mosquitoes was reported by the Geneva School and has been attended to on a temporary basis by an exterminating company.**

**There exists "standing water" in the sub-basement, a potential risk for breeding mosquitoes. The causes of this standing water have been investigated by the Consulting Engineering firm of Joseph K. Blum Co.**

**A $35,000 expenditure is anticipated to repair several leaks in the sub-basement from deteriorating equipment: 1) the steam heating system condensate receiver and pump, 2) the sewage ejector pit tank (which has two sump pumps), and 3) the steam pressure regulating and zone valves. Quotations are being sought to promptly handle these repairs.**

I'll leave at the 40 E.94 desk some photos shown to the Board that you may wish to share with the House Committtee,

Jim

*To D. Love   8/4/99*   *JACOBSON SHINODA*
*GENEVA SCHOOL*

**Jacobson Shinoda Architects P.C.**

# Invoice

| DATE | INVOICE # |
|------|-----------|
| 7/30/99 | 1[99-372] |

**BILL TO**

Third Church of Christ, Scientist
583 Park Avenue
New York, NY 10021

Attn: Diane Love

**PROJECT ADDRESS**

For Architectural Services Rendered
Third Church of Christ, Scientist
583 Park Avenue
New York, NY

| PROJECT NO. | TERMS |
|-------------|-------|
| 99-152 | Net 15 |

| DESCRIPTION | QTY | RATE | AMOUNT |
|-------------|-----|------|--------|
| FEE | | | |
| For Architectural Services Rendered | | 1,000.00 | 1,000.00 |

*To determine if fire alarm is needed in Sunday-school — for Geneva School*

| | Total | | $1,000.00 |
|--|-------|--|-----------|

# GENEVASCHOOL
*Fortes Pro Veris*
## MEMORANDUM

**To:**     Dora Redmond
             Third Church of Christ, Scientist

**From:**   Scott Parson

**Date:**    August 24, 2004

**Re:**      Electrical Upgrade

---

I would like to propose to Third Church's Board of Trustees that Third Church and the Geneva School split the cost of an electrical upgrade to the space in the basement currently being used by the School as the staff office/lounge.

We've received a proposal for the work from Third Church's approved electrician for $2,400 to install 4 new 20 amp lines in the basement panel in order to accommodate the increased computer usage, the addition of a printer and copier, as well as several small appliances used by the staff in that space.

The work would be permanent, and would be a significant improvement to the facility overall.

Would you please pass this on to your Board, and let me know if and when they have a chance to consider and decide on this?

Many thanks,

*Scott P.*

# STAUBACH

*A World of Real Estate Knowledge*

May 12, 2006

**Third Church Christ, Scientist, of New York City**
583 Park Avenue
New York, NY 10021

Attn: Fulton Macdonald, Chairman

**Re:    Premises at 583 Park Avenue, New York, New York**

Dear Mr. Macdonald:

The Staubach Company has reviewed the transaction terms for the lease between Third Church Christ, Scientist, of New York City and Rose Group Park Avenue LLC in order to confirm that the terms represent fair rental value. This market assessment does not constitute a formal appraisal, but represents a professional opinion of value.

Based on The Staubach Company's knowledge of comparable leases for restaurant and catering hall facilities, the terms of the proposed transaction represent reasonable market terms and conditions and fair rental value.

The final lease transaction terms are:

- Premises (please see Exhibit 2)
    - Total: 13,391 SF
- 20-Year lease term (with 2 additional 5 year renewal terms)
- Triple net lease structure protection for the Landlord (Church)
- $374,006.50 average annual rent (Approximately $27.93 PSF adjusted for 100% daily occupancy)
- Percent rent of 10% of gross sales in excess 10x annual rent
    - Reduced by $50,000 per annum until the $650,000 cost of Tenant replacing the roof is repaid
- No Tenant Improvements
- Non-exclusive use (5 out of 7 days/night)

The Church selected these final transaction terms as they represented the most favorable overall transaction economics for the Church, while maintaining the Church's prior existing use of the premises.

In order to determine if the final transaction terms represent market levels for rent, concessions and use, The Staubach Company looked at transaction terms for comparable restaurants and catering facilities in various Manhattan markets. Transaction terms were adjusted to net out concessions and converted to per square foot (PSF) for comparison purposes.

Tower 49, 12 East 49th Street, 31st Floor
New York, New York 10017
(212) 418-2600 Fax (212) 418-2601
www.staubach.com

The Staubach Company
provides global coverage through
DTZ Staubach Tie Leung.



**Fulton Macdonald**
**May 12, 2006**

### Premises

Most retail/restaurant leases have provisions for "back of the house" space, which is sometimes basement space. This space is used for storage, etc., and usually does not have rent attributable to it. For Comparison purposes we compared function space on all comparables.

### Term

Restaurants and catering halls are typically leased for terms between ten and twenty years. The twenty year lease term represents the high side of the market but still constitutes a market term.

### Lease Structure

Restaurants and catering halls lease structures vary from full service to triple net depending on the market and the particular building. However, the majority of transactions are structured on a triple net basis, similar to the referenced lease.

### Basic Rent

Rents for restaurants and catering halls vary greatly depending on location, building, existing infrastructure, and lease term. Triple net rents, net of concessions, for comparable space range from $20.00 to $60.00 per square foot. The referenced lease is at the bottom of the range but accounts for the excellent location and discounts slightly for the non-exclusive use, and lack of normal signage.

### Percentage Rent

Percentage rents vary from transaction to transaction making it difficult to make a market determination. However it should be noted that at conservative estimates of $5-6 million in gross sales commencing in the 2nd year, the percentage rent can equal or exceed the base rent.

### Concessions

Concessions come in the form of free rent, cash and base building improvements. The reference transaction has **no concessions** and is therefore on the bottom of the market concession spectrum.

### Use

In typical or market transactions the tenant is granted exclusive use of the premises. The Church's lease is unique because the Church has the continued use of the premises for all of its current needs. This is atypical in the market and is viewed as extremely favorable for the Church.

### Additional Consideration

The landlord (Church) will receive an additional benefit through the triple net structure due to the Church's continued use without the overhead expenses associated with the facility. Additionally the Church stands to benefit from the significant capital improvements (plumbing, electrical, lighting and HVAC systems) the Tenant has committed to install, all of which will directly benefit the Church through its continued use of the premises.



**Fulton Macdonald**
**May 12, 2006**

### Conclusion

Based on our market knowledge and the attached comparable transaction/availabilities we feel the referenced transaction represents fair rental value when all terms are considered.  However the transaction is particularly beneficial to the Church due to the continued access to the premises at no cost (rent or operating expenses) and the heavy capital investment (kitchen, HVAC, etc.) Rose will make that the Church will benefit from.

The attached chart (Exhibit 1) highlights the appropriate restaurant and catering halls comparable and available transactions including term, structure, rent, concessions and use.


Very truly yours,

Peter Hennessy


cc:     Mac Horner
        Drew Saunders
        Robert Taylor



**Fulton Macdonald**
**May 12, 2006**

<u>**Exhibit 1**</u>

**Comparable Transactions:**



| Address: | 50 East 87th Street |
|---|---|
| Tenant: | Neuman Leventhal |
| Landlord: | Park Avenue Synagogue |
| Management: | TBD |
| RSF: | 10,000 RSF |
| Structure: | Year to Year Lease |
| Notes: | -$150,000 Annual Rent<br>-No percentage rent<br>-Landlord responsible for operating, taxes, HVAC |
| NNN Equivalent | $15.00 NNN PSF |



| Address: | 163 East 67th Street |
|---|---|
| Tenant: | Neuman Leventhal |
| Landlord: | Park East Synagogue |
| Management: | TBD |
| RSF: | 8,000 RSF |
| Structure: | Year to Year Lease |
| Notes: | -$80,000 Annual Rent<br>-No percentage rent<br>-Landlord responsible for operating, taxes, HVAC |
| NNN Equivalent | $10.00 NNN PSF |



| Address: | 234 West 42nd Street |
|---|---|
| Tenant: | Dave & Busters |
| Landlord: | Forest City Ratner |
| RSF: | 33,000 RSF |
| Structure: | TBD |
| Notes: | $1.0 Mil. per annum<br>$30.30 PSF Full Service<br>10 Months Free Rent<br>$3.0 Mil. Allowance |
| NNN Equivalent | $11.00 NNN PSF |



**Fulton Macdonald**
**May 12, 2006**



| Address: | 1356 Broadway |
| --- | --- |
| Tenant: | Gotham Hall |
| Landlord: | Haier America |
| | David Odermatt 594-3330 |
| Management: | Jenel Management |
| | David Dushay 889-6405 |
| RSF: | 15,000 RSF |
| Structure: | 10 Year Lease – signed ~ 2002 |
| Notes: | Net Rent of $45.00/rsf NNN |
| | No percentage rent |
| | Tenant responsible for operating, |
| | taxes, HVAC |
| NNN Equivalent | $45.00 NNN PSF |



| Address: | 1501 Broadway |
| --- | --- |
| Tenant: | Hard Rock |
| Landlord: | Paramount Leasehold |
| Management: | Newmark |
| RSF: | 42,000 RSF |
| Structure: | 16 Years plus (2) 5 year options |
| | Full Services |
| Notes: | $60.30 PSF Gross |
| | $22.00 in Operating and Taxes |
| | No percentage rent |
| | Free Storage |
| NNN Equivalent | $38.30 NNN PSF |

**Available Space:**



| Address: | 40 Wall Street |
| --- | --- |
| Tenant: | Available Space |
| Landlord: | Trump Organization |
| Leasing: | Mogull Realty |
| RSF: | Ground: 30,525 RSF |
| Structure: | Gross Lease. 6% percentage rent. Asking rent $75.00/RSF. Operating Expenses est. $15.00/RSF, Taxes est. $12.00/RSF |
| Notes: | $40.00 PSF in Tenant Improvement contribution. |
| NNN Equivalent | $42.50 NNN PSF |



**Fulton Macdonald**
**May 12, 2006**

**Exhibit 2**

# SQUARE FOOTAGE

**FIFTH FLOOR:**
| | | |
|---|---|---|
| Organ Echo Chamber | 220 | Church Space |
| Additional Space | 352 | Shared Space |
| Landing | 56 | Shared Space |
| Maintenance Room | 25 | Shared Space |
| | 653 | |

**FOURTH FLOOR:**
| | | |
|---|---|---|
| Literature Distribution | 950 | Rose Space |
| Attic 1 | 1100 | Rose Space |
| Attic 2 | 1071 | Church Space |
| Boardroom | 418 | Shared Space |
| Church Office | 330 | Church Space |
| Hallway | 176 | Shared Space |
| Bathrooms | 140 | Shared Space |
| | 4185 | |

**THIRD FLOOR:**
| | | |
|---|---|---|
| First Reader's Room | 194 | Church Space |
| Organ Chamber | 416 | Church Space |
| | 610 | |

**SECOND FLOOR:**
| | | |
|---|---|---|
| Second Reader's Room | 145 | Church Space |
| Organ Chamber | 416 | Church Space |
| Left Balcony | 1249 | Shared Space |
| Center Balcony | 931 | Shared Space |
| Right Balcony | 1123 | Shared Space |
| Landings & Closets | 164 | Shared Space |
| | 4028 | |

**MEZZANINE**
| | | |
|---|---|---|
| Maintenance Office | 156 | Shared Space |
| Closet and landing | 87 | Shared Space |
| (Between Basement & 1st Floor) | | |
| Organist Office | 171 | Church Space |
| (Between 1st & 2nd Floor) | 414 | |



**Fulton Macdonald**
**May 12, 2006**

**GROUND FLOOR:**

| | | |
|---|---|---|
| Auditorium | 5998 | Shared Space |
| Lobby | 1080 | Shared Space |
| Clerk's Office | 194 | Shared Space |
| Sitting – Mail Box area | 56 | Shared Space |
| 63rd Street Foyer | 96 | Shared Space |
| Back Hallway | 264 | Shared Space |
| Organ Chamber | 416 | Church Space |
| | 8104 | |

**BASEMENT:**

| | | |
|---|---|---|
| Kitchen/storage | 1408 | Rose Space |
| Sunday Office (approx) | 204 | Church Space |
| Nursery (approx) | 204 | Church Space |
| Remaining space | 7399 | Shared Space |
| | 9215 | |

**SUB-BASEMENT:**

| | | |
|---|---|---|
| Garbage/Storage | 680 | Rose Space |
| AT&T | 160 | Church Space (May go to roof) |
| Organ | 130 | Church Space |
| Nextel | 182 | Church Space |
| Remaining Space | 3072 | Shared Space |
| | 4224 | |

| | |
|---|---|
| Total Square Footage | 31433 |
| Church Space | 4259 |
| Rose Space | 4138 |
| Shared Space | 23036 |

Rose anticipates using 82% of the building 30% of the time or 7,733 SF annualized
18% of the building Rose is using 100% of the time or 5,658 SF annualized
The Church is using 82% of the building 70% of the time or 18,042 SF annualized

| | |
|---|---|
| **Total Rose Annualized SF =** | **13,391 SF** |
| **Total Church Annualized SF =** | **18,042 SF** |
| **Total =** | **31,433 SF** |

**583 Park Avenue**
**2006/2007 Event Schedule**

| Event Date | Event Name | Type of Event | Event Times | Guest Count |
|---|---|---|---|---|
| 11/14/2006 | CFDA Reception | Reception | 6:30pm - 9:30pm | 400 |
| 1/22/2007 | JC Penney | Rental & Breakfast buffet | 8:00am-8:00pm | 400 |
| 5/19/2007 | Mortimer Gaghan | Rec & Luncheon | 2:30pm-6:30pm | 258 |
| 6/3-4/2007 | Oscar de la Renta Fashion Show | Fashion Show | 1:00pm - 2:00pm | 350 |
| 6/5/2007 | Jewish Women's Fndn | KOSHER Reception, Buffet | 6:00pm - 9:30pm | 200 |
| 6/12/2007 | Sloan Kettering Gala | Reception/Dinner/Dance | 7:00pm-11:00pm | 342 |
| 6/24/2007 | Alpert wedding | Wedd Cer, Rec & Buffet Dinner Dance | 5:00pm - 11:00pm | 170 |
| 6/28/2007 | New York Auto Dealers Association | Recepton/Seated dinner dance | 7:00pm - 12:00am | 206 |
| 9/8/2007 | Pokotilow Fink Wedding | Wedd Cer, Rec DD | 7:00pm - 1:30am | 323 |
| 9/10/2007 | Oscar de la Renta | fashion show | 12:30p - 2:00p | 850 |
| 9/18/2007 | New Yorkers for Children | Rec & Seated D | 6:30p-11:30p | 720 |
| 9/19/2007 | Sotheby's Int. Realty Inc. | Luncheon no alc. | 8:30a - 4:30p | 500 |
| 9/25/2007 | Association of Legal Administrators | Luncheon Open Bar | 12:00p- 2:30p | 190 |
| 9/29/2007 | Levine Schaps Wedding | Wedd Cer, Rec DD | 7:00pm - 2:00am | 314 |
| 10/4/2007 | The Synergos Institute | Reception & Seated Dinner | 5:30pm - 10:00pm | 363 |
| 10/9/2007 | UJA | Reception & Seated Dessert | 6:00pm - 10:00pm | 461 |
| 10/11/2007 | Hispanic Society | Reception & Seated Dinner | 7:30pm - 11:30pm | 320 |
| 10/16/2007 | House & Garden Magazine | Rec & Seated Dinner | 6:30pm - 10:30pm | 180 |
| 10/17/2017 | Lily Holt | Lunch reception | 11:30am-2:30pm | 70 |
| 10/18/2007 | Henry Street Settlement | Rec & Dinner | 7:00pm - 11:00pm | 400 |
| 10/19/2007 | Jones Day Reavis & Pogue | Rec & Dinner | 7:00pm-12:00am | 310 |
| 11/22/2007 | Conde Nast | Reception | 7:00pm - 9:00pm | 275 |
| 10/23/2007 | Nike Womens Fitness | Workout and Reception | 7:00pm - 10:00pm | 120 |
| 10/25/2007 | Outward Bound | Rec & Seated Dinner | 6:30pm - 10:30pm | 501 |
| 10/30/2007 | Avon Foundation | Rec & Seated Dinner | 6:30pm - 11:30pm | 570 |
| 11/1/2007 | UJA Luncheon | Luncheon | 11:15am - 2:00pm | 426 |
| 11/1/2007 | Bob Hardwick Reception | Reception | 6:30pm - 10:00pm | 634 |
| 11/2/2007 | ICI | Reception & Seated D | 7:00pm-12:00am | 320 |
| 11/5/2007 | Sundance Institute | Reception & Dinner | 6:30pm - 10:30pm | 550 |
| 11/6/2007 | Strive New York | Reception & Gala Dinner | 6:30pm - 10:30pm | 400 |
| 11/8/2007 | Global Endeavor | Reception & Seated D | 6:30pm - 11:30pm | 550 |
| 11/11/2007 | Events in Motion - Warner | Buffet Reception | 8:30pm - 11:30pm | 400 |
| 11/12/2007 | World Childhood Foundation | Reception & Seated D | 6:30pm - 11:30pm | 360 |
| 11/13/2007 | First Republic Bank | Reception | 6:00pm - 9:00pm | 350 |
| 11/15/2007 | Business Execs for Nat'l Security | Reception & Seated D | 6:30pm-10:30pm | 390 |
| 11/26/2007 | Garden House School | Reception | 6:00pm - 9:00pm | 400 |
| 11/29/2007 | Queen Sofia/Spanish Institute | Reception and Seated D | 7:30pm - 12:00am | 415 |
| 12/3/2007 | Oscar de la Renta | Fashion Show | 12:30pm - 2:00pm | 400 |
| 12/4/2007 | Hedge Fund Intelligence | Reception & Sitdown Dinner | 5:30pm - 10:30pm | 408 |
| 12/6/2007 | WSTA | Rec & Buffet dinner | 6:00pm - 11:00pm | 800 |
| 12/8/2007 | Fidessa Corp. | Reception & Buffet Dinner | 7:00pm - 1:00am | 440 |
| 12/10/2007 | Morgan Stanley | Reception & Buffet | 6:00pm - 11:00pm | 1600 |
| 12/11/2007 | UBS | Reception & Buffet | 6:00pm - 11:00pm | 600 |
| 12/13/2007 | Citigroup | Reception & Buffet | 6:00pm - 11:00pm | 1240 |
| 12/14/2007 | Keefe, Bruyette & Woods | Reception & Buffet | 6:00pm - 11:00pm | 475 |
| 12/20/2007 | DLA Piper | Rec & Buffet DD | 6:00p - 11:00pm | 570 |

## 583 Park Avenue
## 2008 Event Schedule

| Event Date | Event Name | Type of Event | Event Times | Guest Count |
|---|---|---|---|---|
| 1/25/2008 | UNFCU Gala | Reception & Seated Dinner | 6:30pm - 11:30pm | 250 |
| 1/26/2008 | Berkowitz Lee Wedding | Wedding Ceremony, Reception & DD | 7:00pm - 12:00am | 200 |
| 2/4/2008 | Oscar de la Renta | Fashion Show | 12:00pm - 2:00pm | 400 |
| 3/8/2008 | IHO Ryan Reiss | Bar Mitzvah Rec & DD | 7:00pm - 12:00am | 200 |
| 3/10/2008 | Signature Theatre Company | Rec & Dinner | 6:30pm - 10:30pm | 375 |
| 3/11-20/08 | Asian Art Fair | Trade Show | 11:00am - 7:30pm | 500 |
| 3/14/2008 | Asia Society Reception | Cocktail Reception | 6:00pm - 9:00pm | 750 |
| 4/5/2008 | Weil - Lax Wedding | Wedd Cer, Rec & DD | 7:30pm - 1:30pm | 300 |
| 4/8/2008 | Horticultural Society | Reception & Gala Dinner | 7:00pm - 11:00pm | 275 |
| 4/10/2008 | Willkie, Farr & Gallagher | Reception & Buffet DD | 6:30pm - 11:30pm | 400 |
| 4/12/2008 | Lustig Bat Mitzvah | Reception & Dinner | 7:00pm - 12:00am | 195 |
| 4/13-14/2008 | Oscar de la Renta | setup day & fashion show | 10:00a-12:30p | 400 |
| 4/15/2008 | Allen Stevenson | Reception | 6:00pm - 9:00pm | 700 |
| 4/16/2008 | Bard Graduate Center | Reception & Luncheon | 12:00pm - 2:30pm | 125 |
| 4/21/2008 | Consorzio Vino Wine Tasting | Reception & Wine tasting | 2:00pm - 8:00pm | 600 |
| 4/26/2008 | Reggie Van Lee Gala | Reception & Seated Dinner | 6:00pm - 11:00pm | 200 |
| 5/2/2008 | Sacred Heart School | Rec & Seated Dinner | 6:30pm - 11:00pm | 450 |
| 5/3/2008 | IHO: Miss Alyx Levy | Rec & DD | 6:00pm - 11:00pm | 250 |
| 5/5/2008 | Sarcoma Foundation | Reception & Seated Dinner | 6:00pm - 10:00pm | 500 |
| 5/10/2008 | Slaton Green Wedding | Ceremony, Rec & DD | TBD (7:00pm-1:00am) | 350 |
| 5/12/2008 | CAMERA | Kosher Rec & D | 6:00pm - 10:00pm | 400 |
| 5/19/2008-TBC | Oscar de la Renta | setup day & fashion show | 12:30pm-2:30pm | 400 |
| 6/4/2008 | Chapin School Graduation | Graduation & reception | 10:00am - 1:30pm | 400 |
| 8/23/2008 | Hammalove / Neuman Wedding | Cer, Rec & DD | TBD (7:00pm-1:00am) | 200 |
| 9/10/2008 | ANA Conference | all-day mtg: bfast, break, buffet lunch, break | 6:00a-4:00p | 150 |
| 10/4/2008 | IHO: Erica & Nicki Cohen | Rec & DD | 7:00p - 12:00a | 225 |
| 10/11/2008 | Bloom Bat Mitzvah | Rec & DD | TBD (7:00pm-12:00am) | 250 |
| 10/23/2008 | Maverick Capital | Lunch, mtg, break, reception | 12:00pm - 7:00pm | 350 |
| 11/1/2008 | IHO: Emily Becker | Rec & DD | 8:00p - 1:00am | 225 |
| 11/13/2008 | Global Endeavor | Rec & Dinner | TBD (6:00pm-11:00pm) | 400 |
| 12/4/2008 | Morgan Stanley | Reception and buffet DD | 6:00pm - 10:00pm | 1500 |



THE NEW YORK CITY LANDMARKS PRESERVATION COMMISSION
1 CENTRE STREET 9TH FLOOR NORTH NEW YORK, NY 10007
TEL: 212 669-7700 FAX: 212 669-7780

# PERMIT
# FOR MINOR WORK

| ISSUE DATE: 09/21/07 | EXPIRATION DATE: 09/21/2011 | DOCKET #: 072909 | PMW #: PMW 08-3361 |
|---|---|---|---|

| ADDRESS 583 PARK AVENUE  HISTORIC DISTRICT UPPER EAST SIDE | BOROUGH: MANHATTAN | BLOCK/LOT: 1390 / 1 |
|---|---|---|

**Display This Permit While Work Is In Progress**

ISSUED TO:

**R. Fulton MacDonald**
**Third Church of Christ Scientist of New York City**
**583 Park Avenue**
**New York, NY 10021**

Pursuant to Section 25-310 of the Administrative Code of the City of New York, the Landmarks Preservation Commission hereby approves certain alterations to the subject premises as proposed in your application completed on September 21, 2007.

The approved work consists of installing limestone color painted metal panels at the frieze, directly below the triangular pediment covering existing incised lettering; install slate color painted metal panels within the two existing framed tablets located on the front façade; removing the metal directory at the southern most corner of the front façade, and repairing the brick and mortar in-kind; as shown in current condition photographs and drawings labeled A100, A301 and A302 dated June 19, 2007, and A201 dated November 27, 2007, prepared by Michael L. Goldblum, R.A.

In reviewing this proposal, the Commission notes that the Upper East Side Historic District designation report describes 583 Park Avenue as a neo-Georgian style church designed by Delano & Aldrich and built in 1922-24; and that the style, scale, materials and details of the building are among the features which contribute to the special architectural and historic character of the Upper East Side Historic District. The Commission also notes that Warning Letter 08-0185 was issued September 19, 2007 for "Alterations to facade without permit(s)".

With regard to this proposal, the Commission finds that the installation of applied metal panels at the frieze to cover the existing carved signage will not result in the removal of significant historic fabric and that the panels will be scored and finished to match the stone ; that the installation of the panel at the

frieze will be installed into the mortar joints, and will not damage or destroy any significant architectural features of the building; and that the installation of the thin metal panels over the existing slate panels at the ground floor signs attached at the perimeter joint will match the color and texture of the existing material, will be set within the stone frame, and will be attached as to not damage or destroy the underlying slate; and that the repointing of the brick will match the original in terms of composition, color, texture, finish, details and tooling and therefore, will not be detrimental to the brick, stone, stucco or facade in terms of being too strong or hard. Based on these findings, the work is approved and Warning Letter 08-0185 is hereby rescinded.

This permit is issued on the basis of the building and site conditions described in the application and disclosed during the review process. By accepting this permit, the applicant agrees to notify the Commission if the actual building or site conditions vary or if original or historic building fabric is discovered. The Commission reserves the right to amend or revoke this permit, upon written notice to the applicant, in the event that the actual building or site conditions are materially different from those described in the application or disclosed during the review process.

All approved drawings are marked approved by the Commission with a perforated seal indicating the date of approval. The work is limited to what is contained in the perforated documents. Other work or amendments to this filing must be reviewed and approved separately. The applicant is hereby put on notice that performing or maintaining any work not explicitly authorized by this permit may make the applicant liable for criminal and/or civil penalties, including imprisonment and fines. This letter constitutes the permit; a copy must be prominently displayed at the site while work is in progress. Please direct inquiries to Kim Valente.

Robert B. Tierney
Chair

**PLEASE NOTE: A COPY OF THIS PERMIT HAS BEEN SENT TO:**
**Michael L. Goldblum, The Building Studio, LLP**

cc:    Michael L. Goldblum, The Building Studio, LLP; Jay A. Segal, Esq.;
Mark Silberman, Legal Counsel; John Weiss, Deputy Legal Counsel;
William Neeley, Deputy Director of Preservation; Lily Fan, Director
of Enforcement





583 PARK AVENUE
NEW YORK

THIRD CHURCH OF
CHRIST, SCIENTIST

CHRISTIAN SCIENCE SERVICES
SUNDAY          11 AM*
SUNDAY SCHOOL 11 AM
WEDNESDAY MEETING      2:30 PM*
INCLUDES TESTIMONIES OF HEALING
*CHILD CARE PROVIDED

ALL ARE WELCOME
CHRISTIAN SCIENCE READING ROOM
147 EAST 62ND STREET









 **POLICE DEPARTMENT**

**The City of New York**

19th Precinct
153 East 67 Street
New York, N.Y. 10021

January 18, 2008

Louis Rose
The Rose Group
583 Park Avenue
New York, New York 10021

Dear Mr. Rose,

I am a police officer employed by the New York City Police Department and serve as the community affairs officer for the 19th precinct.

At your request, I ran a report of the 311 calls made concerning 583 Park Avenue from June through the end of December 2007. Approximately 26 calls were made. All of these calls related to "quality of life" complaints such as noise, traffic and double parking. Because we do our best to be responsive to the local community, it is the policy of the NYPD to respond to every 311 call, and I believe we did respond to all of these calls. In each such case, by the time an officer arrived at the location there either appeared to be no basis for the complaint or the situation giving rise to the complaint had already ended. Most dispositions to these calls were that the complaints were resolved without incident or were unfounded. So as far as I know, during the period in question, we have never issued any summonses or otherwise taken any action against the Rose Group or anyone else responsible for events held at 583 Park Avenue.

Please let me know if you have further questions.

Sincerely,

Chris Helms
Police Officer

COURTESY  •  PROFESSIONALISM  •  RESPECT

A Special Corporate Meeting of Third Church of Christ, Scientist, of New York City was called to order by the Clerk on Monday, March 26th at 7:00 p.m.  A quorum was present.

The meeting opened with the singing of Hymn 23; words by Mary Baker Eddy.

The President, Sylvia Sirota, read selections from the Bible and the writings of Mary Baker Eddy.  This was followed by silent prayer and the audible repetition of the Lord's Prayer.

The Parliamentarian for the meeting was Jean Hall.

The Clerk read the Call to Meeting dated March 16, 2007.

Report by the Chairman of the Board of Trustees – Fulton Macdonald

Guest Speaker – Louis Rose of the Rose Group gave a report followed by a question and answer period.

## NEW BUSINESS

It was **MOVED** and **SECONDED** to authorize the Trustees to negotiate with Rose Group Park Avenue LLC (the "Tenant") an amendment to the lease which would obligate the Church to pay to the Tenant an amount up to the funds that the Tenant invested in restoration of the edifice. Such obligation would be contingent upon completion of the restoration work required by in the lease.  Such obligation would also come into effect only if the Tenant loses its accessory use permit, is unable to conduct a catering activity in the edifice and only if the Tenant applies for a 74-711 permit, and such application is denied and the Tenant timely prosecutes an appeal and loses the appeal of any such denial.

It was **MOVED** and **SECONDED** but not carried to postpone indefinitely deliberation of the main motion.  **16 No, 10 Yes**

The main motion was then **CARRIED**.  **15 YES, 11 NO**

It was **MOVED, SECONDED**, and **CARRIED** to authorize the Trustees to negotiate an amendment to the lease which would require the Tenant to abide by standards concerning sound and light levels, traffic control, signage, external marketing communications, number of events, and number of people at events.  These standards shall be set by agreement between the landlord and Tenant, and/or by agreements to which the Church and its neighbors are parties, and shall include all Municipal requirements concerning the use of the building.  Such amendment would also provide that the Tenant's contracts with its clients require similar conformity with standards in effect from time to time concerning sound and light levels, traffic control, number of persons attending events and signage on the exterior of the building.

It was **MOVED, SECONDED**, and **CARRIED** to authorize the Trustees to negotiate an amendment to the lease which would require the Tenant to provide insurance coverage at the levels mandated by the Church's insurance broker and insurance underwriter.

It was **MOVED, SECONDED,** and **CARRIED** to authorize the Trustees to negotiate an amendment to the lease which would require the Tenant to provide catering for up to 20 events per year related to Church activity at cost. Sales form such events will not be included in the calculation of percentage rent.

## ADJOURNMENT

It was **MOVED, SECONDED,** and **CARRIED** to adjourn.

The meeting was adjourned at 10:11 PM with the audible repetition of the "Scientific Statement of Being" from Science and Health with Key to the Scriptures by Mary Baker Eddy, and the correlative scripture from 1 John 3:1-3.

Lovingly submitted,

*Dora Redman*

Dora Redman
Clerk

SATTERLEE STEPHENS BURKE & BURKE LLP
230 PARK AVENUE
NEW YORK, NY 10169-0079
(212) 818 9200

33 WOOD AVENUE  S.
ISELIN, NJ 08830-2735
(732) 603-4966
FAX (732) 603-4977

FAX (212) 818-9606/7
www.ssbb.com

DAVIS WRIGHT TREMAINE LLP
DATE: _____ 2/20/08
☐ MAIL  ☑ BY HAND
☐ FAX   ☐ FEDERAL EXPRESS

E-Mail: jsaver@ssbb.com

February 20, 2008

BY HAND

Paula Gellman, Esq.
NYS Attorney General
Charities Division
120 Broadway
Third Floor
Room 2520
New York, NY  10271-0332

Re:    Third Church Christ, Scientist, of New York City;
       Lease Dated January 31, 2006;
       Premises at 583 Park Avenue, New York, New York

Dear Ms. Gellman:

This firm is counsel to Third Church Christ, Scientist, of New York City (the "Church") in connection with the above-referenced lease (the "Lease"). You have inquired concerning the circumstances surrounding the Second Amendment of the Lease dated March 27, 2007 (the "Second Amendment") and have requested certain information relating to the statements contained in the preamble to that amendment. Pursuant to your request, I have attached hereto as Exhibit A a spreadsheet showing the "Initial Expenditures" (payments 2/8/06 – 3/26/07) that were incurred by the tenant, Rose Group Park Avenue LLC ("Rose Group"), prior to the date of the amendment,[1] the "Additional Expenditures" (payments 4/29/07 to date) made by the Rose Group subsequent to the date of the amendment up to February 14, 2008 and accounts payable as of February 14, 2008.[2]

---

[1]  As you can see, as of the end of March 2007, the Rose Group had expended $2,117,662. While lower than the $2.5 million figure included in the whereas clause of the Second Amendment, this amount is substantially the same as that figure; indeed, if one includes payments made to fund construction by the end of April, 2007, the amount of construction costs as of that date is in fact higher than $2.5 million.

[2]  The total spent as of February 14, 2008 by Rose Group is $7,229,899 with outstanding accounts payable of $1,340,311 for a total of $8,570,210.

724044_5

SATTERLEE STEPHENS BURKE & BURKE LLP

Paula Gellman, Esq.
February 20, 2008
Page 2

You have also inquired concerning whether or not the roof repair referred to in the Lease (paragraph 5.H) has been completed. While temporary repairs have been completed and the leaking has been substantially stopped, the major roof repair, which includes a very expensive replacement of the slate roofing shingles has been delayed due to a combination of the expense, the winter weather and the necessity of obtaining the approval of the Landmarks Preservation Commission for the contemplated work. Is it anticipated that the roof work will commence in the summer of 2008 and will proceed at the pace permitted by the financial resources of the Rose Group. If new leaks appear prior to the completion of the replacement, temporary repairs will continue to be made as required. In the meantime, as stated above, temporary repairs have been completed, the roof is substantially watertight and work on the building systems and the interior of the building is almost (95%) complete as of this writing.

Finally, you have inquired concerning whether or not either the Church or the Rose Group contemplated seeking the approval of the Supreme Court and your office prior to executing the Second Amendment to the Lease. It is my recollection that both parties considered seeking the approval of the Supreme Court to be premature because the manner of any possible future disposition of the premises of 583 Park Avenue was both remote and undefined at the time the Second Amendment was negotiated. The original Lease was specifically conditioned upon the Church receiving permission from the New York City Department of Buildings ("DOB") before the Church would authorize the commencement of construction work in or on the premises. *See* Lease at paragraph 2.3c. After that permission, in the form of a pre-consideration approval, was granted in writing by the DOB, and the other conditions set forth in Article 2 of the Lease had been met, the Church permitted the Rose Group to begin its renovation of the building in accordance with the terms of the Lease.

In June 2006, almost a year prior to the execution of the Second Amendment, the Church had received a modified pre-consideration approval from the DOB permitting the use as contemplated in the Lease. On March 12, 2007, however, an attorney representing several neighbors of the Church wrote to the DOB asking that the DOB revoke all permits. This was well after the construction work had begun pursuant to the Lease. While the Church reasonably believed at that time that the DOB would adhere to its previous decision, which we believed was fully justified, to issue the pre-consideration approval for the accessory use permit, that provocative letter from counsel for the Church's influential neighbors did introduce an element of uncertainty. Accordingly, the Church wanted to ensure that the alterations described in the Lease would be completed and that all necessary steps would be taken to maintain the accessory use permit or another form of permit that would allow continued use of the premises as contemplated by the Lease. Without the rental income from the Lease, the Church would be unable to carry out any of its programs or perhaps even to continue to be able to meet the financial obligations of operating and maintaining the premises.

The Second Amendment provided, in essence, that if the Rose Group and the Church were unable to use the premises for the use permitted under the Lease, then the Church

SATTERLEE STEPHENS BURKE & BURKE LLP

Paula Gellman, Esq.
February 20, 2008
Page 3

would use its best efforts to make a "disposition" of the premises mutually acceptable to the Church and the Rose Group, so as to generate sufficient proceeds to pay to the Rose Group the expenses which it would incur to make further improvements to the building from and after the date of the Second Amendment. That "disposition" could take any one of several different forms, such as a further subleasing of the premises, termination of the existing Rose Group lease and the execution of a new lease with a third party, a mortgage of the premises or an outright sale of the premises to a third party. Any one of the aforementioned forms of "disposition" would require the approval of the New York State Supreme Court and the New York State Department of Law. Therefore, the parties considered an application for an approval of the Second Amendment to be premature. None of the terms of the disposition could be known until and unless a disposition in fact became necessary and the parties were able to mutually agree on the form of said disposition.

At the time of the Second Amendment both parties were aware of the need for the approval of the Supreme Court and the New York State Department of Law in the event of any eventual disposition of the premises. During this time, it was important to the Church to ensure that the improvements to the premises as outlined in the Lease were carried out to completion and that all reasonable legal steps were pursued in order to obtain permission for the use contemplated by the Lease, either as an accessory use or by obtaining a modification of the use regulations, so that the building could continue to be maintained and preserved. The Church did not enter into the Second Amendment lightly. The decision whether to enter into that amendment was the subject of a special corporate meeting of the Church held on Monday, March 26, 2007. At that meeting, both the first and second amendments to the Lease were approved by the members of the congregation. A copy of the minutes of that special corporate meeting is attached hereto as Exhibit B.

It is the belief of both the Church and the Rose Group that, as a result of the current lawsuit brought by the Church against the City of New York, the use contemplated by the Lease will be permitted as it originally was by the DOB. (As you may know, the United States District Court for the Southern District of New York has issued a Temporary Restraining Order enjoining the DOB from revoking the earlier-issued permission.) However, in the event that the Church and the Rose Group are ultimately unable to use the premises for the permitted use as set forth in the Lease, the Church understands its obligation to seek the approval of both the New York State Department of Law and the New York State Supreme Court for any disposition of the premises at 583 Park Avenue. The instant situation is analogous to an option to sell property belonging to a religious organization. While the option agreement itself does not require the approval of the Court or the Department of Law, once the option is exercised and an actual sale will take place those approvals must be obtained prior to and as a condition of any closing.

724044_5

SATTERLEE STEPHENS BURKE & BURKE LLP

Paula Gellman, Esq.
February 20, 2008
Page 4


       If you have any further questions or require any further information, please contact the undersigned at any time.

                    Very truly yours,


                    J. Gregory Saver


JGS:jr

02/14/08

# The Rose Group, LLC DBA: 583 Park Avenue
## Transaction List by Vendor

| Type | Date | Num | Memo | Payments 2/8/06 - 3/26/07 | Payments & Payables as of 3/26/07 | Payments 3/27/07-4/28/07 | Payments 4/29/07 to date | Accounts Payable as of 2/14/08 |
|---|---|---|---|---|---|---|---|---|
| **ACME Mechanical Contractors, Inc.** | | | | | | | | |
| Check | 12/20/2006 | 2126 | Invoice: Dec. 19th | -9,237.65 | -9,237.65 | | | |
| Check | 01/05/2007 | 2155 | Invoice #2 | -12,698.24 | -12,698.24 | | | |
| Check | 01/25/2007 | 2175 | Invoice #3 | -13,905.87 | -13,905.87 | | | |
| Check | 02/08/2007 | 2209 | Invoice #4 | -17,487.38 | -17,487.38 | | | |
| Check | 02/26/2007 | 2231 | Invoice 5A | -14,080.32 | -14,080.32 | | | |
| Bill Pmt -Check | 03/02/2007 | 2246 | Invoice #5 | -14,720.00 | -14,720.00 | | | |
| Bill Pmt -Check | 03/13/2007 | 2275 | Invoice #6 | -34,565.40 | -34,565.40 | | | |
| Bill Pmt -Check | 03/29/2007 | 2515 | | | | -10,155.00 | | |
| Bill Pmt -Check | 04/11/2007 | 2536 | | | | -20,000.00 | | |
| Bill Pmt -Check | 04/25/2007 | 2579 | | | | -60,000.00 | | |
| Bill Pmt -Check | 05/03/2007 | 2598 | | | | | -20,000.00 | |
| Bill Pmt -Check | 05/03/2007 | 2599 | | | | | -20,000.00 | |
| Bill Pmt -Check | 05/17/2007 | 2651 | | | | | -25,000.00 | |
| Bill Pmt -Check | 05/25/2007 | 2681 | | | | | -35,000.00 | |
| Bill Pmt -Check | 06/01/2007 | 2715 | | | | | -25,000.00 | |
| Bill Pmt -Check | 06/08/2007 | 2753 | | | | | -30,000.00 | |
| Check | 06/14/2007 | 2775 | | | | | -35,000.00 | |
| Check | 06/22/2007 | 2792 | | | | | -35,000.00 | |
| Check | 06/29/2007 | 2852 | | | | | -25,000.00 | |
| Check | 07/13/2007 | 2907 | | | | | -25,000.00 | |
| Check | 07/20/2007 | 2937 | Partial #2 June Invoice | | | | -15,000.00 | |
| Check | 07/26/2007 | 2947 | Partial June Invoice payment | | | | -25,000.00 | |
| Check | 08/03/2007 | 2990 | July Payment | | | | -25,000.00 | |
| Check | 08/10/2007 | 3007 | Invoice #14 | | | | -25,000.00 | |
| Check | 08/24/2007 | 3062 | | | | | -15,000.00 | |
| Check | 09/06/2007 | 3111 | | | | | -15,000.00 | |
| Check | 09/14/2007 | 3132 | | | | | -15,000.00 | |
| Check | 09/21/2007 | 3159 | Sept. invoice payment | | | | -10,000.00 | |
| Check | 09/28/2007 | 3210 | WE 9/30 | | | | -2,000.00 | |
| Check | 10/05/2007 | 3257 | | | | | -15,000.00 | |
| Check | 10/12/2007 | 3283 | | | | | -15,000.00 | |
| Bill Pmt -Check | 10/19/2007 | 3324 | | | | | -15,000.00 | |
| Bill Pmt -Check | 11/02/2007 | 3417 | | | | | -15,000.00 | |
| Bill Pmt -Check | 11/09/2007 | 3448 | | | | | -15,000.00 | |
| Bill Pmt -Check | 11/16/2007 | 3510 | | | | | -15,000.00 | |
| Bill Pmt -Check | 11/21/2007 | 3520 | | | | | -15,000.00 | |
| Bill Pmt -Check | 12/07/2007 | 3590 | | | | | -15,000.00 | |
| Bill Pmt -Check | 12/14/2007 | 3617 | | | | | -15,000.00 | |
| Bill Pmt -Check | 01/04/2008 | 3686 | | | | | -8,000.00 | |
| Bill Pmt -Check | 01/11/2008 | 3695 | | | | | -4,000.00 | |
| Bill Pmt -Check | 02/08/2008 | 3757 | | | | | -5,000.00 | |
| Accounts Payable | | | Accounts Payable | | | | -1,000.00 | -309,477.29 |
| **Advanced Construction Estimating, Inc.** | | | | | | | | |
| Check | 02/01/2007 | 2195 | Invoice #1 | -6,500.00 | -6,500.00 | | | |
| Check | 02/15/2007 | 2223 | Req # 2, 2/12/07, Contract $13000, down $5500, balance due. | | -6,500.00 | | | |
| Check | 02/26/2007 | 2232 | Phase II #1 | | -8,500.00 | | | |
| Check | 03/08/2007 | 2270 | | | -9,900.00 | | | |

The Hodge Group, LLC DBA: 500 Park Avenue

## Transaction List by Vendor

| Type | Date | Num | Memo | Payments 2/8/06 - 3/26/07 | Payments & Payables as of 3/26/07 | Payments 3/27/07 -4/28/07 | Payments 4/29/07 to date | Accounts Payable as of 2/14/08 |
|---|---|---|---|---|---|---|---|---|
| **Advanced Construction Estimating, Inc.** | | | | | | | | |
| Check | 03/23/2007 | 2507 | Partial WE 3/25 | -5,000.00 | | | | |
| Check | 03/29/2007 | 2517 | Final Payment Phase II | | -5,000.00 | | | |
| Check | 04/11/2007 | 2538 | Payment Phase III & IV | | | -5,800.00 | | |
| Bill Pmt -Check | 04/20/2007 | 2569 | | | | -5,000.00 | | |
| Check | 04/25/2007 | 2580 | | | | -5,500.00 | | |
| Bill Pmt -Check | 05/10/2007 | 2626 | | | | -5,000.00 | | |
| Bill Pmt -Check | 05/10/2007 | 2627 | | | | | -1,100.00 | |
| Check | 05/17/2007 | 2653 | | | | | -9,500.00 | |
| Check | 05/25/2007 | 2683 | | | | | -7,500.00 | |
| Check | 06/01/2007 | 2717 | May Payment | | | | -10,000.00 | |
| Check | 06/08/2007 | 2757 | | | | | -7,500.00 | |
| Check | 06/18/2007 | 2768 | | | | | -5,000.00 | |
| Bill Pmt -Check | 06/22/2007 | 2791 | 80% of Phase IV | | | | -3,700.00 | |
| Check | 06/29/2007 | 2853 | | | | | -5,000.00 | |
| Check | 07/13/2007 | 2916 | | | | | -5,000.00 | |
| Check | 07/26/2007 | 2950 | Phase XVIII plus partial June payment | | | | -8,500.00 | |
| Check | 08/03/2007 | 2984 | Phase XX payment | | | | -8,500.00 | |
| Check | 08/10/2007 | 3009 | Phase XX final | | | | -9,700.00 | |
| Check | 08/17/2007 | 3029 | | | | | -7,500.00 | |
| Check | 08/24/2007 | 3060 | | | | | -7,500.00 | |
| Check | 08/30/2007 | 3078 | | | | | -7,500.00 | |
| Check | 09/06/2007 | 3113 | | | | | -8,080.00 | |
| Check | 09/14/2007 | 3133 | | | | | -7,000.00 | |
| Check | 09/21/2007 | 3160 | Sept. Invoice payment | | | | -4,500.00 | |
| Check | 09/28/2007 | 3212 | WE 9/30 payment | | | | -4,000.00 | |
| Check | 10/05/2007 | 3256 | | | | | -2,000.00 | |
| Check | 10/12/2007 | 3281 | | | | | -6,500.00 | |
| Bill Pmt -Check | 11/02/2007 | 3404 | | | | | -3,000.00 | |
| Bill Pmt -Check | 11/09/2007 | 3452 | | | | | -4,500.00 | |
| Bill Pmt -Check | 11/16/2007 | 3511 | | | | | -5,000.00 | |
| **Accounts Payable** | | | Accounts Payable | | | | | -11,580.00 |
| | | | | | | | | |
| **AEC Consulting & Expediting, Inc.** | | | | | | | | |
| Check | 03/22/2006 | R-1474 | Permit Applications | -3,500.00 | -3,500.00 | | | |
| Check | 04/11/2006 | 92 | Invoice #12606 (Recon) | -4,500.00 | -4,500.00 | | | |
| Check | 04/26/2006 | 94 | Deposit Proposal 5864 | -1,300.00 | -1,300.00 | | | |
| Check | 05/01/2006 | 99 | Proposal 5200 | -300.00 | -300.00 | | | |
| Check | 06/19/2006 | 1003 | #12905 | -10.00 | -10.00 | | | |
| Check | 08/08/2006 | 1019 | Proposal 6483 | -2,000.00 | -2,000.00 | | | |
| Check | 08/28/2006 | 1040 | 13162 & 13148 | -93.91 | -93.91 | | | |
| Check | 09/06/2006 | 1063 | Invoice 13492 | -1,150.00 | -1,150.00 | | | |
| Check | 09/22/2006 | 1063 | | -4,139.20 | -4,139.20 | | | |
| Check | 10/02/2006 | 1108 | Invoice #13754 | -350.00 | -350.00 | | | |
| Check | 10/12/2006 | 1123 | Invoice #5878 (Public Assembly) | -3,000.00 | -3,000.00 | | | |
| Check | 10/16/2006 | 2008 | Invoices: 13587, 13802,13830 | -87.95 | -87.95 | | | |
| Check | 10/19/2006 | 2011 | Invoice #13658 | -20.00 | -20.00 | | | |
| Check | 10/20/2006 | 2025 | Consulting proposal partial | -3,600.00 | -3,600.00 | | | |
| Check | 10/25/2006 | 2030 | balance of proposal 6779/6780 | -1,000.00 | -1,000.00 | | | |

02/14/08

## Transaction List by Vendor

| | Type | Date | Num | Memo | Payments 2/8/06 - 3/26/07 | Payments & Payables as of 3/26/07 | Payments 3/27/07-4/28/07 | Payments 4/29/07 to date | Accounts Payable as of 2/14/08 |
|---|---|---|---|---|---|---|---|---|---|
| **AEC Consulting & Expediting, Inc.** | | | | | | | | | |
| AEC Consulting & Expediting, Inc. | Check | 11/02/2006 | 2043 | Prop: 6786,6787,6788,6789,6816 | -9,675.00 | -9,675.00 | | | |
| AEC Consulting & Expediting, Inc. | Check | 11/16/2006 | 2072 | Invoice #13893 | -1,100.00 | -1,100.00 | | | |
| AEC Consulting & Expediting, Inc. | Check | 12/05/2006 | 2093 | Invoice #14221 | -350.00 | -350.00 | | | |
| AEC Consulting & Expediting, Inc. | Check | 05/04/2007 | 1137 | | | | | -385.00 | |
| AEC Consulting & Expediting, Inc. | Bill Pmt -Check | 05/08/2007 | 2610 | C of O research | | | | -5,091.60 | |
| AEC Consulting & Expediting, Inc. | Bill Pmt -Check | 08/20/2007 | 3032 | | | | | -450.00 | |
| AEC Consulting & Expediting, Inc. | Accounts Payable | | | Accounts Payable | | | | | -466.95 |
| **Alliance Carpet & Tile** | | | | | | | | | |
| Alliance Carpet & Tile | Check | 11/01/2006 | 2042 | Prop: 6608 Deposit 50% | -1,679.82 | -1,679.82 | | | |
| Alliance Carpet & Tile | Check | 11/13/2006 | 2055 | Invoice #06-6608 | -1,679.81 | -1,679.81 | | | |
| Alliance Carpet & Tile | Bill Pmt -Check | 05/07/2007 | 2605 | | | | | -6,353.49 | |
| Alliance Carpet & Tile | Check | 05/24/2007 | 2679 | | | | | -5,000.00 | |
| Alliance Carpet & Tile | Check | 09/04/2007 | 3097 | | | | | -4,494.19 | |
| **Allied Flooring Systems Inc.** | | | | | | | | | |
| Allied Flooring Systems Inc. | Check | 09/04/2007 | 3098 | | | | | -2,000.00 | |
| Allied Flooring Systems Inc. | Check | 09/21/2007 | 3165 | | | | | -2,500.00 | |
| Allied Flooring Systems Inc. | Check | 11/02/2007 | 3415 | Sept. Invoice Payment 7-1906 | | | | -6,758.88 | |
| **Amec Services Electric, Inc** | | | | | | | | | |
| Amec Services Electric, Inc | Check | 09/12/2006 | 1075 | 2080 | -735.00 | -735.00 | | | |
| Amec Services Electric, Inc | Bill Pmt -Check | 10/11/2006 | 1113 | | -24,430.09 | -24,430.09 | | | |
| Amec Services Electric, Inc | Bill Pmt -Check | 10/11/2006 | 1122 | Deposit for Temporary Heat | -3,000.00 | -3,000.00 | | | |
| Amec Services Electric, Inc | Bill Pmt -Check | 10/11/2006 | 1121 | Deposit for new Pannel | -5,000.00 | -5,000.00 | | | |
| Amec Services Electric, Inc | Bill Pmt -Check | 10/19/2006 | 2012 | Invoice #2098 | -7,609.80 | -7,609.80 | | | |
| Amec Services Electric, Inc | Bill Pmt -Check | 10/27/2006 | 2037 | Invoice #2101 | -3,423.59 | -3,423.59 | | | |
| Amec Services Electric, Inc | Bill Pmt -Check | 11/13/2006 | 2057 | Invoices: 2102B, 2103B | -23,423.59 | -23,423.59 | | | |
| Amec Services Electric, Inc | Bill Pmt -Check | 12/20/2006 | 2134 | Invoice #2118 | -3,578.10 | -3,578.10 | | | |
| Amec Services Electric, Inc | Bill Pmt -Check | 12/20/2006 | 2133 | Invoice #2109 | -6,412.20 | -6,412.00 | | | |
| Amec Services Electric, Inc | Bill Pmt -Check | 12/20/2006 | 2132 | Invoice #2117A | -7,500.00 | -7,500.00 | | | |
| Amec Services Electric, Inc | Bill Pmt -Check | 12/20/2006 | 2131 | Invoice #2103C | -3,900.00 | -3,900.00 | | | |
| Amec Services Electric, Inc | Bill Pmt -Check | 12/20/2006 | 2130 | Invoice #2102C | -500.00 | -500.00 | | | |
| Amec Services Electric, Inc | Bill Pmt -Check | 12/20/2006 | 2129 | Invoice #2093B | -2,500.00 | -2,500.00 | | | |
| Amec Services Electric, Inc | Bill Pmt -Check | 12/20/2006 | 2128 | Invoice #2108 | -7,500.00 | -7,500.00 | | | |
| Amec Services Electric, Inc | Bill Pmt -Check | 02/15/2007 | 2224 | Settle the listed Invoices | -83,035.20 | -83,035.20 | | | |
| Amec Services Electric, Inc | Bill Pmt -Check | 08/03/2007 | 2987 | open invoices | | | | -20,718.88 | |
| **Americold, Inc.** | | | | | | | | | |
| Americold, Inc. | Accounts Payable | | | Accounts Payable | | | | | -394.21 |
| **Andrew Katz** | | | | | | | | | |
| Andrew Katz | Check | 07/27/2006 | 1015 | Retainer (as per Joe G) | -1,000.00 | -1,000.00 | | | |
| Andrew Katz | Check | 08/16/2006 | 1032 | Electrical Plan deposit | -3,500.00 | -3,500.00 | | | |
| Andrew Katz | Check | 08/19/2006 | 1033 | Fire Alarm Plan Deposit | -3,500.00 | -3,500.00 | | | |
| Andrew Katz | Check | 08/16/2006 | 1034 | Plumbing Plan Deposit | -3,500.00 | -3,500.00 | | | |

The Rose Group, LLC DBA: 583 Park Avenue
## Transaction List by Vendor

2/14/08

| Vendor / Type | Date | Num | Memo | Payments 2/8/06 - 3/26/07 | Payments & Payables as of 3/26/07 | Payments 3/27/07-4/28/07 | Payments 4/29/07 to date | Accounts Payable as of 2/14/08 |
|---|---|---|---|---|---|---|---|---|
| **Andrew Katz** | | | | | | | | |
| Check | 10/19/2006 | 2013 | Plumbing, Sprinklers, Electrical Engineering | | | | | |
| Check | 12/20/2006 | 2122 | | -9,500.00 | -9,500.00 | | | |
| Bill Pmt -Check | 05/10/2007 | 2631 | Fire / Plumbing Filing | -3,500.00 | -3,500.00 | | -7,000.00 | |
| Accounts Payable | | | Accounts Payable | | | | | -7,000.00 |
| **Appia Marble & Granite, Inc.** | | | | | | | | |
| Bill Pmt -Check | 04/20/2007 | 2552 | | | | -10,000.00 | | |
| Bill Pmt -Check | 05/09/2007 | 2612 | | | | | | |
| Bill Pmt -Check | 05/18/2007 | 2659 | | | | | -10,000.00 | |
| Bill Pmt -Check | 06/22/2007 | 2798 | | | | | -25,000.00 | |
| Bill Pmt -Check | 07/13/2007 | 2909 | | | | | -35,000.00 | |
| Bill Pmt -Check | 07/26/2007 | 2948 | | | | | -10,000.00 | |
| Bill Pmt -Check | 08/17/2007 | 3031 | | | | | -10,000.00 | |
| Bill Pmt -Check | 08/24/2007 | 3066 | | | | | -15,000.00 | |
| Bill Pmt -Check | 09/06/2007 | 3114 | | | | | -10,000.00 | |
| Bill Pmt -Check | 09/14/2007 | 3134 | | | | | -7,000.00 | |
| Bill Pmt -Check | 09/21/2007 | 3163 | | | | | -3,000.00 | |
| Bill Pmt -Check | 09/28/2007 | 3209 | | | | | -3,000.00 | |
| Bill Pmt -Check | 10/05/2007 | 3260 | | | | | -2,000.00 | |
| Bill Pmt -Check | 10/12/2007 | 3292 | | | | | -3,000.00 | |
| Accounts Payable | | | Accounts Payable | | | | | -1,150.00 |
| **Architectural Grille Corp.** | | | | | | | | |
| Bill Pmt -Check | 10/09/2007 | 3268 | Kitchen Equipment | | | | -5,852.52 | |
| Check | 10/19/2007 | 3333 | | | | | -1,441.31 | |
| **Atlas Switch Co., Inc.** | | | | | | | | |
| Bill Pmt -Check | 08/03/2007 | 2988 | Switch proposal | | | | -4,500.00 | |
| **Atlas Universal** | | | | | | | | |
| Check | 05/25/2007 | 2688 | | | | | -1,600.00 | |
| Bill Pmt -Check | 07/13/2007 | 2915 | | | | | -2,210.00 | |
| Bill Pmt -Check | 08/22/2007 | 3048 | | | | | -1,400.00 | |
| Check | 08/23/2007 | 3049 | Wood doors | | | | -4,000.00 | |
| Check | 10/12/2007 | 3280 | Door Install Deposit | | | | -7,000.00 | |
| Check | 10/12/2007 | 3302 | Final Payment | | | | -6,000.00 | |
| **B&B Sheetmetals** | | | | | | | | |
| Check | 11/08/2007 | 3443 | | | | | -373.89 | |
| Check | 11/09/2007 | 3455 | | | | | -75.00 | |
| **BBH Solutions, Inc.** | | | | | | | | |
| Check | 09/08/2006 | 1065 | Inv. 24125 | -3,550.15 | -3,550.15 | | | |
| Check | 10/22/2006 | 1105 | Phone Invoice #24433 | -2,252.36 | -2,252.36 | | | |

02/14/08

# The Rose Group, LLC DBA: 583 Park Avenue
## Transaction List by Vendor

| | Type | Date | Num | Memo | Payments 2/8/06 - 3/26/07 | Payments & Payables as of 3/26/07 | Payments 3/27/07-4/28/07 | Payments 4/29/07 to date | Accounts Payable as of 2/14/08 |
|---|---|---|---|---|---|---|---|---|---|
| **BBH Solutions, Inc.** | | | | | | | | | |
| BBH Solutions, Inc. | Check | 10/26/2006 | 2033 | Invoices: 24578, 24579, 24580 | -596.07 | -596.07 | | | |
| | Accounts Payable | | | Accounts Payable | | | | | -2,567.07 |
| **Billows Electric Supply Company** | | | | | | | | | |
| | Check | 10/25/2006 | 2036 | 10 Berko Portable Heaters Invoice #427044-01 | -7,150.00 | -7,150.00 | | | |
| **Boro Land Surveying P.C.** | Check | 09/18/2006 | 1079 | | | | | | |
| Boro Land Surveying P.C. | Bill Pmt -Check | 01/10/2007 | 2163 | Balance of Sept. Survey | -1,200.00 | -1,200.00 | | | |
| Boro Land Surveying P.C. | Bill Pmt -Check | 05/17/2007 | 2654 | Balance of Sept. Survey | -800.00 | -800.00 | | -400.00 | |
| **BRC Comercial Kitchens Corp.** | Bill Pmt -Check | 05/07/2007 | 2604 | | | | | -14,997.50 | |
| BRC Comercial Kitchens Corp. | Bill Pmt -Check | 07/13/2007 | 2913 | | | | | -10,000.00 | |
| BRC Comercial Kitchens Corp. | Bill Pmt -Check | 07/19/2007 | 2928 | | | | | -4,997.50 | |
| **Brian Painting Corp.** | Bill Pmt -Check | 05/30/2007 | 2709 | | | | | -50,000.00 | |
| Brian Painting Corp. | Bill Pmt -Check | 07/13/2007 | 2917 | | | | | -20,000.00 | |
| Brian Painting Corp. | Bill Pmt -Check | 08/17/2007 | 3026 | | | | | -20,000.00 | |
| Brian Painting Corp. | Bill Pmt -Check | 09/13/2007 | 3125 | | | | | -20,000.00 | |
| Brian Painting Corp. | Bill Pmt -Check | 09/21/2007 | 3169 | | | | | -10,000.00 | |
| Brian Painting Corp. | Bill Pmt -Check | 09/28/2007 | 3200 | | | | | -10,000.00 | |
| Brian Painting Corp. | Bill Pmt -Check | 10/04/2007 | 3234 | | | | | -20,000.00 | |
| Brian Painting Corp. | Bill Pmt -Check | 10/12/2007 | 3285 | | | | | -10,000.00 | |
| Brian Painting Corp. | Bill Pmt -Check | 10/19/2007 | 3325 | Deposit, Materials | | | | -10,000.00 | |
| Brian Painting Corp. | Bill Pmt -Check | 11/02/2007 | 3408 | Deposit, Materials | | | | -10,000.00 | |
| Brian Painting Corp. | Bill Pmt -Check | 11/13/2007 | 3473 | Deposit, Materials | | | | -15,000.00 | |
| Brian Painting Corp. | Bill Pmt -Check | 11/16/2007 | 3512 | Deposit, Materials | | | | -10,000.00 | |
| Brian Painting Corp. | Bill Pmt -Check | 11/21/2007 | 3521 | Deposit, Materials | | | | -10,000.00 | |
| Brian Painting Corp. | Bill Pmt -Check | 12/07/2007 | 3594 | | | | | -10,000.00 | |
| Brian Painting Corp. | Bill Pmt -Check | 12/14/2007 | 3621 | | | | | -15,000.00 | |
| Brian Painting Corp. | Bill Pmt -Check | 01/04/2008 | 3688 | | | | | -8,000.00 | |
| Brian Painting Corp. | Bill Pmt -Check | 02/08/2008 | 3759 | | | | | -1,250.00 | |
| | Accounts Payable | | | Accounts Payable | | | | | -154,375.00 |
| **Brown Builders Supply Corp.** | Check | 12/05/2006 | 2095 | 12/5 Delivers | -1,697.08 | -1,697.08 | | | |
| Brown Builders Supply Corp. | Check | 03/01/2007 | 2241 | Invoice #166579 | -2,120.89 | -2,120.89 | | | |
| Brown Builders Supply Corp. | Bill Pmt -Check | 03/19/2007 | 2301 | Gravel Delivery | -703.12 | -703.12 | | | |
| Brown Builders Supply Corp. | Check | 04/16/2007 | 1134 | Material Delivery | | | -1,467.99 | | |
| Brown Builders Supply Corp. | Bill Pmt -Check | 05/02/2007 | 2593 | | | | | -1,324.72 | |
| Brown Builders Supply Corp. | Bill Pmt -Check | 05/09/2007 | 2614 | | | | | -834.30 | |
| Brown Builders Supply Corp. | Bill Pmt -Check | 05/10/2007 | 2616 | | | | | -712.05 | |
| Brown Builders Supply Corp. | Bill Pmt -Check | 05/11/2007 | 2637 | | | | | -690.91 | |
| Brown Builders Supply Corp. | Bill Pmt -Check | 05/14/2007 | 2638 | | | | | -1,958.85 | |
| Brown Builders Supply Corp. | Check | 05/23/2007 | 2673 | | | | | -1,110.40 | |

02/14/08

# The Rose Group, LLC DBA: 583 Park Avenue
## Transaction List by Vendor

| Type | Date | Num | Memo | Payments 2/8/06 - 3/26/07 | Payments & Payables as of 3/26/07 | Payments 3/27/07 -4/28/07 | Payments 4/29/07 to date | Accounts Payable as of 2/14/08 |
|---|---|---|---|---|---|---|---|---|
| **Brown Builders Supply Corp.** | | | | | | | | |
| Bill Pmt -Check | 06/27/2007 | 2823 | | | | | -394.23 | |
| Check | 06/29/2007 | 2840 | | | | | -511.52 | |
| Bill Pmt -Check | 07/16/2007 | 2923 | 6/28/07 | | | | -620.82 | |
| Check | 07/23/2007 | 2943 | Invoice #170839 | | | | -713.57 | |
| Bill Pmt -Check | 08/13/2007 | 3014 | | | | | -267.60 | |
| Check | 08/15/2007 | 3016 | Invoice 171630 | | | | -533.03 | |
| Check | 08/27/2007 | 3069 | Invoice #172011 | | | | -174.20 | |
| | | | | | | | | |
| **Building Studio** | | | | | | | | |
| Check | 03/13/2006 | R-1524 | Architectural | -15,500.00 | -15,500.00 | | | |
| Check | 05/09/2006 | R-1593 | Architectural | -14,498.50 | -14,498.50 | | | |
| Check | 05/16/2006 | 95 | 2006 - 68 | -756.50 | -756.50 | | | |
| Check | 06/19/2006 | 1004 | Alt - II - 06 - 186 Application | -1,220.30 | -1,220.30 | | | |
| Check | 06/26/2006 | 1007 | Front For Survery | -5,000.00 | -5,000.00 | | | |
| Check | 07/18/2006 | 1009 | Deposit for Phase 2 | -6,306.00 | -6,306.00 | | | |
| Check | 09/06/2006 | 1057 | 2006-96 | -41,831.40 | -41,831.40 | | | |
| Check | 09/06/2006 | 1068 | Inv 2006-93 | -15,656.70 | -15,656.70 | | | |
| Check | 11/15/2006 | 2065 | Invoices: 06109-583 park 06121 - Phase 2 | -86,230.26 | -86,230.26 | | | |
| Bill Pmt -Check | 03/05/2007 | 2263 | | -50,039.66 | -50,039.66 | | | |
| Bill Pmt -Check | 08/24/2007 | 3051 | | | | | -40,000.00 | |
| Bill Pmt -Check | 10/12/2007 | 3294 | | | | | -20,000.00 | |
| | | | | | | | | |
| **Capri Cork** | | | | | | | | |
| Bill Pmt -Check | 05/02/2007 | 2592 | C 460 | | | | -15,000.00 | |
| Bill Pmt -Check | 07/13/2007 | 2914 | C 460 | | | | -19,585.64 | |
| | | | | | | | | |
| **C. J. Anderson & Co.** | | | | | | | | |
| Check | 02/23/2007 | 1133 | Deposit Elevator Controls #0713ZR4 | -5,742.50 | -5,742.50 | | | |
| Check | 06/29/2007 | 2855 | | | | | -11,000.00 | |
| | | | | | | | | |
| **Capital Printing Systems Inc.** | | | | | | | | |
| Check | 11/13/2006 | 2054 | Invoice #A28503R | -1,542.18 | -1,542.18 | | | |
| | | | | | | | | |
| **Carter Management Corp.** | | | | | | | | |
| Check | 03/29/2006 | R-1473 | Deposit | -10,000.00 | -10,000.00 | | | |
| Check | 04/18/2006 | R-1589 | 2nd Payment | -10,000.00 | -10,000.00 | | | |
| Check | 06/19/2006 | 1005 | 3rd Payment | -10,000.00 | -10,000.00 | | | |
| Check | 08/23/2006 | 1037 | Completion of Project Phase II | -20,000.00 | -20,000.00 | | | |
| | | | | | | | | |
| **Chuck Hettinger Studio, Inc.** | | | | | | | | |
| Bill Pmt -Check | 04/17/2007 | 2553 | Dome, guilded molding | | | -10,000.00 | | |
| Bill Pmt -Check | 04/20/2007 | 2572 | Dome, guilded molding | | | -10,000.00 | | |
| Bill Pmt -Check | 05/03/2007 | 2594 | Dome, guilded molding | | | | | |
| Bill Pmt -Check | 05/15/2007 | 2640 | Dome, guilded molding | | | | -20,000.00 | |
| Check | 07/09/2007 | 2885 | Payment 2 of 5 | | | | -23,800.00 | |
| Check | 08/01/2007 | 2951 | Payment 3 | | | | -1,000.00 | |
| Check | 11/09/2007 | 3461 | | | | | -2,000.00 | |

02/14/08

# The Rose Group, LLC DBA: 583 Park Avenue
## Transaction List by Vendor

| Type | Date | Num | Memo | Payments 2/8/06 - 3/26/07 | Payments & Payables as of 3/26/07 | Payments 3/27/07-4/28/07 | Payments 4/29/07 to date | Accounts Payable as of 2/14/08 |
|---|---|---|---|---|---|---|---|---|
| **Clevenger Frable Lavallee, Inc.** | | | | | | | | |
| Check | 06/01/2006 | 98 | Kitchen Consulting Deposit | -5,000.00 | -5,000.00 | | | |
| Check | 09/06/2006 | 1039 | Invoice No 10071 | -4,421.04 | -4,421.04 | | | |
| Check | 11/13/2006 | 2051 | Invoice #100710 | -4,015.40 | -4,015.40 | | | |
| Accounts Payable | | | Accounts Payable | | | | | -1,452.08 |
| | | | | | | | | |
| **Colgate Scaffolding & Equipt. Corp.** | | | | | | | | |
| Bill Pmt -Check | 03/13/2007 | 2278 | Prop #17482-00  30% of contract | -18,247.50 | -18,247.50 | | | |
| Bill Pmt -Check | 05/22/2007 | 2644 | Prop #17482-00 | | | | -25,000.00 | |
| Bill Pmt -Check | 08/20/2007 | 3033 | Prop #17482-00 | | | | -5,000.00 | |
| Bill Pmt -Check | 09/12/2007 | 3108 | Prop #17482-00 | | | | -5,000.00 | |
| Bill Pmt -Check | 09/28/2007 | 3205 | Prop #17482-00 | | | | -2,000.00 | |
| Bill Pmt -Check | 10/05/2007 | 3254 | Prop #17482-00 | | | | -2,000.00 | |
| Bill Pmt -Check | 11/13/2007 | 3472 | Prop #17482-00 | | | | -5,000.00 | |
| Bill Pmt -Check | 12/14/2007 | 3815 | Prop #17482-00 | | | | -500.00 | |
| Accounts Payable | | | Accounts Payable | | | | | |
| Accounts Payable | | | Accounts Payable | -48,262.19 | -48,262.19 | | | -3,762.19 |
| | | | | | | | | |
| **Conner Pollack Productions** | | | | | | | | |
| Bill Pmt -Check | 02/26/2007 | 2236 | | -4,457.46 | -4,457.46 | | | |
| Bill Pmt -Check | 03/26/2007 | 2509 | | -10,454.54 | -10,454.54 | | | |
| Bill Pmt -Check | 04/12/2007 | 2544 | | | | -720.00 | | |
| Bill Pmt -Check | 05/10/2007 | 2622 | Ceiling pieces | | | | -4,457.46 | |
| Bill Pmt -Check | 06/19/2007 | 2786 | | | | | -415.00 | |
| Check | 07/13/2007 | 2912 | | | | | -770.00 | |
| Check | 08/28/2007 | 3070 | Est. 528 30% deposit | | | | -1,341.00 | |
| Check | 09/17/2007 | 3143 | Invoice #508 | | | | -3,859.00 | |
| | | | | | | | | |
| **Conserve Electrical Supply** | | | | | | | | |
| Bill Pmt -Check | 11/02/2007 | 3433 | Opening balance | | | | -608.63 | |
| Bill Pmt -Check | 11/21/2007 | 3538 | Accounts Payable | | | | -804.68 | |
| Accounts Payable | | | | | | | | -1,030.41 |
| | | | | | | | | |
| **Contego International** | | | | | | | | |
| Check | 03/28/2007 | 2514 | | | | -890.00 | | |
| Check | 10/12/2007 | 3278 | | | | | -295.00 | |
| | | | | | | | | |
| **Delete Construction, Inc.** | | | | | | | | |
| Check | 08/08/2006 | 1020 | Probe Work 58301 | -5,979.82 | -5,979.82 | | | |
| Check | 08/16/2006 | 1028 | Invoice 58302 | -3,872.96 | -3,872.96 | | | |
| Check | 09/06/2006 | 1062 | 58304 | -3,996.91 | -3,996.91 | | | |
| Check | 09/14/2006 | 1076 | Deposit For Demo Start Up | -5,000.00 | -5,000.00 | | | |
| Check | 09/26/2006 | 1088 | Progress payment | -5,000.00 | -5,000.00 | | | |
| Bill Pmt -Check | 10/02/2006 | 1104 | | -9,992.24 | -9,992.24 | | | |
| Bill Pmt -Check | 10/11/2006 | 1115 | | -4,430.66 | -4,430.66 | | | |
| Bill Pmt -Check | 10/11/2006 | 1116 | | -4,800.00 | -4,800.00 | | | |

XXXX Group, LLC DBA: 900 Park Avenue

## Transaction List by Vendor

| | Type | Date | Num | Memo | Payments 2/8/06 - 3/26/07 | Payments & Payables as of 3/26/07 | Payments 3/27/07 - 4/28/07 | Payments 4/29/07 to date | Accounts Payable as of 2/14/08 |
|---|---|---|---|---|---|---|---|---|---|
| Delete Construction, Inc. | Bill Pmt -Check | 10/19/2006 | 2020 | | -6,728.66 | -6,728.66 | | | |
| Delete Construction, Inc. | Bill Pmt -Check | 10/31/2006 | 1302 | | -16,220.23 | -16,220.23 | | | |
| Delete Construction, Inc. | Bill Pmt -Check | 11/13/2006 | 2058 | | -5,400.00 | -5,400.00 | | | |
| Delete Construction, Inc. | Bill Pmt -Check | 11/17/2006 | 2076 | | -18,335.74 | -18,335.74 | | | |
| Delete Construction, Inc. | Bill Pmt -Check | 12/01/2006 | 2089 | | -8,040.27 | -8,040.27 | | | |
| Delete Construction, Inc. | Bill Pmt -Check | 12/14/2006 | 2107 | | -10,379.53 | -10,379.53 | | | |
| Delete Construction, Inc. | Bill Pmt -Check | 01/05/2007 | 2154 | | -22,873.45 | -22,873.45 | | | |
| Delete Construction, Inc. | Bill Pmt -Check | 01/25/2007 | 2177 | | -26,182.06 | -26,182.06 | | | |
| Delete Construction, Inc. | Bill Pmt -Check | 02/08/2007 | 2207 | | -20,945.10 | -20,945.10 | | | |
| Delete Construction, Inc. | Bill Pmt -Check | 02/23/2007 | 1132 | | -24,396.76 | -24,396.76 | | | |
| Delete Construction, Inc. | Bill Pmt -Check | 03/13/2007 | 2279 | Invoice #58316 | -48,647.00 | -48,647.00 | | | |
| Delete Construction, Inc. | Bill Pmt -Check | 03/29/2007 | 2516 | | | | -10,000.00 | | |
| Delete Construction, Inc. | Bill Pmt -Check | 04/11/2007 | 2537 | | | | -31,771.91 | | |
| Delete Construction, Inc. | Bill Pmt -Check | 04/25/2007 | 2577 | | | | -35,000.00 | | |
| Delete Construction, Inc. | Bill Pmt -Check | 05/03/2007 | 2597 | | | | | -40,000.00 | |
| Delete Construction, Inc. | Bill Pmt -Check | 05/10/2007 | 2630 | | | | | -17,170.75 | |
| Delete Construction, Inc. | Bill Pmt -Check | 05/17/2007 | 2655 | | | | | -35,000.00 | |
| Delete Construction, Inc. | Bill Pmt -Check | 05/25/2007 | 2682 | | | | | -25,000.00 | |
| Delete Construction, Inc. | Bill Pmt -Check | 06/01/2007 | 2716 | | | | | -30,000.00 | |
| Delete Construction, Inc. | Bill Pmt -Check | 06/08/2007 | 2754 | | | | | -30,000.00 | |
| Delete Construction, Inc. | Bill Pmt -Check | 06/14/2007 | 2774 | | | | | -35,000.00 | |
| Delete Construction, Inc. | Bill Pmt -Check | 06/22/2007 | 2790 | | | | | -35,000.00 | |
| Delete Construction, Inc. | Bill Pmt -Check | 06/29/2007 | 2851 | | | | | -25,000.00 | |
| Delete Construction, Inc. | Bill Pmt -Check | 07/13/2007 | 2905 | | | | | -35,000.00 | |
| Delete Construction, Inc. | Bill Pmt -Check | 07/20/2007 | 2936 | | | | | -25,000.00 | |
| Delete Construction, Inc. | Bill Pmt -Check | 07/26/2007 | 2946 | | | | | -20,000.00 | |
| Delete Construction, Inc. | Bill Pmt -Check | 08/03/2007 | 2980 | | | | | -15,000.00 | |
| Delete Construction, Inc. | Bill Pmt -Check | 08/03/2007 | 2981 | | | | | -10,000.00 | |
| Delete Construction, Inc. | Bill Pmt -Check | 08/10/2007 | 1501 | | | | | -10,000.00 | |
| Delete Construction, Inc. | Bill Pmt -Check | 08/10/2007 | 1502 | | | | | -15,000.00 | |
| Delete Construction, Inc. | Bill Pmt -Check | 08/17/2007 | 3019 | | | | | -10,000.00 | |
| Delete Construction, Inc. | Bill Pmt -Check | 08/17/2007 | 3020 | | | | | -10,000.00 | |
| Delete Construction, Inc. | Bill Pmt -Check | 08/24/2007 | 3058 | | | | | -15,000.00 | |
| Delete Construction, Inc. | Bill Pmt -Check | 08/24/2007 | 3059 | | | | | -10,000.00 | |
| Delete Construction, Inc. | Bill Pmt -Check | 08/30/2007 | 3076 | | | | | -10,000.00 | |
| Delete Construction, Inc. | Bill Pmt -Check | 08/30/2007 | 3077 | | | | | -20,000.00 | |
| Delete Construction, Inc. | Bill Pmt -Check | 09/06/2007 | 3109 | | | | | -15,000.00 | |
| Delete Construction, Inc. | Bill Pmt -Check | 09/06/2007 | 3110 | | | | | -25,000.00 | |
| Delete Construction, Inc. | Bill Pmt -Check | 09/14/2007 | 3131 | | | | | -10,000.00 | |
| Delete Construction, Inc. | Bill Pmt -Check | 09/21/2007 | 3152 | | | | | -15,000.00 | |
| Delete Construction, Inc. | Bill Pmt -Check | 09/28/2007 | 3207 | | | | | -10,000.00 | |
| Delete Construction, Inc. | Bill Pmt -Check | 10/05/2007 | 3249 | | | | | -10,000.00 | |
| Delete Construction, Inc. | Bill Pmt -Check | 10/12/2007 | 3282 | | | | | -15,000.00 | |
| Delete Construction, Inc. | Bill Pmt -Check | 10/19/2007 | 3326 | | | | | -15,000.00 | |
| Delete Construction, Inc. | Bill Pmt -Check | 10/26/2007 | 3382 | | | | | -15,000.00 | |
| Delete Construction, Inc. | Bill Pmt -Check | 11/02/2007 | 3407 | | | | | -15,000.00 | |
| Delete Construction, Inc. | Bill Pmt -Check | 11/09/2007 | 3447 | | | | | -15,000.00 | |
| Delete Construction, Inc. | Bill Pmt -Check | 11/16/2007 | 3513 | | | | | -15,000.00 | |
| Delete Construction, Inc. | Bill Pmt -Check | 11/21/2007 | 3522 | | | | | -15,000.00 | |
| Delete Construction, Inc. | Bill Pmt -Check | 12/03/2007 | 3555 | | | | | -15,000.00 | |

02/14/08

**The Rose Group, LLC DBA: 583 Park Avenue**

**Transaction List by Vendor**

| | Type | Date | Num | Memo | Payments 2/8/06 - 3/25/07 | Payments & Payables as of 3/26/07 | Payments 3/27/07-4/28/07 | Payments 4/23/07 to date | Accounts Payable as of 2/14/08 |
|---|---|---|---|---|---|---|---|---|---|
| **Delete Construction, Inc.** | Bill Pmt -Check | 12/07/2007 | 3591 | | | | | -15,000.00 | |
| **Delete Construction, Inc.** | Bill Pmt -Check | 12/14/2007 | 3618 | | | | | -8,000.00 | |
| **Delete Construction, Inc.** | Bill Pmt -Check | 12/27/2007 | 3871 | | | | | -10,000.00 | |
| **Delete Construction, Inc.** | Bill Pmt -Check | 01/04/2008 | 3887 | | | | | -10,000.00 | |
| **Delete Construction, Inc.** | Bill Pmt -Check | 01/11/2008 | 3696 | | | | | -8,000.00 | |
| **Delete Construction, Inc.** | Bill Pmt -Check | 02/08/2008 | 3761 | | | | | -5,000.00 | |
| **Delete Construction, Inc.** | Accounts Payable | | | Accounts Payable | | | | -1,000.00 | -244,279.69 |
| | | | | | | | | | |
| **Dependable Glass & Mirror Corp.** | Bill Pmt -Check | 09/24/2007 | 3170 | | | | | -7,518.00 | |
| | | | | | | | | | |
| **Dig Eh LLC** | Check | 02/08/2007 | 2210 | Essex House Equipment | -500.00 | -500.00 | | | |
| **Dig Eh LLC** | Check | 03/13/2007 | 2274 | Essex House Auction | -500.00 | -500.00 | | | |
| | | | | | | | | | |
| **Dimension Designs LLC** | Bill Pmt -Check | 05/29/2007 | 2702 | | | | | -3,209.25 | |
| **Dimension Designs LLC** | Check | 06/08/2007 | 2748 | | | | | -3,039.10 | |
| **Dimension Designs LLC** | Bill Pmt -Check | 10/12/2007 | 3301 | | | | | -5,883.36 | |
| | | | | | | | | | |
| **Double K Electric Corp.** | Bill Pmt -Check | 04/20/2007 | 2570 | | | | -15,000.00 | -40,000.00 | |
| **Double K Electric Corp.** | Bill Pmt -Check | 04/25/2007 | 2576 | | | | -70,000.00 | -100,000.00 | |
| **Double K Electric Corp.** | Bill Pmt -Check | 05/03/2007 | 2596 | | | | | -50,000.00 | |
| **Double K Electric Corp.** | Bill Pmt -Check | 05/16/2007 | 2646 | | | | | -50,000.00 | |
| **Double K Electric Corp.** | Bill Pmt -Check | 05/25/2007 | 2699 | Estimate of total project cost per JG | | | | -75,000.00 | |
| **Double K Electric Corp.** | Bill Pmt -Check | 06/08/2007 | 2751 | Estimate of total project cost per JG | | | | -70,000.00 | |
| **Double K Electric Corp.** | Bill Pmt -Check | 06/15/2007 | 2780 | Estimate of total project cost per JG | | | | -35,000.00 | |
| **Double K Electric Corp.** | Bill Pmt -Check | 06/22/2007 | 2797 | Estimate of total project cost per JG | | | | -100,000.00 | |
| **Double K Electric Corp.** | Bill Pmt -Check | 06/29/2007 | 2854 | Estimate of total project cost per JG | | | | -16,282.00 | |
| **Double K Electric Corp.** | Bill Pmt -Check | 07/20/2007 | 2939 | Estimate of total project cost per JG | | | | -20,000.00 | |
| **Double K Electric Corp.** | Bill Pmt -Check | 08/03/2007 | 2983 | Estimate of total project cost per JG | | | | -15,000.00 | |
| **Double K Electric Corp.** | Bill Pmt -Check | 08/10/2007 | 3011 | Estimate of total project cost per JG | | | | -15,000.00 | |
| **Double K Electric Corp.** | Bill Pmt -Check | 08/17/2007 | 3030 | Estimate of total project cost per JG | | | | -5,000.00 | |
| **Double K Electric Corp.** | Bill Pmt -Check | 09/14/2007 | 3136 | Estimate of total project cost per JG | | | | -15,000.00 | |
| **Double K Electric Corp.** | Bill Pmt -Check | 09/28/2007 | 3206 | Estimate of total project cost per JG | | | | | |
| **Double K Electric Corp.** | Bill Pmt -Check | 10/04/2007 | 3233 | Estimate of total project cost per JG | | | | | |

... ...k Group, LLC DBA: 303 Park Avenue

## Transaction List by Vendor

| | Type | Date | Num | Memo | Payments 2/8/06 - 3/26/07 | Payments & Payables as of 3/26/07 | Payments 3/27/07-4/28/07 | Payments 4/29/07 to date | Accounts Payable as of 2/14/08 |
|---|---|---|---|---|---|---|---|---|---|
| Double K Electric Corp. | Bill Pmt -Check | 10/12/2007 | 3286 | Estimate of total project cost per JG | | | | -10,000.00 | |
| Double K Electric Corp. | Bill Pmt -Check | 10/19/2007 | 3327 | | | | | -10,000.00 | |
| Double K Electric Corp. | Bill Pmt -Check | 11/02/2007 | 3418 | | | | | -10,000.00 | |
| Double K Electric Corp. | Bill Pmt -Check | 11/09/2007 | 3450 | | | | | -15,000.00 | |
| Double K Electric Corp. | Bill Pmt -Check | 11/16/2007 | 3514 | | | | | -10,000.00 | |
| Double K Electric Corp. | Bill Pmt -Check | 11/21/2007 | 3523 | | | | | -10,000.00 | |
| Double K Electric Corp. | Bill Pmt -Check | 12/07/2007 | 3595 | | | | | -15,000.00 | |
| Double K Electric Corp. | Bill Pmt -Check | 12/14/2007 | 3619 | | | | | -8,000.00 | |
| Double K Electric Corp. | Bill Pmt -Check | 01/11/2008 | 3697 | Estimate of total project cost per JG | | | | -4,000.00 | |
| Double K Electric Corp. | Bill Pmt -Check | 02/08/2008 | 3762 | Estimate of total project cost per JG | | | | -1,250.00 | |
| Double K Electric Corp. | Bill | 03/23/2007 | | Inv. #1245 | | -80,000.00 | | | |
| Double K Electric Corp. | Accounts Payable | | | Accounts Payable | | | | | -98,468.00 |
| East NY Hardware | Check | 04/11/2007 | 2539 | | | | -2,162.08 | | |
| Edge Lab Inc. | Check | 08/07/2006 | 1021 | | -750.00 | -750.00 | | | |
| Edge Lab Inc. | Check | 09/18/2006 | 1064 | | -812.81 | -812.81 | | | |
| Elevator Doors, Inc. | Check | 02/26/2007 | 2234 | | -1,850.00 | -1,850.00 | | | |
| Everglades Technologies, LLC | Bill Pmt -Check | 07/20/2007 | 2940 | Networking Deposit | | | | -14,856.45 | |
| Everglades Technologies, LLC | Accounts Payable | | | Accounts Payable | | | | | -15,444.38 |
| Excise Bond Underwriter | Check | 06/10/2006 | 2227 | Counter Check | -75.00 | -75.00 | | | |
| Floor Tile Specialists, Inc. | Bill Pmt -Check | 03/30/2007 | 2525 | | | | -7,500.00 | | |
| Floor Tile Specialists, Inc. | Bill Pmt -Check | 10/17/2007 | 3313 | | | | | -8,070.00 | |
| Floor Tile Specialists, Inc. | Bill Pmt -Check | 12/04/2007 | 3563 | | | | | -12,500.00 | |
| Floor Tile Specialists, Inc. | Bill Pmt -Check | 01/11/2008 | 3700 | | | | | -5,000.00 | |
| Floor Tile Specialists, Inc. | Bill Pmt -Check | 02/08/2008 | 3764 | | | | | -1,250.00 | |
| Floor Tile Specialists, Inc. | Accounts Payable | | | Accounts Payable | | | | | -40,680.00 |
| Gluck New York | Accounts Payable | | | Accounts Payable | | | | | -2,415.00 |
| Grand Metal Works | Check | 10/13/2006 | 2000 | Delivery | -85.00 | -85.00 | | | |
| Grand Metal Works | Check | 10/13/2006 | 2001 | | -600.00 | -600.00 | | | |

... THE ROSE GROUP, LLC USA, 399 Park Avenue

## Transaction List by Vendor

**Grand Metal Works**

| Type | Date | Num | Memo | Payments 2/8/06 - 3/26/07 | Payments & Payables as of 3/26/07 | Payments 3/27/07-4/28/07 | Payments 4/29/07 to date | Accounts Payable as of 2/14/08 |
|---|---|---|---|---|---|---|---|---|
| Check | 10/16/2006 | 2006 | Painted Alum. Pannel & Engraved | -3,300.00 | -3,300.00 | | | |
| Check | 11/13/2006 | 2052 | Sample Sign | -1,000.00 | -1,000.00 | | | |
| Check | 11/15/2006 | 2057 | Invoice #114 | -800.00 | -800.00 | | | |
| Check | 02/27/2007 | 2240 | Invoice #115 | -5,000.00 | -5,000.00 | | | |
| Bill Pmt -Check | 03/19/2007 | 2289 | Retainer Iron Railing mock up | -6,435.00 | -6,435.00 | | | |
| Bill Pmt -Check | 04/05/2007 | 2530 | | | | -4,218.00 | | |
| Bill Pmt -Check | 04/09/2007 | 2534 | | | | -1,880.00 | | |
| Bill Pmt -Check | 04/20/2007 | 2559 | | | | -1,218.00 | | |
| Check | 05/04/2007 | 1138 | | | | | -500.00 | |
| Bill Pmt -Check | 05/04/2007 | 1139 | | | | | -850.00 | |
| Check | 05/09/2007 | 2613 | | | | | -9,000.00 | |
| Check | 06/29/2007 | 2846 | | | | | -6,941.00 | |
| Check | 07/18/2007 | 2925 | Completed polishing, Aluminum plate fitting | | | | -5,515.00 | |
| Check | 07/26/2007 | 2954 | Invoice #126 | | | | -2,000.00 | |
| Check | 08/16/2007 | 3017 | Invoice 158 | | | | -660.00 | |
| Check | 09/26/2007 | 3219 | Invoice #129 | | | | -600.00 | |
| Check | 10/03/2007 | 3232 | Signage | | | | -2,590.00 | |
| Bill Pmt -Check | 10/09/2007 | 3267 | inv 133 | | | | -1,340.00 | |
| Check | 10/12/2007 | 3293 | inv #134 | | | | -2,190.00 | |
| Bill Pmt -Check | 10/26/2007 | 3371 | | | | | -881.00 | |

**Greenberg Traurig**

| Type | Date | Num | Memo | Payments 2/8/06 - 3/26/07 | Payments & Payables as of 3/26/07 | Payments 3/27/07-4/28/07 | Payments 4/29/07 to date | Accounts Payable as of 2/14/08 |
|---|---|---|---|---|---|---|---|---|
| Bill Pmt -Check | 03/23/2007 | 2506 | | -15,000.00 | -15,000.00 | | | |
| Bill Pmt -Check | 05/10/2007 | 2620 | | | | | -25,000.00 | |
| Bill Pmt -Check | 05/16/2007 | 2645 | | | | | -15,000.00 | |
| Bill Pmt -Check | 07/16/2007 | 2922 | | | | | -10,000.00 | |
| Bill Pmt -Check | 08/09/2007 | 2998 | | | | | -10,000.00 | |
| Bill Pmt -Check | 08/30/2007 | 3074 | | | | | -10,000.00 | |
| Bill Pmt -Check | 10/02/2007 | 3228 | | | | | -10,000.00 | |
| Bill Pmt -Check | 11/09/2007 | 3458 | | | | | -10,000.00 | |
| Bill Pmt -Check | 11/16/2007 | 3516 | | | | | -10,000.00 | |
| Bill Pmt -Check | 11/21/2007 | 3540 | | | | | -10,000.00 | |
| Bill Pmt -Check | 12/07/2007 | 3582 | | | | | -2,000.00 | |
| Bill Pmt -Check | 12/14/2007 | 3616 | | | | | -18,000.00 | |
| Bill Pmt -Check | 02/08/2008 | 3765 | | | | | -5,000.00 | |
| Accounts Payable | | | Accounts Payable | | | | | -156,019.57 |

**Hagedorn & Company**

| Type | Date | Num | Memo | Payments 2/8/06 - 3/26/07 | Payments & Payables as of 3/26/07 | Payments 3/27/07-4/28/07 | Payments 4/29/07 to date | Accounts Payable as of 2/14/08 |
|---|---|---|---|---|---|---|---|---|
| Check | 03/06/2006 | R-1500 | Insurance | -400.00 | -400.00 | | | |
| Check | 03/27/2006 | 91 | Insurance Premium | -854.25 | -854.25 | | | |
| Check | 07/18/2006 | 1010 | Workman's Comp Service Fee | -2,500.00 | -2,500.00 | | | |
| Check | 10/12/2006 | 1125 | Invoice #785 | -112.38 | -112.38 | | | |
| Check | 10/17/2006 | 2009 | | -302.00 | -302.00 | | | |
| Bill Pmt -Check | 07/02/2007 | 2865 | | | | | -4,632.60 | |
| Bill Pmt -Check | 07/16/2007 | 2920 | | | | | -10,000.00 | |
| Accounts Payable | | | Accounts Payable | | | | | -100.00 |

...ue Group, LLC DBA, 399 Park Avenue

## Transaction List by Vendor

| | Type | Date | Num | Memo | Payments 2/8/06 - 3/26/07 | Payments & Payables as of 3/26/07 | Payments 3/27/07-4/28/07 | Payments 4/29/07 to date | Accounts Payable as of 2/14/08 |
|---|---|---|---|---|---|---|---|---|---|
| **Handi Lift, Inc.** | | | | | | | | | |
| Handi Lift, Inc. | Bill Pmt -Check | 08/21/2007 | 3042 | | | | | -11,050.00 | |
| Handi Lift, Inc. | Accounts Payable | | | Accounts Payable | | | | | -11,050.00 |
| | | | | | | | | | |
| **Heavy Construction Lumber** | | | | | | | | | |
| Heavy Construction Lumber | Check | 10/16/2006 | 2005 | Lumber | -655.67 | -655.67 | | | |
| Heavy Construction Lumber | Check | 10/24/2006 | 2029 | Delivery 10/25/06 | -750.61 | -750.61 | | | |
| Heavy Construction Lumber | Check | 11/09/2006 | 2032 | Invoice #27146, delivery 11/9 | -609.07 | -609.07 | | | |
| Heavy Construction Lumber | Check | 12/20/2006 | 2111 | Invoice #27477 | -692.52 | -692.52 | | | |
| | | | | | | | | | |
| **Higgins Quasebarth & Partners LLC** | | | | | | | | | |
| Higgins Quasebarth & Partners LLC | Bill Pmt -Check | 03/13/2007 | 2280 | Third Church Proposal | -10,000.00 | -10,000.00 | | | |
| Higgins Quasebarth & Partners LLC | Bill Pmt -Check | 09/28/2007 | 3208 | Landmark Consulting | | | | -2,000.00 | |
| Higgins Quasebarth & Partners LLC | Bill Pmt -Check | 11/13/2007 | 3479 | Landmark Consulting | | | | -2,000.00 | |
| Higgins Quasebarth & Partners LLC | Bill Pmt -Check | 11/21/2007 | 3542 | Landmark Consulting | | | | -2,000.00 | |
| Higgins Quasebarth & Partners LLC | Bill Pmt -Check | 12/07/2007 | 3583 | Landmark Consulting | | | | -2,000.00 | |
| Higgins Quasebarth & Partners LLC | Bill Pmt -Check | 12/17/2007 | 3640 | Landmark Consulting | | | | -2,000.00 | |
| Higgins Quasebarth & Partners LLC | Bill Pmt -Check | 02/08/2008 | 3766 | | | | | -250.00 | |
| Higgins Quasebarth & Partners LLC | Accounts Payable | | | Accounts Payable | | | | | -32,157.52 |
| | | | | | | | | | |
| **Hole Cutting Inc.** | | | | | | | | | |
| Hole Cutting Inc. | Check | 02/08/2007 | 2208 | Invoice #22302 | -5,256.19 | -5,256.19 | | | |
| Hole Cutting Inc. | Check | 02/26/2007 | 2235 | | -2,750.00 | -2,750.00 | | | |
| Hole Cutting Inc. | Check | 03/19/2007 | 2290 | Balance Invoice 22308 | -200.00 | -200.00 | | | |
| | | | | | | | | | |
| **Howard Shapiro & Associates P.C.** | | | | | | | | | |
| Howard Shapiro & Associates P.C. | Check | 09/28/2006 | 1097 | | -750.00 | -750.00 | | | |
| Howard Shapiro & Associates P.C. | Check | 03/19/2007 | 2300 | | -392.30 | -392.30 | | | |
| Howard Shapiro & Associates P.C. | Bill Pmt -Check | 04/20/2007 | 2560 | Invoice #08696 | | | -641.60 | | |
| Howard Shapiro & Associates P.C. | Check | 10/05/2007 | 3252 | | | | | -353.75 | |
| | | | | | | | | | |
| **Hyde Park Mouldings** | | | | | | | | | |
| Hyde Park Mouldings | Check | 02/21/2007 | 2230 | | -6,017.57 | -6,017.57 | | | |
| Hyde Park Mouldings | Bill Pmt -Check | 04/20/2007 | 2567 | | | | -2,200.00 | | |
| Hyde Park Mouldings | Bill Pmt -Check | 06/11/2007 | 2758 | Balance of Invoice 14347 | | | | -12,211.40 | |
| Hyde Park Mouldings | Bill Pmt -Check | 06/13/2007 | 2766 | | | | | -2,875.00 | |
| Hyde Park Mouldings | Accounts Payable | | | Accounts Payable | | | | | -1,987.50 |
| | | | | | | | | | |
| **International Fire Proof Door Corp** | | | | | | | | | |
| International Fire Proof Door Corp | Accounts Payable | | | Accounts Payable | | | | | -2,037.41 |
| | | | | | | | | | |
| **Joe Gardella** | | | | | | | | | |
| Joe Gardella | Check | 06/19/2006 | 1001 | #583 P001 | -13,771.10 | -13,771.10 | | | |
| Joe Gardella | Check | 07/20/2006 | 1013 | 583P002 | -4,728.50 | -4,728.50 | | | |
| Joe Gardella | Check | 08/16/2006 | 1029 | 583P003 | -6,568.97 | -6,568.97 | | | |
| Joe Gardella | Check | 09/06/2006 | 1069 | 583P004 | -11,483.09 | -11,483.09 | | | |
| Joe Gardella | Check | 09/26/2006 | 1085 | | -8,993.70 | -8,993.70 | | | |

02/14/08

**The Rose Group, LLC DBA: 583 Park Avenue**
**Transaction List by Vendor**

| | Type | Date | Num | Memo | Payments 2/8/06 - 3/26/07 | Payments & Payables as of 3/26/07 | Payments 3/27/07-4/28/07 | Payments 4/29/07 to date | Accounts Payable as of 2/14/08 |
|---|---|---|---|---|---|---|---|---|---|
| Joe Gardella | Check | 10/24/2006 | 2028 | Invoice #583P007 | -14,624.23 | -14,624.23 | | | |
| Joe Gardella | Check | 11/15/2006 | 2075 | Invoice #583P008 | -11,952.34 | -11,952.34 | | | |
| Joe Gardella | Check | 12/14/2006 | 2105 | Invoice #583P009 | -15,932.61 | -15,932.61 | | | |
| Joe Gardella | Check | 01/12/2007 | 2169 | Invoice #583P010 | -13,476.07 | -13,476.07 | | | |
| Joe Gardella | Check | 01/29/2007 | 2186 | Partial Invoice #583P011 | -2,000.00 | -2,000.00 | | | |
| Joe Gardella | Check | 02/01/2007 | 2212 | Re-issue Invoice 583P011 | -9,223.36 | -9,223.36 | | | |
| Joe Gardella | Check | 03/05/2007 | 2264 | Invoice #583P013 | -15,185.00 | -15,185.00 | | | |
| Joe Gardella | Bill Pmt -Check | 03/30/2007 | 2524 | | | | -9,300.00 | | |
| Joe Gardella | Bill Pmt -Check | 04/02/2007 | 2527 | | | | -9,300.00 | | |
| Joe Gardella | Bill Pmt -Check | 04/25/2007 | 2578 | | | | -17,914.98 | | |
| Joe Gardella | Bill Pmt -Check | 05/22/2007 | 2671 | | | | | -23,555.78 | |
| Joe Gardella | Bill Pmt -Check | 06/22/2007 | 2794 | | | | | -23,383.21 | |
| Joe Gardella | Check | 07/24/2007 | 2944 | June Invoice | | | | -20,845.12 | |
| Joe Gardella | Check | 08/21/2007 | 3044 | Invoice #583P018 | | | | -24,583.46 | |
| Joe Gardella | Check | 09/28/2007 | 3198 | Partial Invoice 583P019 | | | | -15,000.00 | |
| Joe Gardella | Check | 10/05/2007 | 3258 | Invoice # 583P020 | | | | -16,163.97 | |
| Joe Gardella | Bill Pmt -Check | 10/25/2007 | 1509 | | | | | -17,382.20 | |
| Joe Gardella | Bill Pmt -Check | 12/03/2007 | 3556 | | | | | -14,205.36 | |
| Joe Gardella | Bill Pmt -Check | 01/04/2008 | 3690 | | | | | -7,000.00 | |
| Joe Gardella | Bill Pmt -Check | 01/18/2008 | 3711 | | | | | -2,414.00 | |
| Kenseal Construction Prod Corp. | Bill Pmt -Check | 03/20/2007 | 2304 | | -1,621.89 | -1,621.89 | | | |
| Kenseal Construction Prod Corp. | Check | 07/19/2007 | 2930 | Invoice #031644 | | | | -499.07 | |
| Klen Construction LLC | Bill Pmt -Check | 03/26/2007 | 2510 | Consult Vault ceiling | -480.00 | -480.00 | | | |
| L & L Ornamental Railings | Bill Pmt -Check | 08/22/2007 | 3047 | | | | | -3,535.00 | |
| L & L Ornamental Railings | Bill Pmt -Check | 10/05/2007 | 3255 | | | | | -4,945.31 | |
| L & L Ornamental Railings | Bill Pmt -Check | 10/12/2007 | 3288 | | | | | -4,945.30 | |
| Lapietra Machinery & Equipment | Bill Pmt -Check | 04/11/2007 | | Cashier's Check | | | -5,310.00 | | |
| LaVecchia Surface Preparation | Bill Pmt -Check | 11/15/2007 | 3482 | Prepare Floors for Cork in Arcade | | | | -1,500.00 | |
| LaVecchia Surface Preparation | Bill Pmt -Check | 01/11/2008 | 3699 | | | | | -4,000.00 | |
| LaVecchia Surface Preparation | Bill Pmt -Check | 02/08/2008 | 3769 | Accounts Payable | | | | -350.00 | |
| LaVecchia Surface Preparation | Accounts Payable | | | | | | | | -2,450.00 |
| Lexington Hardware | Check | 10/11/2006 | 1112 | Sept. | -381.01 | -381.01 | | | |
| Lexington Hardware | Check | 11/28/2006 | 2087 | Billing Date 10/28/06 | -2,055.91 | -2,055.91 | | | |
| Lexington Hardware | Check | 02/09/2007 | 2216 | | -1,000.00 | -1,000.00 | | | |
| Lexington Hardware | Check | 03/02/2007 | 2257 | | -1,500.00 | -1,500.00 | | | |
| Lexington Hardware | Check | 04/04/2007 | 2529 | | | | -1,000.00 | | |

02/14/08

## The Rose Group, LLC DBA: 583 Park Avenue
### Transaction List by Vendor

| | Type | Date | Num | Memo | Payments 2/8/06 - 3/26/07 | Payments & Payables as of 3/26/07 | Payments 3/27/07 - 4/2/2007 | Payments 4/29/07 to date | Accounts Payable as of 2/14/08 |
|---|---|---|---|---|---|---|---|---|---|
| Lexington Hardware | Bill Pmt -Check | 06/06/2007 | 2732 | Partial Due over 90 days | | | | -3,985.26 | |
| Lexington Hardware | Check | 09/13/2007 | 3118 | | | | | -684.79 | |
| Lexington Hardware | Bill Pmt -Check | 11/13/2007 | 3474 | | | | | -1,500.00 | |
| Lexington Hardware | Bill Pmt -Check | 12/07/2007 | 3597 | | | | | -1,240.05 | |
| Lexington Hardware | Bill Pmt -Check | 02/08/2008 | 3770 | | | | | -500.00 | |
| Lexington Hardware | Accounts Payable | | | Accounts Payable | | | | | -4,949.38 |
| Liberty Contracting Corp. | Bill Pmt -Check | 11/13/2006 | 2056 | | -39,810.00 | -39,810.00 | | | |
| Liberty Contracting Corp. | Bill Pmt -Check | 01/02/2007 | 2142 | | -50,000.00 | -50,000.00 | | | |
| Liberty Contracting Corp. | Bill Pmt -Check | 03/02/2007 | 2249 | | -25,000.00 | -25,000.00 | | | |
| Liberty Contracting Corp. | Bill Pmt -Check | 05/16/2007 | 2642 | Demo +bin rentals | | | | -10,000.00 | |
| Liberty Contracting Corp. | Bill Pmt -Check | 07/12/2007 | 2895 | | | | | -10,000.00 | |
| Liberty Contracting Corp. | Bill Pmt -Check | 07/19/2007 | 2927 | | | | | -10,200.00 | |
| Liberty Contracting Corp. | Bill Pmt -Check | 09/13/2007 | 3120 | | | | | -10,200.00 | |
| Liberty Contracting Corp. | Bill Pmt -Check | 11/02/2007 | 3401 | | | | | -15,000.00 | |
| Liberty Contracting Corp. | Bill Pmt -Check | 12/17/2007 | 3676 | | | | | -5,000.00 | |
| Liberty Contracting Corp. | Bill Pmt -Check | 02/08/2008 | 3771 | Carting & Demolition | | | | -2,500.00 | |
| Liberty Contracting Corp. | Accounts Payable | | | Accounts Payable | | | | -500.00 | -21,867.00 |
| Mandel Resnik LLP | Check | 02/08/2006 | R- | Legal | -54,803.21 | -54,803.21 | | | |
| Master Communications, Inc. | Check | 03/30/2007 | 2526 | | | | | | |
| Master Communications, Inc. | Bill Pmt -Check | 05/08/2007 | 2609 | | | | -541.85 | | |
| Master Communications, Inc. | Check | 10/23/2007 | 3337 | Invoice 1235, 1234; dep. #1243 | | | | -162.56 | |
| Master Communications, Inc. | Check | 11/13/2007 | 1512 | Telephone Equipment | | | | -3,917.23 | |
| Master Communications, Inc. | Bill Pmt -Check | 02/08/2008 | 3772 | | | | | -112.91 | |
| Master Communications, Inc. | Accounts Payable | | | Accounts Payable | | | | -500.00 | -7,356.83 |
| Mensch Mill & Lumber Corp. | Bill Pmt -Check | 04/12/2007 | 2543 | Deposit Doors | | | -8,620.14 | | |
| Mensch Mill & Lumber Corp. | Bill Pmt -Check | 09/17/2007 | 3144 | Doors | | | | -9,701.71 | |
| Metal Dimensions, LLC | Check | 08/03/2007 | 2985 | Proposal 888 rev. | | | | -22,133.11 | |
| Metal Dimensions, LLC | Check | 09/05/2007 | 1505 | | | | | -8,000.00 | |
| Metal Dimensions, LLC | Check | 10/12/2007 | 3279 | | | | | -10,000.00 | |
| Metal Dimensions, LLC | Check | 11/02/2007 | 3410 | | | | | -15,000.00 | |
| Metal Dimensions, LLC | Check | 11/09/2007 | 3454 | | | | | -11,266.89 | |
| MRI Construction of New York, Inc. | Bill Pmt -Check | 05/10/2007 | 2625 | | | | | -5,000.00 | |
| MRI Construction of New York, Inc. | Bill Pmt -Check | 05/25/2007 | 2687 | | | | | -5,000.00 | |
| MRI Construction of New York, Inc. | Bill Pmt -Check | 05/08/2007 | 2756 | | | | | -5,000.00 | |
| MRI Construction of New York, Inc. | Check | 06/14/2007 | 2778 | | | | | -11,800.00 | |
| MRI Construction of New York, Inc. | Bill Pmt -Check | 06/22/2007 | 2795 | | | | | -4,000.00 | |

02/14/08

The Rose Group, LLC DBA: 583 Park Avenue
# Transaction List by Vendor

| | Type | Date | Num | Memo | Payments 2/8/06 - 3/26/07 | Payments & Payables as of 3/26/07 | Payments 3/27/07-4/28/07 | Payments 4/29/07 to date | Accounts Payable as of 2/14/08 |
|---|---|---|---|---|---|---|---|---|---|
| MRI Construction of New York, Inc. | Check | 06/29/2007 | 2850 | | | | | -7,000.00 | |
| MRI Construction of New York, Inc. | Check | 07/13/2007 | 2906 | | | | | -11,000.00 | |
| MRI Construction of New York, Inc. | Bill Pmt -Check | 08/03/2007 | 3079 | | | | | -2,500.00 | |
| MRI Construction of New York, Inc. | Bill Pmt -Check | 09/09/2007 | 1507 | | | | | -2,500.00 | |
| MRI Construction of New York, Inc. | Bill Pmt -Check | 09/14/2007 | 3137 | | | | | -3,000.00 | |
| MRI Construction of New York, Inc. | Bill Pmt -Check | 09/21/2007 | 3162 | | | | | -3,000.00 | |
| MRI Construction of New York, Inc. | Check | 10/05/2007 | 3250 | | | | | -1,200.00 | |
| MRI Construction of New York, Inc. | Bill Pmt -Check | 10/26/2007 | 3370 | inv#07214 | | | | -2,840.52 | |
| MRI Construction of New York, Inc. | Bill Pmt -Check | 11/02/2007 | 3406 | | | | | -2,100.00 | |
| MRI Construction of New York, Inc. | Bill Pmt -Check | 12/07/2007 | 3592 | | | | | -700.00 | |
| MRI Construction of New York, Inc. | Accounts Payable | | | Accounts Payable | | | | | -2,500.00 |
| N.Y.C. Water Works | Check | 01/25/2007 | 2180 | Deposit on Proposal Dated 1/16/07 | -12,000.00 | -12,000.00 | | | |
| N.Y.C. Water Works | Bill Pmt -Check | 05/10/2007 | 2624 | Balance on installation | | | | -11,875.00 | |
| N.Y.C. Water Works | Bill Pmt -Check | 08/03/2007 | 2986 | | | | | -2,000.00 | |
| N.Y.C. Water Works | Bill Pmt -Check | 01/30/2008 | 3740 | | | | | -1,975.00 | |
| N.Y.C. Water Works | Bill | 03/23/2007 | 2007I031 | Balance on installation | -11,875.00 | -11,875.00 | | | |
| New York Gypsum Floors Inc. | Check | 03/05/2007 | 2265 | | -7,965.00 | -7,965.00 | | | |
| New York Gypsum Floors Inc. | Bill Pmt -Check | 06/12/2007 | 2760 | | | | | -3,100.00 | |
| New York State Insurance Fund | Check | 08/23/2006 | 1038 | L1458513-7 | -2,950.86 | -2,950.86 | | | |
| New York State Insurance Fund | Check | 02/02/2007 | 2199 | Bill #11925673 | -1,469.95 | -1,469.95 | | | |
| New York State Insurance Fund | Bill Pmt -Check | 03/22/2007 | 2501 | Workers' Comp | -441.17 | -441.17 | | | |
| New York State Insurance Fund | Bill Pmt -Check | 08/02/2007 | 2971 | | | | | -462.68 | |
| New York State Insurance Fund | Bill Pmt -Check | 10/05/2007 | 3241 | | | | | -925.36 | |
| New York State Insurance Fund | Bill Pmt -Check | 12/17/2007 | 3630 | | | | | -452.67 | |
| New York State Insurance Fund | Accounts Payable | | | Accounts Payable | | | | | -925.35 |
| Northstar Ready Mix Corp. | Check | 05/21/2007 | 2665 | Conrete | | | | -487.69 | |
| Northstar Ready Mix Corp. | Check | 05/29/2007 | 2701 | | | | | -623.16 | |
| Northstar Ready Mix Corp. | Bill Pmt -Check | 06/29/2007 | 2856 | | | | | -541.88 | |
| Northstar Ready Mix Corp. | Bill Pmt -Check | 08/14/2007 | 3012 | | | | | -1,180.91 | |
| NYC Department of Transportation | Check | 09/28/2006 | 1098 | Lane Closing Sidewalk Crossing Material Storage | -550.00 | -550.00 | | | |
| NYC Department of Transportation | Check | 10/31/2006 | 1301 | DOT Permits Job no:06418.00.00 | -430.00 | -430.00 | | | |
| NYC Department of Transportation | Check | 01/31/2007 | 2188 | permit renewal | -350.00 | -350.00 | | | |
| NYC Department of Transportation | Check | 01/31/2007 | 2189 | Material Storage permit renewal | -140.00 | -140.00 | | | |
| NYC Department of Transportation | Check | 02/17/2007 | 1131 | | -82.91 | -82.91 | | | |
| NYC Department of Transportation | Check | 03/19/2007 | 2292 | Material Storage Permit Renewal | -50.00 | -50.00 | | | |
| NYC Department of Transportation | Check | 03/19/2007 | 2293 | Material Storage Permit Renewal | -30.00 | -30.00 | | | |
| NYC Department of Transportation | Check | 03/19/2007 | 2294 | Material Storage Permit Renewal | -30.00 | -30.00 | | | |

The Rose Group, LLC DBA: 583 Park Avenue

## Transaction List by Vendor

| Type | Date | Num | Memo | Payments 2/8/06 - 3/26/07 | Payments & Payables as of 3/26/07 | Payments 3/27/07-4/28/07 | Payments 4/29/07 to date | Accounts Payable as of 2/14/08 |
|---|---|---|---|---|---|---|---|---|
| **NYC Department of Transportation** | | | | | | | | |
| Check | 03/19/2007 | 2295 | Material Storage Permit Renewal | -30.00 | -30.00 | | | |
| Check | 03/19/2007 | 2296 | Crossing Sidewalk Permit Renewal | -50.00 | -50.00 | | | |
| Check | 03/19/2007 | 2297 | Generator Permit Renewal | -50.00 | -50.00 | | | |
| Check | 03/19/2007 | 2298 | Occupancy of Roadway Permit Renewal | -50.00 | -50.00 | | | |
| Check | 03/19/2007 | 2299 | 40 Mini Containers Permit Renewal | -200.00 | -200.00 | | | |
| Check | 06/27/2007 | 2825 | Material Storage Permit | | | | -50.00 | |
| Check | 06/27/2007 | 2826 | Material Storage Permit | | | | -30.00 | |
| Check | 06/27/2007 | 2829 | Crossing Sidewalk Permit | | | | -50.00 | |
| Check | 06/27/2007 | 2831 | Generator Permit | | | | -50.00 | |
| Check | 06/27/2007 | 2834 | 40 Mini Container Permit | | | | -200.00 | |
| Check | 06/27/2007 | 2835 | Occupancy of Roadway Permit | | | | -50.00 | |
| Check | 07/12/2007 | 2896 | Material Storage | | | | -50.00 | |
| Check | 07/12/2007 | 2897 | Material Storage | | | | -30.00 | |
| Check | 07/12/2007 | 2898 | Material Storage | | | | -30.00 | |
| Check | 07/12/2007 | 2899 | Material Storage | | | | -30.00 | |
| Check | 07/12/2007 | 2900 | Crossing Sidewalk | | | | -50.00 | |
| Check | 07/12/2007 | 2901 | Generator | | | | -50.00 | |
| Check | 07/12/2007 | 2902 | Occupancy of Roadway | | | | -50.00 | |
| Check | 07/12/2007 | 2903 | 40 Mini containers | | | | -200.00 | |
| Check | 09/04/2007 | 3101 | | | | | -100.00 | |
| Bill Pmt -Check | 12/20/2007 | 3643 | | | | | -50.00 | |
| Bill Pmt -Check | 12/20/2007 | 3644 | | | | | -50.00 | |
| Bill Pmt -Check | 12/20/2007 | 3645 | | | | | -30.00 | |
| Bill Pmt -Check | 12/20/2007 | 3646 | | | | | -30.00 | |
| Bill Pmt -Check | 12/20/2007 | 3647 | | | | | -30.00 | |
| Bill Pmt -Check | 12/20/2007 | 3648 | Crossing Sidewalk Permit | | | | -30.00 | |
| Bill Pmt -Check | 12/20/2007 | 3649 | Generator Permit | | | | -50.00 | |
| Bill Pmt -Check | 12/20/2007 | 3650 | Occupancy of Roadway Permit | | | | -50.00 | |
| Bill Pmt -Check | 12/20/2007 | 3651 | 40 Mini Containers Permit | | | | -50.00 | |
| Bill Pmt -Check | 01/25/2008 | 3727 | Material Storage | | | | -200.00 | |
| Bill Pmt -Check | 01/25/2008 | 3728 | | | | | -50.00 | |
| Bill Pmt -Check | 01/25/2008 | 3729 | Material Storage | | | | -30.00 | |
| Bill Pmt -Check | 01/25/2008 | 3730 | | | | | -30.00 | |
| Bill Pmt -Check | 01/25/2008 | 3731 | | | | | -30.00 | |
| Bill Pmt -Check | 01/25/2008 | 3732 | Occupancy of Roadway | | | | -50.00 | |
| Bill Pmt -Check | 01/25/2008 | 3733 | 10 Mini Containers | | | | -50.00 | |
| **O.C.D. Industries Inc.** | | | | | | | | |
| Bill Pmt -Check | 03/26/2007 | 2508 | Panels for Arcade, Partial of E119 | -6,517.50 | -6,517.50 | | -8,232.50 | |
| Bill Pmt -Check | 04/23/2007 | 2574 | Panels for Arcade | | | -9,000.00 | -8,640.00 | |
| Check | 05/25/2007 | 2695 | Final Payment Invoice 1069 | | | | -6,180.00 | |
| Check | 06/01/2007 | 2718 | May Payment | | | | -5,000.00 | |
| Check | 06/09/2007 | 2755 | | | | | -18,000.00 | |
| Bill Pmt -Check | 06/14/2007 | 2773 | | | | | | |
| Check | 06/22/2007 | 2796 | | | | | | |

02/14/08

## The Rose Group, LLC DBA: 583 Park Avenue
### Transaction List by Vendor

| | Type | Date | Num | Memo | Payments 2/8/06 - 3/26/07 | Payments & Payables as of 3/26/07 | Payments 3/27/07 -4/28/07 | Payments 4/29/07 to date | Accounts Payable as of 2/14/08 |
|---|---|---|---|---|---|---|---|---|---|
| O.C.D. Industries Inc. | Check | 06/29/2007 | 2849 | Invoice 1086 | | | | -15,046.00 | |
| O.C.D. Industries Inc. | Check | 07/13/2007 | 2911 | | | | | -10,000.00 | |
| O.C.D. Industries Inc. | Check | 07/20/2007 | 2938 | invoice #1089 | | | | -15,046.00 | |
| O.C.D. Industries Inc. | Check | 07/26/2007 | 2953 | Invoice 1090 | | | | -11,250.00 | |
| O.C.D. Industries Inc. | Check | 08/03/2007 | 2982 | | | | | -14,159.00 | |
| O.C.D. Industries Inc. | Check | 08/15/2007 | 3008 | Invoice #1092 | | | | -15,000.00 | |
| O.C.D. Industries Inc. | Check | 08/17/2007 | 3027 | | | | | -8,470.00 | |
| O.C.D. Industries Inc. | Check | 08/24/2007 | 3061 | | | | | -5,000.00 | |
| O.C.D. Industries Inc. | Check | 09/14/2007 | 3135 | Inv 1100 | | | | -15,000.00 | |
| O.C.D. Industries Inc. | Check | 09/18/2007 | 3112 | Sept. Invoice Payment | | | | -8,000.00 | |
| O.C.D. Industries Inc. | Check | 09/21/2007 | 3161 | We 9/30 | | | | -8,000.00 | |
| O.C.D. Industries Inc. | Check | 09/28/2007 | 3211 | | | | | -2,000.00 | |
| O.C.D. Industries Inc. | Check | 10/05/2007 | 3251 | | | | | -7,500.00 | |
| O.C.D. Industries Inc. | Check | 10/12/2007 | 3284 | | | | | -7,000.00 | |
| O.C.D. Industries Inc. | Bill Pmt -Check | 10/19/2007 | 3332 | | | | | -10,000.00 | |
| O.C.D. Industries Inc. | Check | 11/02/2007 | 3409 | | | | | -15,000.00 | |
| O.C.D. Industries Inc. | Check | 11/09/2007 | 3451 | | | | | -15,000.00 | |
| O.C.D. Industries Inc. | Bill Pmt -Check | 11/16/2007 | 3515 | | | | | -15,000.00 | |
| O.C.D. Industries Inc. | Bill Pmt -Check | 11/12/2007 | 3524 | | | | | -10,000.00 | |
| O.C.D. Industries Inc. | Bill Pmt -Check | 12/07/2007 | 3593 | | | | | -15,000.00 | |
| O.C.D. Industries Inc. | Bill Pmt -Check | 12/14/2007 | 3620 | | | | | -5,000.00 | |
| O.C.D. Industries Inc. | Bill Pmt -Check | 01/04/2008 | 3689 | | | | | -4,000.00 | |
| O.C.D. Industries Inc. | Bill Pmt -Check | 02/08/2008 | 3773 | Inv. E119 | | | | -500.00 | |
| O.C.D. Industries Inc. | Accounts Payable | 03/25/2007 | | Accounts Payable | | -13,232.50 | | | -56,020.24 |
| | | | | | | | | | |
| Omega Environmental Services, Inc. | Check | 02/15/2007 | 2221 | Asbestos survey & preparation of specification Inv # 16073 ,11/30/06. | -2,920.00 | -2,920.00 | | | |
| Omega Environmental Services, Inc. | Bill Pmt -Check | 07/13/2007 | 2910 | | | | | -5,000.00 | |
| Omega Environmental Services, Inc. | Bill Pmt -Check | 10/12/2007 | 3287 | | | | | -2,522.00 | |
| | | | | | | | | | |
| Paraco Corp. | Check | 01/25/2007 | 2179 | Invoice #1715 | -7,750.00 | -7,750.00 | | | |
| | | | | | | | | | |
| Perfect Aire, Inc. | Check | 08/16/2006 | 1030 | 1298 | | | | | |
| Perfect Aire, Inc. | Bill Pmt -Check | 10/11/2006 | 1114 | Initial Estimate per JG | -7,500.00 | -7,500.00 | | | |
| Perfect Aire, Inc. | Bill Pmt -Check | 11/20/2006 | 2081 | Initial Estimate per JG | -12,000.00 | -12,000.00 | | | |
| Perfect Aire, Inc. | Bill Pmt -Check | 01/05/2007 | 2153 | Initial Estimate per JG | -40,000.00 | -40,000.00 | | | |
| Perfect Aire, Inc. | Bill Pmt -Check | 01/25/2007 | 2176 | Initial Estimate per JG | -46,500.00 | -46,500.00 | | | |
| Perfect Aire, Inc. | Bill Pmt -Check | 02/06/2007 | 2206 | Initial Estimate per JG | -57,837.50 | -57,837.50 | | | |
| Perfect Aire, Inc. | Bill Pmt -Check | 02/15/2007 | 2222 | Initial Estimate per JG | -57,837.50 | -57,837.50 | | | |
| Perfect Aire, Inc. | Bill Pmt -Check | 03/05/2007 | 2266 | Initial Estimate per JG | -56,693.00 | -56,693.00 | | | |
| Perfect Aire, Inc. | Bill Pmt -Check | 03/13/2007 | 2277 | Payment 3/13/07 | -56,693.00 | -56,693.00 | | | |
| Perfect Aire, Inc. | Bill Pmt -Check | 04/19/2007 | 2555 | Payment 3/13/07 | -135,000.00 | -135,000.00 | | | |
| Perfect Aire, Inc. | Bill Pmt -Check | 05/03/2007 | 2595 | Initial Estimate per JG | | | -50,000.00 | | |
| Perfect Aire, Inc. | Bill Pmt -Check | 05/08/2007 | 2611 | Payment 3/13/07 | | | | -30,000.00 | |
| Perfect Aire, Inc. | Bill Pmt -Check | 05/25/2007 | 2698 | Initial Estimate per JG | | | | -50,000.00 | |
| Perfect Aire, Inc. | | | | | | | | -25,000.00 | |

...nage Group, LLC DBA: 383 Park Avenue

## Transaction List by Vendor

| Vendor | Type | Date | Num | Memo | Payments 2/8/06 - 3/26/07 | Payments & Payables as of 3/26/07 | Payments 3/27/07 -4/28/07 | Payments 4/29/07 to date | Accounts Payable as of 2/14/08 |
|---|---|---|---|---|---|---|---|---|---|
| Perfect Aire, Inc. | Bill Pmt -Check | 06/08/2007 | 2752 | Initial Estimate per JG | | | | -25,000.00 | |
| Perfect Aire, Inc. | Bill Pmt -Check | 06/14/2007 | 2777 | Initial Estimate per JG | | | | -25,000.00 | |
| Perfect Aire, Inc. | Bill Pmt -Check | 07/13/2007 | 2918 | Initial Estimate per JG | | | | -15,000.00 | |
| Perfect Aire, Inc. | Bill Pmt -Check | 07/26/2007 | 2949 | Initial Estimate per JG | | | | -15,000.00 | |
| Perfect Aire, Inc. | Bill Pmt -Check | 08/10/2007 | 3010 | Initial Estimate per JG | | | | -50,000.00 | |
| Perfect Aire, Inc. | Bill Pmt -Check | 10/05/2007 | 3259 | Initial Estimate per JG | | | | -20,000.00 | |
| Perfect Aire, Inc. | Bill Pmt -Check | 10/19/2007 | 3328 | Payment 3/13/07 | | | | -10,000.00 | |
| Perfect Aire, Inc. | Bill Pmt -Check | 11/09/2007 | 3449 | Payment 3/13/07 | | | | -10,000.00 | |
| Perfect Aire, Inc. | Bill Pmt -Check | 12/07/2007 | 3596 | Payment 3/13/07 | | | | -15,000.00 | |
| Perfect Aire, Inc. | Bill Pmt -Check | 02/08/2008 | 3774 | Initial Estimate per JG | | | | -10,000.00 | |
| Perfect Aire, Inc. | Accounts Payable | | | Accounts Payable | | | | -750.00 | -55,139.00 |
| Pinnacle Environmental Corp. | Bill Pmt -Check | 05/23/2007 | 2675 | Invoice #8068 | | | | -25,000.00 | |
| Pinnacle Environmental Corp. | Bill Pmt -Check | 08/02/2007 | 2968 | Invoice #8068 payment 1 of 2 | | | | -12,000.00 | |
| Pinnacle Environmental Corp. | Bill Pmt -Check | 08/14/2007 | 3018 | Invoice #8068 | | | | -12,000.00 | |
| Raised Computer Floors, Inc. | Bill Pmt -Check | 04/20/2007 | 2568 | | | | -4,000.00 | | |
| Raised Computer Floors, Inc. | Bill Pmt -Check | 10/19/2007 | 3329 | | | | | -1,500.00 | |
| Raised Computer Floors, Inc. | Bill Pmt -Check | 11/02/2007 | 3405 | | | | | -3,000.00 | |
| Raised Computer Floors, Inc. | Bill Pmt -Check | 11/09/2007 | 3457 | | | | | -3,426.48 | |
| Raised Computer Floors, Inc. | Bill Pmt -Check | 11/15/2007 | 3483 | | | | | -200.00 | |
| Restaurant-Market Equipment | Bill Pmt -Check | 04/23/2007 | 2573 | Walk-In box installation | | | -500.00 | | |
| Restaurant-Market Equipment | Check | 08/02/2007 | 2966 | | | | | -10,000.00 | |
| Restaurant-Market Equipment | Accounts Payable | 08/09/2007 | 2996 | Accounts Payable | | | | -9,000.00 | -1,500.00 |
| Rigidized Metals, Corp | Check | 10/12/2007 | 3290 | Building Supplies | | | | -5,610.24 | |
| Rigidized Metals, Corp | Bill Pmt -Check | 11/13/2007 | 3480 | | | | | -2,831.60 | |
| Rizwam Abdus Salam P.E. | Check | 08/16/2006 | 1031 | 81106 | -4,000.00 | | | | |
| Rizwam Abdus Salam P.E. | Check | 10/02/2006 | 1107 | Invoice #81106-687 | -5,000.00 | | | | |
| Rizwam Abdus Salam P.E. | Check | 10/11/2006 | 1117 | Invoice #81106-687-A | -1,250.00 | | | | |
| Rizwam Abdus Salam P.E. | Check | 12/12/2006 | 2104 | Invoice #687, 687-A, 687-B | -3,550.00 | | | | |
| Rizwam Abdus Salam P.E. | Check | 03/07/2007 | 2267 | Invoice #687 | -1,600.00 | | | | |
| Rizwam Abdus Salam P.E. | Check | 03/07/2007 | 2268 | Invoice #687-A | -150.00 | | | | |
| Rizwam Abdus Salam P.E. | Check | 03/07/2007 | 2269 | Invoice #687-B | -1,800.00 | | | | |
| Rizwam Abdus Salam P.E. | Check | 10/19/2007 | 3331 | Construction | | | | -750.00 | |
| Rizwam Abdus Salam P.E. | Check | 11/09/2007 | 3455 | | | | | -2,000.00 | |
| Rotavale Elevator Inc. | Bill Pmt -Check | 09/29/2006 | 1086 | Elevator Repair | -12,750.00 | | | | |
| Rotavale Elevator Inc. | Bill Pmt -Check | 07/18/2007 | 2924 | Elevator Repair | | | | -21,250.00 | |

The Mobe Group, LLC DBA: 303 Park Avenue

## Transaction List by Vendor

| Type | Date | Num | Memo | Payments 2/8/06 - 3/26/07 | Payments & Payables as of 3/26/07 | Payments 3/27/07-4/28/07 | Payments 4/29/07 to date | Accounts Payable as of 2/14/08 |
|---|---|---|---|---|---|---|---|---|
| **Rotavale Elevator Inc.** | | | | | | | | |
| Bill Pmt -Check | 08/24/2007 | 3063 | Elevator Repair | | | | -10,000.00 | |
| Bill Pmt -Check | 11/02/2007 | 3403 | Elevator Repair | | | | -10,000.00 | |
| Bill Pmt -Check | 12/13/2007 | 3611 | Elevator Repair | | | | -10,000.00 | |
| Bill Pmt -Check | 02/08/2008 | 3775 | Elevator Repair | | | | -750.00 | |
| Accounts Payable | | | Accounts Payable | | | | | -23,097.00 |
| | | | | | | | | |
| **Sentinel Fire Control, Inc.** | | | | | | | | |
| Bill Pmt -Check | 06/14/2007 | 2772 | | | | | -1,000.00 | |
| Bill Pmt -Check | 10/01/2007 | 3227 | | | | | -4,000.00 | |
| Bill Pmt -Check | 11/27/2007 | 3548 | | | | | -4,985.00 | |
| | | | | | | | | |
| **Seyfarth Shaw** | | | | | | | | |
| Check | 03/20/2006 | R-1543 | Legal Fees | | | | | |
| Check | 08/10/2006 | 1023 | 1220947/1229995/1252773 | -15,094.00 | -15,094.00 | | | |
| Check | 10/10/2006 | R-xxx | | -24,965.50 | -24,965.50 | | | |
| Check | 10/10/2006 | 1111 | | -7,915.00 | -7,915.00 | | | |
| Check | 12/28/2006 | 1305 | | -21,516.64 | -21,516.64 | | | |
| Check | 01/04/2007 | 2147 | | -10,000.00 | -10,000.00 | | | |
| Check | | | Invoice #1285260 remaining balance | -3,411.00 | -3,411.00 | | | |
| Check | 05/16/2007 | 2647 | | | | | -50,000.00 | |
| Check | 05/21/2007 | 2667 | | | | | -25,000.00 | |
| Check | 06/15/2007 | 2779 | | | | | -91,000.00 | |
| Check | 08/09/2007 | 2997 | August payment | | | | -10,000.00 | |
| Check | 08/30/2007 | 3075 | | | | | -10,000.00 | |
| Check | 10/02/2007 | 3229 | October Payment | | | | -10,000.00 | |
| Bill Pmt -Check | 11/09/2007 | 3459 | | | | | -10,000.00 | |
| Bill Pmt -Check | 11/16/2007 | 3518 | | | | | -10,000.00 | |
| Bill Pmt -Check | 11/21/2007 | 3539 | | | | | -10,000.00 | |
| Bill Pmt -Check | 12/07/2007 | 3584 | | | | | -5,000.00 | |
| Bill Pmt -Check | 12/14/2007 | 3614 | | | | | -15,000.00 | |
| Bill Pmt -Check | 02/08/2008 | 3776 | | | | | -2,500.00 | |
| Accounts Payable | | | Accounts Payable | | | | | -64,163.53 |
| | | | | | | | | |
| **Specialized Services Inc.** | | | | | | | | |
| Check | 02/13/2007 | 2218 | Window Cleaning | -894.09 | -894.09 | | | |
| | | | | | | | | |
| **Stark Carpet Corp** | | | | | | | | |
| Check | 10/31/2006 | 1304 | | -15,146.00 | -15,146.00 | | | |
| Bill Pmt -Check | 05/10/2007 | 2615 | | | | | -51,553.14 | |
| Check | 08/21/2007 | 3043 | Arcade Carpet Full Payment | | | | -10,707.00 | |
| Bill Pmt -Check | 09/04/2007 | 3094 | | | | | -17,618.86 | |
| Accounts Payable | | | Accounts Payable | | | | | -2,392.84 |
| | | | | | | | | |
| **Structural Contracting Services, Inc.** | | | | | | | | |
| Bill Pmt -Check | 04/20/2007 | 2563 | Deposit: Conrete | | | -9,160.00 | | |
| Bill Pmt -Check | 07/13/2007 | 2908 | Deposit: Conrete | | | | -10,000.00 | |
| Bill Pmt -Check | 09/21/2007 | 3164 | Deposit: Conrete | | | | -4,000.00 | |
| Bill Pmt -Check | 09/28/2007 | 3199 | Deposit: Conrete | | | | -2,000.00 | |
| Bill Pmt -Check | 10/12/2007 | 3247 | | | | | -2,000.00 | |

02/14/08

# The Rose Group, LLC DBA: 583 Park Avenue
## Transaction List by Vendor

| | Type | Date | Num | Memo | Payments 2/8/06 - 3/26/07 | Payments & Payables as of 3/26/07 | Payments 3/27/07-4/28/07 | Payments 4/28/07 to date | Accounts Payable as of 2/14/08 |
|---|---|---|---|---|---|---|---|---|---|
| Structural Contracting Services, Inc. | Bill Pmt -Check | 10/12/2007 | 3291 | Deposit: Correte | | | | -2,000.00 | |
| Structural Contracting Services, Inc. | Bill Pmt -Check | 10/19/2007 | 3330 | Deposit: Correte | | | | -2,000.00 | |
| Structural Contracting Services, Inc. | Bill Pmt -Check | 11/02/2007 | 3419 | Deposit: Correte | | | | -2,000.00 | |
| Structural Contracting Services, Inc. | Bill Pmt -Check | 11/09/2007 | 3453 | Deposit: Correte | | | | -840.00 | |
| Supertouch Contracting Corp. | Check | 10/26/2006 | 2035 | Deposit 10/26 | -2,000.00 | -2,000.00 | | | |
| Supertouch Contracting Corp. | Check | 12/07/2006 | 2098 | Completed Project | -4,000.00 | -4,000.00 | | | |
| Tassone Equipment Corp | Bill Pmt -Check | 12/04/2007 | 3562 | | -1,622.00 | -1,622.00 | | | |
| The Hegner Studio, LLC | Bill Pmt -Check | 09/19/2007 | 3151 | Construction:Drapery/Fabrics | | | | -5,000.00 | |
| The Hegner Studio, LLC | Bill Pmt -Check | 11/14/2007 | 3481 | Construction:Drapery/Fabrics | | | | -8,150.00 | |
| The Hegner Studio, LLC | Bill Pmt -Check | 02/08/2008 | 3780 | Construction:Drapery/Fabrics | | | | -250.00 | |
| Thomas Jayne Studio, Inc. | Check | 09/15/2006 | 1077 | 50% Design Fee | -12,500.00 | -12,500.00 | | | |
| Thomas Jayne Studio, Inc. | Accounts Payable | | | Accounts Payable | | | | | -55.95 |
| Universal Steel | Check | 10/11/2006 | 1120 | Deposit for Poposal 2746 | -6,500.00 | -6,500.00 | | | |
| Universal Steel | Check | 11/13/2006 | 2053 | Invoice #6921 | -14,450.00 | -14,450.00 | | | |
| Universal Steel | Check | 11/28/2006 | 2098 | Invoice #11152 | -8,200.00 | -8,200.00 | | | |
| Universal Steel | Check | 01/05/2007 | 2156 | Invoice #6934 | -12,000.00 | -12,000.00 | | | |
| Universal Steel | Check | 01/25/2007 | 2178 | Invoice #6943 | -20,800.00 | -20,800.00 | | | |
| Universal Steel | Check | 03/02/2007 | 2245 | | -7,000.00 | -7,000.00 | | | |
| Universal Steel | Check | 05/17/2007 | 2652 | | | | | -2,500.00 | |
| | | | | | -$2,117,662.90 | -$2,343,329.01 | -$450,771.55 | -$4,661,466.01 | -1,340,311.39 |