UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK
---------------------------------------------------------------x

THIRD CHURCH of CHRIST, SCIENTIST,  :
of NEW YORK CITY,                   :          07 Civ. 10962 (DAB)
                                    :
          Plaintiff,                :
                                    :
     - against -                    :
                                    :
THE CITY OF NEW YORK and PATRICIA   :
J. LANCASTER, in her official capacity as, :
Commissioner of the New York City   :
Department of Buildings             :
                                    :
          Defendants.               :
---------------------------------------------------------------x


MEMORANDUM OF LAW IN
SUPPORT OF PLAINTIFF'S MOTION TO COMPEL


DAVIS WRIGHT TREMAINE LLP
1633 Broadway
New York, New York 10019
(212) 489-8230

*Attorneys for Plaintiff*
*Third Church of Christ, Scientist, of New York City*

NYC 195433v3 0085520-000001

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................. i

INTRODUCTION ............................................................................................................... 1

       BACKGROUND ..................................................................................................... 2

       St. Ignatius of Loyola ............................................................................................. 2

       Riverside Church .................................................................................................... 4

ARGUMENT ....................................................................................................................... 5

A.    The Church Seeks Relevant Information That Is Relevant To Its Claims and
the City's Defenses .......................................................................................................... 6

       1. Information Concerning Social Events Is Relevant ........................................... 6

       2. Communications with the City Concerning Social Events Are Relevant ........ 7

       3. Information Concerning "Accessory Use" and the Certificates of Occupancy Is
Relevant .................................................................................................................. 8

       4. Information Concerning the Reporting of Revenue for Tax Purposes Is Relevant ........ 9

       5. Information Concerning Outside Caterers Is Relevant ..................................... 10

       6. Information Concerning Trade Names and Designations Is Relevant ............. 11

       7. Information Concerning Membership Requirements Is Relevant .................... 11

B.    The Subpoena Is Narrowly Tailored and Not Unduly Burdensome ............................ 12

CONCLUSION .................................................................................................................... 14

# TABLE OF AUTHORITIES

## **CASES**

**Page**

*Bridgeport Music Inc. v. UMG Recordings, Inc.*, No. 05 Civ. 6430 (VM) (JCF)
    2007 WL 4410405 (S.D.N.Y. Dec. 17, 2007) .............................................................. 5, 13

*Kirschner v. Klemons*, No. 99 Civ. 4828(RCC), 2005 WL 1214330
    (S.D.N.Y. May 19, 2005) ............................................................................................ 12, 15

*MacNamara v. City of New York*, No. 04 Civ. 9612 (KMK) (JCF)
    2006 WL 3298911 (S.D.N.Y. 2006) ............................................................................. 5, 12

*Travelers Indemnity Co. v. Metropolitan Life Insurance Co.*,
    228 F.R.D. 111 (D. Conn. 2005) ...................................................................................... 12

## **Statutes and Rules**

**Page**

9 Moore's Federal Practice 3D § 45.03[1], 45-24 (2007) ............................................................. 5

Fed. R. Civ. P. Rule 45 .................................................................................................................. 5

Plaintiff Third Church of Christ, Scientist, of New York City (the "Church"), respectfully submits this memorandum of law in support of its motion, pursuant to Rule 45(c)(2)(B) of the Federal Rules of Civil Procedure, for an order compelling non-parties, the Riverside Church ("Riverside") and St. Ignatius of Loyola Church ("St. Ignatius"), to comply with the subpoenas served upon them on March 6, 2008.  For the sake of efficiency, both motions are addressed in this memorandum.

## **INTRODUCTION**

The City has sought to prohibit the Church from conducting social events in its building to raise revenues to sustain its existence, but routinely permits churches and non-profit institutions to hold social events at their institutions to supplement their income.  This selective enforcement of land-use laws against the Church violates the Religious Land Use and Institutionalized Persons Act of 2000, as well as the Equal Protection Clause of the Fourteenth Amendment and the First Amendment.  The City defends its conduct by arguing that the Church's catering activities are fundamentally different from the activities of other churches and non-profit institutions.  (Brennan Decl.[1] ¶¶ 109, 127.)  We believe the City's factual claim is false and that the activities it permits at other churches and secular non-profits are not meaningfully different from the catering activities it seeks to prohibit at the Church.

On March 3, 2008, the Court granted the Church's request and issued an Order permitting the parties to conduct discovery.  (Pa Decl. ¶ 2, Ex. A.)  Soon thereafter, the Church served

---

[1] This Memorandum of Law in Support of Plaintiff's Motion to Compel refers to various papers submitted on its motion for a preliminary injunction.  Specifically, references are made to the Complaint, filed Dec. 3, 2007; the Declaration of Jay A. Segal, dated Dec. 3, 2007 ("Segal Decl."); the Reply Declaration of Jay A. Segal, dated Feb. 22, 2008 ("Segal Reply Decl."); the Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for a Preliminary Injunction, dated Feb. 8, 2008 ("Opp. Br."); the Declaration in Opposition to Plaintiff's Motion for a Preliminary Injunction, dated Feb. 8, 2008 ("Brennan Decl."); and the Reply Memorandum of Law in Support of Plaintiff's Motion for a Preliminary Injunction ("Reply Br.").

subpoenas on various non-parties, including the two churches at issue here, Riverside and St. Ignatius. The discovery the Church seeks from these two non-parties – each, a religious institution that we know from public sources hosts a significant number of social events – plainly is relevant to, and will help the Court assess, the Church's legal claims.

The subpoenas served on St. Ignatius and Riverside are targeted, reasonable demands for relevant information. (Pa Decl. Exs. B and I.) When Riverside and St. Ignatius initially contacted counsel to object, the Church made clear that it would be flexible. It already has offered to limit the temporal scope of the subpoena, and to discuss other ways to further narrow the demands for documents. Still, both Riverside and St. Ignatius have refused to comply and instead have asserted broad, catch-all objections. This memorandum demonstrates that those objections are invalid and that there is no reason that either Riverside or St. Ignatius should be excused from complying with the subpoenas. In light of the looming discovery deadline, and having exhausted all attempts at compromise, the Church is now constrained to move to compel compliance with the subpoenas.

## BACKGROUND

### *St. Ignatius of Loyola*

St. Ignatius, located at 980 Park Avenue in an R10 residential district, advertises that its building is available for private catered events. Its catering venue is identified as "Wallace Hall," not as a church. Its website states that "Wallace Hall contains 8,000 square feet of floor space . . . . The hall is air conditioned with a modern kitchen, restroom facilities and sound system. This elegant space is available for a variety of events including fund raisers, wedding receptions, cocktails, buffet, and formal banquet-style dinners from 100 to 500 guests." (Segal Reply Decl. ¶ 27, Ex. J.)

The parties have debated the extent of social events at St. Ignatius, and whether and to what extent such activities are comparable to such activities at the Church. (*Compare Id.*, Compl. ¶ 45-a, 45-b, Segal Decl. ¶ 4 *with* Brennan Decl. ¶ 133-135.) General information about this practice is available on the Internet. Moreover, though it now refuses to comply with the Church's subpoena, St. Ignatius previously provided information to the City concerning social events hosted at "Wallace Hall," and its director of facilities, Sona Olson, submitted a declaration in support of the City's opposition to the Church's motion for a preliminary injunction. (Pa Decl. ¶ 4, Ex. C.)

On March 6, 2008, the Church served a subpoena on St. Ignatius. (Pa Decl. ¶ 3) When first contacted by counsel for St. Ignatius on March 19th, the Church agreed to shorten, by five years, the period for which it sought documents (from January 1, 2000-to-date to January 1, 2005-to-date), and to extend St. Ignatius' time to respond to April 2, 2008. (*Id.* ¶ 5, Exs. D and E.) On March 25th, counsel for the Church received a letter from St. Ignatius that broadly objected to the Subpoena without providing any support for its general complaints of over-breadth and burden. (*Id.* ¶ 6, Ex. E.) It also objected to producing any documents showing the revenue generated by social events and to what extent St. Ignatius had discussed, analyzed and/or reported such revenues for tax purposes. (*Id.*) On March 27th, the Church responded by letter, pointing out that St. Ignatius's general objections were not legally sufficient, and again explaining why the Subpoena was valid. (*Id.* ¶ 7, Ex. F.) On April 1, 2008, counsel for St. Ignatius, by telephone, stated that it would not produce any documents unless the Church agreed to accept only one-year's worth of documents and to withdraw its request for deposition testimony, although it would consider submitting an affidavit. On April 2, 2008, counsel for the Church sent an email stating that it could not accept such an extreme limitation on the scope of

the Subpoena. (*Id.* ¶ 8, Ex. G.) On April 10th, having heard nothing from St. Ignatius in the interim, the Church sent a final email notifying St. Ignatius that it intended to file this motion. (*Id.* ¶ 9, Ex. H.)

***Riverside Church***

Riverside Church, located at 490 Riverside Drive in a R8 district, hosts very large events by renting out its central nave, with a capacity of up to 1900 guests. (Segal Reply Decl. ¶ 23, Ex. I; Brennan Decl. ¶¶ 143-145, Ex. JJ.) It advertises that its space is available for weddings, receptions, concerts, rehearsals, conferences, video productions and meetings. (Segal Reply Decl. ¶ 23.) In addition to the nave, other portions of Riverside Church are available for rent, which can presumably be used in conjunction with other spaces for even larger events in excess of 2000 guests. These areas include: the South Hall (500 guest capacity); the Assembly Hall, which has a full kitchen (500 guest capacity); the Ninth Floor Lounge, with full kitchen (100 guest capacity for dinner); and the theater is available (250 guest capacity). Riverside apparently has a contractual relationship with a designated outside caterer, Madeline's Catering and Special Events. (*Id.*)

As with St. Ignatius, the parties have debated the scope and volume of catering events at this church. (*Compare Id.* Compl. ¶ 45-b *with* Opp. Decl. ¶ 143-145.) In order to support it claims by identifying additional facts to resolve any dispute about accessory catering activities at Riverside, the Church served a Subpoena *Ad Testificandum* and *Duces Tecum* on Riverside Church on March 6, 2008. (Pa Decl. ¶ 10, Ex. I.) On March 20, 2008, Riverside served objections to the Subpoena, objecting to every Request on the purported ground that each calls for the production of irrelevant material and/or is overbroad. (Pa Decl. ¶ 11, Ex. J.) On March 24, 2008, the Church responded that it would be willing to work with Riverside to limit the scope of the discovery requests, and would grant an extension of time, but that its flat refusal to

produce documents was without any legal justification.  (*Id.* ¶ 12, Ex. K.)  On April 4, 2008, Riverside again refused the Church's request for compliance, stating that it would produce only its agreement with its caterer.  (*Id.* ¶ 13, Ex. L.)  After a further exchange of letters, (*id.* ¶ 14, Exs. M, N, O), Riverside confirmed that it was unwilling to to produce any additional documents.  (*Id.* ¶ 15, Ex. P.)  This motion followed.

## **ARGUMENT**

Rule 45 of the Federal Rules of Civil Procedure governs the issuance of and compliance with subpoenas and the sanctions for non-compliance.  Rule 45 incorporates the definition of relevance under Rule 26(b)(1), which permits the discovery of any unprivileged matter "reasonably calculated to lead to the discovery of admissible evidence."  As such, discovery under Rule 45 "is intended to be as broad against a nonparty as against a party[.]"  *See* Fed. R. Civ. P. Rule 45, Commentary 45-6; 9 MOORE'S FEDERAL PRACTICE 3D § 45.03[1], 45-24 (2007).  The party resisting discovery bears the burden of showing that the subpoena is improper and/or that compliance with the "subpoena would be unduly burdensome."  *MacNamara v. City of New York*, No. 04 Civ. 9612 (KMK) (JCF), 2006 WL 3298911, 15 (S.D.N.Y. 2006); *Bridgeport Music Inc. v. UMG Recordings, Inc.*, No. 05 Civ. 6430 (VM) (JCF), 2007 WL 4410405, 1 (S.D.N.Y. Dec. 17, 2007).

Subpoenas are not voluntary requests.  Each is issued in the name of the Court and therefore is a court order, non-compliance with which can constitute contempt of court. *See* 9 MOORE'S FEDERAL PRACTICE 3D § 45.02[1]; Fed. R. Civ. P 45(e) ("Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued.").  Under these standards, the Subpoena's targeted requests for relevant information are plainly proper.

### A. The Church Seeks Information Relevant To Establish Its Claims and the City's Defenses

#### 1. Information Concerning Social Events Is Relevant

Document Requests 1 and 2 are limited to seeking information about Social Events[2] at St. Ignatius and Riverside Churches. They seek documents related to:

1. Any Social Event conducted on or in the Premises, including (a) the advertising, booking, and frequency of, (b) the attendance at, (c) the revenues generated by, and (d) any communication about such events; and,

2. The total number of hours each year that the Premises are used for Social Events, including the number of hours it takes to set up for and clean up after each Social Event.

These two Requests therefore seek documents that go to the heart of this lawsuit. The City has asserted that (i) the "frequency and intensity" of social events at the Church is unlike those at comparable churches, including Riverside and St. Ignatius, where the events there are only "minimal and ancillary"; (ii) that the Church, "unable to support itself through traditional means," is alone in its heavy dependence on revenue generated by social events; (iii) that the Church's advertisements for its social events deceptively conceal the religious identity of its building; and (iv) that because no catered events held there are for the Church's members, the catering arrangement cannot be said to support the Church's religious mission. (*See* Brennan Decl. ¶ 6-8, ¶ 150-151; Opp. Br. at 15, 19, 21.)

None of this is true, and the Church is entitled to discover facts to prove the point. The Church is not materially different from the numerous religious and secular institutions throughout the City so far as its "shared space" arrangement with a caterer is concerned. The City seeks to paint the picture of the Church as unique, when what it engages in is, in fact, a common and innocuous practice throughout New York City. The Church has made an initial

---

[2] "Social Events" is a term defined in the rider to the Subpoena, and means any catered or other social event on the Premises. (*See* Ex. B, Ex. A, Instruction 11; Ex. I, Ex. A, Instruction 11.)

showing that this is the case based on publicly available documents. But the Court has permitted the Church to buttress its claims by gathering evidence from non-parties regarding the frequency, intensity and duration of Social Events, the amount of revenue generated by them, the advertisements of event space, and information concerning the guests who attend these events.

It is remarkable that St. Ignatius objects outright to the Subpoena when it previously provided similar information to the City. In fact, its director of facilities submitted a declaration asserting that St. Ignatius hosted 168 social events at Wallace Hall from September 2006-September 2007, although supposedly only nine events were not parish-related events for a member of the general public. (Pa Decl., Ex. C, Brennan Decl. ¶ 135, Ex. FF.) The Church is entitled to challenge this allegation, which on its face seems dubious given how widely St. Ignatius advertises Wallace Hall's availability for public events. Indeed, having previously provided information to the City, St. Ignatius' claim that it now lacks relevant information cannot be taken seriously.

Riverside seeks to justify its decision to ignore the subpoena by arguing that its catering activities are different from the Church's. (Pa Decl. ¶ 11, Ex. J.) Of course, argument is no substitute for evidence, particularly when one cannot counter the argument without the evidence. In any event, it is not for Riverside to adjudicate relevance; that is for the Court. Given the facts discussed above, it is plain that the subpoena calls for information that is at least reasonably calculated to lead to the discovery of admissible evidence. After all, to prevail on its Equal Protection Claim, the Church need show only that the catering activities the City permits at Riverside are similar to those conducted at the Church, not that they are identical.

### 2. Communications with the City Concerning Social Events Are Relevant

Document Requests 7 and 8 seek documents related to:

7. Any application for any permit, license or other permission from the City to conduct Social Events, and the issuance or renewal of any such permit, license or other permission, whether formal or informal; and,

8. Any communication with the City concerning the (a) issuance, (b) absence, and/or (c) need for a permit, license or other permission, formal or informal, to conduct Social Events at the Premises.

As discussed above, information concerning social events at Riverside and St. Ignatius is directly relevant to this case. It is also relevant that, as the Church has alleged, the City has permitted such activities for many years. Even if it is true, as the City contended in its papers, that it has never affirmatively granted approval for such accessory catered events, the record is clear that the City's tacit consent constitutes "treatment" under RLUIPA as well as the Equal Protection Clause. (Reply Br. at 12-13.) But that does not mean that the Church is required to take the City's denial at face value. The Church has every right to explore whether Riverside and St. Ignatius have communicated with the City in any way with respect to their catering activities. Such information is directly relevant to issues raised in this case.

### 3. Information Concerning "Accessory Use" and the Certificates of Occupancy Is Relevant

Requests 3 and 4 seek documents relating to:

3. The Certificate of Occupancy for the Premises (the "CO"), including any amendments thereto; and,

4. Any communication with the City regarding the use of the Premises, including communications regarding the CO, and/or whether any past, current, or planned use of the Premises is or was an "accessory use" under the City's Zoning Resolution or other applicable land use regulations.

This case involves the manner in which the City and its Department of Buildings regulate the accessory use of buildings owned by religious and secular non-profit groups for social events. There is evidence that at least some institutions referenced in the Complaint regularly host social events for members of the general public in apparent violation of their Certificates of

Occupancy, and that the City is aware of that fact. (Segal Reply Decl. ¶¶ 44-46.) It is plainly proper for the Church to use a subpoena to discover whether St. Ignatius or Riverside have communicated with the City regarding their Certificates of Occupancy.

### 4.     Information Concerning the Reporting of Revenue for Tax Purposes Is Relevant

Requests 5 and 6 seek documents showing the revenue generated by social events and whether and if so to what extent St. Ignatius and Riverside have discussed, analyzed and/or reported such revenue for tax purposes, to wit:

5.   Any portion of the annual report of the [the subpoenaed entity], or any submission to any taxing or other authority, regarding revenues generated by Social Events; and,

6.   Any analysis, investigation, or communication regarding the taxation of revenues generated by Social Events.

The Church does not request this tax-related information out of some idle curiosity. To the contrary, the City has squarely raised an issue regarding the Church's tax-exempt status and the way in which revenue from catered events may affect that status. In their lease, the Church and the Rose Group agreed that if the Church loses its tax exemption because of revenues received from catering activities, then the Rose Group will be liable for payment of any resulting taxes assessed. The City says that this arrangement somehow shows that the Church no longer is truly a church but is instead a commercial catering hall. (*See* Brennan Decl. ¶ 14, Def. Opp. Br. at 5.) While of course the Church disagrees with this contention, the City has made it an issue in the case. The Church is therefore entitled to show that other non-profit groups – including St. Ignatius and Riverside – may well have similar agreements with caterers or other third parties concerning the issue of whether revenues from catered or other such ancillary events might have an impact on the tax-exempt status of a particular organization. Indeed, the practice of allocating tax liability as a result of a shared space arrangement is addressed in newspaper and trade

articles. (*See, e.g.*, Segal Reply Decl. ¶ 49, Ex. Q, Landmarks Conservancy's Common Bond newsletter, Vol. 21, No. 1 (Summer 2006).) Thus, to the extent that Riverside or St. Ignatius have custody or control of documents or information showing that they have, or have discussed, a similar arrangement regarding the liability for taxes and/or that they have considered the issue of whether revenues from ancillary catering or other non-religious use of its space might have an impact on their tax-exempt status, then the Church is entitled to discover those facts.

### 5. Information Concerning Outside Caterers Is Relevant

Document Request 9 seeks information concerning:

> 9. Any independent person or entity that performs catering-related services (an "Outside Caterer") with which you have a contractual relationship, including without limitation (a) the terms and scope of that contractual relationship (whether it is oral or reduced to writing); (b) the frequency of the Outside Caterer's use of, or performance of services on or in, the Premises; (c) any repairs or improvements to the Premises made by, and/or for the benefit or use of, the Outside Caterer ; and (d) rent or use payments made by, or other financial arrangements with, the Outside Caterer.

The City argues that the Church's contractual arrangement with its caterer is highly unusual and gives so many rights to the caterer that it shows the Church is no longer primarily a religious institution. (Opp. Br. at 5.) The Church disagrees with the City's characterization, and it should be entitled to show that many other religious institutions and secular non-profits enter into a wide range of contractual arrangements with third parties that facilitate the hosting of social events. Indeed, Riverside has acknowledged that it has a contractual agreement with an exclusive caterer (though it has unreasonably conditioned production of that single document on the Church agreeing to abandon the rest of its demands for information). (Pa Decl. ¶¶ 11, 13, Exs. J, L.) The Church has reason to believe that St. Ignatius has a similar arrangement. The City's contention regarding the Church's lease makes the issue of whether St. Ignatius and

Riverside have contracts with caterers relevant to this lawsuit. There is no basis to ignore the Subpoenas' requests for such information.

### 6. Information Concerning Trade Names and Designations Is Relevant

Request 10 seeks information concerning:

> 10. Any trade names, trademarks, or other names, marks, or designations that you use to identify the availability of catering and Social Events at the Premises.

The City argues that the Church's use of the name "583 Park" to advertise the availability of event space at its premises is further evidence that it has been effectively converted into a commercial catering hall because, by allowing the use of this brand name, it has concealed the religious identity of its building. (Brennan Decl. ¶ 6-8.) But the use of a brand name to advertise event space is common in the industry. (Segal Reply Decl. ¶ 37, 39.) For example, the Church has learned from public sources that St. Ignatius itself advertises the availability of its premises for social events under the name "Wallace Hall." (*Id.* ¶ 27.) Because this issue has been directly challenged by the City, the Church is entitled under the Federal Rules to explore this practice with both St. Ignatius and Riverside. The Subpoena seeks relevant information and there is no basis to ignore it.

### 7. Information Concerning Membership Requirements Is Relevant

Document Request 13 seeks information concerning:

> 13. Whether a Social Event at your institution may be hosted by any member of the general public or only by an existing member of your congregation, and, if the latter, what, if any, policy you have for admitting or accepting a new member of your institution.

The City argues that the Church is a commercial catering hall because it permits any member of the public to host Social Events on its Premises and because its events are unrelated to its religious mission. (Brennan Decl. ¶ 151; Opp. Br. at 1.) Contrary to the City's assertions, however, the majority of non-profit and religious institutions, including Riverside and St.

Ignatius, permit members of the general public to host Social Events at their facilities. Evidence that these institutions, like the Church, permit non-members to host social events is therefore relevant and discoverable.

### B. The Subpoena Is Narrowly Tailored and Not Unduly Burdensome

To the extent that St. Ignatius or Riverside objects to the Subpoena on grounds of undue burden, their objections should be rejected because they lack the requisite specificity and factual support. "Whether a subpoena imposes an 'undue burden' depends upon such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Bridgeport Music Inc*, 2007 WL 4410405, at *2 (finding no undue burden notwithstanding claim that production would require non-party to "go through hundreds of files that were in storage" and that search could take months). In considering a motion to quash, "inconvenience alone will not justify an order to quash a subpoena that seeks potentially relevant [evidence]." *Kirschner v. Klemons*, No. 99 Civ. 4828(RCC), 2005 WL 1214330, at *2 (S.D.N.Y. May 19, 2005) (citations omitted).

For example, in *MacNamara v. City of New York*, the court ordered the non-party New York County District Attorney's Office ("DANY") to retrieve files for 1,200 non-party arrestees in a wrongful arrest and excessive force case, notwithstanding the DANY's claim that compliance with the Subpoena would be onerous, time-consuming and expensive. The court reasoned that the Subpoena called for the production of "a narrow set of specific relevant documents" in the DANY's exclusive possession. *Id.* at 15 *(citing Travelers Indemnity Co. v. Metropolitan Life Ins. Co.,* 228 F.R.D. 111, 114 (D. Conn. 2005) (where subpoena of non-party called for review of all documents associated with over 1,000 insurance policies, stored in various offices and warehouses in several states, "the sheer volume of documents would be no

reason, in and of itself, to quash the subpoenas" if there was no other means for the party to obtain the information)).

So too, in this case, the information sought by the Subpoena is in the exclusive control of the Riverside and St. Ignatius; neither party has information concerning the details of social events at these churches, and such information is not publicly available. Nor does either Subpoena call for a massive number of documents. The Church believes that, for several of the Requests, a review of the files of St. Ignatius or Riverside may well show that no responsive documents exist. Finally, the Church voluntarily limited the temporal scope of the subpoenas by five years – from 1/1/00 to date, to 1/1/05 to date – and always made clear that it was willing to listen to particular objections that a demand might be too burdensome. No such objections were supplied.

The Subpoenas are also narrowly tailored. Each makes specific requests for documents concerning social events at St. Ignatius or Riverside. These narrow requests do not require either church to fish through all of its files. Presumably, each of St. Ignatius and Riverside has a practice of separately accounting for, administering, and/or otherwise keeping track of documents relating to the ancillary catered events held at their premises (and advertised on its website). We imagine the same would be true of communications with the City regarding the Zoning Resolution, Certificates of Occupancy and related issues. Finally, locating information regarding either church's tax-exempt status or any impact of revenues from catered events upon that status should require only a focused search of a narrow set of files, not a broad exploration of all of each church's records.

Demonstrably unable to make the showing that compliance with either Subpoena truly imposes anything close to a real hardship; both St. Ignatius and Riverside simply make the

boilerplate assertion that compliance would be "unduly burdensome." (Pa Decl. ¶¶ 6, 11, Exs. E, J.) The rules require more. Under Rule 45, a recipient of a subpoena is required to set forth "the manner and extent of the burden and the probable negative consequences of insisting on compliance." *Kirschner*, 2005 WL 1214330 at *2. That has not been, and cannot be, done here.

Finally, the Church has been remarkably flexible in seeking to obtain compliance. It has reduced by more than half the time-period for which it seeks information, has freely granted extensions of time, and has signaled a willingness to limit certain requests where possible. These efforts at accommodation have been met with stonewalling.

## CONCLUSION

Because the Subpoenas are valid, and neither unduly burdensome nor overbroad, the Court should compel St. Ignatius and Riverside to comply and produce the requested documents and produce a witness for the demanded deposition.

Dated: New York, New York
       April 11, 2008

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

By: _____
    Victor A. Kovner (VK 2248)
    John Cuti (JC 3365)
    Monica Pa (MP 3307)

1633 Broadway
New York, New York  10019
(212) 489-8230

*Attorneys for Plaintiff, Third Church of Christ, Scientist, of New York City*
