UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK

------------------------------------------------------------ x

THIRD CHURCH of CHRIST, SCIENTIST,  :
of NEW YORK CITY,                   :     07 Civ. 10962 (DAB)
                                    :
              Plaintiff,         :
                                    :
      - against -                  :
                                    :
THE CITY OF NEW YORK and PATRICIA   :
J. LANCASTER, in her official capacity as, :
Commissioner of the New York City   :
Department of Buildings             :
                                    :
              Defendants.        :
------------------------------------------------------------ x


**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
NON-PARTY THE METROPOLITAN CLUB, INC. MOTION TO
QUASH AND IN SUPPORT OF PLAINTIFF'S CROSS MOTION TO COMPEL**


DAVIS WRIGHT TREMAINE LLP
1633 Broadway
New York, New York 10019
(212) 489-8230

*Attorneys for Plaintiff
Third Church of Christ, Scientist, of New York City*

NYC 195755v2 0085520-000001

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. i

ARGUMENT ....................................................................................................................... 4

A. The Church Seeks Information Relevant To Establish Its Claims and the City's Defenses  5

    1. Information Concerning Social Events Is Relevant ....................................... 5

    2. Information Concerning "Accessory Use" Is Relevant ................................. 6

    3. Information Concerning the Reporting of Revenue for Tax Purposes Is Relevant ........ 7

    4. Information Concerning Membership Requirements Is Relevant ................ 8

    5. Other Requests ................................................................................................ 9

B. The Subpoena Is Narrowly Tailored and Not Unduly Burdensome .................................. 9

CONCLUSION .................................................................................................................... 10

# TABLE OF AUTHORITIES

## CASES

| | Page |
|---|---|

*Bridgeport Music Inc. v. UMG Recordings, Inc.*, No. 05 Civ. 6430 (VM) (JCF)
   2007 WL 4410405 (S.D.N.Y. Dec. 17, 2007) .......................................................... 4

*Kirschner v. Klemons*, No. 99 Civ. 4828(RCC), 2005 WL 1214330
   (S.D.N.Y. May 19, 2005) .......................................................................................... 9

*MacNamara v. City of New York*, No. 04 Civ. 9612 (KMK) (JCF)
   2006 WL 3298911 (S.D.N.Y. 2006) ........................................................................ 4

## Statutes and Rules

| | Page |
|---|---|

9 Moore's Federal Practice 3D § 45.03[1], 45-24 (2007) ........................................... 4,5

Fed. R. Civ. P. Rule 45 ................................................................................................. 4

Plaintiff Third Church of Christ, Scientist, of New York City (the "Church"), submits this memorandum of law in opposition to the motion to quash filed by the non-party the Metropolitan Club, Inc. (the "Metropolitan Club" or the "Club"), and in support of the Church's cross motion, pursuant to Rule 45(c)(2)(B) of the Federal Rules of Civil Procedure, for an order compelling the Club to comply with the subpoena dated March 6, 2008 (the "Subpoena").

## INTRODUCTION

The Metropolitan Club spends page after page explaining that it conducts catered events for its members, as it is permitted to do as a "Club" under the City's Zoning Resolution. But it *never* mentions the key fact that makes its activities relevant to this lawsuit: the Club apparently makes its space available to members of the general public who want to host events there. Hosting catered events for non-members at the Club would be permissible *only* as an "accessory use." The Subpoena seeks information to confirm the Church's belief that members of the public can arrange to have a party at the Metropolitan Club. That fact is important because when the Club accepts such engagements it makes an accessory catering use of its premises.

The Subpoena would help to show that the Club's accessory catering use is comparable to the Church's. But while the City seeks to prohibit the Church from conducting *any* such events, it apparently tacitly permits accessory catering to go on at places like the Metropolitan Club, unimpeded by inquiries into the precise number of such events per year, who attends them, or what impact they have on the local quality of life. The Church should be able to gather facts to demonstrate that this selective enforcement of land-use laws against the Church violates the Religious Land Use and Institutionalized Persons Act of 2000, as well as the Equal Protection Clause of the Fourteenth Amendment and the First Amendment. Therefore, the Court should deny the motion to quash, and grant the cross-motion to compel compliance with the Subpoena.

## **BACKGROUND**

As its papers assert, the Metropolitan Club has been a social club since it was founded in 1894. *See* Affidavit of Anthony Nuttall, dated April 11, 2008 ("Nuttall Aff."), at ¶ 8.[1] It operates as a non-profit institution, and has relied on that status in applications for relief made to the Board of Standards and Appeals. *See id.* at Ex. E. The Club also avers that its use of "its banquet and restaurant facilities is an integral part of its *principal* use[,]" *see id.* at ¶ 21 (emphasis added), and that it has "openly and notoriously conducted catered events since its inception through the present date." *Id.* at ¶ 22. There is no dispute that the principal use of the Club is as a members-only club. *See id.* at ¶ 8.

But the Club fails to discuss the way that social clubs are treated under the New York City Zoning Resolution. Under the Zoning Resolution, a "Club" is classified as a "Use Group 4" "community facility." *Id.* at § 22-14 (A). Such facilities are permitted as-of-right to be located in residential districts. *Id.*[2] Contrary to the Club's assertion that it is not even "comparable" to the Church for zoning purposes, *see* Nuttall Aff. ¶ 5, in fact the Zoning Resolution treats the two in exactly the same way: like "Clubs," "Houses of worship" such as the Church are also Use Group 4 "community facilities" under § 22-14 of the Zoning Resolution.

---

[1] This Memorandum of Law in Opposition to the Club's Motion to Quash and in Support of Plaintiff's Motion to Compel refers to various papers submitted on its motion for a preliminary injunction. Specifically, references are made to the Complaint, filed Dec. 3, 2007; the Declaration of Thomas G. Draper, dated Dec. 3, 2007 ("Draper Decl."); the Reply Declaration of Jay A. Segal, dated Feb. 22, 2008 ("Segal Reply Decl."); the Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for a Preliminary Injunction, dated Feb. 8, 2008 ("Opp. Br."); the Declaration in Opposition to Plaintiff's Motion for a Preliminary Injunction, dated Feb. 8, 2008 ("Brennan Decl."); and Plaintiff's Memorandum of Law in Support of Motion for Preliminary Injunction ("Pl. Mem.").

[2] Only not-for-profit Clubs qualify; the Zoning Resolution does not permit "clubs, the chief activity of which is a service predominantly carried on as a business," to be located in any residential district. *Id.* at § 22-14 (A) (Clubs)(a).

This point is critical. For the Zoning Resolution not only allows the particular community facility in question to conduct its *principal* uses in a residential district – such that the Club can provide rooms and meals for members, and the Church can provide a place for its members to meet, study, or pray; it also allows Use Group 4 community facilities the further right to make "Accessory Uses" of their premises. *See* Zoning Resolution § 22-14 (C). When the Church makes it building available to members of the general public for a catered social event, it is making an "accessory use" of its premises.[3] When the Metropolitan Club makes its building available to members of the general public who want to throw a party in that grand space, it too is engaging in an "accessory use." In other words, and contrary to the Club's contentions, the Church and the Club are comparably situated so far as the City's zoning rules are concerned.

In its 12-page affidavit and 19-page brief, however, the Club never once says that it rents out its space for catered events to mere members of the general public. The Church's assertion that the Club does so is not mere speculation. The Church engaged a private investigator who confirmed what is sort of an open secret in New York City: that the Metropolitan Club will make it possible for members of the general public to rent space in the Club for a wedding or other social event. *See* Pa Decl. ¶ 3; Segal Reply Decl. ¶ 34. Thereafter, the Church sought to discover additional information about the scope, intensity, and revenues generated by such social events conducted at the Club. *See* Pa Decl. ¶ 4.

---

[3] Though it is plain from its papers that the Club is very familiar with the pleadings and prior proceedings in this case, it misleading asserts that the City's prior approval of catered events at the Church was limited to events for members of the Church. *See* Nuttall Aff. ¶ 6. That assertion ignores the undisputed fact that, on June 28, 2006, the Department of Building clarified its Pre-Consideration Approval to permit accessory catered events without regard to who attended them. *See* Compl. ¶ 41; *see also* Draper Decl. ¶ 36, Ex. F.

On March 6, 2008, the Church served the Subpoena. *See* Pa Decl. ¶ 4, Ex. B. When initially contacted by the Club's counsel, the Church was flexible and offered several extensions of time. *See id.* ¶ 5, Ex. C. The Club then sent a letter to the Church on March 31, 2008, making points very similar to those made in its motion to quash, in an effort to avoid having to comply at all with the Subpoena. *Id.* ¶ 6, Ex. D. On April 3, 2008, counsel for the Church replied with a letter making clear why those arguments were beside the point, and explaining why evidence regarding the Club's practice of renting out its space for accessory catered events for non-members was squarely relevant here. *Id.* ¶ 7, Ex. E. The Club never disputed the analysis set forth in counsel's April 3rd letter. Instead, despite several amicable phone calls regarding possible ways to amend the Subpoena, the Club decided to take the position that it need not comply at all and filed its motion to quash. *Id.* ¶ 8.

## ARGUMENT

Rule 45 of the Federal Rules of Civil Procedure governs the issuance of and compliance with subpoenas and the sanctions for non-compliance. Rule 45 incorporates the definition of relevance under Rule 26(b)(1), which permits the discovery of any unprivileged matter "reasonably calculated to lead to the discovery of admissible evidence." As such, discovery under Rule 45 "is intended to be as broad against a nonparty as against a party[.]" *See* Fed. R. Civ. P. Rule 45, Commentary 45-6; 9 MOORE'S FEDERAL PRACTICE 3D § 45.03[1], 45-24 (2007). The party resisting discovery bears the burden of showing that the subpoena is improper and/or that compliance with the "subpoena would be unduly burdensome." *MacNamara v. City of New York*, No. 04 Civ. 9612 (KMK) (JCF), 2006 WL 3298911, at *15 (S.D.N.Y. 2006); *Bridgeport Music Inc. v. UMG Recordings, Inc.*, No. 05 Civ. 6430 (VM) (JCF), 2007 WL 4410405, at *1 (S.D.N.Y. Dec. 17, 2007).

Subpoenas are not voluntary requests. Each is issued in the name of the Court, and non-compliance can constitute contempt of court. *See* 9 MOORE'S FEDERAL PRACTICE 3D § 45.02[1]; Fed. R. Civ. P 45(e) ("Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued."). Under these standards, the Subpoena's targeted requests for relevant information are plainly proper. Moreover, as explained below, the Church is willing significantly to narrow the Subpoena to make it easier for the Club to comply.

### A. The Church Seeks Information Relevant To Establish Its Claims and the City's Defenses

The Subpoena demands production of documents relating to the time period January 1, 2000 to date. *See* Pa Decl. Ex. B. In order to facilitate compliance, the Church will reduce that period by five years, and amend its request to call for documents for the time period January 1, 2005 to date.

#### 1. Information Concerning Social Events Is Relevant

Document Requests 1 and 2 are limited to seeking information about Social Events at the Metropolitan Club. They seek documents related to:

1. Any Social Event conducted on or in the Premises, including (a) the advertising, booking, and frequency of, (b) the attendance at, (c) the revenues generated by, and (d) any communication about such events; and,

2. The total number of hours each year that the Premises are used for Social Events, including the number of hours it takes to set up for and clean up after each Social Event.

As explained above, the Church is primarily interested in catered events conducted at the Club by or on behalf of persons who are *not* members of the Club. Therefore, the Church will

voluntarily limit this request to such events.[4] When so narrowed, there can be no question that these two Requests seek documents that go to the heart of this lawsuit. The City has asserted that the "frequency and intensity" of social events at the Church differs markedly from such activity at comparable non-profit institutions, including the Metropolitan Club. *See* Brennan Decl. ¶¶s 104-110. The Church is entitled to discover facts that disprove the City's contentions.

The Metropolitan Club seeks to justify its decision to ignore the subpoena by invoking a grab bag of "differences" between the Church and the Club and insisting that, as a result, the Club does not possess a single piece of relevant information. *See* Club Mem. at 9-18. But all of those are distinctions that don't make a difference. As demonstrated above, the critical facts are that both the Club and the Church are non-profit groups, both are in residential districts, and both conduct catered events for non-members which are "accessory uses" under the City's zoning regime. The Club concedes that its activities are "open and notorious" (*see* Nuttall Aff. ¶ 22). Yet, the City has never prohibited such activities, but it prohibits all such activities at the Church.

This case is about the City's unequal treatment of the Church. Under the Equal Terms provision of RLUIPA, the City may not treat the Church on less than equal terms with the way it treats the Club (a non-religious organization).[5] The Church is entitled to discover facts from the Club that will help to show this disparate treatment.

### 2. Information Concerning "Accessory Use" Is Relevant

Requests 3 and 4 seek documents relating to:

---

[4] "Social Events" is a term defined in the rider to the Subpoena to mean any catered or other social event on the Premises. *See* Pa Decl., Ex. B, Ex. A, Instruction 11. As noted in the text, the Church will narrow that definition to mean any catered or other social event on the Premises conducted for, or on behalf of, any person who is not a member of the Club.

[5] Contrary to the Club's suggestion, *see* Club Mem. at 10, RLUIPA does *not* require that the Church and the Club be "similarly situated" as that phrase is used in Equal Protection parlance. *See* Pl. Mem. at 11; *see also* Reply Mem. at 6.

    3.       The Certificate of Occupancy for the Premises (the "CO"), including any amendments thereto; and,

    4.       Any communication with the City regarding the use of the Premises, including communications regarding the CO, and/or whether any past, current, or planned use of the Premises is or was an "accessory use" under the City's Zoning Resolution or other applicable land use regulations.

Because the Club has supplied copies of its COs, the Church hereby withdraws Request 3. In light of the Objections asserted by the Club to Request 4, the Church hereby narrows that Request to call for documents relating to any communication with the City regarding the "accessory use" of the Premises as a venue for any catered or other social event conducted for, or on behalf of, any person who is not a member of the Club. For the reasons discussed above, the content of any such communications would be relevant in assessing the City's conduct here.

        **3.    Information Concerning the Reporting of Revenue for Tax Purposes Is Relevant**

Requests 5 and 6 seek documents showing the revenue generated by social events and whether, and if so to what extent, the Metropolitan Club has discussed, analyzed and/or reported such revenue for tax purposes, to wit:

    5.       Any portion of the annual report of the [the subpoenaed entity], or any submission to any taxing or other authority, regarding revenues generated by Social Events; and,

    6.       Any analysis, investigation, or communication regarding the taxation of revenues generated by Social Events.

The Church does not request this tax-related information out of some idle curiosity. To the contrary, the City has squarely raised an issue regarding the Church's tax-exempt status and the way in which revenue from catered events may affect that status. In their lease, the Church and the Rose Group agreed that if the Church loses its tax exemption because of revenues received from catering activities, then the Rose Group will be liable for payment of any resulting

taxes assessed. The City says that this arrangement somehow shows that the Church no longer is truly a church but is instead a commercial catering hall. *See* Brennan Decl. ¶ 14, Opp. Br. at 5.

While of course the Church disagrees with this contention, the City has made it an issue in the case. The Church is therefore entitled to show that private clubs which operate as non-profit corporations – including the Metropolitan Club – may well have similar agreements with caterers or other third parties concerning the issue of whether revenues from catered or other such ancillary events might have an impact on its tax-exempt status. Indeed, the practice of allocating tax liability as a result of a shared space arrangement is addressed in newspaper and trade articles. *See, e.g.*, Segal Reply Decl. ¶ 49, Ex. Q, Landmarks Conservancy's Common Bond newsletter, Vol. 21, No. 1 (Summer 2006). Thus, to the extent that the Metropolitan Club has custody or control of documents or information showing that it has, or has discussed, a similar arrangement regarding the liability for taxes and/or that it has considered the issue of whether revenues from ancillary catering use of its space might have an impact on its tax-exempt status, then the Church is entitled to discover those facts.

### 4. Information Concerning Membership Requirements Is Relevant

Document Request 13 seeks information concerning:

13. Whether a Social Event at your institution may be hosted by any member of the general public or only by an existing member of your congregation, and, if the latter, what, if any, policy you have for admitting or accepting a new member of your institution.

The City argues that the Church is a commercial catering hall because it permits any member of the public to host Social Events on its Premises and because its events are unrelated to its religious mission. *See* Brennan Decl. ¶ 151; Opp. Br. at 1. Contrary to the City's assertions, however, many non-profit institutions permit members of the general public to host Social Events at their facilities. As demonstrated above, there is good reason to believe that the

Club engages in this common "accessory use" of its facilities. Evidence that the Club engages (with the City's tacit or express permission) in the same sort of catering activity that the City seeks to prohibit at the Church could not be more relevant. There is no basis to quash Request 13, and every reason to compel the Club to comply with it.

### 5. Other Requests

In its Objections, the Club has represented that it has no documents responsive to Requests 7, 8, 9, 10 or 12. In reliance on that representation, the Church hereby withdraws those Requests. Request 11 called for documents in the Club's possession pertaining to this Action. The Church renews that Request, but will narrow it to cover only communications with the City concerning this Action.

### B. The Subpoena Is Narrowly Tailored and Not Unduly Burdensome

The Club's argument that Subpoena should be quashed because it is unduly burdensome relies on the claim that the Subpoena does not seek relevant information and is merely a "pure fishing expedition." *See* Club Mem. at 8. That argument is baseless. The Subpoena seeks information regarding accessory catered events at the Club that bears directly on the core claims asserted in this litigation. This is no fishing expedition; the Church has a good faith belief, based on an investigator's report, that the Club conducts catered events for non-members.

The Subpoena now calls for documents only since January 1, 2005. The Club's moving papers assert that the original Subpoena called for production of "hundreds of thousands of pages" of documents. *See* Nuttall Aff. ¶ 48. That should no longer be the case because the demands have been narrowed substantially. In any event, "inconvenience alone will not justify an order to quash a subpoena that seeks potentially relevant [evidence]." *Kirschner v. Klemons*, No. 99 Civ. 4828(RCC), 2005 WL 1214330, at *2 (S.D.N.Y. May 19, 2005) (citations omitted).

Particularly as narrowed above, the Subpoena is now tightly focused on highly relevant topics. Each remaining Request specifically calls for documents concerning social events at the Metropolitan Club conducted for, or on behalf of, non-members. These narrow requests do not require the Club to fish through all of its files. Presumably, the Club has a practice of separately accounting for, administering, and/or otherwise keeping track of documents relating to the ancillary catered events held at their premises. We imagine the same would be true of communications with the City regarding the Club's zoning status. Finally, locating information regarding the Club's tax-exempt status or any impact of revenues from catered events upon that status should require only a focused search of a narrow set of files, not a broad exploration of all of the Club's records.

The Church has been remarkably flexible in seeking to obtain compliance. It has reduced by more than half the time-period for which it seeks information, has freely granted extensions of time, and has here significantly narrowed the number and scope of document requests. The Church has a good faith belief that the Club possesses information directly relevant to this case. There is no reason to quash the Subpoena. Instead, the Club should be ordered to comply with the narrowed requests.

## CONCLUSION

Because the Subpoena is valid, and neither unduly burdensome nor overbroad, the Court should compel the Metropolitan Club to comply and produce the requested documents and

produce a witness for the demanded deposition.

Dated:  New York, New York
        April 17, 2008

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

By: _____
Victor A. Kovner (VK 2248)
John Cuti (JC 3365)
Monica Pa (MP 3307)

1633 Broadway
New York, New York  10019
(212) 489-8230

*Attorneys for Plaintiff, Third Church of Christ, Scientist, of New York City*