than merely economical; the Church also hopes that opening up the Building to public events will introduce the Christian Science faith to the larger community, thereby aiding the Church in augmenting its membership. In addition to increased exposure, the historic Building will again be enjoyed and appreciated by the general public, as it had been for many decades until the Building began its decline.

### The Required Capital Repairs Were Undertaken in Reliance on the City's Approval of Catering Events at the Building

39.    Like many religious and nonreligious non-profit institutions, the Church is located in an area zoned for residential use. The Building is in an R-10 zoning district, which is the highest density residential area under the Zoning Resolution of the City of New York (the "Zoning Resolution"). In Manhattan, much of Midtown and Downtown as well as cross-town streets and avenues are zoned R-10.

40.    Only residences, community facilities (such as churches, synagogues and non-profit institutions) and uses that are "accessory" to residences and community facilities are permitted in residential districts under Article II, Chapter 2 of the Zoning Resolution. While catering facilities are permitted, and commonly found, as accessory uses in community facility buildings, stand-alone catering facilities are not permitted in residential districts. Section 12-10 of the Zoning Resolution provides that for a use to be considered "accessory" it must be (i) conducted on the same zoning lot as the principal use, (ii) clearly incidental to, and customarily found in connection with, the principal use and (iii) substantially for the benefit or convenience of the principal use.

41.    Prior to initiating the extensive and costly Required Capital Repairs, the Church and the Rose Group sought the City's approval for this catering arrangement. On April 19, 2006, the City issued a pre-consideration determination, which was subsequently affirmed and clarified on June 28, 2006, by the Manhattan Borough Commissioner of the DOB (the "Pre-

NYC 189965v8 0085520-000001

Consideration"). The Pre-Consideration provides that the catering activity would constitute an "accessory use" to the primary Church use of the Building, pursuant to Section 12-10 of the Zoning Resolution.

42.    The DOB also issued the necessary permits to authorize the Required Capital Repairs (the "Permits").

43.    Based on the Church's truthful representation that the catered events were to be "operated by a highly qualified, fully insured, professional caterer who will be under contract with the Church" and that the "functions will be restricted by the contract with the Church," the DOB granted its Pre-Consideration permitting the Church to have catered events in the Building.

44.    The Church relied in good faith on the Pre-Consideration, as well as on follow-up conversations and meetings with senior DOB officials in which the Church made clear that there would be numerous catered events in the Building and that, because of the Building's capacity, many events would have large numbers of attendees.  During these conversations, DOB's consistent position has been that catered private events at the Building for non-members would be a permissible "accessory use" of the Church, and, the Manhattan Borough Commissioner of DOB stated that the only limitation on the size of events related to the capacity of the Building.  Approximately $6.5 million has been expended on the Required Capital Repairs in reliance on the City's June 2006 approvals.

**Defendants Routinely Permit Other Religious And Nonreligious Non-Profit Groups to Conduct Similar Catered Events, Including In The Church's Immediate Vicinity**

45.    The Church's reliance on the Pre-Consideration was reasonable on several levels. After all, as detailed below, (a) there are many buildings in the immediate vicinity of the Building, all in residential zoning districts, that are rented to members of the general public for large social events, (b) there are many similarly situated churches, synagogues and other

religious institutions throughout the City that routinely rent out their buildings to non-members for weddings, bar mitzvahs, birthday parties, and non-profit as well as corporate events, and (c) there are many nonreligious institutions throughout the City that routinely rent out their buildings to non-members for weddings, bar mitzvahs, birthday parties, and non-profit as well as corporate events.

45-a.    The following is a chart, developed from public records without the benefit of discovery proceedings, showing establishments in the immediate vicinity of the Building, all of which are located in Residential zoning districts, and which rent their facilities to members of the general public for catered events:

| | Location | Capacity | Availability | Zoning |
|---|---|---|---|---|
| The Beekman | 575 Park Avenue – directly south of the Building | Total capacity (restaurant plus separate catering venue) approx 200 | A restaurant open to the general public as well as a separate facility for catered events | R10 (Special Park Improvement District ("PI")) / R8B (Limited Height District No. 1A ("LH-1A")) |
| The Central Presbyterian Church | 593 Park Avenue – approximately 20 feet north of the Building and on the same block as the Building | 3 floors and other rooms available, total capacity: 500 | Available for private catered events and movie and commercial shooting | R10 (PI) |
| The Colony Club | 564 Park Avenue – two blocks south of the Building | | Private club, rents out space for a variety of catered events for non-members | R10 (PI) / R8B (LH-1A) |
| The Regency Hotel | 540 Park Avenue – two blocks south of the Building | 4,400 square feet of flexible function space, accommodate up to 200 | Rents out space for a variety of catered events, uses in-house catering operation | R10 (PI) / C5-1 (Special Madison Avenue Preservation District) |
| Council on Foreign Relations | 670 Park Avenue and East 68th Street | 180 seated; additional events on same night can be held in other rooms of the mansion. | Rents space for a variety of catered events for non-members | R10 (PI) |
| Americas Society | 680 Park Avenue and East 68th Street | 120 seated event with dancing | Not-for-profit education institution and museum; rents out space for a variety | R10 (PI) |

| | | | of catered events for non-members | |
|---|---|---|---|---|
| Union Club | 101 East 69th Street and Park Avenue | | Rents out space for a variety of catered events for non-members | R10 (PI) / R8B (LH-1A) |
| The Asia Society and Museum | 725 Park Avenue and East 70th Street | 150 seated event; 300 cocktails | Rents out space for a variety of catered events for non-members. *Uses designated outside caterer* Great Performances. | R10 (PI) |
| The Explorers Club | 46 East 70th Street, near Park Avenue | 120 seated event; 250 cocktails | Private club rents out space for a variety of catered events for non-members. *Uses designated outside caterer* New York Catering | R8B (LH-1A) |
| Church of St. Ignatius Loyola | 980 Park Avenue, near East 83rd Street | 250 | Wallace Hall is available for rental for events for non-congregants. *Uses designated outside caterers.* | R10 (PI) |

45-b.    Moreover, as is evident from the following chart developed from public records without the benefit of discovery proceedings, it is customary for churches, synagogues and other religious institutions to rent out their facilities to non-congregants for social events in order to offset in the extraordinary costs of maintaining their historic properties:

| | Location | Capacity | Availability | Zoning |
|---|---|---|---|---|
| The Central Presbyterian Church | 593 Park Avenue – approximately 20 feet north of the Building and on the same block as the Building | 3 floors and other rooms available, total capacity 500 guests | Available for private catered events and movie and commercial shooting | R10 (PI) |
| St. Bartholomew's Church | 109 East 50th Street and Park Avenue | 1250 | Available for movie and commercial filming, corporate events, fashion shows, rehearsal dinners, weddings, cocktail parties, and dances, among other events. All catering provided in house by Café St. Bart's. | C5-3 (MID) / C5-2.5 (MID) |
| Church of St. Ignatius Loyola | 980 Park Avenue, near East 83rd Street | 250 | Wallace Hall is available for rental for events for non-congregants. *Uses designated outside caterers.* | R10 (PI) |

| Universalist Church of New York | 160 Central Park West | 500 | Church dated 1897, available for private catered events and separate attached kitchen. | R10-A / R8B |
|---|---|---|---|---|
| All Souls Church | 1157 Lexington Avenue and East 80th Street | 350; 200 seated event | | C1-8X / R8B |
| The Top Deck at the Seamen's Church Institute | 241 Water Street, near Peck Street | 130 guests | Interfaith chapel, rents out space for a variety of catered events for non-congregants. | C6-2A (Special Lower Manhattan District – South Street Seaport Subdistrict) |
| Riverside Church | 490 Riverside Drive, between 119th and 122nd Street | 500; 300 seated event | Uses designated onsite caterer, Madeline's Catering & Special Events | R8 |

45-c.   Finally, the following chart, developed from public records without the benefit of discovery proceedings, makes clear that it is customary for nonreligious non-profit institutions (including institutions, like the ones below, located in residential districts) to rent their facilities to non-members for catered events in order to offset the extraordinary costs of maintaining their historic properties:

| | Location | Capacity | Availability | Zoning |
|---|---|---|---|---|
| Council on Foreign Relations | 670 Park Avenue and East 68th Street | 180 seated event; can host additional events on same night in other rooms of the mansion. | Rents space for a variety of catered events for non-members | R10 (PI) |
| Americas Society | 680 Park Avenue and East 68th Street | 120 seated event with dancing | Not-for-profit education institution and museum; rents out space for a variety of catered events for non-members | R10 (PI) |
| The Asia Society and Museum | 725 Park Avenue and East 70th Street | 150 seated event; 300 cocktails | Rents out space for a variety of catered events for non-members. *Uses designated outside caterer* Great Performances. | R10 (PI) |
| The Explorers | 46 East 70th Street, near Park Avenue | 120 seated event; 250 cocktails | Private club rents out space for a variety of catered events for non-members. | R8B (LH-1A) |

| Club | | | | |
|---|---|---|---|---|
| | | | *Uses designated outside caterer* New York Catering | |
| The Frick Collection | 1 East 70th Street, near Fifth Avenue | 200 seated event; 350 cocktails | | R10 (PI) / R8B (LH-1A) |
| National Academy Museum | 1083 Fifth Avenue, near East 89th Street | 140 seated event; 240 cocktails | | R10 (PI) |
| Cooper-Hewitt, National Design Museum | 2 East 91st Street, near Fifth Avenue | 90 seated event; 500 in Terrace and Garden | Rents out space for a variety of catered events for non-members *Uses designated outside caterer* Restaurant Associates | R10 (PI) / R8B (LH-1A) |

46.    Like these secular non-profit institutions, and like other religious institutions, the Church found that it was necessary to rent out its space to cover the daunting costs of making the Required Capital Repairs and of operating and maintaining its historic Building.  Like its neighbors, the Church sought to use its Building both to generate revenue and to serve as a community resource.  The events already held in and planned for the Building are not meaningfully different from any of these uses at other comparable institutions.

### Opposition by Neighboring Residents Results in the Revocation of the Pre-Consideration

47.    By March 2007, after the Required Capital Repairs were well underway and after the Rose Group had hosted several catered events, residents of two neighboring buildings on the west side of Park Avenue, across the wide avenue from the Church – 570 Park Avenue and 580 Park Avenue – began to complain about the Church's arrangement with the Rose Group.  After initially discussing the matter with the Church and the Rose Group, residents of 570 and 580 Park Avenue, calling themselves the "The Preservation Coalition," initiated a public relations campaign against the Church.  Their avowed purpose was to maintain the "residential" character of their Park Avenue neighborhood, and their flyer contended that the Church's plans to permit catered events at its historic premises – although no different than the

practices of neighboring institutions – would cause significant disruption in their backyard. These neighbors, however, failed to mention that if the Church were unable to supplement its revenues it likely will be forced to sell the Building to a developer or other entity far less likely to want to preserve the Building in its present form.

48.    On October 3, 2007, the objecting neighbors circulated another flyer throughout the Church's neighborhood which accused the Church of being "less than forthcoming about the use of the church" and insisting that the Church "insult[s] [their] intelligence" by (truthfully) denying that the Church is not being converted into a commercial catering hall. The flyer concluded that "there is no question about the effect these large events have had and will continue to have on the peace and quiet of our neighborhood – commercial deliveries, traffic jams, double parking, noise and after-party sidewalk life and cleaning up well into the night." This is a selective and baseless attack on the Church. As detailed above, there are many institutions in this very neighborhood – including the far larger Park Avenue Amory just a few blocks north – that host large catered events and that take far fewer steps than the Church has taken to minimize the impact on local quality of life.

49.    The disgruntled neighbors have pressed these pretextual complaints on the City, sending at least three letters to the DOB, dated March 12, 2007, March 30, 2007, and October 5, 2007. The letters make the untrue claim that the Lease essentially transfers ownership of the Building to the Rose Group, thereby distorting the real import of the Lease.

50.    Contrary to the arguments made in the letters the disgruntled neighbors submitted to Defendants, the Lease is simply a contract pursuant to which the Church obtains urgently needed income, funds for the Required Capital Repairs, and a commitment by the Rose Group to pay for ongoing maintenance of its Building in exchange for granting the Rose Group the limited right to use the Building for catered events when it is not being used for religious

activities.

51.     Unfortunately, the City has succumbed to the demands of these influential neighbors. On October 29, 2007, the DOB sent a letter (the "DOB Letter") reversing itself and notifying the Church and the Rose Group that it intended to revoke the approval set forth in the Pre-Consideration and the Permits, even though the Required Capital Repairs were nearly completed.

52.     The DOB Letter stated that the DOB had re-evaluated its position in light of vocal opposition by the Church's neighbors, and had now concluded that the catering events would not be an "accessory use" to the Church's primary use "because [the use of the Building for catered events] does not comport with the Zoning Resolution's requirement that it be 'clearly incidental to, and customarily found' in connection with the Church." The DOB directed the Church to forbid the Rose Group from conducting any catered events after April 28, 2008 (even if such events had already been booked), and further prohibited the Church from permitting the Rose Group to enter into any new contracts for catered events (even if such a new engagement could be held prior to April 28, 2008). The DOB Letter effectively terminates the Rose Group's ability to use the Building for catered events and to recoup the significant investments it has made in the Required Capital Repairs.

53.     Upon receiving the letter, the Church engaged litigation counsel. Through counsel, the Church contacted the Defendants to attempt to resolve this matter short of litigation. Counsel for the Church advised the Defendants that if the DOB continued in its decision to revoke approval for the catered events to continue, the Church likely would be forced to sell the Building to satisfy its liabilities.

54.     The Church's attempt to resolve this matter without litigation was unsuccessful.

55.    On November 30, 2007, the DOB wrote to the Church's counsel confirming that its October 29, 2007 letter, which set forth the Notice of Intent to Revoke its prior approval for catering events at the Church, was the DOB's final decision (the "Final Determination"). The Final Determination rescinds the earlier-granted approval for catering events, and revokes, forthwith, the building permits authorizing the Required Capital Repairs.

56.    By revoking the Permits and rescinding the Pre-Consideration and withholding permission allowing the Church to hold catered events by the Rose Group, the City is implementing its land use laws in a way that treats the Church on less than equal terms with nonreligious institutions. It also irrationally singles out the Church by treating it more harshly than it treats similarly situated religious organizations or comparable nonreligious non-profit organizations, many of which engage in the identical practice of renting, leasing or otherwise making available their premises in order to host private catered events.

57.    The Church voiced its concerns regarding the City's unfair and unequal treatment of the Church through numerous communications with the DOB, specifically identifying the fact that other substantially similar institutions engage in the identical practice (many within the same or even lower density residential zoning districts). The City, notwithstanding such knowledge, nonetheless knowingly and intentionally discriminated against the Church by implementing the City's land use and zoning laws in a manner that treats the Church unlike any other institution in the surrounding area.

58.    By revoking the Permits and preventing the Church from hosting catered events on its premises, the City has threatened the very existence of the Church by making it impossible for the Church to raise the funds necessary to operate and maintain its Building and effectively forcing the Church to sell the Building to reimburse the Rose Group for the millions of dollars of Required Capital Repairs completed pursuant to the Lease. The implementation of