Exhibit G

LAW OFFICES

# KURZMAN KARELSEN & FRANK, LLP

230 PARK AVENUE
NEW YORK, NY 10169
(212) 867-9500

FACSIMILE
(212) 599-1759

ERNEST L. BIAL
LEE D. UNTERMAN
PHYLLIS H. WEISBERG
M. DAVIS JOHNSON
ISAAC A. SAUFER
KEVIN J. LAKE
CHARLES PALELLA
JOSEPH P. TUCKER
JOANNE SEMINARA

SAMUEL B. SEIDEL (1903-2003)

NEW JERSEY DIAL
(973) 273-0455
FAX (973) 273-0458

MARISSA A. WINTER
ANDREW L BART
KRISTA HALPIN
PAUL J. McGEOUGH

COUNSEL
STANLEY E. MARGOLIES
RICHARD E. MILLER
JOSEPH F. SEMINARA
HON. LOUIS C. PALELLA
(JUSTICE, NYS SUPREME COURT, RET)
DAVID YAVARKOVSKY
EUGENE HABER
ARTHUR R. BLOCK

October 5, 2007

**BY HAND**

Hon. Daniel Doctoroff
Deputy Mayor for Economic Development and Rebuilding
Office of the Mayor
City Hall
New York, NY  10007

583 Park Avenue/ Third Church of Christ, Scientist

Dear Deputy Mayor Doctoroff:

We represent The Preservation Coalition, a coalition of buildings located in the vicinity of the Third Church of Christ, Scientist at 583 Park Avenue. The Preservation Coalition seeks to preserve its residentially zoned neighborhood; to that end it opposes the commercial catering hall now operating at 583 Park Avenue under guise of this commercial operation being an accessory use to the church.

We enclose for your information copies of a letter distributed this week by the Third Church of Christ, Scientist to residents of the neighborhood, along with our client's response thereto.

187879 1

KURZMAN KARELSEN & FRANK, LLP

Hon. Daniel Doctoroff
October 5, 2007
Page 2 of 2

Thank you for your attention to this matter.

Respectfully,

KURZMAN KARELSEN & FRANK, LLP

Phyllis H. Weisberg

PHW:alj
Encls.

BY HAND DELIVERY WITH ENCLOSURES

cc:     Hon. Patricia Lancaster
        Hon. Robert Tierney
        Hon. Adrian Benepe
        Phyllis Arnold, Esq.
        David Karnovsky, Esq.
        Elizabeth Weinstein

187879.1

THE PRESERVATION COALITION
570 PARK AVENUE
NEW YORK, NEW YORK 10065
thepreservationcoalition@gmail.com

October 3, 2007

Dear Neighbor:

Recently, you may have received a letter from The Third Church of Christ, Scientist on Park Avenue and 63rd Street in which its Board of Trustees said it was writing to "clarify communications forwarded to you concerning our church." Rather than clarifying the issues, the letter is less than forthcoming about the use of the church by a large commercial catering business, and it mischaracterizes the Preservation Coalition.

**The Preservation Coalition** is spearheaded by the seven neighboring buildings listed below; it was formed to preserve the residential character of our neighborhood. We have been joined by residents from at least 24 buildings (not "a few of our neighbors" as the church claims), who have attended numerous committee and board hearings of Community Board 8, and who have written hundreds of e-mails and letters to local and state officials opposing the use of the church as a commercial catering hall.

**The church has entered into a 20-year multi-million dollar net lease, with two 5-year renewal options, with a catering concern called the Rose Group.** Both the Rose Group and the church claim the catering facility is an "accessory use" of the church. In fact, the reverse is true. **The church – with only a small number of members - has become an accessory use to the catering business.** All the pews have been removed from the main sanctuary and the church name has been covered.

It is an insult to our intelligence that the church's letter states, "Our church is not being converted into a 'large scale catering operation.'" **The caterer's own words demonstrate otherwise, as set forth in the attached copies of the Rose Group's online ads.**

We believe that **this use of the church as a commercial catering hall violates the New York City zoning laws.** Serious concerns also exist about whether serving liquor at these events complies with State Liquor Authority regulations.

And there is no question about the effect these large events have had and will continue to have on the peace and quiet of our neighborhood – commercial deliveries, traffic jams, double parking, noise and after-party sidewalk life and cleaning up well into the night.

The church's statement that "requests for a meeting have been rebuffed" is simply untrue. Our outreach to the church began in November 2006, when the Board of 580 Park Avenue invited the Church Trustees and tenant to meet and start a dialogue about their plans, but the church declined.

We are disappointed that the church has now resorted to the scare tactic of suggesting the property might have to be sold to a developer unless the commercial catering operation is allowed to continue. Nevertheless, we understand that the church has financial problems. **We believe appropriate alternatives exist.** A commercial catering hall, however, especially for events of up to 1,500 people, is simply unacceptable for our *residentially zoned* neighborhood.

We are meeting with various City agencies and officials to urge them to stop granting temporary permits for these events and to rule that this use violates the law. If such a ruling is not forthcoming, we shall continue to challenge what we believe to be a clearly illegal use of the church building through various administrative channels, and, if necessary, in court.

Sincerely,

The Preservation Coalition Steering Committee
Representing the Boards of Directors of 550, 555, 563, 565, 570, 575, and 580 Park Avenue

583 Park Avenue in BizBash New York



SUPPLIERS   VENUES   EVENT COVERAGE   TRENDS & IDEAS   TIPS & STRATEGIES

PREMIUM SPONSORED LISTING

# 583 Park Avenue

PRINT | SEND TO A FRIEND

583 Park Ave.
New York, NY 10021
Telephone: 212.583.7200
Fax: 212.583.7206
Web: www.583parkave.com

CONNECT TO THIS RESOURCE

**OVERVIEW**
Designed by the renowned firm of Delano & Aldrich and completed in 1923, 583 Park Avenue is the ultimate venue for hosting your event. Orchestrated by a family with generations of experience, 583 Park Avenue is poised to deliver a luxurious and memorable experience for your guests. By combining this prestigious address with its architectural pedigree and coupled with outstanding food and unparalleled service, 583 Park Avenue will stand out as the most exciting event space in New York City.

**BIZBASH EDITORIAL COVERAGE**
New Yorkers for Children Decor Underscores Evening's Message
De la Renta Leaves Tents, Gets Exclusive With Church

**ROOM DIMENSIONS AND CAPACITY INFORMATION**

| NAME | DIMENSIONS | SQ. FEET | RECEPTION | BANQUET | THEATER | CLASSROOM | CONFERENCE | U-SHAPE |
|---|---|---|---|---|---|---|---|---|
| 583 Park Avenue:Arcade | - x - | 3854 | 800 | - | 400 | 250 | - | - |
| 583 Park Avenue:Ballroom | - x - | 6500 | 1200 | - | 800 | 500 | - | - |
| 583 Park Avenue:Balcony | - x - | 3423 | 300 | - | 300 | 150 | - | - |

http://www.bizbash.com/newyork/content/resource/r815236.php

PHOTO GALLERY



Photo 583 Park Avenue

# LocationsMagazine.com

WEDDINGS, SOCIAL OCCASIONS, & CORPORATE EVENTS

**WIN A FREE**
Honeymoon to
Jamaica or Brazil

Largest Wedding Hall Site
In The NY/NJ Metro Area

Oct 3, 2007

Home | Search | Help Line | Partners | Biz Opp | Contact |

## 583 Park Avenue

Photo        Map



Address: 583 Park Avenue
New York, New York 10021
Phone: 212-583-7200
Fax: 212-583-7206
Website: www.583PARKAVE.com
Email: events@583parkave.com
Contact: Louis Rose

Room Capacity cocktail reception: 1,000
Room Capacity dinner w/dancing: 800
Cuisine: Classic American
Kosher: Available
Room accommodates ceremony: Yes
Room available: Monday - Sunday

Comments:
*The most exciting new event space in New York City.*

583 Park Avenue is a breathtakingly glorious building that is now available for private events.

Designed by the renowned firm of Delano & Aldrich and completed in 1923, 583 Park Avenue is the ultimate venue for hosting your event. Orchestrated by a family with generations of combined experience, 583 Park Avenue is poised to deliver a remarkably luxurious and memorable experience to your guests. By combining this prestigious address with its architectural pedigree and coupled with outstanding food and unparalleled service, 583 Park Avenue will stand out as the most exciting event space in New York City. It is with great pleasure that we introduce to you this uniquely elegant venue with the hope that we will have the opportunity to be of service to you. Please call for an appointment.

http://www.locationsmagazine.com/display.php?id=7951

© 2007 LOCATIONS Magazine. All rights reserved.

LAW OFFICES

# KURZMAN KARELSEN & FRANK, LLP

230 PARK AVENUE

NEW YORK, NY 10169

(212) 867-9500

ERNEST L. BIAL
LEE D. UNTERMAN
PHYLLIS H. WEISBERG
M. DAVIS JOHNSON
ISAAC A. SAUFER
KEVIN J. LAKE
CHARLES PALELLA
JOSEPH P. TUCKER
JOANNE SEMINARA

SAMUEL B. SEIDEL (1903-2003)

NEW JERSEY DIAL
(973) 273-0455
FAX (973) 273-0458

FACSIMILE

(212) 599-1759

MARISSA A. WINTER
ANDREW I. BART
KRISTA HALPIN
PAUL J. McGEOUGH

COUNSEL

STANLEY E. MARGOLIES
RICHARD E. MILLER
JOSEPH F. SEMINARA
HON. LOUIS C. PALELLA
(JUSTICE, NYS SUPREME COURT, RET.)
DAVID YAVARKOVSKY
EUGENE HABER

March 12, 2007

## VIA ELECTRONIC MAIL & OVERNIGHT MAIL

Christopher Santulli, PE
Manhattan Borough Commissioner
New York City Department of Buildings
280 Broadway
New York, NY 10007

> 583 Park Avenue (the "Premises")
> Block 1398 – Lot 0001
> Job No. 104511495

Dear Commissioner Santulli:

As we have previously advised, this office represents 580 Park Avenue, Incorporated, and 570 Park Avenue Apartments, Inc, the cooperative apartment corporations that own 580 Park Avenue and 570 Park Avenue, respectively. We refer to our letters of January 9, 2007, January 16, 2007 and January 18, 2007, copies of which are enclosed.

We write to formally request the revocation of all permits and approvals related to the above job number including, without limitation, the permit for a change of use.

As we previously advised you, our clients believe that the proposed change in use is in violation of law. Since our prior letters, we have received additional information which we believe makes that even clearer. Specifically, we call to your attention a Confidential Private Placement Memorandum (the "Memorandum") filed with the New York State Attorney General and dated September 29, 2006. This was filed in connection with an offering to potential investors in Rose Group Park Avenue LLC (the "Rose Group"), the commercial caterer leasing the Premises. Relevant extracts from the Memorandum are annexed as Exhibit "A." The Memorandum establishes that the applicant is attempting to establish a commercial catering establishment, essentially a "Use Group 9" commercial use, in an R-10 Park Improvement District and that such use can in no way be considered "accessory."

KURZMAN KARELSEN & FRANK, LLP

Christopher Santulli, PE
March 12, 2007
Page 2 of 5

In our prior letters we discussed the application for a change of use, the description of the proposed use, and the notation by Commissioner Osorio concerning that use. On March 5, 2007, we became aware, for the first time, of an additional letter and your notation concerning use. That letter was not in the file when we initially examined and reproduced same.

That letter, dated June 6, 2006, a copy of which is annexed as Exhibit "B," represents that the use by the caterer was to be for "limited periods," that the caterer was operating "under contract with the Church," that the functions were "ancillary," and that the "functions will be restricted by contract." On the basis of those representations, you agreed to "accept catered events under contract with the Church as complying with 'accessory Social Hall' requirements of April 10, 2006 determination by L. Osorio."

We submit that the Church's characterization is disingenuous. First, as discussed below and set forth in the contemporaneous liquor license application, the so-called contract with the caterer is actually a thirty (30) year <u>lease</u> (a twenty (20) year term with two (2) five year renewal options) for the premises. The difference between a contract with restrictions and a thirty (30) year lease is staggering. Among other things, a lease is an interest in real estate.

Second, the suggestion that the church building would be utilized by the caterer only "for limited periods" is simply wrong. The Memorandum describes the operation of the Premises. Nowhere is there a mention of restrictions.[1] Nowhere is there mention of use only for limited periods – except for limited Church use. Indeed, there is barely a mention of Church use. Most importantly, page 13 of the Memorandum states that "[t]he Company has entered into a Lease for the Facility Space, which permits <u>the current congregation to use the Facility Space on a limited basis at times when the Company is not using the Facility Space.</u>" [Emphasis added] When read in the context of the statement on the same page that the Church only has forty members "and only a few of these members participate in the Church's Wednesday and Sunday services," it is clear that the use by the Church is extremely limited and that the use by the caterer is the primary use.

This is reinforced by the advertisements on the website of LocationsMagazine.com, which refer to the availability of the Premises every night of the week. We enclose as Exhibit "D" copies of the original listing and the modified listing; this modification was posted only <u>after</u> our clients raised the issue concerning the proposed maximum size of events as 2500. The maximum size is now described as 1000.

---

[1] Notably, the offeror, the Rose Group, is listed on the application for a change of use as the general contractor; we annex as Exhibit "C" the relevant printout from BIS evidencing this.

KURZMAN KARELSEN & FRANK, LLP

Christopher Santulli, PE
March 12, 2007
Page 3 of 5

Nor has the Church "provided for various catered events" or are the Rose Group's events "ancillary" to events sponsored by the Church as stated in the June 2nd letter. The Memorandum describes the types of events (see page 14). None relate to the Church. Instead, there are a myriad of corporate, individual and charity functions listed. Clearly, it is the Rose Group, the tenant, that will exclusively provide for these catered events. The Church has no role or participation in providing for such events.

We believe that documents submitted to two separate governmental agencies, i.e., the Memorandum filed with the Attorney General, and the June 2nd letter submitted to your Department, both of which presumably have been certified as true, are totally inconsistent. They cannot both be correct. We believe that this inconsistency requires immediate revocation of all permits.

Moreover, the described catering use is no way consistent with your notation on the June 2, 2006 letter. Your note relates to "catered events under contract with the Church." As described in the Memorandum, there will be no catered events under contract with the Church. The catered events are to take place under contracts between the Church's tenant, the Rose Group, and the individual or entity having the event. Unlike the typical arrangement where a religious institution has an in-house caterer, but the contract is with the institution and includes rental of the institution, the Church is not a party to such contract. In fact, as discussed below, the Church has made efforts to disassociate itself from the events because liquor will be served.[2] For this reason, too, the permits should be revoked.

While we recognize that the inquiry into whether a use is an accessory use is often a fact-intensive inquiry, we believe, that based on the documentary evidence before you, this use cannot under any circumstances be viewed as an accessory use. We enclose copies of two recent BSA decisions involving Yeshiva Imrei Chaim Viznitz (the "Yeshiva case") involving similar issues. In those decisions, the BSA upheld the DOB view that the catering use was not accessory. As those decisions make clear, the DOB and the BSA look at, among other things, intensity and frequency to determine whether the use is an accessory use. Here, the Memorandum makes clear that the primary user of the premises is the caterer.

Moreover the Memorandum makes clear that the attraction of the space is the potential intensity – that it can accommodate over 500 people. Thus, on page 13 it states "[t]he Company believes that the beauty and grandeur of the building located at 583 Park Avenue, New York, New York (the 'Facility Space'), its ability to handle over 500 people, and the prestigious location on Park Avenue represents a unique business opportunity." On page 15, the Rose Group states that "[t]he Facility Space will be one of the few properties in and around its location that can accommodate seated dinners with

---

[2] Christian Scientists, we understand, do not partake of alcohol.

KURZMAN KARELSEN & FRANK, LLP

Christopher Santulli, PE
March 12, 2007
Page 4 of 5

over 500 guests." See also page 3. This is far greater than the intensity of the use in the Yeshiva case. In that case, the use was for approximately 400 guests.

As to frequency, the Rose Group has represented it will hold approximately two to three events per week on average, but acknowledges it could be more. It has acknowledged that it will likely hold events almost every night in December. Given the financial pressures created by the involvement of investors pursuant to the Memorandum, the Rose Group has every incentive to have as many events as possible. The website listing at LocationsMagazine.com makes clear that the Premises is available every night. We understand the Premises has already been booked for a number of events. And, while the use in the Yeshiva case included use for the synagogue, the use here, which involves liquor, weddings and bar mitzvahs, none of which are part of Christian Science, will not be used at all by the members of the Church. In fact, the Church currently has an application pending with the Landmarks Preservation Commission for permission to put a block over the entrance to the building to cover the name of the Church, since presumably it does not want to be associated with events at which alcohol is served.

Indeed, even if the Church used the Premises for events, given that the Memorandum states the membership is now 40, it would certainly be a very small number of events.[3] Notably, in the Yeshiva cases, that at least 50% of the events were not related to the Synagogue or School was one of the factors that led to the determination that the use was not accessory.

In the Yeshiva cases, the BSA also noted that the Zoning Resolution "does not anticipate that primary uses can normal qualify as accessory uses." Yet what is planned here is clearly a commercial catering establishment, a primary use under Use Group 9.

Finally, as noted in the Yeshiva cases, the hours of operation are relevant. Here, the catering use will only be when the Church is not using the premises. The uses are mutually exclusive. That in and of itself is one of the clearest indicia that this is not an accessory use.

We believe the foregoing establish that the contemplated use is neither consistent with the representations to you nor an accessory use under Zoning Resolution 12-10. The uses are unrelated and only share a building.

---

[3] In the Yeshiva cases the Board noted that the DOB also looks to the "relationship between the size of the membership of the religious entity and the size of events." Here, with only forty members, it is hard to imagine why or how events of over 500 would be warranted.

KURZMAN KARELSEN & FRANK, LLP

Christopher Santulli, PE
March 12, 2007
Page 5 of 5

The construction continues to go forward; in fact, we have reason to believe that it is or will soon be substantially complete. Where the evidence is clear – for the Rose Group cannot disclaim its own filing with the Attorney General - there is no point in delaying the revocation of permits.

For all the foregoing reasons, we respectfully request that any permits and approvals issued to date be immediately revoked.

Thank you for your consideration.

Respectfully,

KURZMAN KARELSEN & FRANK, LLP

Phyllis H. Weisberg

PHW:alj
Encls.

cc:  Mona Seghal, Esq. (via overnight mail)
      Benjamin Colombo, Manhattan IGA Liaison, Executive Assistant to Borough
        Commissioner (via overnight mail)
      David G. Liston, Chair, Community Board 8 (via overnight mail)
      Terry Slater, Co-Chair, Zoning and Development Committee, Community Board 8
        (via overnight mail)
      Elaine Walsh, Co-Chair, Zoning and Development Committee, Community Board 8
        (via overnight mail)
      Hon. Liz Krueger (via overnight mail)
      Hon. Jonathan Bing (via overnight mail)
      Hon. Scott Stringer (via overnight mail)
      Hon. Dan Garodnick (via overnight mail)
      Board of Directors, 580 Park Avenue, Incorporated (via electronic mail)
      Board of Directors, 570 Park Avenue Apartments, Inc. (via electronic mail)

181018.1