Exhibit P

LAWYERS



# Davis Wright Tremaine LLP

ANCHORAGE   BELLEVUE   LOS ANGELES   NEW YORK   PORTLAND   SAN FRANCISCO   SEATTLE   SHANGHAI   WASHINGTON, D.C.

JOHN CUTI
DIRECT (212) 603-6486
johncuti@dwt.com

1633 BROADWAY
NEW YORK, NY 10019-6708

TEL (212) 489-8230
FAX (212) 489-8340
www.dwt.com

April 14, 2008

**By E-Mail and Overnight Mail**

Charles Palella, Esq.
Kurzman Karelsen & Frank LLP
787 Seventh Avenue
New York, NY 10019

Re:   Subpoena served on 570 Park Avenue Apartments, Inc., 580 Park Avenue, Inc.,
Susan Relyea, as a Member of the Co-Op Board of 580 Park Avenue, Inc., and
The Beekman Tenants Corporation
*Third Church of Christ, Scientist v. City of New York*; 07 Civ. 10962 (DAB)

Dear Charles:

Thank you for your letters of April 10 to Victor Kovner, which we received that evening. We write to respond to the Responses and Objections of your clients – 570 Park Avenue Apartments, Inc., 580 Park Avenue, Inc., Susan Relyea, as a Member of the Co-Op Board of 580 Park Avenue, Inc., and The Beekman Tenants Corporation (the "Beekman") (collectively, the "Neighbors") – served on our client, the Third Church of Christ, Scientist, of New York City (the "Church").[1] As set forth in our March 6, 2008 letter, we are interested in working with the Neighbors to obtain the requested documents, and are open to discussing ways to reduce any burdens associated with the document production. As a sign of our good faith, let me start by agreeing to narrow the time frame of the Subpoenas to 570 Park, 580 Park and Ms. Relyea to cover only the period January 1, 2006 to date (rather than the original request that spanned the period January 1, 2000 to date). We also are willing to narrow the temporal scope of the subpoena to the Beekman in most respects, though because of the presence of the restaurant operations conducted there and the date of an underlying lease, some of the requests to the Beekman still must cover the original period requested of January 1, 1999 to date.

Though we remain willing to compromise, I am constrained to note that the nature of the Responses does not seem to suggest a mutual willingness to do so. Indeed, the four letters you

---

[1] This letter responds to the four letters sent on behalf of the Neighbors on April 10th. Points A-E apply to all Objections and Responses of the Neighbors; Point F applies only to the Beekman.

Charles Palella, Esq.
April 14, 2008
Page 2



sent contain blanket and boilerplate objections and apparently baseless assertions of privilege that raise doubts as to the likelihood of compromise. But because we do not think litigating a motion to compel is the best use of the resources of the Church, your clients, or the Court, we write to ask that you reconsider your approach. Given the looming June 3, 2008 discovery deadline, however, if we do not promptly resolve our differences and receive assurances of your compliance with the Subpoenas (as amended by this letter and as we may agree further to amend them) by the end of day on Thursday, April 17, 2008, we will make a motion to compel the following day.

A.  **The Order Authorizes the Subpoenas to the Neighbors**

You claim you need not comply with the Subpoena because Judge Batts' discovery Order does not permit discovery from the Neighbors. That is false. The Complaint makes clear that it is the lobbying efforts of the Neighbors that caused the City to do its about-face and deny the permission it had previously granted the Church regarding catered events at 583 Park Avenue. Ms. Weisberg concedes that this lobbying activity has been far-ranging. *See* Weisberg Decl. ¶ 5. The scope, nature, and intensity of these lobbying efforts, and the impact of those efforts on the City, are at the very heart of this case. Judge Batts – who has read extensive briefing, and who heard oral argument on the application for the TRO in December (with a member of your firm present in the courtroom, whom the Judge invited to participate) – was well aware of the central role of the Neighbors when she granted the Church's request to conduct discovery.

Your selective quotation from Judge Batts' March 3, 2008 order granting discovery (the "Order") does not change the Order's plain meaning. The Church had requested pre-hearing discovery. While citing requests to religious and non-religious institutions that conducted catering as examples of the discovery it would conduct, nothing in our letters to the Court limited the request to such non-parties. Indeed, the City's letter to the Court regarding discovery makes clear that we always intended to conduct discovery relevant to all the Church's claims. In that letter, Ms. Brennan argued that the Church should not be allowed to take discovery regarding the Neighbors' lobbying efforts. As you know, of course, Judge Batts rejected the City's arguments and issued the Order, which granted "pre-hearing discovery *including* Plaintiff's requests for documents and depositions from several religious and non-religious institutions that may conduct similar catered events to those issues in this matter" (emphasis added). The Order grants the right to take party and non-party discovery; it uses the word "including" only in its normal, illustrative sense.

To accept your reading of the Order would flout the Court's intention to permit the parties to develop a fuller factual record on which it could base its ruling on the motion for preliminary injunction. Without question, the Neighbors have relevant evidence that will help the Church support its claims. Your clients cannot seriously have expected to play such an active role in this controversy but then avoid discovery of their conduct. The Order is clear. It authorized the issuance of the Subpoenas to your clients.

Charles Palella, Esq.
April 14, 2008
Page 3



### B.   Objections Based on Undue Burden Are Without Merit

The Neighbors object to every Request on the grounds of over-breadth and undue burden. Under Rule 45, however, a recipient of a subpoena is required to set forth "the manner and extent of the burden and the probable negative consequences of insisting on compliance." *Kirschner v. Klemons*, No. 99 Civ. 4828 (RCC), 2005 WL 1214330, at *2 (S.D.N.Y. May 19, 2005) (citations omitted) ("inconvenience alone will not justify an order to quash a subpoena that seeks potentially relevant [evidence].") That has not been, and cannot be, done here. Your statement that compliance with the Subpoena would cause you to produce several thousand emails, 22 Redwelds, 500 photographs, and more than 24 DVD videos shows that your clients possess a significant amount of information that is highly likely to bear directly on the issues raised in this case. But the mere volume of responsive documents is not sufficient under the Federal Rules to avoid compliance. *See Bridgeport Music Inc. v. UMG Recordings, Inc.*, No. 05 Civ. 6430 (VM) (JCF), 2007 WL 4410405, at *2 (S.D.N.Y. Dec. 17, 2007) (finding no undue burden notwithstanding claim that production would require non-party to "go through hundreds of files that were in storage" and that search could take months); *see also Travelers Indemnity Co. v. Metropolitan Life Ins. Co.*, 228 F.R.D. 111, 114 (D. Conn. 2005) (where subpoena of non-party called for review of all documents associated with over 1,000 insurance policies, stored in various offices and warehouses in several states, "the sheer volume of documents would be no reason, in and of itself, to quash the subpoenas" if there was no other means for the party to obtain the information)).

The Neighbors' statement that they should not have to produce documents "without fair compensation" is hard to take seriously. You have cited no legal authority or factual basis entitling the Neighbors to shift legal fees and costs. Indeed, the Neighbors are some of the wealthiest cooperative building associations in New York City, whereas this case arises in large part because the Church faces grave financial challenges. Moreover, the Church was forced to pursue legal action only because of your client's conduct which, we have alleged, has caused the City to revoke its earlier-granted approval. Your clients are not "innocent bystanders"; to the contrary, they have played an active part in this controversy. They must bear their own costs. *See In re Honeywell Intern., Inc. Securities Litig.*, 230 F.R.D. 293, 303 (S.D.N.Y. 2003) (non-party subject to subpoena was not entitled to costs where non-party was not disinterested in the litigation). If anything, by requiring the Church to respond to baseless Objections, the Neighbors expose themselves to a claim, which the Church hereby expressly reserves, that they should reimburse the Church for the fees and costs of enforcing the Subpoenas.

### C.   All of the Subpeonas Call for Relevant Information

Rule 45 incorporates the definition of relevance under Rule 26(b)(1), which permits the discovery of any unprivileged matter "reasonably calculated to lead to the discovery of admissible evidence." As such, discovery under Rule 45 "is intended to be as broad against a nonparty as against a party[.]" *See* Fed. R. Civ. P. Rule 45, Commentary 45-6; 9 MOORE'S FEDERAL PRACTICE 3D § 45.03[1], 45-24 (2007). The party resisting discovery bears the burden of showing that the subpoena is improper and/or that compliance with the "subpoena would be



unduly burdensome." *MacNamara v. City of New York*, No. 04 Civ. 9612 (KMK) (JCF), 2006 WL 3298911, 15 (S.D.N.Y. 2006). These rules reflect the reality: subpoenas are not voluntary requests. Each is issued in the name of the Court; failure to comply can constitute contempt of court. *See* 9 MOORE'S FEDERAL PRACTICE 3D § 45.02[1]; Fed. R. Civ. P 45(e). Under the broad definition of relevance, each of the Requests calls for the production of relevant information.

The boilerplate relevancy objections made in response to the Subpeonas are equally unavailing. It is not for the Neighbors, non-parties to this action, to educate the Church about what is relevant to its claims or defenses. In any event, the assertion of irrelevance is frivolous. The City's motives are directly at issue in this case. The Church has alleged that the City did not make a legitimate land use decision here, but instead succumbed to pressure from influential citizens. You represent the people who allegedly applied that pressure. Apparently, they created thousands of pages of documents that record their efforts to force the City to revoke permission that previously had been granted to the Church. It is hard to imagine how these documents are not relevant. It is not the Church's fault that your clients created a large volume of relevant material. As noted above, your "undue burden" argument is meritless. *See Bridgeport Music Inc*, 2007 WL 4410405 at *2.

### D. Confidentiality Objections Are Without Merit

Your catch-all "confidentiality" objections are without merit. You have asserted no basis that any requested document or information is confidential. *See* 6 MOORE'S FEDERAL PRACTICE § 26.105[8][a] (3d Ed. 2007) (in obtaining protective order to protect confidentiality, the party resisting discovery must show that the information is a trade secret, confidential research, or will cause commercial disadvantage). The Neighbors have conducted an organized, open campaign to lobby or otherwise communicate with the City, Elected Officials, the State Liquor Authority, various municipal organizations, and the general public. None of these communications with third-parties is confidential. But all of them are relevant, and documents concerning such efforts must be produced. This includes any minutes of meetings of the board of directors (including any committees of such boards) of any of your clients. *See Lyondell-Citgo Refining, LP v. Petroleos de Venezuela, S.A.*, No. 02 Civ. 0795 (CBM), 2005 WL 1026461, * 4 (S.D.N.Y. May 2, 2005) (imposing sanctions for failure to produce board of director minutes). You are entitled to redact only privileged communications contained within the minutes, but the remainder is discoverable. Please do not misunderstand the Church's motives. We would gladly agree to any reasonable proposal by you to limit the use of any produced documents only for purposes of this litigation.

### E. The Privilege Log is Defective

The Neighbors assert boilerplate attorney-client and work-product privilege objections to every single Request. That approach is improper. The Neighbors must produce all responsive, non-privileged documents. To the extent that documents sought by any Request are purportedly protected by any privilege, you are required under the Federal Rules to provide specific information sufficient for us to assess the application of that privilege. The "Categorical



Privileged Documents Log" does not provide nearly enough information to assess whether the privilege was properly invoked for wide categories of documents.

More importantly, several categories of documents identified in your privilege log are not protected by any privilege. As a preliminary matter, there is no attorney-client privilege for any communication with any entity that is not a client of your firm. Please specify whether your firm represents every cooperative apartment corporation that is purportedly a member of the Preservation Coalition (116 and 125 E. 63rd Street, 535, 550, 555, 563, 656, 570, 575 and 580 Park Avenue), or whether you represent only the Neighbors. *See* Weisberg Decl. ¶ 1.

The Neighbors' assertion of the work-product doctrine is frivolous. You should withdraw all such objections. "[A] non-party witness is not entitled to assert the work product privilege." *Ricoh Co., Ltd. v. Aeroflex Inc.*, 219 F.R.D. 66, 68 (S.D.N.Y. 2003) (holding that "Courts have routinely held that documents prepared by one who is not a party to the case at bar are not protected by Rule 26(b)(3), even if the non-party is itself a party to a closely related lawsuit in which he will be disadvantaged if he must disclose in the instant suit."); *Ramsey v. NYP Holdings, Inc.*, No. 00 Civ. 3478, 2002 WL 1402055, *6 (S.D.N.Y. June 27, 2002) ("federal courts have repeatedly held . . . that a non-party witness may not invoke work-product protection under [Fed. R. Civ. P. 26(b)(3)] to preclude production of materials prepared by or for that witness, even if created in contemplation of the witness's own pending or anticipated litigation") (citing cases). Accordingly, the Neighbors cannot invoke the work product privilege *at all,* and all communications between the Neighbors, the Neighbor's counsel, and third parties, including the City (including Ave Maria Brennan, Esq.), CIVITAS, Defenders of the Historic Upper East Side, the State Liquor Authority, Elected Officials, Landmark Preservation Commission, potential Coalition members, and all individuals, consultants, videographers, and other agents assisting the Neighbors, must be produced forthwith.

Finally, to the extent that your firm prepared any documents that might qualify for work-product protection, the voluntary disclosure of such purported work product to a third-party waives the privilege, unless the parties are engaged in a joint defense and/or has a common interest agreement. *See Lugosch v. Congel,* 219 F.R.D. 220, 241 (N.D.N.Y.,2003); *In re Steinhardt Partners, L.P.,* 9 F.3d 230, 234-37 (2d Cir.1993)). To the extent that the Neighbors intend to assert work product privilege in connection with any communications with the City or other third parties, please provide us with a copy of and/or the details concerning any applicable joint defense or common-interest agreement.

F. **Responses to Objections Asserted by the Beekman**

Because restaurant and catering activities are conducted at the "Beekman, the Church's subpoena to the Beekman differs from the subpoenas sent to your other clients. While the responses to the objections raised above apply to all of your clients (including the Beekman), those that follow relate only to the Subpoena served on the Beekman.

Requests 1, 3, 4, 8, 9, 10, 11, 15 seek information about Social Events (held at the

Charles Palella, Esq.
April 14, 2008
Page 6



Restaurant or the Separate Catering Facility) conducted on or in the Beekman's Premises. Each of these Requests is directly relevant to the Church's claims that the City prohibits it from hosting Social Events when numerous secular institutions in the same residential district also hold events and catering activities on their premises. In order to rebut the City's claims, the Court has permitted the Church to conduct discovery of non-parties, such as the Beekman, in order to develop additional evidence regarding the number of catered events, the hours of operation, who books them, how many guests attend, complaints resulting from catering activities, and similar information. Also relevant is whether the Beekman earns income from Social Events, whether it operates with the explicit or tacit approval from the City, whether it has received any "quality of life" complaints for the operation for the Restaurant or the Separate Catering Facility, and whether it has communicated with the City concerning Social Events at its Premises. This information is especially relevant given that the Preservation Coalition, of which the Beekman apparently is a member, complains that the Church's catering activities would harm the quality of life of the neighborhood. That one of its own members also hosts social events and rents out a large catering facility on its premises is certainly relevant to exploring this issue.

Requests 2 and 12 seek documents concerning the lease between the Beekman Tenants Corporation and White & Witkowsky, Inc. and/or Fourth Wall Restaurants LLC, including without limitation, the lease dated November 1, 1999. This Request calls for relevant information because the City and the Preservation Coalition have claimed that the terms of the lease between the Church and the Rose Group have somehow converted the Church into a commercial catering hall. The Church seeks discovery of the Beekman's lease agreements that govern the operation of the Restaurant and the Separate Catering Facility because the terms of these agreements may show that several of the terms in the Church's lease agreement, to which the City objects, are reasonable and common in the industry.

Requests 5 and 6 seek documents relating to the Beekman's Certificate of Occupancy for the Premises (the "CO"), and any communication with the City regarding the use of the Premises, including communications regarding the CO, and/or whether any past, current, or planned use of the Premises is or was an "accessory use" under the City's Zoning Resolution or other applicable land use regulations. This case involves whether the City and its Department of Buildings treats the Church differently from secular institutions in the enforcement of its land use laws. Based on publicly available information, it appears that the Beekman rents space to a major restaurant corporation which operates a restaurant currently named Park Avenue Spring, that is open to the general public, and (together with a separate banquet facility on the same premises) is available for rental to the general public for catered events. The Beekman's CO, however, provides for the use of a hotel restaurant *for tenants' use only*, a violation that the City is aware of, but apparently has decided to ignore.

The Beekman, a member of the "Preservation Coalition," has actively lobbied the City to enforce the zoning regulations against the Church, even though it apparently operates in violation of its own CO. The Church is entitled to obtain discovery to explore the City's apparently selective enforcement of its zoning laws.

Charles Palella, Esq.
April 14, 2008
Page 7



      Requests 14, 15, and 16 call for documents concerning communications with the City and Elected Officials concerning this Action, the Church, 583 Park Avenue, the Rose Group or Louis Rose. Remarkably, the Beckman makes a blanket objection to producing this information on the purported ground that such information is not relevant to this Action, and that it is protected by an undefined privileged. As noted above, lobbying efforts by the Neighbors, including by the Beekman, is directly relevant to the Church's claims that the City has unfairly discriminated against it. As also noted above, the Beekman does not enjoy any work-product protection because it is not a party to this action. Finally, only communications between the Beekman and its attorneys would be protected attorney-client communications. All other documents responsive to these Requests must be produced.

      I look forward to speaking with you shortly.

Very truly yours,

John R. Cuti

cc:    Victor A. Kovner, Esq.
       Monica Pa, Esq.
       Ave Maria Brennan, Esq. (by email)