Exhibit Q

LAW OFFICES
# KURZMAN KARELSEN & FRANK, LLP
230 PARK AVENUE
NEW YORK, NY 10169
(212) 867-9500

ERNEST L. BIAL
LEE D. UNTERMAN
PHYLLIS H. WEISBERG
M. DAVIS JOHNSON
ISAAC A. SAUFER
KEVIN J. LAKE
CHARLES PALELLA
JOSEPH P. TUCKER
JOANNE SEMINARA

SAMUEL B. SEIDEL (1903-2003)

NEW JERSEY DIAL
(973) 273-0455
FAX (973) 273-0458

FACSIMILE
(212) 599-1759
www.kurzman.com

MARISSA A. WINTER
PAUL J. McGEOUGH
SANDRA DEFEO
ANTHONY T. AGOLIA

COUNSEL
STANLEY E. MARGOLIES
RICHARD E. MILLER
JOSEPH F. SEMINARA
HON. LOUIS C. PALELLA
(JUSTICE, NYS SUPREME COURT, RET.)
DAVID YAVARKOVSKY
EUGENE HABER
ARTHUR R. BLOCK

April 16, 2008

**VIA FIRST CLASS AND ELECTRONIC MAIL**

John R. Cuti, Esq.
Davis Wright Tremaine LLP
1633 Broadway – 27th Floor
New York, New York 10019-6708

    *Third Church of Christ, Scientist v. City of New York, et al.*
    07 CV 10962 (DAB)

Dear Mr. Cuti:

  This is in response to your letter, dated April 14, 2008, concerning the subpoenas served upon our clients, 570 Park Avenue Apartments, Inc., 580 Park Avenue, Inc., Susan Relyea, as Member of the Co-op Board of 580 Park Avenue, Inc. and Beekman Tenants Corporation (the "Beekman").

  Preliminarily, please correct the address of our firm on your future correspondence; our address is 230 Park Avenue, not 787 Seventh Avenue.

  We appreciate your willingness to resolve this matter amicably. We, too, are eager to do so. We still, however, have serious concerns. For example, your April 14, 2008 letter appears, among other things, to characterize the demands more narrowly than set forth in the subpoenas and essentially ignores the subpoenas' definitions and broad preamble. Moreover, while we welcome your agreement to narrow the temporal scope of three of the subpoenas by six years, we believe that your willingness to do so is evidence that the subpoenas as originally drafted were overly broad.

  The following discussion is divided in six parts to address Points A through F in your letter.

193898.1

KURZMAN KARELSEN & FRANK, LLP

John R. Cuti, Esq.
April 16, 2008
Page 2 of 6

### A. The Order Does Not Authorize Issuance Of The Subpoenas To Our Clients

It appears that Plaintiff now takes the position that, during the 90-day period granted in the Order, Plaintiff has the right to pursue full, rather than limited, discovery. This stance, however, contradicts Plaintiff's written representation to Judge Batts on February 22, 2008 that only "limited discovery" is needed. Even assuming, but not conceding, that the Order's scope includes discovery of our clients, the broad nature of the requests goes well beyond the "limited discovery" contemplated by the Order.

### B. The Objections Based On Undue Burden Have Merit

Plaintiff misconstrues our "undue burden" objections. The objections do not set forth a blanket refusal on this ground. Rather, the gravamen of our objections is that we should not be required to review the voluminous documents, let alone produce them, without adequate and fair compensation, and, of course, subject to our other objections.[1] The express language of FRCP Rule 45(c)(2)(B) provides that "...an order to compel production shall protect any person who is not a party...from significant expense resulting from the inspection and copying commanded." Under this section, a demanding party can be ordered to reimburse a nonparty for a portion of the reasonable costs of compliance, including the costs of producing, inspecting, and photocopying the requested documents. *See In re First American Corp.*, 184 F.R.D. 234, 240 (S.D.N.Y. 1998) citing *In re Exxon Valdez*, 142 F.R.D. 380, 383-85 (D.D.C. 1992). A nonparty's legal fees, especially where the work benefits the requesting party, have been considered a cost of compliance reimbursable under FRCP Rule 45(c)(2)(B). *See First American Corp. supra.*

Although our clients have an interest in the outcome of this litigation, that does not preclude them from recovering costs from Plaintiff. *See In re First American Corp.* at 242 (non-party required to absorb only a portion of the costs for which it seeks reimbursement).

Plaintiff's comment that it cannot reimburse our clients because it faces "grave financial challenges" seems disingenuous and without basis, in light of Plaintiff's failure to demonstrate its ability to bear costs of the "limited discovery" demanded by it, while, at the same time, retaining three large law firms in connection with various stages of this matter—Greenberg Traurig, LLP, Satterlee Stephens Burke & Burke, LLP and your firm— and collecting rent and presumably profits from its caterer-tenant, which

---

[1] Beekman Tenants Corporation actually has 42 Redwelds in its actual and/or constructive possession, not 22 Redwelds as suggested on page 3 of your letter.

193898.1

KURZMAN KARELSEN & FRANK, LLP

John R. Cuti, Esq.
April 16, 2008
Page 3 of 6

conducts frequent events. Further, our clients reject Plaintiff's suggestion that our clients are among the wealthiest cooperative building associations in New York City as without basis.

Please be advised that if Plaintiff is not willing to compensate our clients at all and makes a motion to compel, we will request the Court to award our clients costs and fees pursuant to FRCP Rule 45. See *McCabe v. Ernst & Young, LLP*, 221 F.R.D. 423 (D.N.J. 2004).

In addition, Plaintiff's requests are unduly burdensome to the extent that some of the documents demanded by Plaintiff from our clients are publicly available (e.g. certificates of occupancy, letters to governmental agencies). These public documents are available from Defendant City of New York and/or other governmental agencies and should be sought from those sources. As stated in the case cited by Plaintiff on page 3 of your letter, *Travelers Indemnity Co. v. Metropolitan Life Ins. Co.*, 228 F.R.D. 111, 114 (D. Conn. 2005), where "the information appears to be publicly available from a source that is more convenient, less burdensome or less expensive," it is an undue burden on the non-party to have to produce it. In fact, we are aware that Plaintiff has already obtained, through FOIL requests[2] and through the Defendants' submissions in this case, documents demanded from our clients.

    **C.**    **Assuming, Without Conceding, Plaintiff Has A Need For Information Sought In The Subpoenas, The Need Is Outweighed By The Burden Upon Our Clients And Availability Elsewhere**

Plaintiff relies on the definition of "relevance" under FRCP Rule 26(b)(1) that applies to discovery generally. However, Plaintiff fails to dispute the showing in our April 10, 2008 letters that relevance is a factor in a balancing test that applies to non-party subpoenas. An evaluation of undue burden requires the court to weigh the burden to the subpoenaed party against the value of the information to the serving party and requires the court to consider *such factors as relevance*, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed. See *Moon v. SCP Pool Corporation*, 232 F.R.D. 633 (C.D. Cal. 2005) citing *Travelers* at 113 and *United States v. IBM*, 83 F.R.D. 97, 104 (S.D.N.Y. 1979). In this case, the value of the information to the Plaintiff is outweighed by the burden upon our clients and the availability elsewhere. As noted above, we are aware that Plaintiff has already

---

[2] Through FOIL requests, we have obtained copies of letters from Plaintiff responding to letters we have written to governmental officials.

193898.1

KURZMAN KARELSEN & FRANK, LLP

John R. Cuti, Esq.
April 16, 2008
Page 4 of 6

obtained, through FOIL requests and through the Defendants' submissions in this case, documents demanded from our clients.

### D. The Confidentiality Objections Have Merit

Plaintiff misconstrues our objections based on confidentiality. The confidential documents are not included on the Categorical Privileged Documents Log. With regard to such documents, subject to our objections, protective measures should be put in place before responsive confidential documents are provided. For example, subject to resolution of our other objections as they affect the minutes, we would be willing to produce minutes, which are non-privileged and relevant to this litigation, provided they are redacted. This is a solution which you seem to indicate you are willing to accept.

### E. Given The Improper And Overly Broad Scope Of The Subpoenas, The Privilege Log Is Not Defective

Plaintiff ignores our reservation of right to provide a more detailed privilege log upon an agreement with respect to compensation and scope (relevance, burdensomeness, etc.). The fact that Plaintiff withdrew six years' worth of documents demonstrates that our initial reluctance to go through thousands of documents to determine whether any of same were privileged was warranted (though most of the documents in our possession are dated 2006 and later).

As to your request to specify whether we represent every cooperative apartment corporation that is "purportedly" a member of the Preservation Coalition, for purposes of attorney client privilege, please be advised that we have been retained by each of the cooperative apartment corporations listed in the Declaration of Phyllis Weisberg, ¶1.

As to the work product privilege assertions that you contest, while the general rule is that the protection of FRCP 26(b)(3) ("Trial Preparation: Materials") does not extend to "documents prepared by and in the hands of a third person," the courts make an exception for a non-party who is "interested in the action," and courts have construed broadly the definition of who is "interested." *See Polycast Tech. v. Uniroyal*, No. 87 Civ. 3297, *2, 1990 WL 138968 (S.D.N.Y. Sept. 20, 1990). In *Polycast*, whether a non-party was "legally aligned" with a party and "consistently maintained" that it had an interest in the outcome of the litigation were factors in determining whether it was "interested." *See Id.* In this case, our clients are "interested" because they are "legally aligned" with Defendants since they share the same interest in upholding the City's determination, as demonstrated by the fact that they would have had standing to sue if the City had rendered a decision favorable to the Plaintiff. Additionally, our clients have

193898.1

KURZMAN KARELSEN & FRANK, LLP

John R. Cuti, Esq.
April 16, 2008
Page 5 of 6

"consistently maintained" that they have an interest in the outcome of this litigation; Plaintiff even concedes on page two of your letter that our clients "played such an active role in this controversy." Accordingly, contrary to Plaintiff's assertions, the documents prepared by us in the course of representation of our clients, "interested parties," are protected by the work product doctrine.

To be clear, however, our clients are not asserting work product with respect to any <u>actual</u> communication (but not drafts or related documents) with the State Liquor Authority, elected officials, the Landmarks Preservation Commission or, although not listed in your letter, the Department of Buildings.

### F.    The Beekman's Objections Have Merit

We dispute that the term "social events" is relevant to the Plaintiff's claim, insofar as it can be construed to mean any event in the private residences within the building, such as small dinner parties and small social gatherings—events that are not commercial and no way comparable to the commercial catering events held at 583 Park. Indeed, your failure to clarify the definition of "social events" is indicative of your failure to address the vagueness issues raised in our April 10, 2008 letters.

Similarly, your letter, read without reference to the subpoena, suggests that you merely seek the lease agreements, to which we have not specifically objected. To the contrary, the subpoena seeks "any and all documents concerning or in any way related to" the lease, which could include, for example, numerous drafts, internal memos, etc. These are unnecessary given the purpose stated on page six of your letter, and as to those, we must continue to object.

We further note that the documents sought by the subpoena are presumably within the control and possession of the Beekman's tenant, not Beekman. We understand that Plaintiff issued a separate subpoena to the Beekman's tenant, and, therefore, the documents should be obtained from it. Further, such documents as the certificate of occupancy and communications with the City regarding same are public documents, and as such, accessible to you. They are also available through the Defendants. *See Travelers, supra.*

\*    \*    \*

Finally, we take issue with Plaintiff's characterization that our clients somehow improperly or unduly pressured governmental and elected officials into making an "improper" zoning decision. Rather, our clients were exercising their First Amendment right to petition the government for redress. Our clients' actions in petitioning the government were all the more necessary due to Plaintiff's and its

193898.1

KURZMAN KARELSEN & FRANK, LLP

John R. Cuti, Esq.
April 16, 2008
Page 6 of 6

tenant's numerous misstatements, omissions and inconsistencies in dealing with various governmental agencies. Indeed, given the extraordinary breadth of the subpoenas, it seems Plaintiff is issuing the subpoenas in an effort to silence citizens who have exposed the improper catering use for what it is and petitioned for redress in connection therewith.

If you believe there is a basis for discussion of these discovery issues, we would welcome your telephone call.

Very truly yours,

KURZMAN KARELSEN & FRANK, LLP

Charles Palella

CP:sd

cc:  Ave Maria Brennan, Esq. (via electronic mail)
     Assistant Corporation Counsel

193898.1

LAWYERS



# Davis Wright Tremaine LLP

ANCHORAGE   BELLEVUE   LOS ANGELES   NEW YORK   PORTLAND   SAN FRANCISCO   SEATTLE   SHANGHAI   WASHINGTON, D.C.

JOHN CUTI
DIRECT (212) 603-6486
johncuti@dwt.com

1633 BROADWAY
NEW YORK, NY 10019-6708

TEL (212) 489-8230
FAX (212) 489-8340
www.dwt.com

April 17, 2008

*By E-Mail and Regular Mail*

Charles Palella, Esq.
Kurzman Karelsen & Frank LLP
230 Park Avenue
New York, NY 10021

Re:  Subpoena served on 570 Park Avenue Apartments, Inc., 580 Park Avenue, Inc., Susan Relyea, as a Member of the Co-Op Board of 580 Park Avenue, Inc., and The Beekman Tenants Corporation
*Third Church of Christ, Scientist v. City of New York;* 07 Civ. 10962 (DAB)

Dear Charles:

I write to respond to your letter of last evening.

The City *conceded* in open Court, with your firm in attendance, that the Church did not mislead the Department of Buildings in connection with its June 2006 approval of accessory catered events at the Church. Your clients' continued assertions – repeated again in your letter – that the Church has made "numerous misstatements, omissions and inconstencies in dealing with various governmental agencies" are false and defamatory. Even if it regulated the conduct of a private actor like the Church (which it does not), the First Amendment does not protect false statements made to advance an illegitimate agenda. Your clients have every right to petition government, but they do not have a right to do so in secret and they should tell the truth.

The Court granted the parties the right to take discovery. As reflected by my letter to you on Tuesday, we are working hard to narrow our requests so that we can obtain relevant information that you concede your clients possess. Your continued suggestion that we are flouting the Court's Order is a baseless diversion. If you think this firm is violating an order of the court, you should seek relief.

The Church is not responsible for your legal fees. The Neighbors rely heavily on their purported quasi-party status in arguing that they should enjoy the protections of the work-

Charles Palella, Esq.
April 17, 2008
Page 2



product doctrine, but then characterize themselves as passive, innocent non-parties when they say the Church should pay their expenses. Such litigation posturing is unproductive. Your clients played a major role in the underlying events that caused this litigation, and have long been financing your firm's efforts on their behalf. There is no equitable basis to shift the expenses to the Church. Indeed, as the case you cite makes clear, "where a non-party was 'substantially involved in the underlying transaction . . .' expenses should not be awarded." *First American Corp. v. Price Waterhouse, LLP*, 184 F.R.D. 234, 241 (S.D.N.Y. 1998) (internal citation omitted).

On the issue of work product, you misread the case law. You claim that an "interested" non-party may assert a work product privilege, but that contention runs counter to the express language of Rule 26(b)(3), and federal case law (*Ramsey v. NYP Holdings, Inc.*, No. 00 Civ. 3478, 2002 WL 1402055, *6 (S.D.N.Y. June 27, 2002) (citing cases). The Neighbors' "interest" in having the City prohibit the Church from engaging in an ordinary practice that the City permits many other comparable non-profit organizations to engage in is not the sort of direct stake in the litigation that might permit a non-party to invoke the work product doctrine. Indeed, the one case you cite on the subject – *Polycast Technology Corp. v. Uniroyal, Inc.*, No. 87-Civ. 3297 (CSH), 1990 WL 138968, * 3 (S.D.N.Y. Sept. 20, 1990) – makes this very point. There, the court *rejected* the assertion of work product privilege where an accounting firm sought to protect notes made in preparation of its accountant's meeting with in-house counsel, finding that the firm could not assert this privilege because it was neither a party nor legally aligned with a party. The portion from *Polycast* that you quote is *dicta* based on an inapplicable Third Circuit case, *United Coal Co. v. Powell Const. Co.*, 839 F.2d 958, 966 (3d Cir. 1988), that permitted an insurer – which had a direct financial interest in the underlying litigation – to invoke the work product doctrine. *Id.* (citing other insurance cases). In short, the Neighbors have no work product privilege.

You acknowledge that we voluntarily shortened the time period for which we seek documents from Ms. Relyea, 570 Park and 580 Park, but in the same breath complain that, in its original form, the Subpoena imposed an undue burden on your client to search through thousands of pages of documents. *See* Letter at 1, 2. But you then concede that your clients do not really have any documents prior to 2006. *Id.* at 4. The claim that reviewing documents that do not exist is a burden is puzzling. In any event, we have narrowed the Subpoena and compliance with these narrowed requests is not burdensome.

We do not disagree with everything in your letter. For example, to the extent that the City produces documents that merely duplicate what your clients possess, then there would be no need to produce such documents. But the City has not yet made its document production, and we are operating under a tight discovery time-line. Therefore, we propose that you collect responsive documents and make a rolling production, leaving documents you believe the defendants possess to the end. We will share with you what defendants have produced, and you can produce or withhold accordingly.

We point out, however, that many of the government actors with which the Neighbors

NYC 196014v2 0085520-000001

Charles Palella, Esq.
April 17, 2008
Page 3



have communicated regarding this case are *not* parties. Therefore, there is no basis to withhold communications with, or concerning, the SLA or any other agency, department or official of the New York State government, the "Elected Officials" or any other officials who are not parties to this case and with respect to whom the City would not be required to produce documents.

With respect to the Beekman, you raise a good point regarding the definition of "Social Events." We hereby narrow that definition to cover only events held in the restaurant space and the separate banquet space located on the ground floor (and we believe in the basement) of the Beekman. With respect to the lease, we do seek communications regarding the lease, and not merely the lease itself. Therefore, to the extent that there are memoranda, minutes, notes, correspondence or other documents that reflect discussions about the lease, including whether it might violate the Certificate of Occupancy for the Beekman, and/or whether the restaurant and banquet activity might cause tenant and neighbor complaints, we expect such documents to be produced. This is not information that Fourth Wall Restaurants LLC would possess.

Given that we have narrowed the Subpoena, do I read your letter correctly that you will produce documents as well as a more specific and appropriate privilege log? Please let me know today if that is the case. I will be in the office until 3:30 this afternoon; thereafter, if you email me, I can call you later this afternoon or this evening.

Very truly yours,

John R. Cuti

cc: Victor A. Kovner, Esq.
Monica Pa, Esq.
Ave Maria Brennan, Esq. (by email)