UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

THIRD CHURCH of CHRIST, SCIENTIST, of :        07 Civ. 10962 (DAB)
NEW YORK CITY,                          :
                                        :
                    Plaintiff,          :
                                        :
        -against-                       :
THE CITY OF NEW YORK and PATRICIA J. :
LANCASTER, in her official capacity as  :
Commissioner of the New York City Department :
of Buildings,                           :
                                        :
                    Defendants.         :
-----------------------------------------------------------------X


MEMORANDUM OF LAW OF NON-PARTY
IN OPPOSITION TO PLAINTIFF'S MOTION
TO COMPEL COMPLIANCE WITH SUBPOENA


CULLEN AND DYKMAN LLP
44 Wall Street
New York, New York 10005
(212) 510-2256

Attorneys for Non-Party
Roman Catholic Church of St. Ignatius Loyola

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES.................................................................i

PRELIMINARY STATEMENT........................................................1

FACTUAL BACKGROUND ............................................................2

ARGUMENT...................................................................................5

    Standard of Review on a Motion to Compel......................................5

POINT I

    THE SUBPOENAED PRIVATE AND COMPETITIVELY
    SENSITIVE RENTAL CONTRACTS, BETWEEN ST. IGNATIUS
    AND OTHER NON-PARTIES, CONCERNING THE RENTAL OF
    ITS SOCIAL HALL, HAVE NO PROBATIVE VALUE, AND ARE
    IMMATERIAL AND IRRELEVANT TO THE ISSUES IN THE
    UNDERLYING ACTION. ...........................................................8

POINT II

    ST. IGNATIUS' PRIVACY INTEREST OUTWEIGHS PLAINTIFF'S
    PURPORTED NEED FOR ST. IGNATIUS' PRIVATE, NON-PARTY,
    PROPRIETARY AND COMPETITIVELY SENSITIVE CONTRACTS,
    ESPECIALLY GIVEN THE WEALTH OF AVAILABLE PUBLIC
    INFORMATION AND EXPERT TESTIMONY CONCERNING
    "ACCESSORY USE" CATERING................................................12

CONCLUSION...............................................................................16

## TABLE OF AUTHORITIES

Am. Sav. Bank, FSB v. UBS PaineWebber, Inc. (In re Fitch, Inc.), 330 F.3d 104, 108 (2d Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Arias-Zeballos v. Tan, No. 06 Civ, 1268 (GEL) (KNF), 2007 U.S. Dist. LEXIS 5068, 2007 WL 2101.12, at 1 (S.D.N.Y. Jan. 25, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Belasco Theatre Corp. v. Jelin Productions, Inc., 270 A.D. 202, 59 N.Y.S.2d 42 (1st Dept. 1945) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Bell Atl. Corp. v. At&T Corp. (In re Bell Communs. Research), 1997 U.S. Dist. LEXIS 191, No. MA-85, 1997 WL 10919 at 2 (S.D.N.Y. Jan. 13, 1997)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Borzillieri v. American National Red Cross, 139 F.R.D. 289, 288 (W.D.N.Y. 1991)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Catskill Dev., L.L.C. v. Park Place Entertainment Corp., 206 F.R.D. 78, 93 (S.D.N.Y. 2002)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Cofield v. City of LaGrange, 913 F. Supp. 608, 614 (D.D.C. 1996)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Concord Boat Corp. v. Brunswick Corp., 169 F.R.D. 44, 49 (S.D.N.Y. 1996)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 12

Cusumano v. Microsoft Corp., 162 F.3d 708, 717 (1st Cir. 1998)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Eisemann v. Greene, 1998 U.S. Dist. LEXIS 4591, 4, 1998 WL 164821, 2 (S.D.N.Y. 1998)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Evans v. Famous Music Corp., 1 N.Y.3d 452, 463, 807 N.E.2d 869, 876 (2004)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Fears v. Wilhelmina Model Agency, Inc., 2004 U.S. Dist. LEXIS 5575, 02 Civ. 4911, 2004 WL 719185 at 1 (S.D.N.Y. Apr. 1, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Heidelberg Ams., Inc. v. Tokyo Kikai Seisakusho, Ltd., 333 F. 3d 38, 41-42 (1st Cir. 2003); see also Fed. R. Civ. P. 45(c)(2)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

In re Dow Jones & Co., 1998 U.S. Dist. LEXIS 19635, No. 98 Misc. 8-85, 1998 WL 883299 at 6 (S.D.N.Y. Dec. 17, 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

In re Flagtelecomholdings, Ltd. Secs. Litig., No. 02 Civ. 3400(WCC), 2006 U.S. Dist. LEXIS 69140, 2006 WL 2642192, at 2 (S.D.N.Y. Sept. 13, 2006)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . <u>7</u>

Long v. American Red Cross, 145 F.R.D. 658, 664 (S.D. Ohio 1993)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . <u>7</u>

Night Hawk Ltd. v. Briarpatch Ltd., No. 03 Civ. 1382, 2003 U.S. Dist. LEXIS 23179, 2003 WL 23018833, at 8 (S.D.N.Y. Dec. 23, 2003)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . <u>6</u>

Reuters Limited v. Dow Jones Telerate, Inc., 231 A.D.2d 337, at 343, 662 N.Y.S.2d 450, at 454, (1ˢᵗ Dep't 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . <u>9</u>

Sierra Rutile Limited v. Katz, 1994 U.S. Dist. LEXIS 6188, 1994 WL 185751, 3 (S.D.N.Y. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . <u>5</u>, <u>8</u>

Solow v. Conseco Inc., No. 06 Civ 5988 (BSJ) (THK) 2008 U.S. Dist. LEXIS 4277, 14 (S.D.N.Y. Jan. 18, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . <u>10</u>

United States v. Int'l Bus. Mach. Corp., 83 F.R.D. 97, 104 (S.D.N.Y. 1979)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . <u>12</u>

ii

### STATUTES and RULES

**CASES**                                                    **PAGE**

**Fed. R. Civ. P. 26(b)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5, 6, 12**

**Fed. R. Civ. P. 26(b)(1)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5**

**Fed. R. Civ. P. 45(3).(B) (iii)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6**

**Fed. R. Civ. P. 45(c)(3)(B)(I)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6**

**Fed. R. Civ. P. 45(c)(2)(B)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5**

**Fed. R. Civ. P. 45(c)(3)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **12**

**Fed. R. Civ. P.  45(c)(2)(B)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5**

**New York City Zoning Resolution Section 12-10**. . . . . . . . . . . . . . . . . . . . . . . . . . . **8**

iii

## PRELIMINARY STATEMENT

Non-party Roman Catholic Church of St. Ignatius Loyola ("St. Ignatius") respectfully submits this memorandum of law, the Declaration of Sona Olson, dated April 22, 2008, with exhibits annexed thereto (the "Olson Declaration"), including the Response to Subpoena, dated April 22, 2008, with exhibits annexed thereto ("Response to Subpoena"), and the Declaration of Deborah A. Bryant, dated April 25, 2008 ("Bryant Declaration"), in opposition to plaintiff Third Church of Christ, Scientist, of New York City's (hereinafter "plaintiff") motion for an order compelling St. Ignatius, and non-party Riverside Church, to comply with subpoenas[1] served on March 6, 2008 demanding documents and testimony.

On March 19, 2008, St. Ignatius responded to the subpoena by letter setting forth valid objections including that the subpoenaed documents are private and proprietary in nature, and not relevant to the issues in the underlying action.[2] Notwithstanding its valid objections, St. Ignatius has produced all responsive documents, annexing same to its Response to Subpoena,[3] except that it maintains the objection to the disclosure of the private, and competitively sensitive, rental contracts between St. Ignatius and other non-parties (congregants, and non-congregants), and the subpoena's demand for deposition on the grounds that:

(i) St. Ignatius' non-party, private, and competitively sensitive contracts and deposition testimony have no relevance, as a matter of law,  to the issues in the underlying litigation;

---

[1] A copy of the subpoena concerning St. Ignatius is annexed as Exhibit "B" to Plaintiff's Declaration of Monica Pa, dated April 10, 2008, in support of its motion to compel (the "Pa Declaration").

[2] Exhibit "E" to the "Pa Declaration."

[3] St. Ignatius' Response to Subpoena, dated April 22, 2008 ("Response to Subpoena") is submitted herewith in opposition to the instant motion.

1

(ii) plaintiff has no need for the subpoenaed information, especially given the wealth of available public information and expert testimony concerning "accessory use" catering; and

(iii) St. Ignatius' privacy interest in maintaining its competitively sensitive and confidential contracts private, outweighs plaintiff's purported need for the evidence.

## FACTUAL BACKGROUND

Plaintiff's underlying complaint arises from defendants' revocation of an "accessory use" catering permit. The parties' dispute raises the issue of whether the revocation was proper, and the interpretation of "accessory use" catering, a term defined by defendant City of New York's ("the City") Zoning Resolution.

In or about March 6, 2008, plaintiff served the subpoena on St. Ignatius demanding eight (8) years worth of documents and a deposition.[4]   St. Ignatius' counsel spoke with plaintiff's counsel and explained that the documents sought were irrelevant and immaterial to the issues raised by plaintiff's complaint. (Bryant Declaration, ¶ 2)   Plaintiff's counsel offered to limit the scope of the subpoena to three (3) years (i.e. January 2005 to January 2008) and extended St. Ignatius' time to respond to the subpoena[5].   By letter, dated March 19, 2008, St. Ignatius sent written objections to the subpoena asserting that the information sought is proprietary, private, and irrelevant to the issues in the underlying action.[6]

Soon thereafter, St. Ignatius' counsel informed plaintiff's counsel that most of the subpoenaed documents do not exist (particularly, that St. Ignatius has no contracts with any caterers), and identified the responsive documents that do exist including St. Ignatius' private and

---

[4]Id footnote "1"

[5]¶ 5, Exs. D and E to the Pa Declaration.

[6] Id footnote 2

confidential rental agreements with its congregants, and to a lesser extent, non-congregants,

concerning the use of its social hall, "Wallace Hall."  Plaintiff's counsel was also informed of St.

Ignatius' position that the contracts are confidential, proprietary in nature, and irrelevant to the

issues in the underlying action.  St. Ignatius and plaintiff contemplated limiting the subpoena to

one (1) year's worth of the contracts, but neither party would agree.   (Bryant Declaration, ¶ 4)

Thereafter, plaintiff filed the instant motion to compel.

     St. Ignatius' rental contracts are not specifically called for in the subpoena, but are

responsive to the broad breath of "Paragraph 1" of the subpoena requesting "[A]ll documents

concerning or in any way related to: 1.  Any Social Event conducted on or in the premises... ."

The rental contracts, between St. Ignatius and other non-parties, both congregants and non-

congregants, concern the rental of St. Ignatius' social hall, "Wallace Hall," located in its

basement. (Olson Declaration, ¶ 5).   St. Ignatius, and its  members and/or nonmembers, who

have held their weddings, confirmations, anniversaries, and other celebrations at St. Ignatius,

have an expectation of privacy and wish to keep the details of their private affairs private, and

confidential.  St. Ignatius does not publish nor otherwise communicate the fees that it charges for

renting Wallace Hall, and wishes to maintain such information confidential.  Other churches,

such as plaintiff, should not be permitted to discover the terms and conditions of St. Ignatius'

privately negotiated agreements which may be used competitively against St. Ignatius in the

arena of church venued social events.  (Olson Declaration, ¶ 5)

     Plaintiff, itself, asserts that it has already made a showing that it engages in a catering

practice that is a "common and innocuous practice throughout New York City" **and that this**

3

showing was accomplished with publicly available documents.[7]   Plaintiff's prior submissions in support of its motion for a temporary restraining order and preliminary injunction included declarations of a land use expert, Jay A. Segal ("Mr. Segal"), who did not state that he lacked any "crucial" or "essential" information.[8]

A casual remark in Mr. Segal's Declaration states that he "cannot determine the percentages of weddings (and other events) that are held at houses of worship for people who are not congregants . .. ."[9]   Mr. Segal also stated in his Reply Declaration that St. Ignatius "appears to have a contractual relationship with an outside caterer, although absent discovery, further information about who this caterer is, and its contractual arrangement with this caterer is unavailable."[10]

It appears that the City sought to supply the missing information mentioned in passing by Mr. Segal, irregardless of its relevance or necessity, by contacting St. Ignatius' Director of Facilities, Sona Olson ("Ms. Olson") and obtaining her Declaration, dated February 5, 2008.  It states, *inter alia*, that St. Ignatius held 168 events between September 2006 and September 2007 of which only nine (9) were unrelated to the parish or its affiliated schools, and St. Ignatius does not use one caterer.[11]   In January 2008, when Ms. Olson was contacted by the City's attorney

---

[7]Plaintiff's Memorandum of Law in Support of Plaintiff's Motion to Compel ("Pltf's Memo of Law"), pg. 6.

[8]Mr. Segal's Declaration, dated December 3, 2007 ("Segal Declaration"), and his Reply Declaration, dated February 22, 2008 ("Segal Reply Declaration"), both previously submitted to the Court by plaintiff.

[9] ¶ 11 of Segal Declaration.

[10] ¶ 28 of Segal's Reply Declaration.

[11] ¶ 2, 5 of Ms. Olson's February 5, 2008 Declaration previously submitted to the Court by defendants.

and answered questions about Wallace Hall, and thereafter signed the February 5, 2008

Declaration, she was not represented by counsel, did not disclose any of St. Ignatius' confidential

records, and did not intend to waive its rights to protect its confidential information.  (Olson

Declaration, ¶ 2)

## ARGUMENT

### Standard of Review on a Motion to Compel

Federal Rule of Civil Procedure ("Fed. R. Civ." or "Rule") 45(c)(2)(B) provides, in part:

> If objection has been made, the party serving the subpoena may,
> upon notice to the person commanded to produce, move at any
> time for an order to compel the production.  Such an order to
> compel production shall protect any person who is not a party
> or an officer of a party from significant expense resulting from
> the inspection and copying commanded.

Motions to compel production of documents pursuant to subpoena are "entrusted to the

sound discretion of the court."  Am. Sav. Bank, FSB v. UBS PaineWebber, Inc. (In re Fitch,

Inc.), 330 F.3d 104, 108 (2d Cir. 2003).  The general relevancy standard applicable to discovery

under Fed. R. Civ. P. 26(b)(1) apply to subpoenas issued under Rule 45.    Eisemann v. Greene,

1998 U.S. Dist. LEXIS 4591, 4, 1998 WL 164821, 2 (S.D.N.Y. 1998)(granting motion to quash

on ground that requested information was of "doubtful and tangential relevance"); Cofield v. City

of LaGrange, 913 F. Supp. 608, 614 (D.D.C. 1996)(court has authority to enforce broad

relevancy standard against subpoena under Fed. R. Civ. P. 26(b)); Sierra Rutile Limited v. Katz,

1994 U.S. Dist. LEXIS 6188, 1994 WL 185751, 3 (S.D.N.Y. 1994)(citing 9 C. Wright & A.

Miller, Federal Practice and Procedure: Civil Section 2457 (1971)).

The serving party bears the burden of showing the appropriateness of a subpoena served

on a non-party.  Bell Atl. Corp. v. At&T Corp. (In re Bell Communs. Research), 1997 U.S. Dist.

LEXIS 191, No. MA-85, 1997 WL 10919 at 2 (S.D.N.Y. Jan. 13, 1997), modified on other

grounds, 1997 U.S. Dist. LEXIS 329, 1997 WL 16747 (S.D.N.Y. Jan. 17, 1997).   Furthermore,

the "party issuing [a] subpoena must demonstrate that the information sought is relevant and

material to the allegations and claims at issue in the proceedings." Night Hawk Ltd. v. Briarpatch

Ltd., No. 03 Civ. 1382, 2003 U.S. Dist. LEXIS 23179, 2003 WL 23018833, at 8 (S.D.N.Y. Dec.

23, 2003).

     "In addition, where, as here, the discovery is sought from a non party, the Court should

be particularly sensitive to weighting the probative value of the information sought against the

burden of production on the non party." Fears v. Wilhelmina Model Agency, Inc., 2004 U.S.

Dist. LEXIS 5575, 02 Civ. 4911, 2004 WL 719185 at 1 (S.D.N.Y. Apr. 1, 2004); see, e.g., In re

Dow Jones & Co., 1998 U.S. Dist. LEXIS 19635, No. 98 Misc. 8-85, 1998 WL 883299 at 6

(S.D.N.Y. Dec. 17, 1998); Concord Boat Corp. v. Brunswick Corp., 169 F.R.D. 44, 49 (S.D.N.Y.

1996)("the status of a witness as a nonparty to the underlying litigation 'entitled [the witness] to

consideration regarding expense and inconvenience.")

     Fed. R. Civ. P. 45(c)(3)(B)(I) allows the court to quash, modify or condition a subpoena

to protect a person affected by the subpoena from unnecessary or unduly harmful disclosures of

confidential information.  Sierra Rutile Limited, supra, at 2.  If a subpoena requires the disclosure

of a trade secret or confidential commercial information "the court may order . . . production only

upon specified conditions." Fed. R. Civ. P. 45(3).(B) (iii).

     Rule 26 also provides that a district court may limit discovery if:

> (i) the discovery sought is unreasonably cumulative or duplicative,
> or is obtainable from some other source that is more convenient,
> less burdensome, or less expensive; (ii) the party seeking discovery
> has had ample opportunity by discovery in the action to obtain the
> information sought; or (iii) the burden or expense of the proposed
> discovery outweighs its likely benefit, taking into account the needs
> of the case, the amount in controversy, the parties' resources, the
> importance of the issues at stake in the litigation, and the importance

of the proposed discovery in resolving the issues.

Confidential information that does not establish a constitutionally protected privacy interest may nevertheless be entitled to protection against unwarranted public disclosure resulting from discovery in federal civil litigation. Long v. American Red Cross, 145 F.R.D. 658, 664 (S.D. Ohio1993)(fact that donation of blood negates any reasonable expectation that donor's medical condition will not be eventually revealed does not prevent donor from seeking "appropriate protective order limiting disclosure of the information" to "accommodate this kind of privacy interest"); Borzillieri v. American National Red Cross, 139 F.R.D. 289, 288 (W.D.N.Y. 1991)(witness's AIDS risk status held sufficiently confidential to warrant protective order.)

Courts have recognized that even litigation parties have a privacy interest in their subpoenaed private financial documents. See, e.g., Arias-Zeballos v. Tan, No. 06 Civ, 1268 (GEL) (KNF), 2007 U.S. Dist. LEXIS 5068, 2007 WL 2101.12, at 1 (S.D.N.Y. Jan. 25, 2007) (court quashes subpoena to bank seeking copies of the defendant's personal checks and documents concerning the purchase of residential real estate, finding that "courts have found that individuals, whose banking records are subpoenaed, have a privacy interest in their personal financial affairs that gives them standing to move to quash a subpoena served on a non-party financial institution"); In re Flagtelecomholdings, Ltd. Secs. Litig., No. 02 Civ. 3400(WCC), 2006 U.S. Dist. LEXIS 69140, 2006 WL 2642192, at 2 (S.D.N.Y. Sept. 13, 2006) (in addressing motion to quash subpoena to accounting firm, court holds that "a party may have a sufficient privacy interest in the confidentiality of records pertaining to their personal financial affairs so as to give them standing to challenge the subpoena"); Catskill Dev., L.L.C. v. Park Place Entertainment Corp., 206 F.R.D. 78, 93 (S.D.N.Y. 2002) (party has standing to oppose subpoena

for its banking records); <u>Sierra Rutile Ltd. v. Katz</u>, No. 90 Civ. 4913 (JFK) (THK), 1994 U.S. Dist. LEXIS 6188, 1994 WL 185751, at 2 (S.D.N.Y. May 11, 1994) (where subpoenas were addressed to party's banks and brokerage houses, the party has a sufficient privacy interest in the confidentiality of records pertaining to its personal financial affairs so as to give it standing to challenge the subpoenas).

Under these legal standards, plaintiff's motion to compel should be denied and St. Ignatius' objections should be sustained because the subpoena, seeking private, proprietary, and competitively sensitive non-party contracts are irrelevant and immaterial to the issues in the underlying action. Plaintiff has failed to meet its burden of proving that the contracts are relevant, and St. Ignatius' privacy interest outweighs plaintiff's purported need for the contracts.

**POINT I**

**THE SUBPOENAED PRIVATE AND COMPETITIVELY SENSITIVE RENTAL CONTRACTS, BETWEEN ST. IGNATIUS AND OTHER NON-PARTIES, CONCERNING THE RENTAL OF ITS SOCIAL HALL, HAVE NO PROBATIVE VALUE, AND ARE IMMATERIAL AND IRRELEVANT TO THE ISSUES IN THE UNDERLYING ACTION.**

Plaintiff's complaint arises from the City's denial of plaintiff's "accessory use" catering facility permit. Hence, the crucial issue is whether plaintiff's catering activities constitutes "accessory use" which is defined in Section 12-10 of the New York City Zoning Resolution as "incidental to, and customarily found in connection with its principal use." Accordingly, plaintiff must put forth evidence to show what is "customarily found" in the arena of accessory catering activities. As a matter of law, the private, confidential and competitively sensitive contracts subpoenaed from St. Ignatius are not relevant to show that plaintiff's catering use falls within the custom and practice of "accessory use" catering.

8

This is because New York courts have held that common trade usage "in the business to which the transaction relates is so notorious that a person of ordinary prudence in the exercise of reasonable care would be aware of it." Reuters Limited v. Dow Jones Telerate, Inc., 231 A.D.2d 337, at 343, 662 N.Y.S.2d 450, at 454, (1st Dep't 1997). Consequently, to prove or "disprove the existence of a well-settled, uniformly-acted-upon and long-continued usage. Clearly, only publicly disseminated information about the practices of other parties in the industry would be eligible to either establish or disprove" custom and usage. Reuters, 231 A.D.2d at 343-44, 662 N.Y.S.2d at 454-55 (emphasis added).

In Reuters, the subpoenaed confidential files of a non-party and competitor were determined to be neither material nor necessary to prove or disprove common trade usage. Id. This is because where the subpoenaed information is private and not publically disseminated it is not relevant nor material to proving or disproving a custom and usage. See id. Here, the subpoenaed information - - private and competitively sensitive rental contracts between St. Ignatius and other non-parties - - is not publicly disseminated. (Olson Declaration,¶ 5) Accordingly, since only publicly disseminated information is eligible to prove or disprove custom and usage, and the subpoenaed information is not publicly disseminated, the subpoena fails to request material or necessary information. See Reuters, 231 A.D.2d at 343-44, 662 N.Y.S.2d at 454-55.

To be sure, in Belasco Theatre Corp. v. Jelin Productions, Inc., 270 A.D. 202, 59 N.Y.S.2d 42 (1st Dept. 1945), the New York Appellate Division, First Department, held, and later confirmed in Reuters, that "a custom . . . must be so far established and so far known to the parties, that it must be supposed that their contract was made in reference to it." Belasco, 270 A.D. at 205, 59 N.Y.S.2d at 45-46; see Reuters, 231 A.D.2d 337, 662 N.Y.S.2d 450. More

recently, the Court of Appeals held that a "custom's existence [must be] . . . 'so notorious' that [the parties] should have been aware of it."  Evans v. Famous Music Corp., 1 N.Y.3d 452, 463, 807 N.E.2d 869, 876 (2004).

New York case law is consistent that obviously the public cannot be aware of a custom's existence unless and until the facts surrounding the practice or usage are publicly disseminated. Accordingly, the non-public, confidential, and proprietary information of a non-party church, such as St. Ignatius, is neither material nor relevant to prove or disprove the custom and practice of "accessory use" catering.

Moreover, the private nature of the contracts renders them irrelevant because defendants had no knowledge of the contracts and therefore defendants' decision to revoke plaintiff's "accessory use" catering permit is in no way related to the contracts.   Simply put, the facts upon which the City based its decision to revoke plaintiff's "accessory use" catering permit is relevant to the claims and defenses in this action, and since St. Ignatius' private rental contracts were not within the City's knowledge when it made its decision, the contracts are irrelevant.  See e.g. Solow v. Conseco Inc., No. 06 Civ. 5988 (BSJ) (THK) 2008 U.S. Dist. LEXIS 4277, 14 (S.D.N.Y. Jan. 18, 2008)(subpoena quashed where non-party's present financial condition was not relevant to defendant's knowledge of its financial condition in 2003, and its decision to sell a building to him.)

Finally, not only are St. Ignatius' private and confidential contracts irrelevant to plaintiff's claim that its catering use is "accessory use" because (a) under New York law they are insufficient to prove or disprove the custom or practice of "accessory use" catering, and (b) they were not known or relied upon by the defendants when they revoked plaintiff's "accessory use" permit, they are additionally irrelevant as a matter of fact.  That is, St. Ignatius' private contracts

10

are irrelevant because significant aspects of plaintiff's catering activities are fundamentally different from St. Ignatius' catering activities.

For example, unlike plaintiff, St. Ignatius has not leased any portion of its premises to another party, and it has no contractual relationship with any outside caterer, or third-party, concerning the use of Wallace Hall. (Olson Declaration, ¶ 7) Consequently, St. Ignatius has not relinquished its exercise of dominion and control over its premises, and only St. Ignatius decides who, when, and why its premises will be used for social events. (Olson Declaration, ¶ 7) Also, since it has no contracts with any third-parties concerning the use of its social hall, St. Ignatius, unlike plaintiff, has not agreed with any third-party that it may lose its tax exemption because of revenues received from catering activities. Furthermore, St. Ignatius does not remove, obscure, or cover any religious signs or other indicia of religious identification during social events. (Response to Subpoena, ¶ 14) St. Ignatius has only rented Wallace Hall to non-congregants on nine (9) occasions between September 2006 and September 2007, compared to 159 events in that year which were all related to the parish and the parish affiliated schools (i.e., Loyola School, Saint Ignatius Loyola Grammar School, and Regis High School). (Olson Declaration, ¶ 8) Finally, St. Ignatius' primary activities are much larger in scope than its accessory catering use thereby clearly indicating that its catering use is "incidental" to its primary purpose. St. Ignatius conducts three (3) masses each weekday, six (6) masses each weekend, and numerous religious educational programs. (Olson Declaration, ¶7)

Hence, St. Ignatius' private contracts are additionally immaterial and irrelevant because the facts surrounding St. Ignatius' use of its social hall are so fundamentally different from those of plaintiff that there can be no legitimate comparison between the two.

11

## POINT II

**ST. IGNATIUS' PRIVACY INTEREST OUTWEIGHS PLAINTIFF'S PURPORTED NEED FOR ST. IGNATIUS' PRIVATE, NON-PARTY, PROPRIETARY AND COMPETITIVELY SENSITIVE CONTRACTS, ESPECIALLY GIVEN THE WEALTH OF AVAILABLE PUBLIC INFORMATION AND EXPERT TESTIMONY CONCERNING "ACCESSORY USE" CATERING.**

Rule 45(c)(3) provides that a court "shall" quash or modify a subpoena if the subpoena "subjects a person to undue burden." An evaluation of undue burden requires the court to weigh the burden to the subpoenaed party against the value of the information to the serving party. Whether a subpoena imposes an "undue burden" depends upon "such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are describe and the burden imposed." United States v. Int'l Bus. Mach. Corp., 83 F.R.D. 97, 104 (S.D.N.Y. 1979). However, courts also give special weight to the burden on non-parties of producing documents to parties involved in litigation. See Cusumano v. Microsoft Corp., 162 F.3d 708, 717 (1st Cir. 1998)("concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs."); Heidelberg Ams., Inc. v. Tokyo Kikai Seisakusho, Ltd., 333 F. 3d 38, 41-42 (1st Cir. 2003); see also Fed. R. Civ. P. 45(c)(2)(B) ("an order to compel production shall protect any person who is not a party form significant expense . . ."). The determination of issues of burden and reasonableness is committed to the sound discretion of the trial court. Concord Boat Corp. v. Brunswick Corp., 169 F.R.D. 44, 49 (S.D.N.Y. 1996).

Here, as shown above, under New York law to prove or disprove a custom or practice the evidence must be public, open and notorious. Since St. Ignatius' rental contracts are not publically disseminated, they are irrelevant to prove or disprove the custom and practice of "accessory use" catering. Moreover, St. Ignatius' private contracts are irrelevant to the

defendants' determination to revoke plaintiff's "accessory use" catering permit because defendants had no knowledge of the contracts. Since the private contracts are irrelevant, plaintiff has no need for them.

In fact, plaintiff's prior submissions to this court show that there is a wealth of public information available on the issue of "accessory use" catering, as well as available expert testimony. Indeed, plaintiff asserts in this motion that it has already made a showing that it engages in a catering practice that is a "common and innocuous practice throughout New York City" and that this showing was accomplished with publicly available documents.[12]   Hence, plaintiff admittedly has no need for St. Ignatius's confidential non-party contracts.   Indeed, plaintiff's prior submissions in support of its motion for a temporary restraining order and preliminary injunction included declarations of a land use expert, Jay A. Segal ("Mr. Segal"), who concluded that plaintiff's catering use was "accessory use" and did not state that he lacked any "crucial" or "essential" information.

A casual remark in Mr. Segal's Declaration, dated December 3, 2007, that he "cannot determine the percentages of weddings (and other events) that are held at houses of worship for people who are not congregants . . . ."[13] seems to have been responded to by defendants by virtue of their submission of a Declaration of St. Ignatius' Director of Facilities, Sona Olson, dated February 5, 2008, stating that between September 2006 and September 2007 there were only nine (9) events that were unrelated to the parish and its affiliated schools.[14]   One other piece of

---

[12]See pg. 6 of Plaintiff's Memorandum of Law in Support of Plaintiff's Motion to Compel ("Pltf's Memo of Law").

[13]See ¶ 11 of Mr. Segal's Declaration, dated December 3, 2007, previously submitted to the Court by plaintiff.

[14]Id. footnote 10.

information that plaintiff's land use expert, Mr. Segal, lacked but did not find essential, was whether St. Ignatius had a contractual relationship with an outside caterer.[15]  It has since been made clear that St. Ignatius does not have any contractual relationships with any caterers or other third-parties with respect to Wallace Hall.[16]

Ms. Olson's February 5, 2008 Declaration was obtained without representation by counsel, and without Ms. Olson's intent to waive St. Ignatius' right to keep its records confidential.[17]  In any event, Ms. Olson's prior February 5, 2008 Declaration, as well as her Declaration submitted herewith in opposition to the instant motion, along with St. Ignatius' Response to Subpoena, obviates any purported need for additional information from St. Ignatius.

Plaintiff states that it served the subpoena because St. Ignatius' statement that it has held 168 social events between September 2006 - September 2007, and that only nine (9) of those events were unrelated to the parish is "dubious given how widely St. Ignatius advertises Wallace Hall's availability for public events." (Pltf  Memo of Law, p. 7)   However, the only advertising of Wallace Hall is a website and one post-card depicting it.[18]  Today, most everything has a website accessible on the internet with the potential to widely spread information.   Thus, it is not significant that St. Ignatius has a website containing information about Wallace Hall, and the fact

---

[15]See Mr. Segal's Reply Declaration, dated February 22, 2008, stating at paragraph "28" that St. Ignatius "appears to have a contractual relationship with an outside caterer, although absent discovery, further information about who this caterer is, and its contractual arrangement with this caterer is unavailable."

[16]See ¶ 5 of Ms. Olson's Declaration, dated February 5, 2008, previously submitted to the Court by plaintiff; ¶ 7 of the Olson Declaration, dated April 22, 2008, submitted herewith in opposition to plaintiff's motion to compel; and, ¶ 9 of Response to Subpoena, dated April 22, 2008, submitted herewith in opposition to the instant motion.

[17] ¶ 2, Olson Declaration, dated April 22, 2008.

[18]Response to Subpoena, "Paragraph 1", submitted herewith.

14

that St. Ignatius held only nine (9) non-member social events between September 2006 and September 2007 despite the website is not "dubious."   Rather, it shows that St. Ignatius primarily makes Wallace Hall available to its members for parish related events.   Finally, the actual number of social events held at Wallace Hall involving non-congregants was not deemed necessary or essential by plaintiff's expert, and is irrelevant because it is not public information and defendants did not rely upon that information when it rendered its decision to revoke plaintiff's "accessory use" permit.

The rental contracts, between St. Ignatius and other non-parties, both congregants and non-congregants, concerning the rental of Wallace Hall are treated confidentially by St. Ignatius. St. Ignatius' members and/or nonmembers, who have held their weddings, confirmations, anniversaries, and other celebrations at St. Ignatius, have an expectation of privacy and are entitled to keep the details of their private affairs private, and confidential.  St. Ignatius does not publish nor otherwise communicate the fees that it charges for renting Wallace Hall, and wishes to maintain the confidentiality of such information.  Other churches, such as plaintiff, should not be permitted to discover the terms and conditions of St. Ignatius' privately negotiated agreements which may be used competitively against St. Ignatius in the arena of church venued social events. (Olson Declaration, ¶ 5)

Given that St. Ignatius' private, proprietary and competitively sensitive rental contracts between itself and other non-parties have no relevance to the issues in the underlying action, and there is a wealth of publically available information concerning "accessory use" catering, as well as expert testimony, St. Ignatius' right to maintain the confidentiality of its contracts outweighs plaintiff's purported need for the contracts.

## CONCLUSION

In short, the subpoenaed documents at issue, consisting of St. Ignatius' private, proprietary and competitively sensitive non-party rental contracts, are not relevant nor material to the claims or defenses in this action, and St. Ignatius' legitimate interest in maintaining the confidentiality of the contracts outweighs plaintiff's purported need for the contracts. Furthermore, there is no need for any of the parties to obtain any further sworn testimony from St. Ignatius given its Response to Subpoena, and the Olson Declarations, dated February 5, 2008 and April 22, 2008.   Therefore, St. Ignatius respectfully requests that the Court deny plaintiff's motion to compel compliance with the subpoena.  Should this Court grant plaintiff's motion to compel production of the contracts,  St. Ignatius respectfully requests that the Court's order limit the scope of production to one year (September 2006 to September 2007);  that the contracts be subject to an in camera inspection; and, be protected against public disclosure.

Dated: New York, New York
          April 25, 2008

Respectfully submitted,

**CULLEN AND DYKMAN LLP**

By: _____
          Deborah A. Bryant (DAB 9891)

**44 Wall Street
New York, New York 10005
(212) 510-2256**

**Attorneys for Non-Party
Roman Catholic Church of St.
Ignatius Loyola**

16