UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
THIRD CHURCH of CHRIST, SCIENTIST, of  :   07 Civ. 10962 (DAB)
NEW YORK CITY,                         :
                                       :
                     Plaintiff,        :   **DECLARATION OF**
                                       :   **DEBORAH A. BRYANT IN**
          -against-                    :   **OPPOSITION TO MOTION**
                                       :   **TO COMPEL**
THE CITY OF NEW YORK and PATRICIA J.   :
LANCASTER, in her official capacity as :
Commissioner of the New York City Department :
of Buildings,                          :
                                       :
                     Defendants.       :
----------------------------------------------------------------X

I, DEBORAH A. BRYANT, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am associated with the firm of Cullen and Dykman LLP, counsel for non-party the Roman Catholic Church of St. Ignatius Loyola ("St. Ignatius"), and respectfully submit this Declaration, and the Declaration of Sona Olson, dated April 22, 2008, along with exhibits annexed thereto (the "Olson Declaration"), including the Response to Subpoena, dated April 22, 2008, with exhibits annexed thereto ("Response to Subpoena"), and St. Ignatius' Memorandum of Law, in opposition to plaintiff Third Church of Christ, Scientist, of New York City's ("Plaintiff") motion to compel St. Ignatius, and Riverside Church, to comply with subpoenas served on March 6, 2008. (A copy of the subpoena concerning St. Ignatius (the "subpoena") is attached as Exhibit "B" to the Declaration of Plaintiff's Counsel, Monica Pa, dated April 10, 2008 (the "Pa Declaration").)

2. After receiving the subpoena, counsel for St. Ignatius, the undersigned, read the complaint in the underlying action, as well as the papers submitted with respect to Plaintiff's motion against defendant City of New York (the "City") for a temporary restraining order and

preliminary injunction, and conducted legal research. Then, the undersigned spoke with Plaintiff's counsel several times regarding the subpoena and explained that the documents subpoenaed have no probative value and are immaterial to the issues in the underlying action. In response, Plaintiff's counsel agreed to extend St. Ignatius' time to respond to the subpoena and offered to limit the temporal scope of the subpoena from eight (8) years to three (3) years.

3. On March 19, 2008, St. Ignatius sent a timely letter to Plaintiff objecting to the subpoena on the ground that it seeks proprietary records that are immaterial to the issue of whether Plaintiff's catering use is "accessory" as defined in the City's Zoning Resolution, as well as on the ground that the issues in dispute can be resolved by expert testimony. (A copy of St. Ignatius' objection letter is annexed as Exhibit "E" to the Pa Declaration.)

4. After further conversation with St. Ignatius' Director of Facilites, Sona Olson ("Ms. Olson"), the undersigned informed Plaintiff's counsel, Monica Pa, that most of the subpoenaed documents do not exist, and particularly, that St. Ignatius has no contracts with any caterers. Ms. Pa was also informed that St. Ignatius has rental agreements with its congregants, and to a lesser extent, non-congregants, concerning the use of its social hall, Wallace Hall, located in the basement of St. Ignatius, which are responsive to Paragraph "1" of the subpoena, but that the contracts are private, confidential, immaterial and irrelevant to the issues in the underlying action. In that same conversation, I asked whether Plaintiff would consider accepting one year's worth of the rental contracts although I was not yet sure if St. Ignatius would agree to waive its right to withhold the contracts. Soon thereafter, Ms. Pa informed me that Plaintiff would not agree to limit the subpoena's scope to one year which, in any event, was not acceptable to St. Ignatius.

2

5. St. Ignatius specifically delineates the subpoenaed documents that do not exist, annexes responsive documents (i.e. a post-card depicting Wallace Hall, and email communications between Ms. Olson and the City's counsel), and reserves St. Ignatius' right to continue its objection to the disclosure of its private rental contracts. (Response to Subpoena, annexed as Exhibit "B" to the Olson Declaration.)

6. As more fully set forth in St. Ignatius' accompanying Memorandum of Law in Opposition to Plaintiff's Motion to Compel, St. Ignatius' private rental contracts have no probative value because under New York law they are irrelevant and inadmissible to prove a "custom or trade usage" such as "accessory use catering." Furthermore, St. Ignatius and its congregants, and non-congregants, that entered into the contracts have an expectation of privacy, and hold the contracts confidential. Also, the contracts are competitively sensitive and proprietary in nature. In sum, the private and confidential agreements of St. Ignatius and third-persons, none of whom are parties to this action, are irrelevant to Plaintiff's dispute.

7. Ms. Olson was not represented by counsel when she was contacted by Ave Maria Brennan, counsel for defendant City of New York (the "City"), and asked several questions concerning social events held at St. Ignatius' social hall, "Wallace Hall." Ms. Olson did not have counsel when she answered the City's questions, nor when she signed a prior declaration, dated February 5, 2008, setting forth certain facts concerning social events held at Wallace Hall. (A copy of Ms. Olson's prior February 5, 2008 Declaration is annexed as Exhibit "A" to her Declaration submitted herewith.) In any event, Ms. Olson did not disclose any records belonging to St. Ignatius and never intended to waive any rights of St. Ignatius to keep its records private and confidential.

3

9. Given publically available information, as well as the availability of expert knowledge, Plaintiff already possesses a wealth of information concerning St. Ignatius and Wallace Hall. Plaintiff has no basis to request any additional information from St. Ignatius. Indeed, Plaintiff's land use expert, Jay A. Segal ("Mr. Segal"), mentioned only two (2) pieces of unknown information which he did not refer to as being crucial or essential to his findings. In any event, the unknown information has since been provided. That is, Mr. Segal's Reply Declaration, dated February 22, 2008[1], states at paragraph "28" that St. Ignatius "appears to have a contractual relationship with an outside caterer, although absent discovery, further information about who this caterer is, and its contractual arrangement with this caterer is unavailable." St. Ignatius does not have any contractual relationship with any caterers. (Response to Subpoena, paragraph "9").

10. Finally, Mr. Segal's Declaration, dated December 3, 2007[2], states at paragraph "11" that he "cannot determine the percentages of weddings (and other events) that are held at houses of worship for people who are not congregants ...." Apparently, the City sought to aid Mr. Segal by providing Ms. Olson's February 5, 2008 Declaration stating that St. Ignatius held 168 events between September 2006 and September 2007 of which nine (9) rental events were not related to the parish or its affiliated schools.

11. As shown in St. Ignatius' accompanying Memorandum of Law, the private rental contracts between St. Ignatius and other non-parties are not probative to the issues in this action.

---

[1] Mr. Segal's Reply Declaration, dated February 22, 2008, was previously filed with this Court.

[2] Mr. Segal's Declaration, dated December 3, 2007, was previously filed with this Court.

Furthermore, the private and confidential nature of the contracts, and the wealth of public information and expert knowledge concerning social hall events at St. Ignatius outweighs any purported need by Plaintiff for the contracts. Accordingly, disclosure of St. Ignatius' private contracts should not be compelled. Should the Court grant plaintiff's motion, St. Ignatius respectfully requests that the Court's order limit the scope of the production to one year (i.e. September 2006 - September 2007); the contracts be subject to an in camera inspection; and, be protected against public disclosure.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 25, 2008

_____
Deborah A. Bryant