UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK
------------------------------------------------------------- x

THIRD CHURCH of CHRIST, SCIENTIST,  :
of NEW YORK CITY,                   :   07 Civ. 10962 (DAB)
                                    :
           Plaintiff,          :
                                    :
    - against -                   :
                                    :
THE CITY OF NEW YORK and PATRICIA   :
J. LANCASTER, in her official capacity as, :
Commissioner of the New York City   :
Department of Buildings             :
                                    :
           Defendants.         :
------------------------------------------------------------- x

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF'S MOTION TO COMPEL

DAVIS WRIGHT TREMAINE LLP
1633 Broadway
New York, New York 10019
(212) 489-8230

*Attorneys for Plaintiff*
*Third Church of Christ, Scientist, of New York City*

Plaintiff Third Church of Christ, Scientist, of New York City (the "Church") submits this reply memorandum in further support of its motion to compel non-parties, the Riverside Church ("Riverside") and St. Ignatius of Loyola Church ("St. Ignatius"), to comply with the subpoenas served upon them on March 6, 2008.

## INTRODUCTION

Neither St. Ignatius nor Riverside argues that they do not host Social Events[1] at their Premises, which are located in residential districts. Neither argues that responsive documents are not readily available, or that submitting to a deposition would be onerous. Neither argues that production would be burdensome or costly. Instead, they submit four makeweight arguments that can easily be dismissed.

First, ignoring the broad definition of relevance applicable on this discovery motion, St. Ignatius and Riverside insist they can avoid complying with the subpoena because their arrangements with outside caterers differ from the Church's. But these religious institutions *admit* they rent their buildings for accessory catered events booked by non-congregants. It is that fact that is relevant and requires exploration; whether they do the catering themselves, contract with a third party to do it, or let their guests arrange for it, does not matter.

Second, St. Ignatius claims that the terms of the agreements it enters into with people who book their church for a catered event are confidential. Of course, any person who responded to St. Ignatius' advertisements and asked what it would cost to book the space could quickly discover what St. Ignatius charges. This fact alone makes clear that the confidentiality argument asserted by St. Ignatius is baseless. In any event, a protective order or redaction would

---

[1] All defined terms set forth and incorporated in Plaintiff's moving brief, April 11, 2008, are incorporated herein.

fully address any legitimate privacy concerns, and there is no basis to permit St. Ignatius to avoid complying with a valid subpoena.

Third, St. Ignatius makes a confused argument about "accessory use" under New York zoning laws. That argument relies solely on inapposite contract cases, and is meritless.

Fourth, St. Ignatius suggests that the Church should use expert testimony or publicly available information rather than take discovery. But that litigation choice is for the parties to make, and the Court has permitted non-party fact discovery to proceed. St. Ignatius engages in catering conduct relevant to this action, and the subpoena seeks only that relevant information.

In short, neither Riverside nor St. Ignatius has come close to justifying their refusal to comply with valid subpoenas. Each should be ordered to comply.

## ARGUMENT

### I.     Differences Between Catering Arrangements Are Irrelevant

Both St. Ignatius and Riverside argue that they have no relevant information because their relationships with outside caterers differ from the Church's relationship with its caterer. *See* Glover Aff.[2] ¶ 3. St. Ignatius claims that it "has not leased any portion of [its premises] to another party, ... [and it] has no contractual relationship with any outside caterer, or third-party, concerning the use of ... Wallace Hall." *See* Olson Decl.[3] ¶ 7. Riverside also focuses on the Church's lease agreement with its caterer, mistakenly claiming that the Church has purportedly leased of "all or practically all of its space to a caterer[.]" *See* Glover Aff. ¶ 5. Based on these purported distinctions, they claim that their catering uses are fundamentally different from those of the Church, and, from that premise, jump to the conclusion that there can be no legitimate comparison between their catering activities and the Church's.

---

[2] Affidavit of Delbert Glover, sworn to on April 24, 2008 ("Glover Aff.").
[3] Declaration of Sona Olson, sworn to on April 22, 2008 ("Olson Decl.").

Many of the distinctions drawn between the nature of these contract relationships are erroneous (*e.g.*, the Church's lease does not grant exclusive possession to its caterer).[4] In any event, such distinctions are irrelevant. This case is about the fact that catering events are held at churches and other non-profits, not who caters them. The Church claims that the City has unfairly singled it out by prohibiting catered events at the Church while it permits (either expressly or tacitly) religious and non-profit secular institutions throughout the City to host similar social events for non-members on their premises, notwithstanding possible "quality of life" complaints, such as garbage, noise, traffic, etc. The City defends against this claim by stating that, even if other institutions host social events, none are equal in size and scope to the Church's events. *See* Brennan Decl. ¶ 149-150. Therefore, the nature of catered social events held at churches or other non-profit groups – and not the terms of a catering agreement – is the primary focus of this litigation. The question of whether one caterer is paid a flat fee while another caterer may have a long-term rental arrangement is beside the point. Riverside and St. Ignatius concede that they rent out their buildings to members of the general public for catered events. Information about this practice – the number of events, the number of guests, etc. – is squarely relevant to the Church's claims.

St. Ignatius and Riverside also argue that the Subpoenas are overbroad because they seek information concerning issues not directly raised in the Complaint, and are therefore irrelevant to this dispute. *See, e.g.,* Glover Aff. ¶ 13 ("the far reaching requests of the subpoena . . . [are] well beyond the bounds of the facts and claims of the complaint"); *id.* ¶ 16 ("items requested in the subpoena are not within the scope of such complaint"); *see* St. Ignatius Op. Br. at 8 (only

---

[4] Riverside also fundamentally misunderstands the nature of what is at stake in this litigation. It states that this lawsuit concerns actions taken by the City "to terminate a specific lease whereby the Rose Group is permitted to host catered functions[.]" *See* Riverside Op. Br. at 2. But the City has done far more than that. Its revocation of the earlier-granted permission will prohibit *all* catering at the Church's facility – irrespective of the caterer who conducts it.

documents concerning "accessory use," as alleged in the Complaint, are discoverable). These arguments are contrary to established federal law, which does not confine discoverable, relevant topics to the four corners of the complaint. "[T]here is a presumption that any party to a lawsuit, in furtherance of either a claim or a defense, may obtain discovery of any information which has *some identifiable relationship* with the merits of that claim or defense." *Long v. American Red Cross*, 145 F.R.D. 658, 660 (S.D. Ohio 1993) (emphasis added) (cited in St. Ignatius Op. Br. 7); *see Sierra Rutile Ltd. v. Katz,* No. 90 Civ. 4913 (JFK), 1994 WL 185751 at *3 (S.D.N.Y. May 11, 1994) (cited in St. Ignatius Op. Br. at 5). St. Ignatius and Riverside do not, because they cannot, argue that discovery into their accessory catering practices does not bear on, or could not be said "reasonably [to] lead to other matters that could bear on, any issue that is *or may be* in the case." *Sierra Rutile,* 1994 WL 185751 at *3 (emphasis added). Every request set forth in the Subpoenas, seeks relevant and discoverable information under this broad standard. (*See, e.g.,* Pl. Br. at 6-12).

In asserting their objections on the basis of relevance, St. Ignatius and Riverside also contend that their religious institutions are so different from the Church's that they cannot even be compared. *See, e.g.,* Glover Aff. ¶ 13; Olson Decl. ¶ 7. But in all respects that matter in this case, the Church is not meaningfully different from either Riverside or St. Ignatius. All three are non-profit religious institutions; all make their home in beautiful, old edifices; all are located in residential districts; and all rent out their buildings to members of the general public for catered events.

Both St. Ignatius and Riverside have supplied information in their moving papers that is useful to the Church. For example, Riverside acknowledges that it is "well within its mission and as part of its continuing effort to reach out to its membership *and into the community* to

permit use of space in Riverside Church at uniform rates for events . . . involving any of its over 2,500 members *or other parties.*" Glover ¶ 13 (emphasis added). Now that Riverside has admitted that it permits "other parties" to rent out space in its facilities, it should comply with the subpoena and provide the Church with details about the number of such events it holds, how many guests attend them, whether it has made any provision for dealing with the possible loss of its tax exemption by reason of income earned from the catering, and other issues that have been raised in and are relevant to this lawsuit.

St. Ignatius claims that it hosted only nine events for non-congregants and 159 events "related to the parish and the parish affiliated schools ..." from September 2006-2007. *See* Olson Decl. ¶ 8. The Church surely is entitled to probe what is meant by the elastic and vague phrase "related to the parish." Also, in Olson's February 5th declaration, she stated that there were 24 events for parish "and certain non-affiliated schools." Does St. Ignatius mean that if a member of the general public who is not a registered member of its church, but is friends with a member, rents out Wallace Hall for a wedding, that this event is "related to the parish"? The Church also should be permitted to explore the "certain non-affiliated schools" that apparently have booked space at St. Ignatius.

Being able to review the documents reflecting the catering activity conducted at St. Ignatius would clarify these issues.[5] And it may well be that the September 2006 to September 2007 time period chosen by St. Ignatius may not be representative of the typical scope and intensity of its catering activity. After all, its website certainly touts Wallace Hall as "one of

---

[5] There is also a discrepancy between the declaration submitted by Ms. Olson in opposition to the motion to compel and the declaration she provided to the City on February 8th. Her April 22nd declaration states that there were 159 parish and school related events, but her February 8th Declaration states that there were 150 parish and school related events. Also, her Feb 5th Declaration states that there were a total of 168 events, which are comprised of 9 rental events, plus 126 parish related events, plus 24 parish school events. But, this equals only 159 events. *See* Olson Decl. Ex. A, ¶ 3-4. What about the other 9 events?

Manhattan's most beautiful and versatile rental spaces."[6] Finally, given that counsel for the City has had numerous communications with St. Ignatius regarding this case, a short deposition of the person at St. Ignatius who manages its rental space would surely uncover relevant information.

These are only *some* of the questions raised in St. Ignatius' and Riverside's latest submissions. Each institution conducts catered events for non-members – a practice the Church believes is innocuous and routine – but refuses to produce facts regarding these activities. While it is understandable that these institutions may be reluctant to produce information concerning their accessory catering uses in an action where the Department of Buildings is a defendant, the Church has the right to defend itself against the City's unlawful and discriminatory conduct to the fullest extent under the Federal Rules. Accordingly, because the nature and extent of the catering activities at these other religious institutions is squarely relevant to this case, discovery from St. Ignatius and Riverside is appropriate.

## II.    Confidentiality and Privacy Concerns Are Without Merit

St. Ignatius argues that its purported privacy interests outweigh the Church's need for relevant information. *See* St. Ignatius Op. Br. 7. Although St. Ignatius makes numerous references to "competitively sensitive and confidential contracts" (*see, e.g.,* St. Ignatius Op. Br. at 2), it never asserts that such contracts even contain a confidentiality clause. In any event, the principal claim seems to be that St. Ignatius' pricing structure is confidential. *See* Olson Decl. ¶ 5. But that contention is absurd. Anyone can simply call the telephone number listed on the website to get information – including, no doubt, the price – for booking an event at St. Ignatius's "Wallace Hall" or the several other events spaces available for rent at St. Ignatius. *See* note 5, *supra* (citing St. Ignatius' online advertisement). Indeed, it is unclear how "rental

---

[6] *See* http://www.stignatiusloyola.org/index.php/about_us/space_rentals#wallace_hall (visited April 30, 2008).

agreements between St. Ignatius and congregants *or others*" to host large weddings, anniversaries, or other social events, are confidential. *See* Olson Decl. ¶ 5 (emphasis added). To the contrary, these are celebrations in a large public venue, not conducted in a private home. Indeed, St. Ignatius' prior willingness to disclose facts concerning these social events to the City and its offer to produce one-year's worth of such agreements to the Church (Pa Decl. ¶ 8, Ex. G) belie its claims of confidentiality.

St. Ignatius also could have addressed any confidentiality concern simply by seeking a confidentiality agreement with the Church limiting the use of produced information for only purposes of this litigation. The Church could not use this information competitively, as St. Ignatius suggests. *See* Olson Decl. ¶ 5. If there was a protective order in place, the Church could not share this information with its caterer, or anyone else. That a stipulated protective order would easily assuage its confidentiality concerns is directly acknowledged by two cases on which St. Ignatius relies. *In re Subpoena Duces Tecum Served on Bell Communications Research, Inc.* No. MA-85, 1997 WL 10919, at * 3 (S.D.N.Y. Jan. 13, 1997) (confidentiality agreement "provides adequate protection" for customer proprietary documents even though there were confidentiality agreements with customers in place) (*See* Op. Br. 6); *Borzillieri v. American Nat. Red Cross*, 139 F.R.D. 284, 288 (W.D.N.Y. 1991) (Op. Br. 7) (holding that "a properly framed protective order will permit plaintiff to [comply with the subpoena] without at the same time violating his or her constitutional right to privacy").

Demonstrably unable to find any cases upholding a privacy-based objection to the benign sort of information sought here, St. Ignatius is reduced to citing cases that involved the production of highly sensitive medical information. *See, e.g., Long*, 145 F.R.D. at 660 (compelling compliance with subpoena seeking identity of blood donor who possibly infected

plaintiff with HIV, notwithstanding claim that compliance would jeopardize adequacy and safety of nation's blood supply, and privacy interests of donor); *Borzillieri*, 139 F.R.D. at 288 (subpoena seeking identity of blood donor). That St. Ignatius relies on cases so obviously inapposite reveals that its privacy claims are frivolous.[7]

### III.  Analysis of Customary Accessory Use Is Not Limited to Public Information

The Church argues that its hosting of Social Events is an "accessory use" under Section 12-10 of the New York City Zoning Resolution, because its catering activities are incidental to its primary use as a house of worship, and such incidental uses of its property is customary throughout the City, where numerous institutions rent out their premises for social events to non-members. St. Ignatius focuses on the word "customary," and claims that only public information can establish custom and usage within an industry. It argues that private documents concerning social events are not relevant in ascertaining whether a use is "accessory" because only public information can show what a customary use is. *See* Op. Br. at 8. This argument is baseless.

St. Ignatius cites to cases discussing when industry custom or usage can be used to alter or vary the terms of a contract. *See Reuters Ltd. v. Dow Jones Telerate, Inc.*, 231 A.D.2d 337, 343, 662 N.Y.S.2d 450, (1st Dep't 1997) (contract dispute between distributors of financial news, discussing whether trade usage could be used to construe a contract); *Belasco Theatre Corp. v. Jelin Productions*, 270 A.D. 202, 206, 59 N.Y.S.2d 42, 45 (1st Dep't 1945) (landlord-tenant contract dispute, considering whether a custom or usage can be read into parties' contract).

---

[7] St. Ignatius also relies on a line of cases involving the privacy interests of a *party* to the litigation, and that party's standing to challenge a subpoena to a non-party financial institution. *See* St. Ignatius Op. Br. at 7. These cases stand for the inapposite proposition that "individuals, whose banking records are subpoenaed, have a privacy interest in their personal financial affairs that gives them standing to move to quash a subpoena served on a non-party financial institution." *Arias-Zeballos v. Tan*, No. 06 Civ. 1268 (GEL), 2007 WL 210112, at *1 (S.D.N.Y. Jan. 25, 2007); *Sierra Rutile Ltd.*, 1994 WL 185751, at *2; *In re Flag Telecom Holdings, Ltd. Securities Litig.*, No. 02 Civ. 3400 (WCC), 2006 WL 2642192, at *2 (S.D.N.Y. Sept. 13, 2006); *Catskill Development, L.L.C. v. Park Place Entertainment Corp.*, 206 F.R.D. 78, 93 (S.D.N.Y. 2002). Because St. Ignatius is a non-party, these cases are inapplicable.

Indeed, St. Ignatius mistakenly quotes from the dissent in *Evans v. Famous Music Corp.*, 1 N.Y.3d 452, 463, 775 N.Y.S.2d 757 (2004) for the unremarkable proposition that "custom and usage cannot be used to contradict, alter or vary the terms of an unambiguous contract." *Id.* These cases plainly have nothing to do with the issue here. One of the issues here is whether catering at religious institutions is an accessory use. It is true that there is a large amount of publicly available information that shows that the practice is common and customary. But St. Ignatiues does not cite a single zoning case, *see* St. Ignatius Op. Br. at 10, and we are aware of none, that limits a court to "public" information in determining whether a land use is customary.

St. Ignatius also argues that "the private nature of the contracts [between St. Ignatius and the social events host] renders them irrelevant because defendants had no knowledge of the contracts and therefore defendants' decision to revoke plaintiff's 'accessory use' catering permit[.]" Op. Br. at 10. Whether the City knew the details and terms of St. Ignatius' rental agreements is irrelevant. Instead, the issue is whether the City knew that St. Ignatius was hosting social events on its premises at all (which it plainly does), and why it chose to prohibit the Church from also hosting catered social events for non-members. The City says it did so, in part, because of the number and "intensity" of catered events held at the Church. The subpoena simply seeks this information from St. Ignatius. It is relevant, and should be produced.

### IV. Public Information and/or Expert Testimony Are Not Viable Alternatives

St. Ignatius suggests that it need not produce information because the Church can adequately make its case based on publicly available information, and based on expert testimony from its land use legal expert, Jay A. Segal. *See* St. Ignatius Op. Br. at 13. To be sure, there is a wealth of public information regarding the common practice of religious and non-religious non-profits renting their spaces out for accessory catered events. But the Church is entitled to prove its claims as it sees fit. The Church served a subpoena seeking evidence regarding the frequency,

intensity and duration of Social Events, the amount of revenue generated by them, the advertisements of event space, and information concerning the guests who attend these events. The Court has permitted the parties to take non-party discovery in order to flesh out the record. It is not for St. Ignatius to instruct the parties how to proceed.

St. Ignatius also suggests that the Church can prove its claims *via* expert testimony. Again, this is a tactical decision to be made by a party. In any event, experts do not opine in a vacuum; they need facts on which to base their opinion. The subpoena to St. Ignatius reflects an effort to obtain facts relevant to the land use issues in this case. Whether or not an expert will offer an opinion in this case has nothing to do with whether St. Ignatius can ignore a subpoena that seeks relevant information.

## CONCLUSION

Because the Subpoenas are valid, and neither unduly burdensome nor overbroad, the Court should compel St. Ignatius and Riverside to comply and produce the requested documents and produce a witness for the demanded deposition.

Dated: New York, New York
April 30, 2008

                              Respectfully submitted,

                              DAVIS WRIGHT TREMAINE LLP

                              By: _____
                                  Victor A. Kovner (VK 2248)
                                  John Cuti (JC 3365)
                                  Monica Pa (MP 3307)

                              1633 Broadway
                              New York, New York  10019
                              (212) 489-8230

                              *Attorneys for Plaintiff, Third Church of Christ, Scientist, of New York City*