UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

THIRD CHURCH of CHRIST, SCIENTIST, OF
NEW YORK CITY

        Plaintiff,

  -against-

THE CITY OF NEW YORK AND PATRICIA J.
LANCASTER, IN HER OFFICIAL CAPACITY
AS COMMISSIONER OF THE NEW YORK
CITY DEPARTMENT OF BUILDINGS,

        Defendants.

------------------------------------------------------------

Index No. 07-CV-10962 (DAB)


## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO QUASH SUBPOENA OF NON-PARTY, THE METROPOLITAN CLUB, INC AND IN OPPOSITION TO PLAINTIFF'S CROSS-MOTION TO COMPEL

Neil G. Sparber
Brian W. Tilker
FULBRIGHT & JAWORSKI L.L.P.
666 Fifth Avenue
New York, New York 10103
(212) 318-3000
nsparber@fulbright.com
btilker@fulbright.com

Attorneys for Non-Party,
The Metropolitan Club, Inc.

50077018.2

This combined reply and opposition memorandum of law is submitted on behalf of non-party The Metropolitan Club, Inc. (the "Club") in further support of its motion, pursuant to Rule 45(c) of the Federal Rules of Civil Procedure, for an Order quashing the subpoena, dated March 6, 2008 (the "Subpoena"), and served upon the Club by the Third Church of Christ, Scientist, of New York City (the "Church"), the plaintiff in this action, and in opposition to the Church's cross-motion to compel discovery, on the grounds that the testimony sought and documents requested in the Subpoena are not relevant to the claims of the Church against the City of New York (the "City") in the underlying action.

### Preliminary Statement

There is only one issue that needs to be considered by the Court upon this motion, i.e., whether the Church and the Club are comparable or similarly situated with respect to holding catered events. In fact, the Church states in its memorandum of law that "[t]he Subpoena would help to show that the Club's accessory use is comparable to the Church's," and that "[t]he Church should be able to gather facts to demonstrate [the City's] selective enforcement of land-use laws against the Church violates the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), as well as the Equal Protection Clause of the Fourteenth Amendment and the First Amendment ("Equal Protection Clause"). (Church Mem. p.1) Thus, the linchpin of the Church's argument is that the Church and the Club are comparable. However, as set forth in the accompanying affidavit of Anthony Patrissi, the former Chief Engineer for the New York City Department of City Planning, the Church and the Club are not comparable with respect to holding catered events, and the information sought in the Subpoena is not relevant to the Church's claims in the underlying action. It is respectfully submitted, therefore, that the Court should quash the Subpoena and deny the Church's cross-motion to compel, which is unduly burdensome on its face, or even as modified in accordance with the Church's suggestion.

50077018.2

## Argument

### POINT I

### THE CHURCH AND THE CLUB ARE NOT COMPARABLE OR SIMILARLY SITUATED WITH RESPECT TO HOLDING CATERED EVENTS

In evaluating a plaintiff's claims under either the Equal Terms Clause of the RLUIPA or the Equal Protection Clause, the Court must first inquire whether defendants have treated plaintiffs in an unequal manner to similarly situated or comparable entities. See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985); Congregation Kol Ami v. Abington Twp., 309 F.3d 120, 137 (3d. Cir. 2002) ("[T]he initial burden [is] on the complaining party first to demonstrate that it is similarly situated to an entity that it is being treated differently before the local municipality must offer a justification for its ordinance."). The Equal Terms Clause "requir[es] equal treatment of secular and religious assemblies [and] allow courts to determine whether a particular system of classifications adopted by a city *subtly or covertly departs from requirements of neutrality and general applicability.*" Midrash Sephardi, Inc. v. Town of Surfside, 366 F.3d 1214, 1232 (11th Cir. 2004) (emphasis added).

The Church has listed numerous entities in its complaint against the City which the Church contends are comparable and similarly situated with respect to the Church's claims against the City. The Church's contention with respect to those other entities may very well be true, and information sought from those entities may be relevant. However, as set forth in the accompanying affidavit of Anthony Patrissi, the former Chief Engineer for the New York City Department of City Planning, sworn to May 2, 2008, (the "Patrissi Aff."), the Church and the Club are not comparable or similarly situated entities for purposes of determining whether the Church and the Club could be used for catered events for members or even non-members. Houses of worship and social clubs are entirely different principal use listings in Section 22-14

of the Zoning Resolution of the City of New York, as amended (the "ZR"), even though they are both listed in Use Group 4. (Patrissi Aff. ¶2) These uses are only two of the many diverse entities listed in Use Group 4 which on their faces are not comparable or similarly situated. (Id.) For example, non-profit hospitals are also listed in Use Group 4 and are also permitted in Residence Districts, but cannot be compared to a church or club. (Id.) The only legitimate comparison that the Church could make is with other houses of worship, not other uses in Use Group 4, such as hospitals and social clubs. (Id.)

The main argument that the Church makes for comparing itself with the Club is that holding catered events for non-members of the Club constitutes an accessory use, the same as it would for the Church. This argument is incorrect. Churches and social clubs cannot be compared with respect to their principal usage. (Id. ¶ 3) Churches primarily serve a worship function while clubs primarily serve a social function. (Id.) Holding catered events is a use that is integral and not incidental to the Club's principal use, and is thus not an accessory use in accordance with the ZR's definition of accessory use. (Id.) The Club has its own in-house hospitality staff to service these events. To the contrary, holding catered events is not an integral part of a church's worship function, its principal use, as illustrated by the Church's arrangement with an outside commercial catering business with a clientele that is unrelated to the Church. (Id.)

The listing for clubs in ZR Section 22-14 defines social clubs as "Clubs, except clubs the chief activity of which is a service predominantly carried on as a business". Holding catered events for non-members of a club would be subject to this provision. There is no explicit prohibition against holding catered events for non-members as well as members, provided the activity does not rise to the level of being the chief activity of a club that would be construed as a

business. (Id. ¶ 4) The social events, whether catered or not, for members or not, are part of the principal use of the Club. (Id.) The business use portion of such activities cannot be considered to be the predominant service of the Club, in proportion to all of the services offered by the Club. (Id.) There is never a time that members of the Club are excluded from the Club or the use of its services or premises, even if a catered event for a non-member were to be held on the Club's premises. (Id.)

There is no parallel language concerning business use in ZR Section 22-14 for houses of worship. The Zoning Resolution clearly distinguishes clubs from houses of worship and subjects each to different conditions. (Id. ¶ 5) Thus, a social hall for church events is truly an accessory use, separate and apart from the principal worship use of houses of worship. (Id.) The accessory use definition states that such use must be incidental to the principal use and primarily for the benefit of the constituents of the principal use, which here would be the members of the Church. (Id.) Contracting with an outside commercial caterer to hold events unrelated to the Church is apparently the reason that the Department of Buildings denied the accessory catering use, not the social hall itself. (Id.) The monetary investment of this outside contractor into physically altering the catering space for its own use supports the argument that the catering use is a separate principal use and not accessory to the Church. (Id.) In fact, there does not appear to be any discussion of church activities in the space, which would be needed to make it truly accessory. (Id.)

Moreover, the City evaluated the catering activities of the Church with respect to the conditions set forth in the definition of "accessory use" in ZR Section 12-10, which would limit catering activities to an incidental use primarily for the Church's constituents. (Id. ¶ 6.) This evaluation bears no similarity to an evaluation of the catering activities of the Club, which would

require an evaluation of the conditions set forth in the principal use listing of "clubs" in ZR Section 22-14 limiting the business use of a club's activities. (Id.) The two evaluations are not comparable and thus the documents sought from the Club would not be relevant to the Church's action against the Department of Buildings. (Id.) Valid comparisons can only be made between the Church and other houses of worship that hold catered events in accessory social halls. (Id.)

Thus, the information sought in the Subpoena is not relevant to the underlying action because the Club is not similarly situated to the Church. See Primera Iglesia Bautista Hispana of Boca Raton, 450 F.3d 1295, 1311-12 (11th Cir. 2006) (affirming dismissal of RLUIPA Equal Terms Clause claim where school that had obtained relief from zoning ordinance was not similarly situated to a religious organization that had unsuccessfully applied for variance); Vision Church, United Methodist v. Village of Long Grove, 397 F. Supp. 2d 917, 930 (N.D. Ill. 2005) (granting motion for summary judgment dismissing RLUIPA Equal Terms Clause claim where public school that plaintiff claimed was excluded from ordinance was built before zoning ordinance applied to plaintiff was made law).

POINT II

**THE TESTIMONY SOUGHT AND DOCUMENTS REQUESTED ARE UNDULY BURDENSOME SINCE THE DOCUMENTS ARE NOT RELEVANT TO THE CHURCH'S CLAIMS AGAINST THE CITY IN THE UNDERLYING ACTION**

The determination of whether a subpoena is an undue burden raises the question of the reasonableness of the subpoena. 9A Wright & Miller, Federal Practice and Procedure, § 2463.1. The subpoena's reasonableness requires a court to weigh a subpoena's benefits and burdens by considering whether the information is relevant. See United States v. International Bus. Mach. Corp., 83 F.R.D. 97, 104 (S.D.N.Y. 1979) ("whether a subpoena imposes . . . an 'undue burden' depends upon 'such factors as relevance. . . .'"), New York State Energy Research & Dev.

Authority v. Nuclear Fuel Servs., Inc., 97 F.R.D. 709, 712 (W.D.N.Y. 1983) (relevance of subpoenaed information has an important bearing upon the determination of a claim that a subpoena duces tecum is unreasonable or oppressive); see also Fago v. City of Hartford, No. Civ. 3:02 CV 1189, 2003 WL 23689571, at *2 (D. Conn. Dec. 31, 2003) (granting motion to quash subpoena on grounds of irrelevancy). Moreover, courts accord special weight to the burden on non-parties of producing documents for others involved in litigation. Ebbert v. Nassau County, No. CV 05-5445, 2007 WL 674725, at *4 (E.D.N.Y. Mar. 5, 2007).

As set forth above, the Subpoena seeks testimony and documents from the Club based upon the Church's assumption that the Church and the Club are comparable or similarly situated with respect to the Church's claims against the City. Since the Church and the Club are not comparable or similarly situated under the applicable land use and zoning laws, the documents and information being sought are not relevant, and unduly burdensome, and the Subpoena should be quashed.

Moreover, even if the requested documents were somehow relevant, which they are not, the document requests are, even if modified in accordance with the Church's suggestions, unduly burdensome and overbroad. The Church still seeks all responsive documents for a period of over three years with respect to social events on behalf of all persons who are not members of the Club. If a member sponsors an event or a dinner for a family member, is that an event that the Church considers relevant? What if a member sponsors a dinner for his or her best friend? Is that something the Church deems relevant? There could be thousands of these events over the requested period of time and not only does the Church want to learn the number of these events, but it also wants documents demonstrating who attended the events, the revenues generated by

the events, and any communications with anyone about the events. This information is clearly burdensome, especially when the information is not relevant to the Church's underlying claims.

The Club has already provided the Church with copies of its certificates of occupancy and the Club is unaware of any communications with the City regarding whether any planned use of the Club was an accessory use. The Church also seeks information regarding the Club's tax returns and the manner in which the Club treats its revenue for tax purposes. Nothing could be more confidential that tax returns and related information. <u>Alpha Funding Group v. Continental Funding, LLC</u>, 17 Misc. 3d 959, 970, 848 N.Y.S.2d 825, 834 (N.Y. Sup. Ct. Kings Co. 2007) ("[D]isclosure of tax returns and other confidential documents is palpably improper as tax returns are not discoverable absent a showing of necessity."). To the extent that the Church believes that the Club "may well have similar agreements with caterers or other third parties concerning the issue of whether revenues from catered or other such ancillary events might have an impact on its tax-exempt status," (Church Mem. p. 8) the Club has stated unequivocally that it does not have any agreements with outside caterers or third parties. (Nuttal Aff. ¶ 34.) All of the banquet staff, including chefs, waitpersons, porters, *et al.*, are employees of the Club. The Church seems to overlook that the Club is a social club and provides these services on a daily basis to its members. This is precisely why the Club is different from a house of worship. Moreover, the Club has already stated that it has not had any communications with the City regarding the underlying action.

It is respectfully submitted that while there may be comparable entities located in proximity to the Church that could possibly supply relevant information, the Club is not one of those entities. It is a social club that has been holding catered events since 1894 in accordance with its as of right uses. The Church has only recently sought to hold catered events for which it

apparently needs permission from the City. Thus, the information sought from the Club is not relevant to the Church's claims against the City in the underlying action and, in any event, is unduly burdensome. As a result, the Subpoena should be quashed in all respects and the cross-motion to compel should be denied in all respects.

## CONCLUSION

For all of the foregoing reasons, it is respectfully requested that the motion to quash the Subpoena be granted in all respects and plaintiff's cross-motion to compel be denied in all respects.

Dated: New York, New York
      May 2, 2008

FULBRIGHT & JAWORSKI L.L.P

By: _____
Neil G. Sparber
Brian W. Tilker
666 Fifth Avenue
New York, New York  10103
(212) 318-3000
nsparber@fulbright.com
btilker@fulbright.com

Attorneys for Non-Party,
Metropolitan Club Inc.

Neil G. Sparber
Brian W. Tilker
FULBRIGHT & JAWORSKI L.L.P.
666 Fifth Avenue
New York, New York  10103
(212) 318-3000
nsparber@fulbright.com
btilker@fulbright.com

Attorneys for Non-Party,
The Metropolitan Club Inc.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| THIRD CHURCH OF CHRIST, SCIENTIST, OF NEW YORK CITY, <br><br> Plaintiff, <br><br> -against- <br><br> THE CITY OF NEW YORK and PATRICIA J. LANCASTER, in her official capacity as Commissioner of the New York City Department of Buildings. <br><br> Defendant. | CIVIL ACTION NO.  07-CV-10962 (DAB) <br><br> AFFIDAVIT |

---

STATE OF NEW YORK   )
                                         ) ss:
COUNTY OF NEW YORK )

Anthony J. Patrissi, being duly sworn, deposes and says:

1. I am a New York State licensed professional engineer and the former Chief Engineer for the New York City Department of City Planning. I am familiar with the facts herein. I submit this affidavit in support of the motion of non-party The Metropolitan Club (the "Club"), pursuant to Rule 45 of the Federal Rules of Civil Procedure, for an order quashing a subpoena which was served upon the Club on or about March 6, 2008 by the Third Church of

50076786.1

Christ, Scientist, of New York City (the "Church"), the plaintiff in the above-captioned action, and in opposition to the Church's cross-motion to compel discovery, on the grounds that the Club and the Church are not comparable or similarly situated, and therefore the documents and information sought in the subpoena are not relevant and are unduly burdensome.

2. The Church appears to make a number of arguments that are based upon erroneous assumptions. The Church states that the Zoning Resolution of the City of New York, as amended, (the "ZR") treats churches and clubs exactly the same. The Church apparently reaches this conclusion by virtue of the fact that both uses are listed under Use Group 4 in Section 22-14 of the ZR and both are permitted as-of-right in Residence Districts. This argument is simply not valid. Houses of worship and social clubs are entirely different principal use listings in ZR Section 22-14, even though they are both listed in Use Group 4. There are, however, many diverse entities listed in Use Group 4 which on their faces are not comparable or similarly situated. For example, non-profit hospitals are also listed in Use Group 4 and are also permitted in Residence Districts, but cannot be compared to a church or club. The only legitimate comparison that the Church could make is with other houses of worship, not other uses in Use Group 4, such as hospitals and social clubs.

3. The main argument that the Church makes for comparing itself with the Club is that holding catered events for non-members of the Club constitutes an accessory use, the same as it would for the Church. This argument is also incorrect. The ZR defines an accessory use in Section 12-10, in part, as a use that is "clearly incidental to, and customarily found in connection with, such principal use". Churches and social clubs cannot be compared with respect to their principal usage. Churches primarily serve a worship function. Clubs primarily serve a social function. Holding catered events is an integral part of a social function, which is the Club's

principal use. The Club has its own in-house hospitality staff to service these events. Holding catered events is not a use that is incidental to the principal use, and thus not an accessory use in accordance with the ZR's definition of accessory use. To the contrary, holding catered events is not an integral part of a church's worship function, its principal use. This activity is incidental to the principal use of the Church, which is religious worship, and falls within the ZR's definition of accessory use.

4. The principal use listing for clubs in Use Group 4 includes the language "Clubs, except (a) clubs, the chief activity of which is a service predominantly carried on as a business". Holding catered events for non-members would be subject to conformance with this condition. There is no explicit prohibition in holding catered events for non-members, as well as members, provided the activity does not rise to the level of being the chief activity of a club that could be construed as a business. The social events, whether catered or not, for members or not, are part of the principal use of the Club. The business use portion of such activities cannot be considered to be the predominant service of the Club, in proportion to all of the services offered by the Club. There is never a time that members of the Club are excluded from the Club or the use of its services or premises, even if a catered event for a non-member were to be held on the Club's premises.

5. There is no parallel language concerning business use in the principal use listing for houses of worship under Use Group 4. The ZR explicitly sets forth what constitutes a club under Use group 4 and thus treats clubs differently from houses of worship and other uses in this use group. Thus, a social hall for church events is truly an accessory use within the ZR's definition, separate and apart from the principal worship use of a church. The accessory use definition in ZR Section 12-10 states that it must be "customarily found in connection with and

be primarily for the benefit of the constituents of the principal use", the house of worship. Social halls are customarily found in houses of worship, but contracting with an outside commercial caterer to hold events exclusively unrelated to a house of worship does not conform to the accessory use definition that the activity be primarily for the benefit of the constituents of the principal use. The large monetary investment of the outside caterer in refurbishing the catering space for its use, and the statement by the Church that the Church services would not be taking place at the same time the catering events are taking place, supports the argument that the activity does not fall within the definition of accessory use. In fact, there does not appear to be any discussion of church activities taking place in the space, which would be needed to make it truly accessory. These facts, which imply that the activity is a separate principal use and not an accessory use to the Church, are apparently the reason for the Department of Buildings' denial of the accessory use, and not the social hall itself.

6.    As set forth in the Church's complaint, the City evaluated the catering activities of the Church with respect to the conditions set forth in the definition of "accessory use" in ZR Section 12-10, which would limit catering activities to an incidental use primarily for the Church's constituents.  This evaluation bears no similarity to an evaluation of the catering activities of the Club, which would require an evaluation of the conditions set forth in the principal use listing of "clubs" in ZR Section 22-14 which limit the business use of a club's activities (see ¶4, supra). The two evaluations are not comparable and thus the Club documents sought would be irrelevant to the Church's action against the Department of Buildings. Valid comparisons can only be made between the Church and other houses of worship that hold catered events in accessory social halls.

_[signature]_
Anthony J. Patrissi

Sworn to and subscribed before me
on this 2nd th day of April, 2008

_[signature]_
Notary Public

LUCIETTA PERROTTA
Notary Public, State of Florida
Commission# DD744132
My comm. expires Dec. 25, 2011

STATE OF Florida
COUNTY OF Volusia
Acknowledged before me this 2nd day of May 2008
by Anthony Patrissi
who is personally known or who has produced FL DL
as identification.

_[signature]_
Notary Public

50076786.1

5

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Affidavit of Anthony Patrissi and the Memorandum of Law in Further Support of Motion to Quash and in Opposition to Plaintiff's Motion to Compel was served via Federal Express and ECF on the 2nd day of May 2008 to:

> John Cuti, Esq.
> Davis Wright Tremaine LLP
> 1633 Broadway
> New York, New York 10019
> (212) 489-8230

_____
Brian W. Tilker