UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK

------------------------------------------------ x

THIRD CHURCH of CHRIST, SCIENTIST,   :
of NEW YORK CITY,                    :          07 Civ. 10962 (DAB)
                                     :
                  Plaintiff,         :
                                     :
         - against -                 :
                                     :
THE CITY OF NEW YORK and PATRICIA    :
J. LANCASTER, in her official capacity as, :
Commissioner of the New York City    :
Department of Buildings              :
                                     :
                  Defendants.        :

------------------------------------------------ x


## MEMORANDUM OF LAW IN
## SUPPORT OF PLAINTIFF'S MOTION TO COMPEL


**DAVIS WRIGHT TREMAINE LLP**
**1633 Broadway**
**New York, New York 10019**
**(212) 489-8230**

*Attorneys for Plaintiff*
*Third Church of Christ, Scientist, of New York City*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................................... i

INTRODUCTION ................................................................................................... 1

BACKGROUND ................................................................................................... 3

A.    Fourth Universalist Hosts Numerous Social Events ........................................ 3

B.    Fourth Universalist's Dilatory Conduct .......................................................... 4

ARGUMENT ....................................................................................................... 5

I.    The Church Seeks Information Relevant To Establish Its Claims and the City's Defenses 6

    A.    Information Concerning Social Events Is Relevant ................................... 6

    B.    Communications with the City Concerning Social Events Are Relevant ............ 8

    C.    Information Concerning "Accessory Use" and the Certificates of Occupancy Is Relevant ........................................................................ 9

    D.    Information Concerning the Reporting of Revenue for Tax Purposes Is Relevant ....................................................................... 9

    E.    Information Concerning Outside Caterers Is Relevant ............................... 10

    F.    Information Concerning Trade Names and Designations Is Relevant .............. 11

    G.    Information Concerning Membership Requirements Is Relevant .................. 11

II.    Any Rental Agreements At Issue Would Not Be Confidential ......................... 12

III.   The Subpoena Is Narrowly Tailored and Not Unduly Burdensome ................. 13

CONCLUSION .................................................................................................. 14

# TABLE OF AUTHORITIES

## <u>CASES</u>

<u>Page</u>

*Borzillieri v. Ameican Nat. Red Cross,* 139 F.R.D. 284 (W.D.N.Y. 1991) ..................................12

*Bridgeport Music Inc. v. UMG Recordings, Inc.*, No. 05 Civ. 6430 (VM)
    2007 WL 4410405 (S.D.N.Y. Dec. 17, 2007) .............................................................5, 13

*In re Subpoena Duces Tecum Served on Bell Communications Research, Inc.,* No. MA-85,
    1997 WL 10919 (S.D.N.Y. Jan 13, 1997) .......................................................................12

*Kirschner v. Klemons*, No. 99 Civ. 4828 (RCC), 2005 WL 1214330
    (S.D.N.Y. May 19, 2005)...........................................................................................13, 14

*MacNamara v. City of New York*, No. 04 Civ. 9612 (KMK)
    2006 WL 3298911 (Nov. 13, 2006 S.D.N.Y.).............................................................5, 13

*Travelers Indemnity Co. v. Metropolitan Life Insurance Co.*,
    228 F.R.D. 111 (D. Conn. 2005)........................................................................................10

## <u>STATUTES AND RULES</u>

<u>Page</u>

9 Moore's Federal Practice 3D § 45.03[1], 45-24 (2007) ...............................................................5

Fed. R. Civ. P. 26(b)(3)....................................................................................................................5

Fed. R. Civ. P. Rule 45 ...............................................................................................................5, 14

Plaintiff Third Church of Christ, Scientist, of New York City (the "Church"), respectfully submits this memorandum of law in support of its motion, pursuant to Rule 45(c)(2)(B) of the Federal Rules of Civil Procedure, for an order compelling non-party Fourth Universalist Society ("Fourth Universalist") to comply with the subpoena served upon it on March 6, 2008.

## INTRODUCTION

The City has sought to prohibit the Church from conducting social events in its building to raise revenues to sustain its existence, but routinely permits churches and non-profit institutions to hold social events at their institutions to supplement their income. This selective enforcement of land-use laws against the Church violates the Religious Land Use and Institutionalized Persons Act of 2000, as well as the Equal Protection Clause of the Fourteenth Amendment and the First Amendment. The City defends its conduct by arguing that the Church's catering activities are fundamentally different from the activities of other churches and non-profit institutions. *See* Brennan Decl.[1] ¶¶ 109, 127. We believe the City's factual claim is false and that the activities it permits at other churches and secular non-profits are not meaningfully different from the catering activities it seeks to prohibit at the Church.

On March 3, 2008, the Court granted the Church's request and issued an Order permitting the parties to conduct discovery. *See* Pa Decl. ¶ 2, Ex. A. On March 6, 2008, the Church served subpoenas on various non-parties, including Fourth Universalist. *Id.* ¶ 3, Ex. B. The discovery the Church seeks from this nonparty –a religious institution that we know from public sources

---

[1] This Memorandum of Law in Support of Plaintiff's Motion to Compel refers to various papers submitted on its motion for a preliminary injunction. Specifically, references are made to the Complaint, filed Dec. 3, 2007; the Declaration of Jay A. Segal, dated Dec. 3, 2007 ("Segal Decl."); the Reply Declaration of Jay A. Segal, dated Feb. 22, 2008 ("Segal Reply Decl."); the Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for a Preliminary Injunction, dated Feb. 8, 2008 ("Opp. Br."); the Declaration in Opposition to Plaintiff's Motion for a Preliminary Injunction, dated Feb. 8, 2008 ("Brennan Decl."); and Plaintiff's Reply Brief, dated Feb. 22, 2008 ("Reply Br.").

hosts a significant number of social events – plainly is relevant to, and will help the Court assess, the Church's legal claims.

On March 26, 2008, counsel for the Church spoke to a lawyer then representing Fourth Universalist, who said that her client intended to be cooperative. Pa Decl. ¶ 4. In order to facilitate compliance with the Subpoena, Church's counsel agreed to reduce the time period covered by the subpoena. *Id.* On April 2nd, long after Fourth Universalist's time to respond or object to the Subpoena expired, counsel for the Church sent an email inquiring about the status. *Id.* ¶ 5, Ex. C. On April 7th, its counsel informed the Church that Fourth Universalist had decided to handle the Subpoena internally, and that the Church should contact Reverend Rosemary Bray McNatt directly. *Id.* ¶ 6 The Church soon learned that Reverend McNatt was on sabbatical, and would not return until the middle of May. *Id.* ¶ 7. On April 9, 2008, the Church spoke with Beth Putnam, the Assistant to the Minister for Administration at Fourth Universalist, and informed her that the Church would be flexible, and would be happy to discuss ways to narrow the demands for documents. She assured the Church that Fourth Universalist intended to search for documents and would comply shortly. *Id.*

Notwithstanding these assurances, the Church received no response, and finally asked Fourth Universalist to produce responsive documents no later than April 24th. *Id.* ¶ 8. It also offered to go to Fourth Universalist's offices for an in-person meeting to discuss ways to search for and produce documents. *Id.* ¶ 10, Ex. E. However, on April 18th, Fourth Universalist informed the Church that they would not be able to produce documents by April 24th, but that Ms. Putnam would search for documents and provide a progress report by April 23rd. *Id.* ¶ 9, Ex. D and Ex. E.

Finally, after several weeks of holding off Church's counsel with various excuses and assurances, on April 28, 2008, Fourth Universalist sent a one-page letter objecting to the Subpoena outright (*id.* ¶ 11, Ex. F), claiming that it called for irrelevant information, that its hosting of social events was significantly different from the Churches', and that its documents were confidential.  This memorandum demonstrates that these objections are invalid and that there is no reason Fourth Universalist should be excused from complying with the Subpoena.

## BACKGROUND

### A.     Fourth Universalist Hosts Numerous Social Events

The Fourth Universalist Society in the City of New York/A Unitarian Universalist congregation, located at 4 W. 76th Street in the residential zone R10-A / R8B, also has a small congregation of approximately 150 members.  *See* Brennan Decl. ¶ 37; Segal Reply Decl. ¶ 18-19, and, like the Church, holds religious services on Sunday, in addition to other religious programs and workshops.  *Id.*  It rents out its historic building for catered events.  Its pays a significant amount of money to advertise its availability for social events in publications like *Locations* magazine.  Its advertisements consist of photographs of the interior event space, showing numerous scenes with decorated tables and receptions, rather than religious edifices.  Its advertisement states that it has a capacity for up to 593 guests for a reception, and 400 guests for dinner.  *See* Segal Reply Decl. ¶ 19, 37-38, Ex. H.

The Universalist Church identifies itself as the "Landmark on the Park," not as a religious institution, when advertising itself as an available catering space.  The advertisement uses the email address "Langlandmk@aol.com" for event inquiries.  The advertisement describes the church as follows:

> Landmark on the Park offers breath-taking neo-gothic
> surroundings, which feature masterpieces by Tiffany, Bolton, St.
> Gaudens and Steinway. The main hall offers a 70' vaulted ceiling

acoustically designed for music.  The 20' stone columns offer a
sense of royalty.

As of August 2007, the Universalist Church launched a website for its rental facility,

Landmark on the Park, www.landmarkonthepark.org.  *See* Segal Reply Decl. ¶ 21, Ex. H

(printout of http://www.4thu.net/2007/08/19/new-website-for-landmark-on-the-park).  The new

website does not mention that it is the Fourth Universalist congregation's church; instead, it

identifies the catering venue as "Landmark on the Park 4th U" and all catering inquiries are

directed to the email address "darius@4thu.org."  The majority of pictures on this website show

the interior of the building with various table formations and events; only one small picture

shows that the building is actually a church.  *Id.*  Significantly, the website suggests that any

member of the public may host an event here (not only a member of the church's congregation).

*Id.*

**B.    Fourth Universalist's Dilatory Conduct**

The parties have debated at length the nature and scope of catering activities at Fourth

Universalist throughout their papers.  *Compare* Brennan Decl. ¶ 136-138 Ex, GG, *with* Segal

Decl. ¶ 10, Segal Reply Decl. ¶ 18-22.  Because the Church had reason to believe that Fourth

Universalist permitted non-members to host social events at its premises, it served a Subpoena

on Fourth Universalist on March 6th, pursuant to the Court's order.  *See* Pa Decl. ¶ 3, Ex. B.

After corresponding with their church regarding compliance, Fourth Universalist's

counsel notified the Church that it had decided to handle the task of responding to the Subpoena

internally.  *Id.* ¶ 4-5, Ex. C.  The Church then directly contacted Fourth Universalist by

telephone, and learned that its reverend Rosemary Bray McNatt was away on sabbatical until the

middle of May.  *Id.* ¶ 7.  The Church's counsel had several telephone calls with Reverend

McNatt and Elizabeth Putnam, its assistant to the Minister for Administration, assuring them that

the Church would work with them to ease any burden of producing responsive documents in any way possible. *Id.* ¶ 7-10, Exs. C-E.  Throughout this time, Fourth Universalist assured the Church that it had every intention of cooperating and producing documents, but that it simply needed a little more time.  *Id.* Based on these assurances, the Church did not press them for an immediate response, though we did make clear that the Church faced an impending discovery deadline.  *Id.*, Ex. C.  Indeed, through several weeks of communication, Fourth Universalist never suggested it would resist compliance.  *Id.* Ex. D.

That all changed on April 28, 2008.  On that date, after further email correspondence requesting compliance, Fourth Universalist sent the Church a one-page letter stating that it objected to the subpoena on the grounds of relevance, and because its shared space arrangement was significantly different from the Church's.  *See* Pa Decl. ¶ 11, Ex. F.  It also objected on the grounds that information concerning its catering-related contractual arrangements is confidential. Given the Fourth Universalist's blanket objections, it is clear that the Church has exhausted all attempts at compromise and it is now constrained to move to compel its compliance with the Subpoena.

## ARGUMENT

Rule 45 of the Federal Rules of Civil Procedure governs the issuance of and compliance with subpoenas and the sanctions for non-compliance.  Rule 45 incorporates the definition of relevance under Rule 26(b)(1), which permits the discovery of any unprivileged matter "reasonably calculated to lead to the discovery of admissible evidence."  As such, discovery under Rule 45 "is intended to be as broad against a nonparty as against a party[.]"  *See* Fed. R. Civ. P. Rule 45, Commentary 45-6; 9 MOORE'S FEDERAL PRACTICE 3D § 45.03[1], 45-24 (2007). The party resisting discovery bears the burden of showing that the subpoena is improper and/or that compliance with the "subpoena would be unduly burdensome."  *MacNamara v. City of New*

*York*, No. 04 Civ. 9612 (KMK) (JCF), 2006 WL 3298911, 15 (S.D.N.Y. 2006); *Bridgeport*

*Music Inc. v. UMG Recordings, Inc.*, No. 05 Civ. 6430 (VM) (JCF), 2007 WL 4410405, 1

(S.D.N.Y. Dec. 17, 2007).

Subpoenas are not voluntary requests. Each is issued in the name of the Court and non-

compliance can constitute contempt. *See* 9 MOORE'S FEDERAL PRACTICE 3D § 45.02[1]; Fed. R.

Civ. P 45(e) ("Failure of any person without adequate excuse to obey a subpoena served upon

that person may be deemed a contempt of the court from which the subpoena issued."). Under

these standards, the Subpoena's targeted requests for relevant information are plainly proper.

**I.     The Church Seeks Information Relevant To Establish Its Claims and the City's Defenses**

**A.     Information Concerning Social Events Is Relevant**

Document Requests 1 and 2 are limited to seeking information about Social Events[2] at

Fourth Universalist. They seek documents related to:

1.    Any Social Event conducted on or in the Premises, including (a) the advertising, booking, and frequency of, (b) the attendance at, (c) the revenues generated by, and (d) any communication about such events; and,

2.    The total number of hours each year that the Premises are used for Social Events, including the number of hours it takes to set up for and clean up after each Social Event.

These two Requests therefore seek documents that go to the heart of this lawsuit. The

City has asserted that (i) the "frequency and intensity" of social events at the Church is unlike

those at comparable churches, including Fourth Universalist, where the events are allegedly only

"minimal and ancillary"; (ii) that the Church, "unable to support itself through traditional

means," is alone in its heavy dependence on revenue generated by social events; (iii) that the

Church's advertisements for its social events deceptively conceal the religious identity of its

---

[2] "Social Events" is a term defined in the rider to the Subpoena, and means any catered or other
social event on the Premises. *See* Ex. B, Ex. A, Instruction 11.

building and, therefore, allegedly show that the true purpose of the Church is to function as a social hall; and (iv) that because no catered events held there are for the Church's members, the catering arrangement cannot be said to support the Church's religious mission. *See* Brennan Decl. ¶ 6-8, ¶ 150-151; Opp. Br. at 15, 19, 21.

None of this is true, and the Church is entitled to discover facts to prove the point. The Church is not materially different from the numerous religious and secular institutions throughout the City so far as its "shared space" arrangement with a caterer is concerned. The City seeks to paint the picture of the Church as unique, when what it engages in is, in fact, a common and innocuous practice throughout New York City. The Church has made an initial showing that this is the case based on publicly available documents. But the Court has permitted the Church to buttress its claims by gathering evidence from non-parties regarding the frequency, intensity and duration of Social Events, the amount of revenue generated by them, the advertisements of event space, and information concerning the guests who attend these events.

Fourth Universalist's catering practices are very similar to the Church's. It apparently has a small congregation of approximately 150 members, *see* Segal Reply Decl. ¶ 18, so to supplement its income, it rents out its historic building (located in a residential district) to members of the general public for large catered events of up to 593 guests. *Id.* It also identifies itself in its advertisements as "Landmark on the Park," and omits any references to or photographs of its religious edifices. Its separate website for its catering facility is identified as "Landmark on the Park 4th U." *Id.*

Fourth Universalist's claim that its "rental arrangement with [its] renters is significantly different because [it] provides space rental and no food or other services," is without merit. The central issue in dispute is not who actually provides catering services, or the terms and details of

a catering arrangements; instead, the critical point is that religious and non-profit institutions, like Fourth Universalist, which are located in a residential districts, open their doors for catered events for members of the general public, and do so in order to raise money. There is every reason to believe that Fourth Universalist possesses numerous documents that will demonstrate the scope, intensity and impact of the catered events it permits to be held on its premises. Accordingly, information concerning social events at Fourth Universalist is relevant and discoverable.

### B.  Communications with the City Concerning Social Events Are Relevant

Document Requests 7 and 8 seek documents related to:

7.   Any application for any permit, license or other permission from the City to conduct Social Events, and the issuance or renewal of any such permit, license or other permission, whether formal or informal; and,

8.   Any communication with the City concerning the (a) issuance, (b) absence, and/or (c) need for a permit, license or other permission, formal or informal, to conduct Social Events at the Premises.

As discussed above, information concerning social events at Fourth Universalist is directly relevant to this case. It is also relevant that, as the Church has alleged, the City has permitted such activities for many years. Even if it is true, as the City contended in its papers, that it has never affirmatively granted approval for such accessory catered events, the record is clear that the City's tacit consent constitutes "treatment" under RLUIPA as well as the Equal Protection Clause. *See* Reply Br. at 12-13. But that does not mean that the Church is required to take the City's denial at face value. The Church has every right to explore Fourth Universalist has communicated with the City in any way with respect to their catering activities. Such information is directly relevant to issues raised in this case.

C.    **Information Concerning "Accessory Use" and the Certificates of Occupancy Is Relevant**

Requests 3 and 4 seek documents relating to:

3.    The Certificate of Occupancy for the Premises (the "CO"), including any amendments thereto; and,

4.    Any communication with the City regarding the use of the Premises, including communications regarding the CO, and/or whether any past, current, or planned use of the Premises is or was an "accessory use" under the City's Zoning Resolution or other applicable land use regulations.

This case involves the manner in which the City and its Department of Buildings regulate the accessory use of buildings owned by religious and secular non-profit groups for social events. There is evidence that at least some institutions referenced in the Complaint regularly host social events for members of the general public in apparent violation of their Certificates of Occupancy, and that the City is aware of that fact. *See* Segal Reply Decl. ¶¶ 44-46. It is plainly proper for the Church to use a subpoena to discover whether Fourth Universalist has communicated with the City regarding their Certificates of Occupancy.

D.    **Information Concerning the Reporting of Revenue for Tax Purposes Is Relevant**

Requests 5 and 6 seek documents showing the revenue generated by social events and whether, and if so to what extent, Fourth Universalist has discussed, analyzed and/or reported such revenue for tax purposes, to wit:

5.    Any portion of the annual report of the [the subpoenaed entity], or any submission to any taxing or other authority, regarding revenues generated by Social Events; and,

6.    Any analysis, investigation, or communication regarding the taxation of revenues generated by Social Events.

The Church does not request this tax-related information out of some idle curiosity. To the contrary, the City has squarely raised an issue regarding the Church's tax-exempt status and

the way in which revenue from catered events may affect that status. In their lease, the Church and the Rose Group agreed that if the Church loses its tax exemption because of revenues received from catering activities, then the Rose Group will be liable for payment of any resulting taxes assessed. The City says that this arrangement somehow shows that the Church no longer is truly a church but is instead a commercial catering hall. *See* Brennan Decl. ¶ 14, Opp. Br. at 5. While of course the Church disagrees with this contention, the City has made it an issue in the case. The Church is therefore entitled to show that other non-profit groups – including Fourth Universalist – may well have similar agreements with caterers or other third parties concerning the issue of whether revenues from catered or other such ancillary events might have an impact on the tax-exempt status of a particular organization. Indeed, the practice of allocating tax liability as a result of a shared space arrangement is addressed in newspaper and trade articles. *See, e.g.*, Segal Reply Decl. ¶ 49, Ex. Q, Landmarks Conservancy's Common Bond newsletter, Vol. 21, No. 1 (Summer 2006). Thus, to the extent that Fourth Universalist has custody or control of documents or information showing that they have, or have discussed, a similar arrangement regarding the liability for taxes and/or that they have considered the issue of whether revenues from ancillary catering or other non-religious use of its space might have an impact on their tax-exempt status, then the Church is entitled to discover those facts.

### E.    Information Concerning Outside Caterers Is Relevant

Document Request 9 seeks information concerning:

9.    Any independent person or entity that performs catering-related services (an "Outside Caterer") with which you have a contractual relationship, including without limitation (a) the terms and scope of that contractual relationship (whether it is oral or reduced to writing); (b) the frequency of the Outside Caterer's use of, or performance of services on or in, the Premises; (c) any repairs or improvements to the Premises made by, and/or for the benefit or use of, the Outside Caterer ; and (d) rent or use payments made by, or other financial arrangements with, the Outside Caterer.

The City argues that the Church's contractual arrangement with its caterer is highly unusual and gives so many rights to the caterer that it shows the Church is no longer primarily a religious institution. *See* Opp. Br. at 5. The Church disagrees with the City's characterization, and it should be entitled to show that other religious institutions and secular non-profits enter into a wide range of contractual arrangements with third parties that facilitate the hosting of social events. The Church has reason to believe that Fourth Universalist has a similar arrangement with an outside caterer or event host. The City's contention regarding the Church's lease makes the issue of whether Fourth Universalist has contracts with caterers relevant to this lawsuit. There is no basis to ignore the Subpoena's requests for such information.

### F.    Information Concerning Trade Names and Designations Is Relevant

Request 10 seeks information concerning:

> 10.    Any trade names, trademarks, or other names, marks, or designations that you use to identify the availability of catering and Social Events at the Premises.

The City argues that the Church's use of the name "583 Park" to advertise the availability of event space at its premises is further evidence that it has been effectively converted into a commercial catering hall because, by allowing the use of this brand name, it has concealed the religious identity of its building. *See* Brennan Decl. ¶ 6-8. But the use of a brand name to advertise event space is common in the industry. *See* Segal Reply Decl. ¶ 37, 39. The Church has learned from public sources that Fourth Universalist itself advertises the availability of its premises for social events under the name "Landmark on the Park." *Id.* ¶ 27. Because this issue has been directly challenged by the City, the Church is entitled under the Federal Rules to explore this practice with Fourth Universalist.

### G.    Information Concerning Membership Requirements Is Relevant

Document Request 13 seeks information concerning:

13.    Whether a Social Event at your institution may be hosted by any member of the general public or only by an existing member of your congregation, and, if the latter, what, if any, policy you have for admitting or accepting a new member of your institution.

The City argues that the Church is a commercial catering hall because it permits any member of the public to host Social Events on its Premises and because its events are unrelated to its religious mission. *See* Brennan Decl. ¶ 151; Opp. Br. at 1. Contrary to the City's assertions, however, the majority of non-profit and religious institutions, including Fourth Universalist, permit members of the general public to host Social Events at their facilities. Like the Church, Fourth Universalist also has a small congregation of approximately 150 members. *See* Segal Reply Decl. ¶ 150. Information about how it permits non-members to host social events is therefore relevant and discoverable.

## II.    Any Rental Agreements At Issue Would Not Be Confidential

Fourth Universalist makes a conclusory assertion that the subpoena "violates the confidentiality of our renter relationships." *See* Pa Decl. Ex. F. This is the first time in nearly two months of numerous correspondence that Fourth Universalist made any objection based on confidentiality. In so arguing, Fourth Universalist does not explain how agreements to rent space to throw a large event at Landmark on the Park is in any way confidential, nor does it state that any of its rental agreements contains a confidentiality clause. In fact, none of these agreements or relationships is confidential. They concern celebrations in a large public venue, not conducted in a private home, and none of the information in any such standard-form, arms-length catering agreement could contain any commercially sensitive information.

Further, the parties can address any confidentiality concerns by seeking a confidentiality agreement with Fourth Universalist limiting the use of produced information for purposes of this litigation only, or by redacting names and other identifying information about the event host. A

stipulated protective order would easily assuage any of Fourth Universalist's confidentiality concerns. *In re Subpoena Duces Tecum Served on Bell Communications Research, Inc.* No. MA-85, 1997 WL 10919, at * 3 (S.D.N.Y. Jan. 13, 1997) (confidentiality agreement "provides adequate protection" for customer proprietary documents even though there were confidentiality agreements with customers in place); *Borzillieri v. American Nat. Red Cross*, 139 F.R.D. 284, 288 (W.D.N.Y. 1991) (holding that "a properly framed protective order will permit plaintiff to [comply with the subpoena] without at the same time violating his or her constitutional right to privacy").

### III.    The Subpoena Is Narrowly Tailored and Not Unduly Burdensome

In its communications with counsel for the Church, Fourth Universalist has never suggested that compliance with the Subpoena would be unduly burdensome. To the extent that Fourth Universalist seeks now to object to the Subpoena on grounds of undue burden, its objection would be meritless for many of the reasons argued in the several other motions to compel pending before the Court in this matter. Accordingly, the Church will not brief the issue here; to the extent that Fourth Universalist asserts this objection, the Church will address it in reply.

### <u>CONCLUSION</u>

Because the Subpoena is valid, and neither unduly burdensome nor overbroad, the Court should compel Fourth Universalist to comply and produce the requested documents and produce

a witness for the demanded deposition.

Dated:  New York, New York
            May 5, 2008

                                          Respectfully submitted,

                                          DAVIS WRIGHT TREMAINE LLP

                                          By:_____
                                               Victor A. Kovner (VK 2248)
                                               John Cuti (JC 3365)
                                               Monica Pa (MP 3307)

                                          1633 Broadway
                                          New York, New York  10019
                                          (212) 489-8230

                                          *Attorneys for Plaintiff, Third Church of Christ,
                                          Scientist, of New York City*