UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

THIRD CHURCH of CHRIST, SCIENTIST, of
NEW YORK CITY,

                Plaintiff,

        -against-

THE CITY OF NEW YORK and PATRICIA J.
LANCASTER, in her official capacity as,
Commissioner of the New York City Department of
Buildings,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Case No.   07 Civ. 10962

(DAB) (FM)

(Electronically Filed Document)

---

## MEMORANDUM OF LAW IN OPPOSITION TO
## PLAINTIFF'S MOTION TO COMPEL NON-PARTIES 570 PARK AVENUE APARTMENTS, INC., 580 PARK AVENUE, INC., SUSAN RELYEA, as Member of the Co-Op Board of 580 Park Avenue, Inc. and THE BEEKMAN TENANTS CORPORATION TO COMPLY WITH SUBPOENAS AND IN SUPPORT OF CROSS-MOTION TO QUASH

---

KURZMAN KARELSEN & FRANK, LLP
230 Park Avenue
New York, NY  10169
(212) 867-9500
Attorneys for Non-Parties 570 Park Avenue Apartments, Inc.,
580 Park Avenue, Inc., Susan Relyea, as Member of the
Co-Op Board of 580 Park Avenue, Inc.,
and The Beekman Tenants Corporation

## TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………..…………iii

INTRODUCTION………………………………………………………………………….1

BACKGROUND……………………………………………………………………………5

ARGUMENT……………………………………………………………………………...5

    I.    THE COURT'S DISCOVERY ORDER DOES NOT AUTHORIZE ISSUANCE OF THE SUBPOENAS TO THE COALITION MEMBERS OR MS. RELYEA, WHO ARE NOT SIMILARLY SITUATED AND, THEREFORE, THE SUBPOENAS SHOULD BE QUASHED IN THEIR ENTIRETY……………6

    II.    THE COALITION MEMBERS' AND MS. RELYEA'S ASSERTIONS OF OVER-BREADTH AND UNDUE BURDEN ARE WARRANTED, AND, THEREFORE, THE SUBPOENAS SHOULD BE QUASHED AND/OR MODIFIED…………………………………………………………… 9

        A.    Plaintiff Readily Admitted The Temporal Scope Of The Subpoenas Is Overbroad and Unduly Burdensome…………………………………..9

        B.    The Definitions and Preamble of the Subpoenas Are Overbroad………..10

        C.    Plaintiff's Demand For Publicly Available Documents Is An Undue Burden On The Coalition Members And Susan Relyea…………………12

        D.    Plaintiff's Request For Confidential Information Is Unduly Burdensome And Should Be Subject To A Protective Order…………………….....13

        E.    Plaintiff's Subpoena To The Beekman Is Unduly Burdensome And Should Be Modified, If Not Quashed…………………………………………14

    III.    THE COALITION MEMBERS' AND MS. RELYEA'S ASSERTION OF WORK-PRODUCT PRIVILEGE IS PERMISSIBLE UNDER FEDERAL CASE LAW, DESPITE THEIR BEING NON-PARTIES……………………………...17

    IV.    EVEN IF THE COURT AGREES THAT THE COALITION MEMBERS AND MS. RELYEA ARE SUBJECT TO DISCOVERY AT THIS TIME, THEY ARE ENTITLED TO FULL OR PARTIAL REIMBURSEMENT OF THEIR COSTS AND/OR ADDITIONAL TIME TO COMPILE THE RESPONSIVE DOCUMENTS AND THINGS …………………………………………………19

CONCLUSION……………………………………………………………………………22

194531.1

# TABLE OF AUTHORITIES

**CASES**

*Borzillieri v. American National Red Cross*, 139 F.R.D. 289 (W.D.N.Y. 1991)………………..13

*Center Square Ass'n, Inc. v. City of Albany Bd. of Zoning Appeals,* 9 A.D.2d 651, 780 N.Y.S.2d 203 (3d Dep't 2004)……………………………………………………………………………...18

*Ebbert v. Nassau County*, No. CV 05-5445, 2007 WL 674725 (E.D.N.Y. Mar. 5, 2007)………..5

*Greek Orthodox Archdiocese of North and South America v. Abrams*, 162 Misc. 2d 850, 618 N.Y.S.2d 504 (Sup. Ct. N.Y. Co. 1994)………………………………………………………14

*In re Criminal Contempt Proceedings Against Crawford*, 133 F.Supp.2d 249 (D.C.N.Y. 2001)...3

*In re Exxon Valdez*, 142 F.R.D. 380 (D.D.C. 1992)………………………………....…………19

*In re First American Corp.*, 184 F.R.D. 234 (S.D.N.Y. 1998)………………..……………… .19, 20

*Long v. American Red Cross*, 145 F.R.D. 658 (S.D. Ohio 1993)……………………………..…13

*Pan Am. World Airways, Inc. v. Flight Engineers' Int'l Ass'n, PAA Chapter, AFL-CIO*, 306 F.2d 840 (C.A.2d 1962)……………………………………………………………………………..…..3

*Polycast Tech. v. Uniroyal,* No. 87 Civ. 3297, 1990 WL 138968 (S.D.N.Y. Sept. 20, 1990)…..18

*Sampson v. Murray*, 415 U.S. 61 (1974)…………………………………………………………….3

*Sea Tow Intern., Inc. v. Pontin*, 246 F.R.D. 421 (E.D.N.Y. 2007)………………………..…………5

*St. Andrey Bulgarian Eastern Orthodox Cathedral Church, Inc. v. Bosakov*, 272 A.D.2d 55, 707 N.Y.S.2d 95 (1st Dep't 2000)……………………………………………………………… …14

*Travelers Indemnity Co. v. Metropolitan Life Ins. Co.*, 228 F.R.D. 111 (D. Conn. 2005).........................................................................................................................................9, 13, 16

*United States v. Nixon,* 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974)………………...5

*United States v. Pelaez,* No. 96 Cr. 464, 1997 U.S. Dist. LEXIS 11334, at *3 (S.D.N.Y. Feb. 20, 1997)………………………………………………………………………………………….5

**STATUTES AND RULES**

FRCP Rule 45(c)(2)(B)…………………………………………………………………1, 5, 19, 20

FRCP Rule 45(c)(3)(A)(iii), (iv)…………………………………………………………………………..5

New York Religious Corporation Law §12……………………………………………………………...14

Non-parties 570 Park Avenue Apartments, Inc. ("570 Park"), 580 Park Avenue, Inc. ("580 Park"), The Beekman Tenants Corporation ("Beekman") (collectively, the "Coalition Members"), and Susan Relyea, as Member of the Co-Op Board of 580 Park ("Ms. Relyea") (hereinafter sometimes referred to collectively as the "Neighbors") submit this memorandum in opposition to the motion to compel compliance with subpoenas served upon the Coalition Members and Ms. Relyea by Plaintiff Third Church of Christ, Scientist, of New York City ("Plaintiff") and in support of their cross-motion to quash. Plaintiff's motion to compel was filed in response to the written objections made, pursuant to FRCP Rule 45(c)(2)(B), by the Coalition Members and Ms. Relyea.

## INTRODUCTION

The instant controversy involves a discovery dispute between Plaintiff and the non-party Coalition Members and Ms. Relyea. It is respectfully submitted that to properly determine the issues raised herein, it is critical to review the context of the dispute. Plaintiff attempts to justify the overbearing discovery requests against the Coalition Members and Ms. Relyea on the grounds of alleged improper pressure placed upon the New York City Department of Buildings ("DOB"). In fact, as demonstrated in the Declaration of Phyllis H. Weisberg, dated May 5, 2008, it was the Plaintiff and its Tenant-Caterer who engaged in misrepresentations in seeking approval for an improper commercial use of the church building; the Coalition Members and Ms. Relyea were properly exercising their First Amendment rights to petition the government for redress of grievances in connection with such improper use.

Plaintiff brought this lawsuit to force the City and Defendant Patricia J. Lancaster, in her official capacity as Commissioner of the DOB to permit a non-accessory commercial catering use at its church premises at 583 Park Avenue in violation of the City's zoning

1

regulations as they relate to residential districts.  In the Plaintiff's Complaint and instant Motion to Compel, Plaintiff tries to place the Coalition[1] in a negative light for purportedly being the catalyst that caused the DOB, on November 30, 2007, to revoke Plaintiff's accessory use permit. The Plaintiff's gratuitous, pejorative and inflammatory allegations against the Coalition Members and Ms. Relyea—i.e. that they, a group of "influential denizens of Park Avenue", organized a "NIMBY campaign," "pressed pretextual complaints," used "24-hour video surveillance" to "spy"[2] and hired a lobbyist to refine their "spin"[3] -- are contrary to the facts. Indeed, the City revoked the Plaintiff's accessory use permit after it learned facts, *evidenced by the Plaintiff's own contradictory, misleading and false filings with the City and New York State*, which the Coalition presented to it in a clear manner.  *See* Declaration of Phyllis H. Weisberg.

Citizens, such as the Neighbors, have a <u>legitimate</u> role in presenting their viewpoints to the governmental agencies such as the DOB.  As recently demonstrated, the DOB's failure to investigate numerous public complaints about zoning and safety problems in connection with the construction of a 43-story condominium—which the Commissioner admitted was "mistakenly approved" because it was not zoned for a height above 30 stories—contributed to the circumstances that led to a crane collapse.  *See* Weisberg Decl. ¶6.  An overworked DOB needs to and should rely on the community in order to ensure that the information provided to it

---

[1] The Coalition consists of cooperative apartment corporations that own the following buildings:  116 E. and 125 E. 63rd Street and 535, 550, 555, 563, 565, 570, 575, and 580 Park Avenue.  These buildings are all located in the immediate vicinity of Park Avenue and 63rd Street, where 583 Park is located.  *See* Weisberg Decl. ¶1.  Only 570 Park, 580 Park, Ms. Relyea and Beekman (575 Park Avenue), however, have received subpoenas from the Plaintiff.
[2] *See* Weisberg Decl., footnote 5.
[3] The Plaintiff states that the Coalition has done "far more than merely write a few letters to state their views," including hiring Howard Rubenstein "to help them refine their spin on what the Church is "really" doing."  *See* Plaintiff's Memorandum of Law at page 1.  While it is true that the Coalition has been active in stating its views on the Church's commercial catering establishment, and has hired a public relations/lobbying person, the Plaintiff has been no less active.  *See* Weisberg Decl., footnote 4.

is accurate and its decisions are sound.  This is all the more so when the issue is one of zoning rather than construction since zoning is designed to maintain the character of the communities.

Given the extraordinary breadth of the subpoenas issued to the Neighbors, concerned citizens, it seems Plaintiff is issuing such discovery to the Coalition Members in a bad faith effort to quell the ongoing opposition and silence those who have exposed the improper catering use for what it is and petitioned for redress in connection therewith.  Plaintiff's actions have the effect of a SLAPP suit, which is prohibited under New York Civil Rights Law §70-a because it retaliates against citizens' public petition and participation.  Additionally, Plaintiff's service of extraordinarily broad subpoenas on the Neighbors, as well as other non-parties – e.g. the Riverside Church, St. Ignatius of Loyola Church and the Metropolitan Club – that are now the subject of motion practice, suggests that Plaintiff, having been granted a temporary restraining order that has been in effect for almost five (5) months, is using broad discovery that engenders lengthy disputes as a possible way to postpone the preliminary injunction hearing and continue the temporary restraining order.[4]

While the Beekman may be different from the other Coalition Members (strictly residential buildings) and Ms. Relyea (a shareholder in one of the strictly residential buildings), in that there is a small restaurant, Park Avenue Café, operated by the Beekman's tenant in a portion of the ground floor of its building, the Beekman is not similarly situated to the Plaintiff. [5] Further, unlike the Plaintiff, the Beekman's tenant's restaurant can only seat up to 75 persons or

---

[4] In the context of determining whether a TRO can be appealed, it has been held that a TRO which continues until resolution of the preliminary injunction motion and does not expire within 10-20 days under FRCP 65(b) becomes, in effect, an appealable preliminary injunction.  *See In re Criminal Contempt Proceedings Against Crawford*, 133 F.Supp.2d 249 (D.C.N.Y. 2001) citing *Sampson v. Murray*, 415 U.S. 61, 87-88 (1974); *Pan Am. World Airways, Inc. v. Flight Engineers' Int'l Ass'n, PAA Chapter, AFL-CIO*, 306 F.2d 840 (C.A.2d 1962).

[5] Unlike the Plaintiff, the Beekman, an apartment hotel, is permitted to have a restaurant in its premises pursuant to the City's Zoning Resolution §12-10.

90 persons at a standing reception—a far cry from the massive catering hall for over 1000 people that Plaintiff's Tenant-Caterer operates, as described below and in the Weisberg Declaration.

Plaintiff's assertion that the Coalition Members and Ms. Relyea are objecting to the subpoenas because they "do not want their conduct discovered," is baseless.  The Neighbors have, in an attempt to resolve this matter without motion practice, stated in a letter dated April 25, 2008, that they are willing to produce relevant, non-privileged documents.  *See* Weisberg Decl. Ex. U.  Plaintiff, however, essentially rejected this offer in its letter of April 28, 2008, in which it demanded extensive and unwarranted additional materials.  *See* Weisberg Decl. Ex. V.

This memorandum establishes that:

- the Court's discovery order does not authorize issuance of the subpoenas to the Coalition Members or Ms. Relyea, who are not similarly situated and, therefore, the subpoenas should be quashed in their entirety (*see* Point I, *infra*);

- the Coalition Members' and Ms. Relyea's assertions of over-breadth and undue burden are warranted, and, therefore, the subpoenas should be quashed and/or modified (*see* Point II, *infra*);

- the Coalition Members' and Ms. Relyea's assertion of work-product privilege is permissible under federal case law, despite their being non-parties (*see* Point III, *infra*); and

- even if the Court agrees that the Coalition Members and Ms. Relyea are subject to discovery at this time, they are entitled to full or partial reimbursement of their costs and/or additional time to compile the responsive documents and things (*see* Point IV, *infra*).

## BACKGROUND

The Declaration of Phyllis H. Weisberg, dated May 5, 2008, set forth background information, which demonstrates that the alleged necessity for extraordinarily broad discovery of the Coalition Members and Ms. Relyea because they 'improperly influenced' the City is pretextual and should be denied.

## ARGUMENT

Under FRCP Rule 45 ("Subpoena"), subsection (c)(2)(B) ("Objections"), the recipient of a subpoena duces tecum may serve "a written objection to inspecting, copying, testing or sampling any or all of the materials." In response, the serving party may make a motion to compel production or inspection. *See* FRCP Rule 45(c)(2)(B)(i). Further, the order compelling production or inspection "must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance." *See* FRCP Rule 45(c)(2)(B)(ii). Additionally, under subsection (c)(3)(B) ("Quashing or Modifying a Subpoena"), on timely motion, the court "must quash or modify a subpoena" that requires disclosure of privileged or protected matter or subjects a person to undue burden. *See* FRCP Rule 45(c)(3)(A)(iii), (iv).

Case law indicates that subpoenas pose an unreasonable burden on non-parties if they are permitted to degenerate into a pure fishing expedition. *See Sea Tow Intern., Inc. v. Pontin*, 246 F.R.D. 421, 428 (E.D.N.Y. 2007) citing *United States v. Pelaez,* No. 96 Cr. 464, 1997 U.S. Dist. LEXIS 11334, at *3 (S.D.N.Y. Feb. 20, 1997) (quashing subpoena where the document request was "overbroad and a patent attempt at a forbidden 'fishing expedition'", quoting *United States v. Nixon,* 418 U.S. 683, 700, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974)). Courts accord special weight to the burden on non-parties of producing documents for others involved in litigation. *See Ebbert v. Nassau County*, No. CV 05-5445, 2007 WL 674725 at *4

(E.D.N.Y. Mar. 5, 2007).

I.    **THE COURT'S MARCH 3, 2008 DISCOVERY ORDER DOES NOT AUTHORIZE ISSUANCE OF THE SUBPOENAS TO THE COALITION MEMBERS OR MS. RELYEA, WHO ARE NOT SIMILARLY SITUATED, AND, THEREFORE, THE SUBPOENAS SHOULD BE QUASHED IN THEIR ENTIRETY**

The Court's pre-hearing discovery order dated March 3, 2008 ("Order") does not expressly permit Plaintiff to issue any discovery to residential buildings, such as those owned by the Coalition Members, in the Plaintiff's neighborhood.  *See* Pa Decl., Exs. J-M.  Indeed, the Order states that pre-hearing discovery can include:

> requests for documents and depositions from several *religious and non-religious institutions that may conduct similar catered events to those at issue in this matter,* as well as document requests and depositions of City officials who may have knowledge relevant to the Church's claims.

(emphasis added) *See* Pa Decl., Ex. A.  Based upon the scope of the Order, the Coalition Members, including the Beekman, and Ms. Relyea contend that Plaintiff has no legal right to issue discovery at this point in the litigation, because they are not similarly situated: they do not conduct any catered events, let alone similar catered events, at their buildings.

While the Beekman is different from the other subpoenaed parties-- Ms. Relyea (a shareholder in one of the strictly residential buildings) and the other Coalition Members (strictly residential buildings)-- in that there is a small restaurant, Park Avenue Café, operated by the Beekman's tenant in a portion of the ground floor of its sixteen (16) story building, the Beekman is not similarly situated to the Plaintiff.  Unlike the Plaintiff, the Beekman, an apartment hotel, is

permitted to have a restaurant[6], Park Avenue Café, in its premises pursuant to the City's Zoning Resolution §12-10 (such restaurant is not limited to tenants only). *See* Weisberg Decl. ¶28. Further, unlike the caterer in Plaintiff's building, the Park Avenue Café—its Archive Room, Townhouse and Kitchen Table combined-- can only seat up to 135 persons—a far cry from the massive catering hall for over 1000 people that Plaintiff's Tenant-Caterer operates. *See* Weisberg Decl. ¶29. Such place is not nearly comparable to the massive commercial catering established at the church.

   For the Plaintiff to suggest that the Park Avenue Café's Townhouse, a private dining room which seats a mere <u>50 guests</u>, is a similarly situated "banquet facility" that has a "robust" operation is disingenuous; even Plaintiff's March 30, 2007 Confidential Private Placement Memorandum, submitted to the New York State Attorney General and modified apparently solely to silence community complaints – but not to change the operation-- does not attempt to suggest that the Townhouse is potential "direct competition."[7] *See* Weisberg Decl. ¶21. Even more revealing, Plaintiff's original September 29, 2006 Confidential Private Placement Memorandum lists "direct competition" that caters up to <u>2800 guests</u>. *See Id.* Even the Tenant-Caterer represented that it would not be financially feasible to operate catered events of 100 persons or less at the church. *See* Weisberg Decl. ¶30.

   Since the Plaintiff and the Coalition Members/Ms. Relyea are not comparable or similarly situated, the testimony and documents sought are outside the scope of the Order.

---

[6] The reason for having a restaurant in an apartment hotel, where the units are used for permanent occupancy but one or more hotel services are provided, such as housekeeping, is because apartment hotels are designed with kitchenettes, not full kitchens, so it is more comfortable and convenient for residents to dine at the restaurant. *See* Weisberg Decl. ¶28.

[7] Page 9 of the March 30, 2007 Confidential Private Placement Memorandum lists venues with estimated seated dinner capacities of 200 through 700 guests as direct potential competition. Plaintiff previously stated in its September 29, 2006 Confidential Private Placement Memorandum, submitted to the New York State Attorney General, on page 15, that the venues comparable to it are those with seated dinner capacities of 400 to 2800 guests. *See* Weisberg Decl. Ex. M.

Notwithstanding, Plaintiff takes the position that during the 90-day period granted in the Order, Plaintiff has the right to pursue full, rather than limited, discovery. *See* Pa Decl., Ex. P. Plaintiff argues that the Coalition Members' and Ms. Relyea's narrow reading of the Order is incorrect because the Order says discovery can "include" and is not limited to the "examples" in the Order, which it claims are merely illustrative. Because the discovery period is restricted to ninety (90) days with no extensions, however, it does not make sense to interpret broadly the Order to give Plaintiff full unrestricted discovery rights. But under Plaintiff's interpretation, discovery would be limitless both as to subject and categories of persons.

Most significantly, Plaintiff's current "needs" for broad discovery are contradicted by Plaintiff's written representation to this Court on February 22, 2008 that only "limited discovery" is sought. *See* Weisberg Decl. Ex. Q. In that letter, counsel for Plaintiff stated that, "Plaintiff continues to believe that *limited discovery* of the City, *as well as* of non-parties, would help develop the factual record" (emphasis added). The fact that Plaintiff "needs" in connection with its motion for a preliminary injunction all of the discovery sought by its extraordinarily broad subpoenas, designed to provoke motion practice during the short discovery period,[8] appears to suggest that Plaintiff is trying to extend the temporary restraining order, which has already been in effect for about five months, by fostering motion practice as to its subpoenas.

Moreover, based on the allegations in the Complaint, it does not appear that discovery from the Coalition Members or Ms. Relyea is relevant to Plaintiff's motion for a

---

[8] In addition to the Plaintiff's instant Motion to Compel, according to the docket, The Metropolitan Club has filed a Motion to Quash the subpoena pursuant to Rule 45 on the ground that the requests therein are irrelevant and an undue burden on the Club. Additionally, both the Roman Catholic Church of St. Ignatius of Loyola and the Riverside Church have opposed Plaintiff's Motion to Compel compliance with its subpoenas on the basis of privacy and/or irrelevance.

preliminary injunction against Defendants.  *See* Pa Decl., Ex. B.  In its Motion to Compel, Plaintiff has not indicated how discovery from the Coalition Members or Ms. Relyea will help it prove any of the elements of its RLUIPA and Equal Protection claims.  Even assuming, but not conceding, that the Order's scope includes discovery of these parties, as discussed below, the broad nature of the requests goes well beyond the "limited discovery" contemplated by the Order.  Accordingly, the Plaintiff's subpoenas should be quashed entirely, including the subpoena for Ms. Relyea's deposition testimony.

## II.    THE COALITION MEMBERS' AND MS. RELYEA'S ASSERTIONS OF OVER-BREADTH AND UNDUE BURDEN ARE WARRANTED, AND, THEREFORE, THE SUBPOENAS SHOULD BE QUASHED AND/OR MODIFIED

Assuming, without conceding, that Plaintiff has a need for the information contained in the subpoenas, the need is outweighed by the burden upon the Coalition Members and Ms. Relyea and availability elsewhere.  Relevance is a factor in a balancing test that applies to non-party subpoenas.  Thus, an evaluation of undue burden requires the court to weigh the burden to the subpoenaed party against the value of the information to the serving party and requires the court to consider such factors as *relevance*, the *need* of the party for the documents, the *breadth* of the document request, the *time* period covered by it, the *particularity* with which the documents are described and the *burden* imposed.  *See Moon v. SCP Pool Corporation,* 232 F.R.D. 633 (C.D. Cal. 2005) citing *Travelers Indemnity Co. v. Metropolitan Life Ins. Co.*, 228 F.R.D. 111, 113 (D. Conn. 2005) and *United States v. IBM*, 83 F.R.D. 97, 104 (S.D.N.Y. 1979).

### A.    Plaintiff Readily Admitted The Temporal Scope Of The Subpoenas Is Overbroad and Unduly Burdensome

In this case, it is unduly burdensome for the Coalition Members and Ms. Relyea to produce any and all documents for the period January 1, 2000 to the present, as the subject

9

controversy did not arise until late 2006 or early 2007, about one year after the Tenant-Caterer signed the lease with the Plaintiff. *See supra; also see* Pa Decl. Exs. J-M. Although Plaintiff was advised of this objection by letters dated April 10, 2008, and *Plaintiff agreed* that the subpoenas were overbroad in their temporal scope in its letter of April 14, 2008 (Pa Decl., Ex. P)—evidencing Plaintiff knew its request was "out of line"--Plaintiff had the audacity to represent to the Court that "each objection" that KK&F has to the subpoenas "is baseless". *See* Memorandum of Law, p. 1. Plaintiff failed to limit the temporal scope of the subpoenas issued not only to the Coalition Members and Ms. Relyea, but also to the Riverside Church and St. Ignatius of Loyola Church. *See* Plaintiff's Memorandum of Law in Support of Motion to Compel The Riverside Church and St. Ignatius of Loyola at page 13. Such is evidence that during this limited discovery period, Plaintiff is on a fishing expedition for documents, a prohibited practice, and seemingly attempting to engender motion practice to delay the preliminary injunction hearing, knowing that its claims cannot be substantiated. *See Sea Tow Intern., Inc. v. Pontin*, 246 F.R.D. 421, 428 (E.D.N.Y. 2007).

**B.    The Definitions and Preamble of the Subpoenas Are Overbroad.**

The subpoenas issued to the Coalition Members and Ms. Relyea are overbroad. For example, the meaning Plaintiff gives to the term "Social Events" in the Definitions section of the subpoenas to 570 Park, 580 Park and Susan Relyea--"any catered or other social event"-- is overbroad. The meaning Plaintiff gives to the term "Social Events" in the Definitions section of the subpoenas to the Beekman--"any catered or other social event conducted at the Premises, whether for residents of the Premises or for the general public"-- is likewise overbroad. This was also pointed out in the Metropolitan Club's Reply Memorandum of Law in Support of

10

Motion to Quash.[9]  In all subpoenas, Plaintiff defines the term by repetition of the same term – a

'social event' is a 'social event.'  The Coalition Members and Ms. Relyea disputed that the term

"social events" was relevant to the Plaintiff's claim by objection letters dated April 10, 2008,

insofar as it can be construed to mean any event in the private residences within the building,

such as small dinner parties and small social gatherings—events that are not commercial and no

way comparable or relevant to the commercial catering events held at 583 Park.  *See* Pa Decl.

Exs. J-M.

Plaintiff now agrees with the Coalition that the term "Social Events" is overly

broad - but with respect to its subpoena to the Beekman only.  *See* Plaintiff's Memorandum of

Law, p. 14.  Plaintiff's failure, however, to give a clear definition of "social events" in the

subpoenas is indicative of its failure to propound clear document demands.  This failure has

resulted in lengthy discovery disputes and motion practice, to Plaintiff's advantage, as discussed

above.

Additionally, the meaning Plaintiff gives to the term "You" or "your" in the

Definitions section of the subpoena to Ms. Relyea is overbroad.  The subpoena was issued to and

served upon Ms. Relyea *in her capacity  as member of the Co-Op Board of 580 Park Avenue*, but

requires her to answer the subpoena in her individual capacity as well.  Ms. Relyea believes

Plaintiff's service of the Subpoena upon her is nothing more than an attempt to interfere with and

impede Ms. Relyea in her exercise of her First Amendment right to petition the government for

---

[9] On page 6 of said Reply Memorandum, the Metropolitan Club states: "If a member sponsors an event or a dinner for a family member, is that an event that the Church considers relevant? What if a member sponsors dinner for his or her best friend? Is that something the Church deems relevant? There could be thousands of these events over the requested period of time and not only does the Church want to learn the number of these events, but it also wants documents demonstrating who attended the events, the revenues generated by the events, and any communications with anyone about the events.  This information is clearly burdensome, especially when the information is not relevant to the Church's underlying claims."

redress.  The subpoena should at least be narrowed to remove the requirement that Ms. Relyea answer the subpoena or produce documents in her individual capacity, since her activities were as board member only.  Notably, if Ms. Relyea has to answer individually, given the definition of "Social Events" – she would in effect have to produce her entire social calendar for the last six years – which is intrusive, violates her privacy and is blatantly irrelevant.

Further, the "Document Requests" section of the subpoenas is overbroad because it begins with the preamble, "All documents concerning or in any way related to."  This preamble to each and every document request makes the requests non-particular and overbroad.  For example, "all documents concerning or in any way related to (1) The Church" and "all documents concerning or in any way related to (2) The Building" could encompass irrelevant documents (i.e. letters written to Plaintiff stating that its light is shining in neighbor's window, roofing is loose, or other matters of a neighborly nature) as well as attorney-client privileged information and/or attorney work product.

### C.    Plaintiff's Demand For Publicly Available Documents Is An Undue Burden On The Coalition Members And Susan Relyea

The value of the information to the Plaintiff is outweighed by the burden upon the Coalition Members and Ms. Relyea and the availability of the information from alternative sources.  Plaintiff has already obtained, through Freedom of Information Law ("FOIL") requests and through the Defendants' submissions in this case, certain documents demanded from the Coalition Members and Ms. Relyea.  Also, Plaintiff's requests are unduly burdensome to the extent that some of the documents demanded by Plaintiff from the Coalition Members and Ms. Relyea are publicly available (e.g. certificates of occupancy, letters  or applications to governmental agencies).  *See* Pa Decl., Ex. Q.  These public documents are obtainable from

Defendant City of New York and/or other governmental agencies and should be sought from those sources.[10]  As stated in the case cited by Plaintiff, *Travelers Indemnity Co. v. Metropolitan Life Ins. Co.*, 228 F.R.D. 111, 114 (D. Conn. 2005), where "the information appears to be publicly available from a source that is more convenient, less burdensome or less expensive," it is an undue burden on the non-party to have to produce it.  In fact, Plaintiff has already obtained, through FOIL requests[11] and through the Defendants' submissions in this case, documents demanded from the Coalition Members and Ms. Relyea.

### D.    Plaintiff's Request For Confidential Information Is Unduly Burdensome And Should Be Subject To A Protective Order

The subpoenas require the production of certain documents such as board of directors minutes, tax returns, non-public information such as passwords included in communications with or about State and City Lobbying Commissions.  It is hard to fathom how these documents are remotely relevant.  In any event, these documents are confidential and should not be produced, if at all, without protective measures in place.  Indeed, confidential information that does not qualify as a constitutionally protected privacy interest may nevertheless be entitled to protection against unwarranted public disclosure resulting from discovery in federal civil litigation.  *See Long v. American Red Cross*, 145 F.R.D. 658, 664 (S.D. Ohio 1993) (protected privacy interest in blood donor's medical condition); *Borzillieri v. American National Red Cross*, 139 F.R.D. 289 (W.D.N.Y. 1991) (protected privacy interest in AIDS risk status).

---

[10]  Plaintiff has conceded this point already, in its April 17, 2008 letter, annexed to the Pa Decl., Ex. R, by suggesting a "rolling response" to the subpoenas, so as to exclude duplication of materials produced by the City.

[11]  Through FOIL requests, the Coalition Members and Ms. Relyea have obtained copies of letters from Plaintiff responding to letters written by KK&F on behalf of the Coalition Members and Ms. Relyea to governmental officials.

### E.    Plaintiff's Subpoena To The Beekman Is Unduly Burdensome And Should Be Modified, If Not Quashed.

As explained above in Point I, the Beekman is admittedly different from the other Coalition Members and Ms. Relyea.  It is not a strictly residential building, but an apartment hotel that houses the Park Avenue Café (Archive Room), a small restaurant with a maximum seating capacity of <u>75 guests</u>, the Park Avenue Café (Townhouse), a small private dining room with a maximum seated capacity of <u>50 guests</u>, and the Park Avenue Café (Kitchen Table), literally one table for up to <u>10 guests</u>, all operated by the same tenant under one lease.  *See* Weisberg Decl. ¶29.  The Townhouse is not, as Plaintiff declares, a "catering event space" or "separate banquet facility" that "openly engages in robust commercial catering activity." Plaintiff's baseless mischaracterization of the Park Avenue Café is a desperate way to argue that Plaintiff's Tenant-Caterer is similarly situated.[12]

Neither the Archive Room, Townhouse nor Kitchen Table taken together, or separately, could be seriously considered similarly situated to 583 Park.  There is no comparison between the Park Avenue Café, with a total seating capacity of 135 guests spread in three different rooms, and 583 Park, which holds 1000+ persons—a truly "robust" operation—and is available on a near daily basis. The Tenant-Caterer has already conceded this lack of comparison, stating in its September 29, 2006 Confidential Private Placement Memorandum, submitted to the New York State Attorney General, that the venues comparable to it are those

---

[12] Similarly desperate is Plaintiff's baseless reliance on a Second Amendment to Lease to support its argument that it will suffer irreparable harm if the preliminary injunction is not granted.  Since that amendment never disclosed to or approved by the New York Supreme Court, it cannot be the basis for relief.  *See* New York Religious Corporation Law §12; *also see Greek Orthodox Archdiocese of North and South America v. Abrams*, 162 Misc. 2d 850, 618 N.Y.S.2d 504 (Sup. Ct. N.Y. Co. 1994); *St. Andrey Bulgarian Eastern Orthodox Cathedral Church, Inc. v. Bosakov*, 272 A.D.2d 55, 707 N.Y.S.2d 95 (1st Dep't 2000) (trial court properly found that alleged transfer of property from diocese to church had been invalid because of failure to comply with New York Religious Corporations Law §12).

with seated dinner capacities of 400 to 2800 guests.   *See* Weisberg Decl. Ex. K.   Further, as indicated above, the Beekman, an apartment hotel, is *permitted* to have a restaurant, such as Park Avenue Café, in its premises pursuant to the City's Zoning Resolution §12-10.   *See* Weisberg Decl. Ex. O.   Since the Beekman's tenant is not similarly situated to the Tenant-Caterer, the subpoena to the Beekman should be quashed.   In the event that the Court disagrees as to the similarity between the Beekman and the Tenant-Caterer at the Church, the subpoena should at least be modified because it is vague, overbroad and unduly burdensome.

Contrary to Plaintiff's statement, the Beekman has not refused to produce any documents in response to the subpoena and has offered what it believes is relevant.   In response to the subpoena, the Beekman has stated that Plaintiff's April 14, 2008 letter, read without reference to the subpoena, suggests that Plaintiff merely seeks the lease agreements, to which the Beekman has not specifically objected.   *See* Pa Decl., Ex. P-Q.   To the contrary, the subpoena seeks "any and all documents concerning or in any way related to" the lease, which could include, for example, numerous drafts, internal memos, etc.   *See* Pa Decl., Ex. D.   These are unnecessary given the purpose stated on page six of Plaintiff's aforesaid letter (to show that several of the terms in the Church's lease agreement are reasonable and common in the industry), the Beekman's objections are meritorious.

Further, the Beekman has told Plaintiff that the documents sought by the subpoena, i.e. (1) documents relating to "Social Events," (2) the lease and any amendments, renewals or other agreements, (3) documents showing number of hours it takes for each "Social Event," (4) documents showing the number of guests that visit the Park Avenue Café are presumably within the control and possession of the Beekman's tenant, not Beekman.   *See* Pa Decl., Ex. L.   The Beekman has no control over its tenant's operations. *See* Weisberg Decl. ¶31.

15

Plaintiff issued a separate subpoena to the Beekman's tenant, who, upon information and belief, has already responded, and, therefore, the documents are already available to Plaintiff.  *See* Weisberg Decl. ¶31.

Also, such documents as (5) the certificate of occupancy, (10) applications for permits and applications, and (6), (11), (14), (15) & (16) communications with the City and Elected Officials are publicly available, and as such, accessible to Plaintiff.  *See* Pa Decl., Ex. Q. They are also available through the Defendants.  *See Travelers, supra* (where "the information appears to be publicly available from a source that is more convenient, less burdensome or less expensive," it is an undue burden on the non-party to have to produce it).   No legitimate purpose can be served by seeking this information from Beekman – other than some ulterior motive – as to stifle opposition or delay the proceedings.

The Beekman has also told Plaintiff that, (7) and (8) tax returns are confidential (as stated above) and, as to attorney-client and work product privileged documents demanded, it would produce a privilege log (work product objections are addressed in the next point). Finally, as Plaintiff acknowledges, the definition of "Social Events" is vague and overbroad.

In light of these objections, the Plaintiff's subpoena to the Beekman is unduly burdensome and should be quashed, or, at least, modified.   KK&F has already set forth a proposal for resolving this discovery dispute in its April 25, 2008 letter to Plaintiff's counsel (rejected by Plaintiff in its April 28, 2008 letter).   *See* Weisberg Decl. Exs. U and V.   This proposal stated as follows:

> 1.  To the extent not produced by the City of New York in its document production, we shall produce communications with respect to 583 Park Avenue or the use thereof, between our firm on behalf of the Coalition or any member thereof,  and New York City elected officials,  the Department of Buildings, the Landmarks Preservation Commission,  the  Parks  Department,  Community

16

Board 8, the Mayor's Office or other city agencies, if any, excluding however communications between our firm and the New York City Law Department;

2.  We shall produce communications with respect to 583 Park Avenue or the use thereof, between our firm on behalf of the Coalition or any member thereof, and New York State elected officials and state agencies including the State Liquor Authority and the Charities Bureau of the Attorney General's Office;

3.  As applies to the Beekman, we shall produce copies of the Certificate of Occupancy, filings with the Department of Buildings with respect to the first floor and /or Restaurant space, and subject to an appropriate confidentially agreement, the Lease with the restaurant operator and the Sale and Leaseback documents with the restaurant operator;

4.  Provided your client agrees to pay for duplication costs, we shall produce copies of photographs and videotapes. Please note that since our correspondence of April 10, 2008, we have obtained 7 additional DVD videos.

5.  The production outlined above shall be deemed full compliance with the 4 subpoenas identified in our letters of April 10, 2008.

6.  Notwithstanding the foregoing, this voluntary compliance would be subject to all of the objections previously stated and would not constitute a waiver of any of said objections, including without limitation that the subpoenas themselves exceed the scope of the Court's order.

***

Given the over-breadth and burdensomeness of the subpoenas, they should be quashed and/or modified.

### III.   THE COALITION MEMBERS' ASSERTION OF WORK-PRODUCT PRIVILEGE IS PERMISSIBLE UNDER FEDERAL CASE LAW

In objecting to the subpoenas, the Coalition Members asserted the attorney-client and work product privileges.  *See* Pa Decl., Exhibits J through O.  While the general rule is that the work product protection of FRCP 26(b)(3) ("Trial Preparation: Materials") does not extend to

17

"documents prepared by and in the hands of a third person," the courts make an exception for non-parties who are "interested in the action," and courts have construed broadly the definition of who is "interested." *See Polycast Tech. v. Uniroyal,* No. 87 Civ. 3297, *2, 1990 WL 138968 (S.D.N.Y. Sept. 20, 1990). In *Polycast,* whether a non-party was "legally aligned" with a party and "consistently maintained" that it had an interest in the outcome of the litigation were factors in determining whether it was "interested." *See Id.*

In this case, the Coalition Members are "interested" because they are "legally aligned" with Defendants since they share the same interest in upholding the City's determination, as demonstrated by the fact that they would have had standing to sue if the City had rendered a decision favorable to the Plaintiff. *See e.g. Center Square Ass'n, Inc. v. City of Albany Bd. of Zoning Appeals,* 9 A.D.2d 651, 780 N.Y.S.2d 203 (3d Dep't 2004); *also see* Pa Decl., Ex. Q. Additionally, the Coalition Members have "consistently maintained" that they have an interest in the outcome of this litigation. *See* Pa Decl., Ex. Q. Plaintiff even concedes the Neighbor's steady involvement stating, "the Neighbors are central to this case…The Church has always maintained that the scope, nature, and intensity of their lobbying efforts, and the impact of those efforts on the City, are at the very heart of this case." *See* Memorandum of Law, p. 6. Accordingly, contrary to Plaintiff's assertions, the documents prepared by KK&F in the course of representation of the Coalition Members, "interested parties," are protected by the work product doctrine.

Plaintiff relies too much on *Ramsey v. NYP Holdings, Inc.*, No. 00 Civ. 3478, 2002 WL 1402055 (S.D.N.Y. June 27, 2002) for the proposition that the Coalition's interests are not aligned with the City. Clearly, Plaintiff is trying to have it both ways so that it can get "relevant" discovery from the Coalition—claiming it is an interested party central to this case--

*and* work product from the Coalition—claiming it is a non-interested party that is not so central to this case. Further, Plaintiff's suggestion that the Coalition Members need to have a "direct financial stake" to be interested is unsupported by any citation. Contrary to Plaintiff's baseless statement, case law does not make "direct financial stake" a factor in determining "interested party" status.

It should be understood, however, that the Coalition Members are not asserting work product with respect to any <u>actual</u> communication (but rather only drafts[13] or related documents) with the SLA, elected officials, the LPC or the DOB. *See* Pa Decl., Ex. Q.

**IV.    EVEN IF THE COURT AGREES THAT THE COALITION MEMBERS ARE SUBJECT TO DISCOVERY AT THIS TIME, THE COALITION MEMBERS ARE ENTITLED TO FULL OR PARTIAL REIMBURSEMENT OF THEIR COSTS AND/OR ADDITIONAL TIME TO COMPILE THE RESPONSIVE DOCUMENTS AND THINGS**

The Coalition Members and Ms. Relyea have set forth an objection that they should not be required to review the voluminous documents, let alone produce them, without adequate and fair compensation, and, of course, subject to other objections. *See* Pa Decl., Ex. Q. The express language of FRCP Rule 45(c)(2)(B) provides that a non-party must be protected from "significant expense resulting from compliance." Under this section, a demanding party can be ordered to reimburse a nonparty for a portion of the reasonable costs of compliance, including the costs of producing, inspecting, and photocopying the requested documents. *See In re First American Corp.*, 184 F.R.D. 234, 240 (S.D.N.Y. 1998) citing *In re Exxon Valdez*, 142 F.R.D. 380, 383-85 (D.D.C. 1992). A non-party's legal fees, especially where the work benefits

---

[13] The Coalition Members and Ms. Relyea also assert attorney-client privilege with regard to drafts exchanged with clients.

the requesting party, have been considered a cost of compliance reimbursable under FRCP Rule 45(c)(2)(B).  *See First American Corp., supra.*

Although the Coalition Members have an interest in the outcome of this litigation, that does not preclude them from recovering costs from Plaintiff.  *See In re First American Corp.* at 242 (non-party required to absorb only a portion of the costs for which it seeks reimbursement).  Plaintiff's suggestion in its April 14, 2008 letter that it cannot reimburse KK&F's clients because it faces "grave financial challenges" seems disingenuous and without basis, in light of Plaintiff's failure to demonstrate its inability to bear costs of the "limited discovery" demanded by it, while, at the same time, retaining three (3) large law firms in connection with various stages of this matter—Greenberg Traurig, LLP, Satterlee Stephens Burke & Burke, LLP and Davis Wright Tremaine LLP-- and collecting rent and presumably profits from its seemingly successful Tenant-Caterer. *See* Pa Decl., Exs. P-Q. Further, KK&F's clients reject Plaintiff's suggestion that KK&F's clients are among the wealthiest cooperative building associations in New York City as meaningless and baseless.  *See* Pa Decl., Ex. Q. Plaintiff provides and has no basis to know the financial status of these buildings – or for that matter any of the tenant shareholders, many of whom have lived in their apartments for many years and may have purchased their apartments at a time when the co-op market was far different than today.  And one need only look at the multi-million dollar façade work occurring on some of the Coalition's buildings to comply with NYC Local Law 11 to understand the extent of the extraordinary expenses these buildings face.

Finally, given the scope of Plaintiff's requests and the breadth of the documents in the Coalition Members' control, the Coalition Members require additional time to respond to the subpoenas and compile a complete privilege log.  *See* Pa Decl., Ex. J-M.  As already indicated to

Plaintiff on April 10, 2008, sorting out protected documents and compiling a detailing log would result in significant professional, paralegal and clerical time and expense as there are over 8,600 e-mails, some of which include attachments, 42 Redwelds, well over 500 photographs, 31 DVD videos and a substantial number of additional documents. *See* Weisberg Decl. ¶36. Apparently realizing the extent of the documents requested, Plaintiff proposed on April 17, 2008 that the Coalition Members make a rolling production. *See* Pa Decl., Ex. R. But before the Coalition Members could properly respond to this proposition (as well as the rest of Plaintiff's April 17, 2008 letter) and after KK&F on April 17, 2008 requested until April 22, 2008 to respond due to KK&F's need to consult with the Beekman's general counsel, who were on Passover holiday (*see* Weisberg Decl. ¶37), Plaintiff—which brought this federal action based upon its religious status—ironically ignored the request (*see id.*) and filed the instant motion, unfairly claiming the Coalition Members were "stonewalling." *See* Plaintiff's Memorandum of Law, p. 10.

21

## CONCLUSION

In light of the fact that the subpoenas are not authorized by the Court's discovery order, and, even if they are construed to be authorized, unduly burdensome, overly broad, and irrelevant, Plaintiff's motion to compel should be denied and the subpoenas duces tecum to 570 Park, 580 Park, the Beekman and Ms. Relyea should be quashed and/or modified and the subpoena ad testificandum to Ms. Relyea should be quashed.

Dated: New York, NY
    May 5, 2008                KURZMAN KARELSEN & FRANK, LLP

                                   By: s/  Charles Palella
                                     Charles Palella, CP 6642
                                     Phyllis Weisberg, PW 9452
                                     Sandra DeFeo, SD 4218
                                     Attorneys for 570 Park Avenue Apartments, Inc., 580 Park Avenue, Inc., Susan Relyea, as Member of the Co-Op Board of 580 Park Avenue, Inc., and The Beekman Tenants Corporation
                                     230 Park Avenue
                                     New York, NY  10169
                                     (212) 867-9500