UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

THIRD CHURCH of CHRIST,
SCIENTIST, of NEW YORK CITY,   :   #07 Civ. 10962 (DAB)

         Plaintiff,   :

    - against -   :

#THE CITY OF NEW YORK and
PATRICIA J. LANCASTER, in her
official capacity as, Commissioner of the
New York City Department of Buildings

         Defendants.   :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS CROSS MOTION TO COMPEL

DAVIS WRIGHT TREMAINE LLP
1633 Broadway
New York, New York  10019
(212) 489-8230

*Attorneys for Plaintiff*
*Third Church of Christ, Scientist, of New York City*

The Church submits this reply memorandum in support of its cross-motion to compel non-party the Metropolitan Club, Inc. (the "Club") to comply with the subpoena dated March 6, 2008 (the "Subpoena").

## INTRODUCTION

The Club concedes that this discovery dispute turns on the answer to a single question: under the City's zoning rules, are catered events held at the Church for non-members "comparable" to catered events for non-members held at the Club? Though the Club goes to great lengths to obscure and avoid it, the obvious answer to this question is "yes."

This reply memorandum demonstrates that the Subpoena is valid and the Club should be compelled to comply because:

- As Use Group 4 organizations under the Zoning Resolution, both the Club and the Church should be permitted to make "accessory use" of their premises for catered social events for non-members, but while the Club apparently is permitted to do so, the City seeks to prohibit the Church. *See* Point I(A), *infra*;

- It is settled that clubs and houses of worship are "comparable" under RLUIPA's equal terms provision. *See* Point I(B), *infra*; and,

- The Subpoena seeks relevant information, the Church has voluntarily limited its scope, and compliance will not be burdensome. *See* Point II, *infra*.

## ARGUMENT

**I. The Church and the Club are Comparable For Purposes of the City's Zoning Resolution and RLUIPA**

**A.    The Accessory Uses engaged in by the Church and the Club are the same**

The Club procured the affidavit of an expert only to state the obvious: "Houses of worship and social clubs are entirely different *principal* use listings in Section 22-14" of the Zoning Resolution. *See* Club Mem. at 3 (citing affidavit of Anthony Patrissi) (emphasis added). Yes, a club has a different principal function – serving as a place for members to assemble and

socialize in private – than that of a church (which serves as a place for congregants to assemble and pray). It is also true that other Use Group 4 listings under the Zoning Resolution – for example, a philanthropic non-profit organization – have a different principal function from that of either a private social club or a house of worship. But none of these distinctions matter here.

The relevant point is that each of these Use Group 4 entities are *not* limited to solely their principal use. To the contrary, the Zoning Resolution makes clear that each such institution is also permitted to make "accessory uses" of its premises. *See* ZR § 221.14(C). And while one must read its papers closely to see it, the Club concedes that when it permits non-members to rent the Club as a venue for a catered event, it is making an accessory use of its premises. First, the Club concedes, as it must, that the zoning rules would prohibit a club in a residential district if it was used "predominantly" for the business of a publicly accessible catering hall. *See* Club Mem. at 3 (citing ZR § 22-14). Then, it concedes that "[h]olding catered events for non-members of a club would be subject to this provision." *Id.* It then states that "there is no explicit prohibition against holding catered events for non-members as well as members, provided that the activity [*i.e.*, renting space out for non-member events] does not rise to the level of being the chief activity of a club that would be construed as a business." *Id.* at 3-4. This is just another way of saying that a Use Group 4 social club may rent out its space to non-members for catered events as an accessory use – *i.e.*, a use that is incidental to and customarily found in connection with the principal use of the club.

The Zoning Resolution gives flexibility to houses of worship, clubs, philanthropic non-profits and other similar entities to engage in accessory uses. Thus, the Club supplements its revenues by renting out its building to non-members for social events; non-profit organizations do the same thing, as do many houses of worship. So far as the way that the Zoning Resolution

treats accessory uses, all three of these groups are not merely comparable, they are essentially identical.

That is what this case is about: all of these other groups openly engage in this customary supplemental use of their property, but the City seeks to prohibit the Church from doing so. The City seeks to justify this disparate treatment by claiming that the Church's catering activities are dramatically different from those engaged in by other groups. The Church disagrees. The Subpoena to the Club will help the Church demonstrate that hosting catered events to supplement revenues is a standard practice.

### B. The Church and the Club are "Comparable" under RLUIPA

In its zeal to distinguish the Church from the Club regarding the accessory use each makes of its premises, the Club misstates several important facts.

First, it suggests that there are no "church activities" in the Church at all, but that it is purely a social hall. *See* Club Mem. at 4. That, of course, is false. The principal use of the building is as a church and it is used extensively for religious activities. *See* Draper Reply Decl. ¶ 41. Moroever, the lease between the Church and the caterer specifically acknowledges that its purpose is to supplement the Church's revenues so that it can continue to conduct religious services in the building. The caterer does not have exclusive possession of the premises, and the Church expressly retains the right to conduct its religious activities in the building. *See* Draper Decl. ¶ 23, Ex. B, Lease ¶ 22-23.[1]

Second, the Club claims that the lease agreement with the Church's outside caterer, and

---

[1] In a further attempt to distinguish its non-member social events, the Club claims that "there is never a time that members of the Club are excluded from the Club or the use of its services or premises, even if a catered event for a non-member were to be held on the Club's premises." *See* Club Mem. at. 4. But the same is true for the Church. Under the lease, the Church's congregation may use the Church building at all times, and they are never excluded from the premises simply because a social event may be occurring. *See* Draper Reply Decl. ¶ 37 (setting forth shared space arrangement between the parties under the lease agreement). Instead, just like the Club, during a social event, members may still use all available space except that portion of the building being used for the event.

not the social events itself, was the basis of the City's discriminatory conduct. *See* Club Mem. at 4 ("Contracting with an outside commercial caterer to hold events unrelated to the Church is apparently the reason that the Department of Buildings denied the accessory catering use, not the social hall itself"). That too is false. The City barred all catering events at the Church irrespective of who the caterer is, or the terms of any such catering arrangement. *See* Draper Decl. ¶ 36, Ex. F (revocation letter).

The Club seeks to confuse the issue, which is in fact straightforward. The City claims it revoked permission for catered events at the Church because the scope and "intensity" of catered events at the Church made the principal use of the Church's building a social hall rather than a place of worship. The Church, however, argues that the intensity of its accessory catering activity does not differ materially from the accessory catering activity at secular institutions, such as the Club, and that the City's asserted basis for the revocation is a pretext. The Subpoena seeks discovery that will help show that the City is treating comparable institutions differently. The Club has information that could not be more relevant to this dispute.

Under RLUIPA, the question is whether the City is implementing its zoning rules in way that treats the Church on less than equal terms with non-religious assemblies *See* 42 U.S. C. s 2000cc(b)(1). The Club's argument that it is not even comparable to the Church is, as demonstrated above, false as a matter of fact.[2] It is also false as a matter of law. As the Eleventh

---

[2] The Club goes so far as to state that "[v]alid comparisons can only be made between the Church and other houses of worship that hold catered events in accessory social halls." Club Mem. at 5. That statement simply ignores RLUIPA altogether and is obviously false. In a similar vein, the Club insists that it can ignore the Subpoena because it is not "similarly situated" to the Church. *Id.* That is the wrong standard; the equal-terms provision does not require plaintiff to be "similarly situated" in all respect to their secular counterparts. "For purposes of a RLUIPA equal terms challenge, the standard for determining whether it is proper to compare a religious group to a nonreligious group is not whether one is 'similarly situated' to the other, as in our familiar equal protection jurisprudence." *See Konikov v. Orange County*, 410 F.3d 1317, 1324 (11th Cir. 2005); *see also Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1230 (11th Cir. 2004). Rather, "the relevant 'natural perimeter' for comparison is the category of 'assemblies and institutions' as set forth by RLUIPA. "In other words, the question is

Circuit made clear in a leading RLUIPA decision, "[l]ike churches and synagogues, private clubs are places in which groups or individuals dedicated to similar purposes – whether social, educational, recreational, or otherwise – can meet together to pursue their interests." *See Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1231 (11th Cir. 2004) (holding that zoning law that treated private clubs differently from religious institutions violated RLUIPA's Equal Terms provision). Under the Zoning Resolution, both types of assemblies are permitted in residential districts, and both are permitted to make accessory use of their premises. They are comparable. And RLUIPA makes clear that the City cannot treat the Club – a non-religious assembly – on better terms than it treats the Church. In order to support its claim that the City has violated the equal terms provision, the Church should be permitted to obtain discovery of the intensity and scope of the catered events for non-members held at the Club.

## II. The Club's Claims of Over-Breadth and Burden Are Duplicative of Its Relevance Argument, and Should Be Dismissed

The Club's over-breadth and burden claims are essentially a restatement of its relevance argument. *See* Club Mem. at 5-6. As discussed above, the requested information is relevant because the Club and the Church are comparable for RLUIPA and zoning law purposes.

Further, to the extent that the Club does assert that complying with the Subpoena would be an undue burden, it fails to support the assertion with the requisite specificity. It states only that there could be thousands of events over the applicable three-year time period, and it sets forth several hypothetical questions about the Subpoena's scope. *Id.* at 6. But the Club

---

whether the land use regulation or its enforcement treats religious assemblies and institutions on less than equal terms with nonreligious assemblies and institutions." *Id.* While some comparison of the two groups may well be necessary to reveal discrimination between them, here, both the Club and the Church are assemblies "with respect to regulatory purpose." *Lighthouse Institute for Evangelism v. City of Long Branch*, 510 F.3d 253, 266 (3d Cir. 2007) (holding that it was error to require a showing that religious and nonreligious institutions were similar in all respects).

acknowledges that the Church has been flexible, *id.*, and, as narrowed, the Subpoena is targeted and proper. It merely seeks documents concerning social events hosted for non-members over a three-year period. To the extent that such documentation is voluminous, the Church would be amenable to the Club producing a summary that described its catering practices rather than original source materials. Moreover, the Subpoena's request for documents concerning any membership requirement that would permit entry into the Premises and/or the use of the Premises for Social Events would seem to call for production of, at most, a short policy statement. Finally, the Club's claim of undue burden is belied by its assertion that the majority of requested documents do not exist (*e.g.,* communications with the City regarding whether any planned use of the Club is an accessory use; contractual agreements with outside caterers; communications with the City regarding the underlying action). In short, compliance with the Subpoena would not be unduly burdensome because the Church seeks only narrow categories of documents that bear directly on the issues in dispute.

## CONCLUSION

Because the Subpoena is valid, and neither unduly burdensome nor overbroad, the Court should compel the Club to comply and produce the requested documents and

produce a witness for the demanded deposition.

Dated: New York, New York
       May 6, 2008

                Respectfully submitted,

                DAVIS WRIGHT TREMAINE LLP

                By: _____
                    Victor A. Kovner (VK 2248)
                    John Cuti (JC 3365)
                    Monica Pa (MP 3307)

                1633 Broadway
                New York, New York 10019
                (212) 489-8230

                *Attorneys for Plaintiff, Third Church of Christ, Scientist, of New York City*