UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

THIRD CHURCH of CHRIST, SCIENTIST, of NEW YORK CITY,

                 Plaintiff,

-against-

THE CITY OF NEW YORK and PATRICIA J. LANCASTER, in her official capacity as, Commissioner of the New York City Department of Buildings,

                 Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Case No.   07 Civ. 10962

(DAB) (FM)

(Electronically Filed Document)

---

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF NEIGHBORS' CROSS- MOTION TO QUASH**

---

KURZMAN KARELSEN & FRANK, LLP
230 Park Avenue
New York, NY  10169
(212) 867-9500
Attorneys for Non-Parties 570 Park Avenue Apartments, Inc.,
580 Park Avenue, Inc., Susan Relyea, as Member of the
Co-Op Board of 580 Park Avenue, Inc.,
and The Beekman Tenants Corporation

194531.1

# TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………..…………iii

INTRODUCTION……………………………………………………………………………….1

ARGUMENT……………………………………………………………………………..4

    A.    **PLAINTIFF FAILS TO ADEQUATELY REFUTE THAT THE COURT'S MARCH 3, 2008 DISCOVERY ORDER IS LIMITED**……............................4

    B.    **THE SUBPOENAS ARE OVERBROAD AND BURDENSOME**……............6

        1.    The Plaintiff Has Admitted That The Temporal Scopes Of The Subpoenas To 580 Park, 570 Park And Ms. Relyea Are Overbroad………………………….................................................6

        2.    The Plaintiff Has Hardly Accommodated The Neighbors' Concerns………………………….................................................6

        3.    Plaintiff Fails To Argue Why Discovery From Ms. Relyea Is Appropriate And Admits That Its Subpeona To Ms. Relyea Is Overbroad…………………………………………………………………...7

    C.    **THE WORK PRODUCT PRIVILEGE APPLIES**…………………………….8

    D.    **PLAINTIFF FAILS TO REFUTE THAT THE BEEKMAN'S TENANT DOES NOT CONDUCT SIMILAR CATERED EVENTS**……………………………………………………………………9

CONCLUSION……………………………………………………………………………10

## TABLE OF AUTHORITIES

**CASES**

*City of Cleburne v. Cleburne Living Center*, 473 U.S. 432 (1985)……………………………….2

*Neilson v. D'Angelis*, 409 F.3d 100 (2d Cir. 2005)……………………………………………….2

*Polycast Tech. v. Uniroyal,* No. 87 Civ. 3297, 1990 WL 138968 (S.D.N.Y. Sept. 20, 1990)….....9

**STATUTES AND RULES**

FRCP Rule 45(c)(2)(B)……………………………………………………………………………1

FRCP Rule 45(c)(3)……………………………………………………………………………….1

Non-parties 570 Park Avenue Apartments, Inc. ("570 Park"), 580 Park Avenue, Inc. ("580 Park"), The Beekman Tenants Corporation ("Beekman") (collectively, the "Coalition Members"), and Susan Relyea, as Member of the Co-Op Board of 580 Park ("Ms. Relyea") (hereinafter sometimes referred to collectively as the "Neighbors") submit this reply memorandum in further support of their cross-motion to quash the subpoenas issued to them by Plaintiff Third Church of Christ, Scientist, of New York City ("Plaintiff").

**INTRODUCTION**

The Plaintiff's subpoenas to the Neighbors should be quashed because, as set forth below, Plaintiff never requested permission from the Court to conduct discovery from the Neighbors prior to the Court's issuance of the discovery order and Plaintiff essentially admitted to the Court that discovery from the Neighbors is irrelevant.  In the event that the Court believes discovery on the Neighbors is within the scope of its discovery order, the Neighbors request that the Court review and modify the subpoenas to make them less broad and burdensome.

In opposing Plaintiff's cross-motion to quash and/or modify, the Plaintiff complains that the Neighbors' Memorandum of Law in Opposition to Plaintiff's Motion to Compel and in Support of Cross-Motion to Quash[1] ("Memorandum") was "essentially a brief on the merits."  *See* Plaintiff's Reply/Opposition Memorandum at 1.  While the Memorandum does address some of the merits of this case, Plaintiff's suggestion that the merits should be ignored

---

[1] Plaintiff is incorrect that the cross-motion was unnecessary. *See* Plaintiff's Reply/Opposition Memorandum at 5. The Neighbors initially objected to Plaintiff's subpoenas under FRCP Rule 45(c)(2)(B).  Under that section, the persons commanded to produce can only object as to subpoenaed documents or tangible things and inspections. Since FRCP Rule 45(c)(2)(B) does not permit the Neighbors to object to the production of a person for deposition, and Plaintiff made a motion to compel Ms. Relyea's deposition testimony, the Neighbors had no choice but to file a cross-motion to quash the subpoena ad testificandum to Ms. Relyea pursuant to FRCP 45(c)(3), since it is also improper.  Therefore, the instant cross-motion is an appropriate response to the motion to compel.  Significantly, in response to the Metropolitan Club's Motion to Quash, Plaintiff filed opposition as well as a Motion to Compel.

1

194531.1

fails to recognize that relevance—which can only be understood in context and a discussion of the merits-- is a factor in a balancing test that applies to non-party subpoenas. *See* Memorandum at 9. Plaintiff, moreover, selectively forgets that it invited the Neighbors to address the merits by claiming that the Neighbors' complaints regarding the use of the church were "baseless" and "pre-textual," blatantly misconstruing events that precipitated the instant litigation and unfairly maligning the Neighbors' integrity in its motion papers.

Although the Plaintiff claims that discovery from the Neighbors is necessary to support its equal protection claim (*see* Plaintiff's Reply/Opposition Memorandum at 1), this argument is undermined by the fact that Plaintiff never sought permission to conduct discovery from the Neighbors prior to the Court's issuance of the discovery order (explained below) as well as by Plaintiff's Reply Memorandum in support of the preliminary injunction motion. In that Reply Memorandum, Plaintiff, relying on *Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005) and *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 447-448 (1985), strongly suggests that the Neighbors' actions are not necessary to show it was singled out because:

> the presence of so many similarly situated religious and secular groups that "received more favorable treatment than the plaintiff [supports] the inference that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with legitimate governmental policy that an improper purpose – whether personal or otherwise—is all but certain."

Based upon Plaintiff's own analysis and discovery from other nearby "similarly situated" religious and secular institutions, discovery from the Neighbors is irrelevant. Plaintiff cites to no case law indicating how discovery from non-similarly situated neighbors could support its claims.

That the New York City Department of Buildings ("DOB") ultimately took a position that frustrated the Plaintiff should not come as a surprise to Plaintiff whose own conduct

2

prior to the revocation of the change of use permit—including misrepresenting to the DOB regarding the nature and extent of commercial use of the church as documented by contradictory statements in another government filing and in advertisements of the use, and failing to disclose the real estate interest and control over the property and its use granted to the Tenant-Caterer under a 20 year triple net lease with two five-year renewals—caused the DOB to revoke the accessory use permit. We believe that the record is abundantly clear that the DOB was misled, despite the fact that the City's Law Department chose to be more diplomatic in its word choice at the temporary restraining order hearing in December 2007 ("TRO Hearing"). That the City was in fact "misled" is evidenced by its April 2006 approval of Plaintiff's written pre-consideration request—which indicated that the "accessory" "catering and ballroom is substantially for the benefit or convenience of the owners, occupants, employees, customers or visitors of the principal use"-- and subsequent confirmation of its November 2007 disapproval of Plaintiff's pre-consideration request at the TRO Hearing ["what is taking place is not an accessory use…there is no connection between the events in the building and the congregation and the church itself."] *See* Weisberg Decl., dated May 5, 2008, Ex. F and Ex. Q (pp. 15-16).

        Plaintiff's statement that Commissioner Santulli said the Plaintiff was doing "nothing illegal," several months prior to the accessory use permit revocation, is hearsay that is contained in an e-mail between Sarra Hale-Stern, Lindsey Allison and Keith Powers and apparently out of context. *See* Plaintiff's Reply/Opposition Memorandum at 2-3. Plaintiff tries to use this hearsay to suggest that the Neighbors did something nefarious to cause the DOB to revoke the accessory use permit. As stated previously however, the Neighbors merely used all

3

194531.1

lawful efforts,[2] sanctioned by the First Amendment, to get a response from the DOB (perhaps the community members opposing the construction that resulted in a crane collapse should have tried harder to get the DOB to listen to them).  That the DOB did not revoke the Plaintiff's accessory use permit for about eight months after the Neighbors pointed out the discrepancies in the Plaintiff's filings is evidence that the Neighbors are not as "powerful" as the Plaintiff tries to portray.  As Plaintiff concedes, "even after receiving the Neighbors' lengthy submissions, [Commissioner] Santulli continued to adhere to his decision."  *See* Plaintiff's Reply/Opposition Memorandum at 2.[3]

In reviewing the argument section of Plaintiff's Reply Memorandum, it is clear that Plaintiff, in failing in to address and/or refute the following, tacitly and/or expressly concedes that:

- the Court's March 3, 2008 Discovery Order is limited;
- Plaintiff does not require discovery from the Neighbors to support its claims;
- the scope of the subpoenas to 580 Park, 570 Park and Ms. Relyea is overbroad; and
- the Beekman does not conduct similar catered events to its Tenant-Caterer.

### ARGUMENT

**A.    PLAINTIFF FAILS TO ADEQUATELY REFUTE THAT THE COURT'S MARCH 3, 2008 DISCOVERY ORDER IS LIMITED.**

Plaintiff repeats its argument that discovery to the Neighbors is proper because the Order "does not limit discovery only to other catering venues."  *See* Plaintiff's

---

[2] These lawful efforts included lobbying, which Plaintiff again is so quick to criticize, even though Plaintiff used lobbyists as well. *See* Weisberg Decl., dated May 5, 2008, at fn. 4.

[3] It was not until after a meeting with Deputy Mayor Daniel Doctoroff, former DOB General Counsel/current Deputy Commissioner for Legal Affairs and Chief Code Counsel, Phyllis Arnold, and City Planning Commission General Counsel, David Karnovsky—public officials charged with, among other things, interpretation of the zoning resolution—that the revocation decision was finally made.

Reply/Opposition Memorandum at 3. Plaintiff broadly interprets the Order as to subject and categories of persons, but continues to ignore the fact that discovery was granted in response to Plaintiff's request for "limited discovery" and the discovery period is restricted to ninety (90) days with no extensions. When time for pre-hearing discovery on a temporary restraining order is limited, by definition, discovery cannot be unlimited, as Plaintiff suggests.

Plaintiff, moreover, relies on its February 22, 2008 letter and Reply Memorandum in support of its preliminary injunction to argue that the Neighbors' role in this dispute is a reason why pre-hearing discovery was necessary. The truth is, though, that Plaintiff never told the Court in either its February 22, 2008 letter or its Reply Memorandum that it needed discovery from the Neighbors. Rather, it stated:

> By way of preview, Plaintiff believes that the pre-hearing discovery could be concluded in 90-120 days, and would include requests for documents and depositions from several religious and non-religious institutions that we believe conduct similar catered events to those held at the Church, as well as document requests and depositions of officials of the City who may have knowledge relevant to the Church's claims that it has been unfairly singled out as a result of lobbying by certain of its Park Avenue neighbors who have opposed its efforts to sustain its religious activities by permitting accessory catered events at the Church.

See Weisberg Decl., dated May 5, 2008, Ex. Q. This statement merely suggests that Plaintiff only needed discovery from institutions that conduct similar catered events and from officials of the City. This statement is supported by Plaintiff's suggestion in its papers in supports of its preliminary injunction motion, noted above, that the Neighbors' actions are not necessary to show it was singled out, since an inference can be made that it was "singled out" by the City based on the "presence of so many similarly situated religious and secular groups that received more "favorable treatment" than Plaintiff". See supra. Furthermore, the statement appears to concede that it is only the City officials' motives in acting, rather than the Neighbors' motives in

5

194531.1

lobbying, that is the relevant inquiry. The Court issued the Order in response to Plaintiff's papers in support of its motion for a preliminary injunction and this February 22, 2008 request. Now, Plaintiff wants to change the order so that its subpoenas on the Neighbors are valid, even though it never requested same from the Court, cannot articulate the basis for serving discovery requests on the Neighbors (let alone such broad and overreaching requests), and has admitted that it really only needs discovery from secular and non-secular institutions that conduct similar catered events and the City to prove its case. *See supra.*

> **B.   THE SUBPOENAS ARE OVERBROAD AND BURDENSOME.**
>
> **1.   The Plaintiff Has Admitted That The Temporal Scopes Of The Subpoenas To 580 Park, 570 Park And Ms. Relyea Are Overbroad**

Even though Plaintiff already agreed that the subpoenas were overbroad in their temporal scope in its letter of April 14, 2008 (Pa Decl., Ex. P), Plaintiff now states that it was originally proper to request documents from the Neighbors from 2000 to show they "failed to complain about the commercial catering operation next door."[4]  *See* Plaintiff's Reply/Opposition Memorandum at 4. Yet, if that information was so relevant to Plaintiff's claims, why did it so readily agree to narrow the temporal scope of its subpoenas? Plaintiff's agreement to narrow the subpoenas shows only that Plaintiff knew its request was "out of line," despite Plaintiff's current empty protestations to the contrary.

> **2.   The Plaintiff Has Hardly Accommodated The Neighbors' Concerns**

First, Plaintiff incorrectly states that the Neighbors believe a request that seeks "documents concerning the Church" is overbroad.  *See* Plaintiff's Reply/Opposition

---

[4] This improperly assumes the very issue in this case, that there are similarly situated commercial catering operations nearby. It also incorrectly suggests that Plaintiff only wanted documents relating to complaints dating from 2000, when, in fact, Plaintiff's entire subpoena sought many other documents dating from 2000.

Memorandum at 6. The Neighbors, rather, objected to Plaintiff's actual request for "all documents concerning or in any way related to (1) The Church" because same could encompass irrelevant documents (i.e. letters written to Plaintiff stating that its light is shining in neighbor's window, roofing is loose, or other matters of a neighborly nature) as well as attorney-client privileged information and/or attorney work product.

Second, the Plaintiff contends that it agreed to substantially narrow the overbroad scope of the subpoenas its letter of April 28, 2008. *See* Plaintiff's Reply/Opposition Memorandum at 6; Weisberg Decl., dated May 5, 2008, Ex. V. In reviewing said letter, it is clear that the five "narrowed" requests are just broader categories of the more numerous categories listed in the subpoenas. For example, Plaintiff's first "narrowed request" for "documents and communications between and among the Neighbors concerning the Rose Group, the Church, Social Events at 583 Park and this litigation" encompasses document requests numbered 1, 2, 3, 4, 5, 6, 12, and 13 in the subpoenas issued to 580 Park, 570 Park and Ms. Relyea. Therefore, there is no substantial narrowing of which to speak.[5]

### 3. Plaintiff Fails To Argue Why Discovery From Ms. Relyea Is Appropriate And Admits That Its Subpeona To Ms. Relyea Is Overbroad.

As Plaintiff admits, Ms. Relyea's conduct in support of Coalition-related activities was undertaken in her capacity as vice-president of the Co-Op Board of 580 Park. *See* Plaintiff's Reply/Opposition Memorandum at 7. So why is it that she is being subpoenaed in her individual

---

[5] Plaintiff also fails to argue why the Neighbors' confidentiality concerns are "misplaced." *See* Plaintiff's Reply/Opposition Memorandum at 7, fn. 3. Plaintiff also fails to recognize that the Neighbors asserted confidentiality concerns in letters dated prior to its Reply Memorandum. *See* Id. These concerns are contained in the April 10, 2008 letters and April 16, 2008 letter to Plaintiff's counsel (Pa Decl. Exs. J through M and Weisberg Decl., dated May 5, 2008, Ex. R).

capacity? Plaintiff tries to argue that documents Ms. Relyea has are "relevant" and individual versus vice-president capacity is a "technical nicety." This argument makes little sense. In subpoenaing a corporation, the persons who are subpoenaed from the corporation are subpoenaed in their capacity as directors, officers or employees—not individuals. There are no claims against Ms. Relyea individually and there is no claim that Ms. Relyea acted in her individual capacity. Plaintiff simply has no argument here.

Additionally, while it is noteworthy that Plaintiff agrees it is overbroad to request documents from Ms. Relyea regarding her personal dinner parties, Plaintiff has still not acknowledged that its definition of "Social Events" as to Ms. Relyea (as well as to 570 Park and 580 Park) is still overly broad (Plaintiff only narrowed the definition of "Social Events" as to the Beekman). *See* Memorandum at 11. Significantly, the characterization of what Plaintiff seeks in its motion papers is much less intrusive than what is in the subpoena because Plaintiff is seeking to portray itself to the Court as reasonable. The narrowing of the subpoena at the top of page 8 of the Plaintiff's Reply/Opposition Memorandum, however, is disingenuous because it was never narrowed before. Further, Plaintiff served such overly broad subpoenas not just on Ms. Relyea and the other Coalition Members but on the Metropolitan Club as well. *See* Memorandum at 10 and 11, fn. 9.

        C.      THE WORK PRODUCT PRIVILEGE APPLIES.

Plaintiff incorrectly states that the Neighbors are asking the Court to make an exception to the work product rule for non-parties that are "legally aligned" with a party and "consistently maintain" that they had an interest in the outcome of the litigation. *See* Plaintiff's Reply/Opposition Memorandum at 8. The Southern District of New York evaluated whether the accounting firm was both "legally aligned" with a party and "consistently maintained" an interest

in the outcome of the litigation, and found that the factors were not present. *See Polycast Tech. v. Uniroyal,* No. 87 Civ. 3297, 1990 WL 138968 (S.D.N.Y. Sept. 20, 1990). Had the factors been present, the Court would likely have applied the exception—otherwise, why bother with the analysis if it believed the exception was meaningless? Although the Court did not find that the exception applied in *Polycast*, the exception applies here because, as admitted by the Plaintiff, the Neighbors are "legally aligned" with Defendants and have "consistently maintained" that they have an interest in the outcome of this litigation.

### D. PLAINTIFF FAILS TO REFUTE THAT THE BEEKMAN'S TENANT DOES NOT CONDUCT SIMILAR CATERED EVENTS.

Plaintiff contends that because the Beekman leases space to an "active commercial restaurant and catering hall which hosts hundreds of events per year," the Beekman is substantially similar to the Tenant-Caterer and, therefore, subject to discovery. Yet, Plaintiff wholly ignores some significant points. First, it continues to loosely categorize the Beekman by failing to address the Beekman's objection that it is not a "catering facility." *See* Memorandum at 14. Second, it fails to acknowledge that the Beekman has no control over its tenant's restaurant operations, and, therefore, the tenant-restaurant is really the proper party to subpoena. *See* Memorandum at 15. Third, Plaintiff ignores the fact that its Tenant-Caterer never listed the Beekman's restaurant-tenant as a comparable venue in either of its offering memoranda. *See* Memorandum at 7 and 14.

## CONCLUSION

In light of the fact that the subpoenas are not authorized by the Court's discovery order, and, even if they are construed to be authorized, unduly burdensome, overly broad, and irrelevant, the subpoenas duces tecum to 570 Park, 580 Park, the Beekman and Ms. Relyea should be quashed and/or modified and the subpoena ad testificandum to Ms. Relyea should be quashed.

Dated: New York, NY
      May 12, 2008                      KURZMAN KARELSEN & FRANK, LLP

                                            By: s/ Charles Palella
                                                Charles Palella, CP 6642
                                                Phyllis Weisberg, PW 9452
                                                Sandra DeFeo, SD 4218
                                                Attorneys for 570 Park Avenue Apartments, Inc., 580 Park Avenue, Inc., Susan Relyea, as Member of the Co-Op Board of 580 Park Avenue, Inc., and The Beekman Tenants Corporation
                                                230 Park Avenue
                                                New York, NY 10169
                                                (212) 867-9500

194531.1