UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK

------------------------------------------------------------- x

THIRD CHURCH of CHRIST, SCIENTIST,  :
of NEW YORK CITY,                                        :      07 Civ. 10962 (DAB)
                                                                       :
                  Plaintiff,                             :
                                                                       :
          - against -                                   :
                                                                       :
THE CITY OF NEW YORK and PATRICIA  :
J. LANCASTER, in her official capacity as,      :
Commissioner of the New York City              :
Department of Buildings                                :
                                                                       :
                  Defendants.                        :

------------------------------------------------------------- x

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF'S MOTION TO COMPEL AND IN OPPOSITION TO CROSS-MOTION TO QUASH

DAVIS WRIGHT TREMAINE LLP
1633 Broadway
New York, New York  10019
(212) 489-8230

*Attorneys for Plaintiff*
*Third Church of Christ, Scientist, of New York City*

Plaintiff Third Church of Christ, Scientist, of New York City (the "Church") submits this reply memorandum in further support of its motion to compel non-party Fourth Universalist Society ("Fourth Universalist"), to comply with the subpoena served upon it on March 6, 2008 (the "Subpoena"), and in opposition to Fourth Universalist's cross-motion to quash the Subpoena.

## INTRODUCTION

Fourth Universalist cannot deny the core facts that require it to comply with the subpoena: (i) it is a religious institution, (ii) located in a residential district, (iii) that regularly earns revenue to sustain its operations by charging third parties for the right to use its premises as a venue for catered social events. Nor does it seriously contend that producing documents in response to the subpoena would be burdensome. Instead, it makes three makeweight arguments that can easily be dismissed.

First, ignoring the broad definition of relevance that applies on this discovery motion, Fourth Universalist insists it can avoid complying with the subpoena because its catering arrangements are not identical to the Church's. That is not the standard. Any practicing lawyer can articulate differences between two things, but Fourth Universalist's papers dwell on distinctions that make no difference. Thus, it notes that while the Church earns catering revenue indirectly, *via* a lease with the Rose Group, Fourth Universalist handles its catering differently, apparently by entering directly into a contract with each person or group that wishes to rent the space. That difference is immaterial. The relevant point is that, like the Church, Fourth Universalist seeks to earn supplemental revenue by charging non-congregants to use its building for catered social events. The City permits Fourth Universalist to do so, yet seeks to prohibit the Church. It is that fact that is relevant and requires exploration.

Second, Fourth Universalist claims that information concerning large public social events

at its Premises is somehow confidential. That argument is a diversion. Any confidentiality problem could quickly be solved by entering into the stipulated protective order already in place between the parties, or by seeking to redact certain confidential financial information. It is no basis for refusing to comply with the Subpoena altogether.

Third, Fourth Universalist claims that the information the Subpoena seeks is publicly available or obtainable from the City. To be sure, *some* information is publicly available, and indeed the Church has relied on information such as Fourth Universalist's website and advertisements. But the Church has no way of knowing the number of catered events held at Fourth Universalist, how many guests attend these events, and other details that go to the core of the accessory use issues in this case. The Church has no interest in requiring Fourth Universalist to produce documents the Church already has. But the Church has a right to obtain information that Fourth Universalist possesses that is relevant to this case. The motion to compel should be granted, and the cross-motion to quash should be denied.

## ARGUMENT

### A.   Differences Between Catering Arrangements Are Irrelevant

Fourth Universalist contends that it has no relevant information because its relationship with outside caterers is not identical to the Church's relationship with its caterer. (Ferreni Aff. ¶ 3) This argument boils down to one difference: that the Church leases it premises to a single entity that, in turn, makes arrangements with individuals or groups that want to rent the space for a catered event, while Fourth Universalist cuts out the middleman and makes the catering deals itself by renting the space to someone who then chooses the caterer and other vendors it wants to use. (McNatt Decl. 6) Based on this purported distinction, Fourth Universalist claims that its practice of raising money by renting out its space for catered events is not even *relevant* to the Church's similar practice. (Op. Br. at 6)

That argument is a nonstarter. This case is about the fact that accessory catered events are routinely held at churches and other non-profits; it is not about who caters them. The Church claims that the City has unfairly singled it out by prohibiting catered events at the Church while it expressly or tacitly permits other religious and secular non-profit institutions throughout the City to host similar social events for non-members on their premises, notwithstanding possible "quality of life" complaints, such as garbage, noise, traffic, etc. The City seeks to defend against this claim with the (we think unsupported) claim that, even if other institutions host social events, those events are not comparable in *size and scope* to the Church's events. (Brennan Decl. ¶ 149-150) Therefore, it is the nature of catered social events held at churches or other non-profit groups – and not the terms of the particular catering agreements – that is the primary focus of this litigation. The question of whether one caterer is paid a flat fee while another caterer may have a long-term rental arrangement is beside the point. Fourth Universalist concedes that it rents its building to members of the general public for catered events. Information about this practice – the number of events, the number of guests, etc. – is squarely relevant to the Church's claims.

It is hard to understand how Fourth Universalist can make the broad assertion that it and the Church "have nothing in common." (Op. Br. at 1) As set forth in the Church's opening brief, there are substantial similarities between the two. Like the Church, Fourth Universalist has a small congregation and seeks to supplement its income by renting its historic building (located in a residential district) to members of the general public for large catered events of up to 593 guests. (Segal Reply Decl. at ¶¶s 18-20) Like the Church, it also identifies itself in its advertisements not as a religious institution, but with the secular moniker "Landmark on the Park," and its costly advertisement in *Locations* magazine consists of photographs of the interior

event space, showing scenes of decorated tables, not religious items. (*Id.*)

Indeed, at least since 1992, Fourth Universalist has apparently been permitting its religious edifice to be used as a venue for catered events for non-members. (Segal Decl. Ex. D, New York Times "House of Worship Widening Rentals" (Dec. 27, 1992)). Yet it refuses to produce facts regarding these activities. Because the nature and extent of the catering activities at Fourth Universalist is squarely relevant to this case, it must comply with the subpoena.

**B.    Confidentiality and Privacy Concerns Are Without Merit**

Fourth Universalist argues that its purported privacy interests outweigh the Church's need for relevant information. (Op. Br. 7) That argument is unfounded. The only information specifically identified as confidential are "financial records (including its financial dealings with the third parties that license the Society's facility")." (*id.*) But Fourth Universalist admits that its license agreements do not contain a confidentiality clause. Merely labeling information "financial" does not immunize a party from the requirement to produce relevant information in response to a subpoena. Moreover, any of Fourth Universalist's confidentiality concerns are easily addressed by seeking a confidentiality agreement with the Church limiting the use of produced information.[1] *See, e.g., In re Subpoena Duces Tecum Served on Bell Comm. Research, Inc.* No. MA-85, 1997 WL 10919, at * 3 (S.D.N.Y. Jan. 13, 1997) (confidentiality agreement "provides adequate protection" for customer proprietary documents even though there were confidentiality agreements with customers in place); *Borzillieri v. Am. Nat. Red Cross*, 139 F.R.D. 284, 288 (W.D.N.Y. 1991) (holding that "a properly framed protective order will permit plaintiff to [comply with the subpoena] without at the same time violating his or her constitutional right to privacy").

---

[1] In fact, the Church, the City and one non-party, Central Presbyterian Church, have already entered into a stipulated protective order to address any confidentiality concerns.

Finally, the Church is happy to cooperate with Fourth Universalist to redact any sensitive information (for example, the names of a couple renting its building for a wedding). Given this willingness, and the ability to avail itself of the terms of the protective order, there is no basis to excuse Fourth Universalist from complying with the subpoena.

### C. Fourth Universalist's Claim that Information Is Publicly Available or Available Through the City Is No Basis For Quashing the Subpoena Altogether

Fourth Universalist claims that a certain amount of information responsive to the Subpoena is publicly available. (Op. Br. at 7) But that is no basis to quash the Subpoena altogether. As noted above, the Church has no interest in having Fourth Universalist produce print-outs of its website or the ad copy that ran in *Locations* magazine. The Church already has this publicly available material. But it does not have, and the subpoena demands production of, a host of other squarely relevant information that is not publicly available, such as internal documents showing the number of events held, the number of guests at those events, the terms of its license agreements with third parties, and the manner in which Fourth Universalist records or reports its catering revenues to tax authorities or other entities. These items must be produced.

Finally, any communications between Fourth Universalist and the City concerning its catering activities should be produced. To be sure, in theory, such communications would be available from the City. But the City and its Department of Buildings are large organizations and sometimes a party may inadvertently fail to locate and produce a responsive document. It is hardly oppressive to require Fourth Universalist to review its files for any correspondence or other communications with the City regarding its practice of renting its building out for catered events.

## CONCLUSION

Because the Subpoena seeks relevant information, the Court should compel Fourth Universalist to comply and produce the requested documents and produce a witness for the demanded deposition, and deny its cross-motion to quash.

Dated: New York, New York
July 3, 2008

>Respectfully submitted,
>
>DAVIS WRIGHT TREMAINE LLP
>
>By: _____
>Victor A. Kovner (VK 2248)
>John Cuti (JC 3365)
>Monica Pa (MP 3307)
>
>1633 Broadway
>New York, New York 10019
>(212) 489-8230
>
>*Attorneys for Plaintiff, Third Church of Christ, Scientist, of New York City*