UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

THIRD CHURCH of CHRIST, SCIENTIST, OF
NEW YORK CITY

       Plaintiff,

-against-

THE CITY OF NEW YORK AND PATRICIA J.
LANCASTER, IN HER OFFICIAL CAPACITY
AS COMMISSIONER OF THE NEW YORK
CITY DEPARTMENT OF BUILDINGS,

       Defendants.

---

Index No. 07-CV-10962 (DAB)


# MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO QUASH SUBPOENA OF NON-PARTY, THE METROPOLITAN CLUB, INC.

Neil G. Sparber
Brian W. Tilker
FULBRIGHT & JAWORSKI L.L.P.
666 Fifth Avenue
New York, New York  10103
(212) 318-3000
nsparber@fulbright.com
btilker@fulbright.com

Attorneys for Non-Party,
The Metropolitan Club, Inc.

50088141.1

## Preliminary Statement

This memorandum of law is submitted on behalf of non-party The Metropolitan Club, Inc. (the "Club") (i) in connection with the Court's direction on July 10, 2008 to have the Club submit proof that the Club hosted catered events for non-members prior to the enactment of the New York City Zoning Regulations in 1961 and (ii) in further support of the Club's motion, pursuant to Rule 45(c) of the Federal Rules of Civil Procedure, for an Order quashing the subpoena, dated March 6, 2008 (the "Subpoena"), and served upon the Club by the Third Church of Christ, Scientist, of New York City (the "Church"), the plaintiff in this action, on the grounds that the documents and information sough in the Subpoena are not relevant and unduly burdensome.

## Argument

### Even If The Club Were Not Authorized To Hold Member-Sponsored Catered Events, Holding Such Events Would Constitute A Pre-Existing Nonconforming Use

The purposes of the New York City Zoning Resolution of 1961 (the "Zoning Resolution") were to encourage "the development of desirable residential, commercial, and manufacturing areas with appropriate groupings of compatible and related uses and thus to promote and to protect public health, safety, and general welfare." N.Y. ZONING RESOLUTION § 51-00. Notwithstanding these goals, nonconforming uses that existed prior to the enactment of the Zoning Resolution were generally allowed to continue. See N.Y. ZONING RESOLUTION § 52-11. The use of property that is no longer authorized due to rezoning, but lawfully existed prior to the enactment of the existing zoning ordinance is a nonconforming use. Toys "R" US v. Silva, 89 N.Y.2d 411, 417, 677, N.E.2d 862, 865, 654 N.Y.S.2d 100, 103 (1996). Court's are tolerant to nonconforming uses because of constitutional and fairness concerns that elimination of nonconforming uses would cause to property owners. Id. (citations omitted). Unless the

nonconforming use is discontinued for two years, the prior nonconforming use continues to be permissible. ZONING RESOLUTION § 52-61; see Savetsky v. Board of Zoning Appeals of Town of Southampton, 5 A.D.3d 779, 780, 774 N.Y.S.2d 188, 189 (2d Dep't 2004) (reversing trial court's finding of an invalid nonconforming use valid because the purported abandonment was involuntary); Stephentown Concerned Citizens v. Herrick, 246 A.D.2d 166, 169, 676 N.Y.S.2d 246, 248 (3d Dep't 1998) (reversing lower court's order denying permission to continue work on gravel because mining activities did not exceed one year and, thus, did not terminate its prior nonconforming use).

The primary use of the Club as a social club has not changed since its inception in 1894. (Supplemental Affidavit of Anthony Nuttall dated July 18, 2008 ("Nuttall Supp. Aff.") ¶ 2.) The Club has always been a venue for receptions, meetings and social events for a wide variety of social, cultural and political organizations. (Id. at ¶ 3.) For example, the February 17, 1959 minutes of the meeting of the Club's Board of Governors reflects that the Club held a cocktail party on February 21, 1959, under the auspices of the Guideposts For Children, Inc. (Id. ¶ 3, Ex. A.) Similarly, the March 17, 1959 minutes of the Club's Executive Committee indicate that the committee discussed a potential upcoming dance and "approved the renting of the West Lounge and the Great hall for a debutante's cotillion to be held in November for approximately 250 guests, and sponsored by Mrs. Robert W. Cutler." (Id. ¶ 4, Ex. B.) Moreover, the October 21, 1957 minutes of the meeting of the Club's Executive Committee demonstrate that a dinner of the Americas Foundation was recently held at the Club. (Id. ¶ 5, Ex. C.) Finally, the minutes of the March 9, 1960 Club's Executive Committee meeting state that the committee approved "[t]he request of Haskins & Sells for the privilege of having a dinner for 140 persons in the Main Dining Room of the Club, reception in the West Lounge, and the use of the card room and

billiard room after dinner on Thursday, May 26th, to be sponsored by our member Mr. Harry R. Ferris . . . ." (Id. ¶ 5, Ex. D.) Thus, the minutes of the meetings of the Board of Governors of the Club demonstrate that throughout 1959 and 1960, the Club regularly hosted catered events for outside organizations and persons.

In addition, the Club's 1960 brochure, which was likely provided to the Club's members, describes the Club as "[t]he perfect setting for your business and social events," and describes the seating capacities of the private dinging room as well as the other services offered by the Club. (Id. ¶ 6, Ex. E.) The brochure is an example of the Club reminding its members that the Club was available for business and social events.

Moreover, various newspaper articles from The New York Times from 1959 and 1960 also demonstrate that, prior to the enactment of the Zoning Resolution, the Club regularly hosted outside events including, but not limited to, the eighteenth annual dinner of the Americas Foundation, a luncheon for Premier Antonio Segni of Italy by the American-Italy Society at the Club, a luncheon by the New York State Association of Plaintiffs Trial Lawyers to pay tribute to a Judge, a reception for Prince Harold of Norway by the American-Scandinavian Foundation, and a dinner in honor of Vice Admiral Thomas L. Combs under the auspices of the New York Council, Navy League of the United States. (Id. ¶¶ 7-8, Exs. F and G.)

Thus, the minutes of the meetings of both the Board of Governors and Executive Committee of the Club demonstrate that the Club and newspaper articles confirm that, prior to the enactment of the Zoning Resolution, the Club regularly engaged in the same outside business and social activities as those in which it engages presently. The Club has never discontinued its permissible nonconforming use for a period of two years or more since the enactment of the Zoning Resolution. See Savetsky, 5 A.D.3d at 189, 774 N.Y.S.2d at 789. Accordingly, although

the Club contends that hosting catered events has always been a permitted use under its certificates of occupancy, even if it were not, hosting of catered events for outside organizations is a permissible prior nonconforming use. Toys "R" US, 89 N.Y.2d at 417, 677, N.E.2d at 865, 654 N.Y.S.2d at 103.

The sole purpose for the issuance of the subpoena was to obtain documents and information which might demonstrate that the Club and the Church are similarly situated or comparable under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"). However, the information sought in the Subpoena is not relevant to the underlying action because the Club is not similarly situated to the Church. See Vision Church, United Methodist v. Village of Long Grove, 397 F. Supp. 2d 917, 930 (N.D. Ill. 2005) (granting motion for summary judgment dismissing RLUIPA Equal Terms Clause claim where public school that plaintiff claimed was excluded from ordinance was built before zoning ordinance applied to plaintiff was made law). Thus, the information sought from the Club is not relevant to the Church's claims against the City in the underlying action and, in any event, is unduly burdensome. As a result, the Subpoena should be quashed in all respects.

## CONCLUSION

For all of the foregoing reasons and the reasons stated in the Club's moving papers, it is respectfully requested that the motion to quash the Subpoena be granted in all respects.

Dated: New York, New York
July 21, 2008

                         FULBRIGHT & JAWORSKI L.L.P

                         By: _____
                               Neil G. Sparber
                               Brian W. Tilker
                               666 Fifth Avenue
                               New York, New York  10103
                               (212) 318-3000
                               nsparber@fulbright.com
                               btilker@fulbright.com

                               Attorneys for Non-Party,
                               Metropolitan Club Inc.