UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------

THIRD CHURCH of CHRIST, SCIENTIST, OF
NEW YORK CITY

        Plaintiff,

   -against-

THE CITY OF NEW YORK AND PATRICIA J.
LANCASTER, IN HER OFFICIAL CAPACITY
AS COMMISSIONER OF THE NEW YORK
CITY DEPARTMENT OF BUILDINGS,

        Defendants.

------------------------------------------

Index No. 07-CV-10962 (DAB)

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
RECONSIDERATION OF THE ORDER OF JUDGE  DEBORAH A.
BATTS, DATED JULY 31, 2008, WHICH REQUIRES THE PRODUCTION
OF DOCUMENTS BY NON-PARTY THE METROPOLITAN CLUB, INC.**

Neil G. Sparber
Brian W. Tilker
FULBRIGHT & JAWORSKI L.L.P.
666 Fifth Avenue
New York, New York  10103
(212) 318-3000
nsparber@fulbright.com
btilker@fulbright.com

Attorneys for Non-Party,
The Metropolitan Club, Inc.

## PRELIMINARY STATEMENT

This memorandum of law is submitted on behalf of non-party The Metropolitan Club, Inc. (the "Club") pursuant to Rule 6.3 of the Local Civil Rules of the Southern and Eastern Districts of New York, for an Order (i) granting reconsideration of the Court's Order, dated July 30, 2008 (the "Order"), which directed the Club to produce certain documents to the Third Church of Christ, Scientist, of New York City (the "Church"), and (ii) upon reconsideration, quashing the subpoena, dated March 6, 2008, which was served on the Club by the Church (the "Subpoena") in its entirety on the grounds that the Club and the Church are not similarly situated with respect to the use of the premises for catered events and, therefore, the documents sought in the Subpoena are not relevant and the production of the documents by the Club would be unduly burdensome.

## ARGUMENT

On July 10, 2008, the Court held a hearing to determine whether certain non-parties, including the Club, were required to comply with subpoenas that had been served by the Church in connection with the underlying action between the Church and the City of New York (the "City"). During the hearing, there was a lengthy discussion concerning whether the documents being sought by the Church from the Club could be relevant under any circumstances and, in connection therewith, the Court recognized that the Subpoena was unduly burdensome. In fact, as set forth in the transcript of the hearing (the "Transcript"), a copy of which is annexed to the Notice of Motion as Exhibit A, the Court stated as follows:

> Well, Mr. Sparber, it seems to me that if the Metropolitan Club holds several events daily, that producing records of every event in the last three years would be unduly burdensome, so it seems to me at least to see if, indeed, it is possible from the documentation to determine a true outsider from a member, I would ask you to comply with the subpoena in terms of the month of December 2007.

50090873.1

After that, if an argument can be made from the documents that it is clear that this is a practice from that month, then perhaps it can be enlarged or maybe it need not be depending on the number of events that seem to be outside of that in December.

(Exhibit A, pp. 17-18).

Thus, the initial reaction of the Court was that the Subpoena was unduly burdensome and the Court limited the production of documents to documents from the month of December, 2007. The documents being sought by the Church, however, can only be relevant if the Church can first prove that the Church and the Club are similarly situated. The attorney for the Club explained to the Court that the Club and the Church were not similarly situated for a number of reasons, including that the Club had been operating in the same manner with respect to hosting catered events for approximately 114 years, and that since it had hosted catered events for outside organizations and individuals prior to the enactment of the New York City Zoning Regulations in 1961, the Club's hosting of catered events for outside organizations and individuals were grandfathered.[1] (Exhibit A, pp 19-20.) The concept of being grandfathered under the Zoning Regulations for pre-existing non-conforming uses was confirmed by Maria Brennan, Esq., the attorney for the City (Exhibit A, p. 20) The Court subsequently stated as follows:

It certainly has more significance to me than it has to you, and in terms of having these non-party organizations go to the difficulty of complying with the subpoena no matter how reasonable the subpoena is, it seems to me that if there is a conversation stopper of grandfathering, that that needs to be addressed.

So that what I would like to do is adjourn this, because if that exists [grandfathering], there is no reason to continue, because then they would not be similarly situated, it never had to apply, so it wouldn't be helpful to the plaintiff to have their information.

(Exhibit A, p. 23.) (emphasis added)

---

[1]    The Club and the Church are also not similarly situated because of, among other things, differences in zoning districts in which the Club and the Church are located and because catering is a permissible use under the Club's Certificate of Occupancy while the Church does not even have a Certificate of Occupancy.

The Court thereafter directed the non-parties, including the Club, to submit evidence that the respective entity had been hosting catered events for non-members prior to the enactment of the Zoning Regulations in 1961.  In accordance with the Court's directive, the Club submitted the supplemental affidavit of Anthony Nuttall, a copy of which is annexed to the Notice of Motion as Exhibit B (the "Nuttall Affidavit").  The Nuttall Affidavit contained detailed evidence that the Club hosted catered events such as receptions, meetings, and social events for a wide variety of social, cultural and political organizations prior to 1961 including, among other things, the minutes of meetings of the Board of Governors of the Club from 1959 and 1960 which approved catered events for outside organizations, as well as a brochure of the Club indicating that the Club was available for business and social events  The affidavit also included numerous examples of articles from <u>The New York Times</u> from 1959 and 1960 which describe catered events held at the Club for various outside organizations and non-members throughout 1959 and 1960.  The documentary evidence attached to the Nuttall Affidavit was not rebutted in any manner by the Church.  It is respectfully submitted that the unrebutted evidence demonstrated conclusively that the Club's catering of events for outside organizations and individuals is grandfathered activity under the Zoning Regulations and, therefore, the Club and the Church are not similarly situated as a matter of law.

In the Order, a copy of which is annexed to the Notice of Motion as Exhibit C, the Court determined that the subpoenas served by the Church would be an undue burden on each of the non-parties and the Court modified the subpoenas to require each of the non-parties to produce all documents concerning any social event conducted on or in the premises during the month of December 2007, as well as all documents from the month of December 2007 relating to any independent person or entity that performed catering-related services with which the institution

has a contractual relationship.  (Exhibit C, p. 2.)  It is respectfully submitted that the Order was incorrect insofar as it treated the Club and the other non-parties identically and ordered the Club to produce documents instead of quashing the Subpoena.  The Roman Catholic Church of St. Ignatius Loyola ("St. Ignatius") submitted no documentary evidence of its catering activities being a pre-existing non-conforming use prior to 1960, although it submitted an affidavit which described certain events that were held to commemorate the 50th anniversary of the Jesuit presence in New York in 1916.  Similarly, the Riverside Church submitted a supplemental affidavit which attached as exhibits a catering agreement and related correspondence from 1960. It does not appear that the Fourth Universalist Society submitted any papers in support of the Court's directive.[2]  The subpoenas were undoubtedly overbroad and burdensome with respect to the other non-party entities and should have been modified.  However, the Club demonstrated conclusively that its hosting of catered activities today is the same activity in which it was engaged prior to 1961 and is, at a minimum, a pre-existing non-conforming use under the Zoning Regulations, thereby demonstrating that the Club and the Church are not similarly situated.

The position of the Club in this matter is no different from the position of The Beekman, from which the Church also sought documents.  In a decision, dated July 7, 2008, a copy of which is annexed to the Notice of Motion as Exhibit D, the Court determined that The Beekman was permitted under applicable zoning law to operate a restaurant and hold catered events.  As a result, the Court held that "[c]onducting non-Party discovery on the Beekman would not advance Plaintiffs argument that the City is subjecting them to disparate treatment in violation of Section (b) of the Religious Land Use and Institutionalized Persons Act of 2000" ("RLUIPA")  (Exhibit

---

[2]        The Club does not take the position that catering activities at the other non-parties was not a pre-existing, non-conforming use, but only points out that the evidence submitted by the Club was more substantial and contained greater detail.

D, p. 3). The Court also noted that "[d]iscovery was permitted [in this action] to allow Plaintiff to establish a record of the purported existence of persons in similar circumstances who received more favorable treatment than the plaintiff" and the Court granted the non-parties' motion to quash the subpoena that had been served on them. The same result should obtain herein. The Club has always been permitted to conduct its catering activities without having to obtain a permit from the City for the numerous reasons set forth in the papers it submitted, including specifically that the activities constitute a pre-existing non-conforming use under the Zoning Regulations. Toys "R" US v. Silva, 89 N.Y.2d 411, 417, 677, N.E.2d 862, 865, 654 N.Y.S.2d 100, 103 (1996) (use of property that is no longer authorized due to rezoning, but lawfully existed prior to the enactment of the existing zoning ordinance is a permissible nonconforming use). Thus, the Club and the Church are not similarly situated or comparable under RLUIPA. See Vision Church, United Methodist v. Village of Long Grove, 397 F. Supp. 2d 917, 930 (N.D. Ill. 2005) (granting motion for summary judgment dismissing RLUIPA Equal Terms Clause claim where public school that plaintiff claimed was excluded from ordinance was built two years before zoning ordinance applied to plaintiff was made law) (emphasis added); Congregation Kol Ami, 309 F.3d 120, 137 (3d. Cir. 2002) ("[T]he initial burden [is] on the complaining party first to demonstrate that it is similarly situated to an entity that it is being treated differently before the local municipality must offer a justification for its ordinance.") Thus, as the Court recognized in the Beekman decision, "[c]onducting non-Party discovery on [an entity that is not similarly situated] would not advance Plaintiffs argument that the City is subjecting them to disparate treatment in violation of Section (b) of the Religious Land Use and Institutionalized Persons Act of 2000."

In sum, the Club has demonstrated conclusively through unrebutted documentary evidence, that its catering activities are, at a minimum, pre-existing non-conforming uses under the Zoning Regulations, and that the Club never needed the permission of the City to conduct its catering activities.   To the contrary, the Church has commenced this action to obtain the permission of the City to conduct its catering activities.   As a result, the Club and the Church are not similarly situated and any documents from the Club related to its catering activities are not relevant to the Church's position in the underlying action.   As a result, it is respectfully requested that the Court reconsider its decision with respect to the Order and, upon reconsideration, quash the Subpoena in its entirety.

## CONCLUSION

For all of the foregoing reasons and the reasons stated in the Club's papers submitted in connection with its motion to quash the Subpoena, it is respectfully requested that the Club's motion be granted in all respects.

Dated: New York, New York
       August 11, 2008

FULBRIGHT & JAWORSKI L.L.P

By: _____
    Neil G. Sparber
    Brian W. Tilker
    666 Fifth Avenue
    New York, New York  10103
    (212) 318-3000
    nsparber@fulbright.com
    btilker@fulbright.com

    Attorneys for Non-Party,
    The Metropolitan Club, Inc.